**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| BOKF, NA | § | |
| BOK Financial Securities, Inc. (BOKFS) | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| v. | § | Case No.  3:18-cv-00794 |
| | § | |
| | § | |
| Vickie Sue Wise, an individual | § | Honorable David Godbey |
|     CRD No. 1883523 | § | United States District Court Judge |
| Ronnie Carroll "Skip" Davis, an individual | § | |
|     CRD No. 5400246 | § | |
| Melissa Morgeson Del-Cid, an individual | § | |
|     CRD No. 2448005. | § | |
| Hilltop Holdings, Inc. | § | |
| Hilltop Securities, Inc. | § | |
|     CRD No. 6220 | § | |
| Hilltop Independent Network, Inc. | § | |
|     CRD No. 17587 | § | |
| Lloyds Insurance Company | § | |
|     TX Lic. No. 95740 | § | |
| American Summit Insurance Company | § | |
|     TX Lic. No. 58960 | § | JURY TRIAL DEMANDED |
| Plains Capital Bank | § | |
| | § | |

Defendants.

**BOKF NA and BOK FINANCIAL SECURITIES, INC. (BOKFS)**
**EMERGENCY VERIFIED APPLICATION FOR INJUNCTIVE RELIEF[1]**

---

[1] See also, BOKF, NA and BOKFS' Complaint filed this same date.

## Table of Contents

I.   SUMMARY ............................................................................................................... 3

II.  STATEMENT OF FACTS ...................................................................................... 3

   A.  HILLTOP RAID, BOKF REMINDER AND DEMAND LETTER ................. 3

   B.  Parties ............................................................................................................ 4

   C.  The Individual Defendants (Former BOKF Employees) .................................. 4

   D.  The Hilltop Defendants (New Employer(s) of the Individual Defendants) ........ 6

   E.  BOKF ............................................................................................................. 6

   F.  BOKF Business and Employee Obligations to BOKF and Customers .............. 6

   G.  Concerted Exodus of the Individual Defendants Without Notice .................... 12

   H.  Receipt of Demand Letter and Actions Thereafter .......................................... 15

   I.  Irreparable Harm ............................................................................................ 16

   J.  RIGHT to Equitable Relief ............................................................................ 17

      1.  Likelihood of Success on the Merits. .................................................... 17

      2.  Irreparable Harm. ................................................................................. 17

      3.  Equities of the Parties and Public Policy. .............................................. 18

I.   Standards for Injunctive Relief .............................................................................. 19

II.  BOKF Will Prevail on Its Claims. ......................................................................... 20

   A.  Likelihood of Success on the Merits ............................................................... 20

      1.  The Provisions at Issue are Ancillary to an Otherwise Enforceable Agreement. .......... 20

      2.  The Provisions at Issue are Reasonable and Narrow in Scope and Serve to Protect BOKF's Interests. ......................................................................... 20

      3.  Texas Courts and the Northern District have already found similar agreements enforceable. ......................................................................... 22

   B.  There Is An Imminent Threat Because The Evidence Show That The Individual Defendants Have Already Breached Their Agreements. ................................................ 22

      1.  The Securities Industry Recognizes the Irreparable Harm that Ensues should an injunction not issue. ......................................................................... 22

      2.  The customers involved are established BOKF customers. .......................... 24

      3.  The actions of the Defendants are solicitations. ......................................... 24

      4.  The Defendants are misusing BOKF Data to Solicit BOKF Customers. ........ 26

   C.  The threatened injury outweighs any damage that the injunction may cause the opposing party. ......................................................................................................... 28

   D.  Equities of the Parties and Public Policy. ....................................................... 28

## Cases

*Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*,
　878 F.2d 806 (5th Cir. 1989)....................................................................... 19
*Alpha Tax Services, Inc. v. Stuart*,
　158 Ariz. 169, 761 P.2d 1073 (Ct. App. 1988) ........................................ 25
*Am. Exp. Fin. Advisors, Inc. v. Scott*,
　955 F. Supp. 688 (N.D. Tex. 1996)............................................................ 30
*Computer Associates Intern., Inc. v. Altai, Inc.*,
　918 S.W.2d 453 (Tex. 1996)........................................................................ 27
*Ctr. for Econ. Justice v. Am. Ins. Ass'n*,
　39 S.W.3d 337 (Tex. App.—Austin 2001, no pet.).................................... 27
Digital Generation, Inc., f/k/a DG FastChannel, Inc., v. Boring.,
　2012 WL 6949840 (E.D.Mich.) ................................................................... 26
*Ecolab, Inc. v. K.P. Laundry Mach., Inc.*,
　656 F. Supp. 894 (S.D.N.Y. 1987).............................................................. 25
*Gonzales v. Zamora*,
　791 S.W.2d 258 (Tex. App.—Corpus Christi 1990, no writ)..................... 26
*In re Bass*,
　113 S.W.3d 735 (Tex. 2003)........................................................................ 27
*JPMorgan Chase Bank, N.A. v. Clark*,
　09-13815, 2009 WL 3190342 (E.D. Mich. Sept. 29, 2009) ..................... 25
*K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*,
　158 Tex. 594, 314 S.W.2d 782 (1958)........................................................ 29
*Lakedreams v. Taylor*,
　932 F.2d 1103 (5th Cir. 1991).............................................................. 19, 20
*Light*,
　883 S.W.2d & n. 14 ...................................................................................... 22
*Mabrey v. SandStream, Inc.*,
　124 S.W.3d 302 (Tex. App.—Fort Worth 2003, no pet.).......................... 27
*Marsh USA Inc. v. Cook*,
　354 S.W.3d 764 (Tex. 2011)........................................................................ 21
*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*,
　756 F.2d 1048 (4th Cir. 1985)..................................................................... 22
*Miller Paper Co. v. Roberts Paper Co.*,
　901 S.W.2d 593 (Tex. App.—Amarillo 1995, no writ) .............................. 26
*Murrco Agency, Inc. v. Ryan*,
　800 S.W.2d 600 (Tex. App.—Dallas 1990, no writ) ................................. 26
*Nat'l City Corp. v. Boyd*, 1:08-CV-2189,
　2008 WL 4346444 (N.D. Ohio Sept. 17, 2008) ........................................ 25
*Numed, Inc. v. McNutt*,
　724 S.W.2d 432 (Tex. App.—Fort Worth 1987, no writ) .......................... 26
*Picker Intern., Inc. v. Blanton*,
　756 F. Supp. 971 (N.D. Tex. 1990).............................................................. 30
*Sheshunoff*,
　209 S.W.3d ........................................................................................... 21, 22

*Simplified Telesys., Inc. v. Live Oak Telecom, L.L.C.,*
    68 S.W.3d 688 (Tex. App- Austin 2000, no pet.) ...................................... 26
*Staples, Inc. v. Sandler*, 3:07-CV-0928-K,
    2008 WL 4107656 (N.D. Tex. Aug. 29, 2008)................................... 21, 22
*T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*,
    965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) ................... 29, 30
*Technomedia Sols., LLC v. Scopetto*, 6:13-CV-1061-ORL-36,
    2013 WL 6571558 (M.D. Fla. Dec. 13, 2013) .......................................... 25
*Techs., Inc. v. Harnett*,
    731 F.3d 6 (1st Cir. 2013)........................................................ 24, 25
*Totaro, Duffy, Cannova & Co., LLC v. Lane, Middleton & Co., LLC*, A-2,
    649-03T1, 2006 WL 4543337 (N.J. Super. Ct. App. Div. Feb. 27, 2006).................. 25
*Trilogy Software, Inc. v. Callidus Software, Inc.*,
    143 S.W. 3d 452 (Tex. App. - Austin 2005, reh'g overruled)...................... 26
*Weed Eater, Inc. v. Dowling,*
    562 S.W.2d 898 (Tex. Civ. App.- Houston [1st Dist.] 1978, writ refd n.r.e.).............. 29
*White v. Carlucci*,
    862 F.2d 1209 (5th Cir. 1989).................................................... 20

**Statutes**

18 U.S.C § 1831.......................................................................... 27
Tex. Bus. & Com.Code § 15.50(a) ................................................... 21, 22
Tex. Civ. Prac. & Rem. Code § 134 ................................................. 27

**Rules**

Federal Rule of Civil Procedure 5 (b)(2)....................................... 35

**Other Authorities**

*Equibrand Corp. v. Reinsman Equestrian Prods.,*
    2007 U.S. Dist. LEXIS 36229, at *11 (N.D. Tex. May 17, 2007) ............... 19
*Propath Servs., L.L.P. v. Ameripath, Inc.,*
    2004 U.S. Dist. LEXIS 27846, at *6 (N.D. Tex. Oct. 21, 2004) .................. 19

Plaintiffs, BOKF,NA ("BOKFNA") and BOK Financial Securities, Inc., as legal successor to BOSC, Inc. ("BOKFS"), (collectively "BOKF"), filed a Complaint this same date against Defendants Vickie Sue Wise ("Wise"), an individual; Ronnie Carroll "Skip" Davis ("Davis"), an individual; Melissa Morgeson Del-Cid ("Morgeson Del-Cid"), an individual; Hilltop Holdings, Inc.; Hilltop Securities, Inc.; Hilltop Securities Independent Network Inc.; National Lloyds Insurance Company, American Summit Insurance Company and PlainsCapital Bank. The individuals may be referred to herein collective as the "Individual Defendants". The corporations may be referred to herein collectively as the "Hilltop Defendants'.

BOKFNA and BOKFS have filed this *Emergency* Verified Application for a Temporary Restraining Order and Preliminary Injunction (the "Verified Application") and seeks from this Court a temporary restraining order ("TRO"), Preliminary Injunction ("PI"), and other relief. BOKFNA requests a temporary restraining order ("TRO") and preliminary injunction ("PI") and other relief. BOKFS seeks only a Temporary Restraining Order (TRO) and Preliminary Injunction (PI) against FINRA Member Firms.[2] BOKFS seeks all

---

[2] The Financial Industry Regulatory Authority ("FINRA" regulates the conduct of registered financial representatives, called Associated Persons, and FINRA Member Firms. Wise, Davis and Del-Cid are FINRA Associated Persons. Hilltop Securities, Inc. and Hilltop Independent Network, Inc. are FINRA Member Firms. The activities of Associated Persons and FINRA Member Firms are generally subject to arbitration. FINRA's rules permit broker-dealers to obtain injunctive relief in state court to preserve the status quo under their agreements. FINRA Rule 13804(a) states that, in addition to filing a statement of claim with FINRA, "parties may seek a temporary injunctive order from a court of competent jurisdiction." BOKFS has filed an arbitration action with FINRA. BOKFS asks this Court to enter injunctive relief pending the resolution of the substantive merits of BOKFS' claims by a FINRA arbitration panel. This process is expressly authorized by FINRA Rule 13804(a). BOKFS will seek all other relief beyond injunctive relief against FINRA Member Firms in the alternative dispute resolution forums specified by the rules and regulations involving FINRA. BOKFS will have filed a FINRA Statement of Claim this same date.

2

relief against non-Member Firms.

## I.    SUMMARY

This case arises generally through the concerted actions of employees Wise, Davis, and Del-Cid, who resigned in concert on Friday March 23, 2018, the Friday of a holiday week (Spring Break), in conspiracy with and/or on behalf of the Hilltop Defendants: (i) in violations of duties of loyalty, (ii) in breach of agreements involving BOKFNA and BOKFS and the individual Defendants, including, but not limited to, advance notice of termination, agreements not to solicit employees and customers, confidentiality and return of information provisions, and (iii) through misappropriation of confidential, proprietary information, and/or trade secrets belonging to BOKF customers.

## II.    STATEMENT OF FACTS

### A.    HILLTOP RAID, BOKF REMINDER AND DEMAND LETTER

Wise, Davis, and Morgeson Del-Cid tendered their concerted resignations, in total disregard of obligations to BOKF including notice provisions, restrictive covenants, and confidentiality provisions, without any notice, on the morning of Friday, March 23, 2018. Exhibit 1 (2018-03-23 Resignation of Davis); Exhibit 2 (2018-03-23 Resignation of Morgeson Del-Cid.  Wise, Davis, and Morgeson Del-Cid then began soliciting BOKF Customers using BOKF information in violation of applicable agreements and customer privacy and trade secret law.

That same day, on Friday, March 23, 2018, BOKF transmitted, by email to Wise and Morgeson Del Cid, and, by overnight courier to Hilltop Defendants, a letter with reminders regarding obligations, demands to comply with applicable agreements,

demands to search for and return BOKF data, and demands to preserve all documents and tangible items pertaining to the transition of employment. Exhibit 3 (Email to Wise and Morgeson Transmitting 2018-03-25 Reminder and Demand Letter) and Exhibit 4 (Attached Letter dated 2018-03-23) with: Exhibit 5 (Wise & Davis Sample 2018 Client Advisor Incentive Agreement [Redacted]); Exhibit 6 (Davis Sample 2018 Wealth Advisor Incentive Agreement Redacted]); Exhibit 7 (Morgeson Del-Cid Sample 2018 Sales/Service Specialist Incentive Agreement); Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del Cid Representative Agreement).

Defendants have continued their actions regardless of the delivery of demand letters.

Therefore, BOKFNA and BOKFS filed a Complaint and this Emergency Verified Application for Temporary Restraining Order.

### B. Parties

1.    BOKFNA is a regional financial institution operating under a charter issued by the Office of the Comptroller of the Currency with its headquarters and principal offices located at One Williams Center, Tulsa, Oklahoma 74172. BOKFNA is a subsidiary of BOK Financial Corporation.

2.    BOKFS is an Oklahoma corporation with its with its headquarters and principal offices located at One Williams Center, Tulsa, Oklahoma 74172 and is a registered broker/dealer in all 50 states. BOKFS is a subsidiary of BOK Financial Corporation. BOKFS was formerly known as BOSC, Inc.

### C.    The Individual Defendants (Former BOKF Employees)

3.    Wise is an individual who resides at 3318 Blackburn Street in the City of Dallas,

4

Dallas County, Texas.

4.      Wise is a registered financial representative. Wise's FINRA CRD No. is 1883523. Wise hold licenses to sell securities, insurance and annuities.

5.       Wise started employment with BOKF in 1998.   Until March 23, 2018, Defendant Wise was an employee of BOKF and was a registered representative of BOKFS. Prior to her termination, Defendant Wise was BOKF's most tenured representative in Dallas with twenty (20) years of service.

6.      Wise last held the position of Client Advisor.   Exhibit 10 (Client Advisor Position Description).

7.      Davis is a registered financial representative. Davis FINRA CRD No. is 5400246. Davis holds licenses to sell, securities, insurance and annuities.   Davis started employment with BOKF in 2012.   Until March 23, 2018, Defendant Davis was an employee of BOKFNA and was a registered representative of BOKFS.

8.      Davis last held the position of Client Advisor. Exhibit 10 (Client Advisor Position Description).

9.      Morgeson Del-Cid is a registered financial representative. The FINRA CRD No. for Morgeson Del-Cid is 2448005. Morgeson Del-Cid also holds licenses to sell securities, insurance and annuities.

10.     Del-Cid started employment with BOKF in 2006.  Until March 23, 2018, Defendant Morgeson Del-Cid was an employee of BOKFNA and was a registered representative of BOKFS.

11.      Morgeson Del-Cid last held the position of Senior Securities Sales/Services Specialist. Exhibit 11 (Senior Securities Sales/Services Specialist Position Description

(Morgeson Del-Cid).

**D.    The Hilltop Defendants (New Employer(s) of the Individual Defendants)**

12.    Defendants are affiliates providing financial services and include Hilltop Holdings, Inc., Hilltop Securities, Inc. Hilltop Securities Independent Network, Inc., National Lloyds Insurance Company, American Summit Insurance Company, and PlainsCapital Bank. Hilltop Securities, Inc. and Hilltop Independent Network, Inc. are FINRA Member Firms.

**E.    BOKF**

13.    BOKF incorporates and realleges the allegations contained in ¶¶s 1- 12 above as if fully set forth herein.

14.    BOKF develops and maintains customer relationships and business.    These customer relationships are a protectable interest of BOKF.

15.    In the course of conducting business, BOKF develops and maintains confidential business information, customer lists and data as well as methodologies and processes that are essential to the successful operation of their businesses (the "Confidential Information and Trade Secrets"). This information is a protectable interest of BOKF.

**F.    BOKF Business and Employee Obligations to BOKF and Customers**

16.    BOKF conducts business and develops its protectable interests through its personnel.

17.    The positions of Wise and Davis (registered financial Client Advisors), and Morgeson Del Cid (registered Sales/Services Support Specialist) required that confidential customer information and financial strategy be provided to the Individual Defendants by BOKF.

18.    BOKF promised to and provided confidential customer information and financial

strategies to the Individual Defendants.

19.    BOKF Client Advisors (Wise and Davis) have the following summary of duties:

> The **Client Advisor** is primarily responsible for developing, maintaining, and expanding relationships with high net worth individuals and their associated entities in the firm through comprehensive needs assessment and response. Actively networks both inside and outside the firm for new client relationships, as well as maintaining and expanding current relationships through exceptional client service. Meets with existing and prospective clients to profile, assess financial service needs and propose solutions, often through the use of financial planning tools. Provides advisory services for investment portfolios; recommending appropriate investment strategies to achieve risk-adjusted client objectives. Provides performance reporting to client on periodic basis or as established by the client. Keeps current on economic and market trends, as well as compliance and regulatory issues.

Exhibit 10 (Client Advisor Position Description (Wise and Davis).

20.    BOKF Senior Securities Sales/Service Specialist, (Morgeson Del-Cid),  have the following summary of duties:

> The **Senior Securities Sales/Service Specialist** is primarily responsible for the direct supervision of both exempt and non-exempt personnel that are primarily responsible for the sales and support of investment products when primary sales person is unavailable. Also, provides support and service to customers; provides quotes on investment securities; responds to inquiries regarding securities transactions; resolves problems with applicable investment and deposit accounts; provides sales tracking, account assignment research, and sales performance measurements.

Exhibit 11 (Senior Securities Sales/Service Specialist Position Description (Morgeson Del-Cid).

21.    BOKF maintained its confidential data confidentially, using secure access, locks and keys, confidential employee identifiers and passwords, and Standards of Conduct, and policies and procedures.

22.    BOKF employees are obligated to adhere to Standards of Conduct, which include standards regarding confidentiality of customer data and following applicable law.  Exhibit

12 (Standards of Conduct); Exhibit 13 (Standards of Conduct Attestations).

23.    BOKF FINRA Associated Persons (Client Advisors and Securities Sales/Service Specialists) have Representative Agreements which have provisions for notice of termination, requirements to follow applicable law and policies and procedures, confidentiality, return of data and agreements not to solicit.   Exhibit 14;[3] Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del-Cid Representative Agreement).

24.    The Representative Agreement obligates the employee to give thirty (30) days' written notice of termination.  Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del-Cid Representative Agreement):[4]

> This Agreement may be terminated by either party at any time, without cause, but only by, giving thirty (30) days written notice to the other party.

25.    The primary purpose of the notice provision is to give BOKF the opportunity to prepare its customers for the transition to a new BOKF financial representative and to protect and solidify BOKF's relationship with its customers.

26.    The Representative Agreement requires the employee to follow policies and procedures of BOKF which required safeguarding of confidential information and return of confidential information upon departure from employment at Paragraph (2)(B).   Exhibit 8 at p. 1 at ¶ (2) B (Davis Agreement); Exhibit 9 (Morgeson Del-Cid Agreement); Exhibit 19 and Exhibit 20 (Excerpts of BOKFS Written Supervisory Procedures); Exhibit 12 (Standards of Conduct); Exhibit 13 (Attestations to Standards of Conduct).

---

[3] BOKF is currently searching for a copy of Wise' Representative Agreement.   BOKF has provided an Exhibit 14 which is a slip sheet as a place holder for a later ERRATA to include Wise's Agreement if/when it is located.
[4] Exhibit 14.

8

27.    The Representative Agreements contain agreements not to solicit employees for one year following termination of employment at Paragraph (2)(J).  Exhibit 14 (Wise); Exhibit 8 at p. 2 at ¶ (2) (J) (2012-04-03 Davis Representative Agreement); Exhibit 9 at p. pp. 2-3 ¶ (2)(J) (2006-06-21 Morgeson Del-Cid Representative Agreement).

28.    The Representative Agreements contain agreements not to solicit established customers and not to solicit employees for one year following termination of employment at Paragraph (2)(J).  Exhibit 8 at p. 3 at ¶ (2) J (2012-04-03 Davis Representative Agreement); Exhibit 9 at p. 2 ¶ (2) (J) (2006-06-21 Morgeson Del-Cid Representative Agreement); Exhibit 14.

29.    The Representative Agreement contain agreements to maintain confidentiality at Paragraph (2)(M) and to return all data at Paragraph (2)(K).

30.    BOKF Client Advisors (Wise and Davis) have incentive plans (Incentive Agreements) which include agreements not to solicit.  Exhibit 5 (2018 Client Advisor Incentive Agreement); Exhibit 15 (2017 Client Advisor Incentive Agreement; Exhibit 16 (2016 Client Advisor Incentive Agreement).

31.    BOKF Sales Service Specialists (Morgeson Del Cid) have incentive plans with agreements not to solicit as well.  Exhibit 7 (2018 Sales Service Specialist Incentive Agreement.

32.    The Incentive Plans for Wise, Davis, and Morgeson Del-Cid for the years 2016, 2017, and 2018, by way of example only, contain an agreement not to solicit established customers and an agreement not to solicit employees for one year following termination as follows.

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall

9

not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.

Exhibit 5, 15, 16  (2018, 2017, 2016 Client Advisor Incentive Agreements (Wise & Davis));

Exhibit 7  (Securities Sales/Services Specialist Incentive Agreement (Del-Cid)).

33.    The Individual Defendants received presentations referencing the respective agreements not to solicit. See emails transmitting Presentations referencing the Agreement Not to Solicit received by Wise and Davis:  Exhibit 17 (2018-01-12 & 2018-02-21 Email Between Wise and Davis attaching Incentive Plan Presentation Plan referencing Agreement Not to Solicit); Exhibit 18 at p. 5 (2017-05-19 Email to Wise attaching Incentive Plan Presentation referencing Agreement Not to Solicit).

34.    BOKF employees, including Wise, Davis, and Morgeson Del-Cid were required to follow BOKF Written Supervisory Procedures [WSPs].

35.    BOKF's Written Supervisory Procedures required that Wise, Davis, and Morgeson Del-Cid safeguard the privacy of customer records. Exhibit 19 (Chapter 2.7 Privacy) and Exhibit 20 (Chapter 2.19 Computer Records).

36.    BOKF Written Supervisory Procedures Index and particularly applicable excerpts, policies regarding Privacy and Customer Records, are attached hereto as Exhibit 19 (Chapter 2.7 Privacy) and Exhibit 20 (Chapter 2.19 Computer Records).

37.    BOKF FINRA Associated Persons are required to regularly certify (and Wise,

Davis, and Morgeson Del-Cid did so regularly certify (promise)) that:

> **Q. 34** I am aware that information I obtain and material and/or applications I develop in the course of my employment is proprietary property of my employer and cannot be used to my advantage, nor taken with me, should I change employers.
>
> **Q. 39** I certify that I have received a copy of the BOKFS Written Supervisory Procedures and Bank Dealer policy manual, if applicable, that I have read and understood the requirements, and that I am in compliance with the requirements.

See, by way of example only, Responses to Questions 34 and 39, in particular at: Exhibit 21 (2018-02-01 Davis Certification); Exhibit 22 (2018-02-05 Morgeson Del Cid Certification); Exhibit 23 (2018-02-14 Wise Certification).

38.    BOKF relied on the certifications and representations of the Individual Defendants to policies and procedures, practices, Standards of Conduct, and Written Supervisory Procedures.

39.    BOKF relied on the Individual Defendants compliance with contractual obligations.

40.    BOKF's reliance on promises of Individual Defendants was reasonable.

41.    Injustice can be avoided only by enforcement of promises made by the Individual Defendants.

42.    BOKF performed on its obligations pursuant to Representative Agreements.

43.    BOKF provided to the Individual Defendants access to BOKF confidential information, strategies, customers, and supervision.

44.    Each of the Individual Defendants was aware of BOKF Representative Agreements, Incentive Agreements, Standards of Conduct, Policies and Procedures, and Written Supervisory Procedures.

G.    **Concentrated Exodus of The Individual Defendants Without Notice**[5]

45.    Upon information and belief all some or all of the Defendants conspired to raid BOKF's Dallas, Texas Client Advisor Team.

46.    Wise, Davis, and Morgeson Del-Cid, and the Hilltop Defendants began concerted action before simultaneous resignations without notice on Friday, March 23, 2018, over the Spring Break holidays.

47.    Wise, Davis, and Morgeson Del-Cid solicited one another to resign from BOKF and join the Hilltop Defendants in violation of obligations to BOKF such as 30 days advance notice of termination, an agreement not to solicit employees, and an obligation to maintain confidentiality of BOKF confidential information and/or trade secrets.

48.    Starting on at least March 9, 2018 and continuing over a period of days, Wise and Del-Cid printed significant volumes of confidential customer information. See the following table, by way of example only as BOKF is continuing to investigate the concerted departure of the Individual Defendants.

|  | Date | Time | No. Matches / No. Customers | Exhibit No. |
|---|---|---|---|---|
| Del-Cid | 3/9/2018 | 16:32 | 155 | Exhibit 24 |
| Wise | 3/14/2018 | 08:39 | 78 | Exhibit 25 |
| Del-Cid | 3/16/2018 | 13:17 | 44 | Exhibit 26 |
| Wise | 3/16/2018 | 15:33 | 105 | Exhibit 27 |
| Del-Cid | 3/16/2018 | 16:05 | 129 | Exhibit 28 |
| Del-Cid | 3/16/2018 | 16:21 | 18 | Exhibit 29 |
| RECORDS PRINTED |  |  | **529** |  |

49.    The week of March 19, 2018 through March 23, 2018 was the week of Spring Break.

---

[5] BOKF's investigation is ongoing.   BOKF reserves the right to provide additional information and/or otherwise amend its filing.

50.     On March 7, 2018, the Individual Defendants were invited by Vince Manna at BOKF to attend a team outing at TopGolf on several dates including, Friday March 23, 2018.  The Individual Defendants did not respond. The Individual Defendants lack of responses were out of character.  On Monday, March 19, 2018, Manna updated the calendar invitation asking, "How does everybody look this Friday?" Only Wise responded, immediately declining the event.  Exhibit 30 (2018-03-07 Email of Vince Manna).

51.     On Friday, March 23, 2018 of the Spring Break holidays, at approximately 8:30 a.m., Wise and Davis went to the office of Patrick J. Staudt, a Senior Vice President of BOKF and their manager.

52.     Wise said to Staudt, "This is not going to be a good day for you." Wise then presented three labeled envelopes, prepared in advance of the meeting, one for Wise, one for Davis, and one for Morgeson Del Cid, and said "We are done", resigning for all three employees.  Each envelope contained access items for each individual Defendant (keys for office, desk, and file cabinets, and security access cards, and credit cards for Wise and Davis).

53.     Davis presented a resignation letter without saying a word.  Exhibit 1 2018-03-23 Resignation of Davis; Exhibit 2 2018-03-23 Formal Resignation of Morgeson Del-Cid to Lisa Shannon; Exhibit 8 and Exhibit 9 at ¶ (4)(b) [30 day advance notice requirement].

54.     Wise and Davis refused to speak any further with Mr. Staudt.

55.     The concerted resignations, which were jointly coordinated and during which only Wise spoke, and at which Morgeson Del-Cid did not appear, occurred in less than two (2) minutes.

56.     Thus, Wise, Davis and Morgeson Del-Cid, in concert, resigned employment with

BOKF, without providing advanced notice as required by the Representative Agreements of Davis and Morgeson Del-Cid. Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del-Cid Representative Agreement).

57. In summary, on the Friday, March 23, 2018, during the Spring Break holiday, in calculated fashion on, in conspiracy with some or all of the Hilltop Defendants, Wise, Davis and Morgeson Del-Cid, with no prior notice, and certainly Davis and Morgeson without 30 days' notice as required by agreements, resigned from BOKF.

58. Wise, Davis and Morgeson Del-Cid were immediately employed by the Hilltop Defendants at offices located in the Dallas, Texas area.

59. Upon information and belief, some combination of Wise, Davis, and Morgeson Del-Cid are sharing compensation and/or revenue streams at their new employer(s).

60. Upon information and belief, Wise and Davis are sharing revenues streams at their new employer(s).

61. Therefore, each combination of the Individual Defendants who are sharing compensation and/or revenue streams, is profiting by breaches of Agreements with BOKF.

62. For example, Wise would directly benefit by the breaches of Davis. Davis would directly benefit by breaches of Wise.

63. Some or all of Wise, Davis and/or Morgeson Del-Cid immediately began a concerted campaign to solicit BOKF customers contacting BOKF customers by phone and, upon information and, upon information and belief, other methods. By way of example only:

      a. The Defendants left some customers, at best confused and, at worst,

with the misrepresentation that Hilltop had purchased Bank of Texas.

b. Early in the day on Friday, customers reported that "Our whole team there just left."

**H.    Receipt of Demand Letter and Actions Thereafter**

64.    As discussed at the outset of this filing, on Friday, March 23, 2018 by the close of business, BOKF transmitted, by email to Wise and Morgeson Del Cid, and, by overnight courier to all parties, a letter with reminders regarding obligations, demands to comply with applicable agreements, demands to search for and return BOKF data, and demands to preserve all documents and tangible items pertaining to the transition of employment. Exhibit 3 (Email Transmitting Reminder and Demand Letter to Wise and Morgeson) and Exhibit 4 (Attached Letter dated 2018-03-23) with: Exhibit 5 (Sample 2018 Client Advisor Incentive Agreement); Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del Cid Representative Agreement); Exhibit 7 (Sample Morgeson Del-Cid 2018 Sales/Security Specialist Incentive Agreement).

65.    On Sunday, March 25, 2018 at 4:20 p.m., counsel the Defendants responded to BOKF's demand letter through joint counsel, for all of the Defendants.   Exhibit 31.

66.    In response to BOKF's reminder and demand letter sent by email on the date of termination, not a single defendant has agreed to follow agreements with BOKF, returned confidential data, stopped using BOKF confidential information or stopped soliciting BOKF clients.

I.    **Irreparable Harm**

67.    BOKF incorporates Paragraphs 1 through 66 as if fully set forth in this section.

68.    Upon information and belief, the Defendants are in possession of BOKF's Confidential Information and Trade Secrets.

69.    The Defendants are using BOKF Confidential Information and Trade Secrets to contact and solicit customers.

70.    As set forth in Section G at Paragraph 65, Defendants have left BOKF customers:

   a.    Under the impression that Bank of Texas sold to Hilltop; and

   b.    Aware that the entire team left early on Friday morning (in spite of BOKF's right to advance notice).

   c.    Disconcerted regarding contact from the Individual Defendants since their abrupt concerted departure from BOKF on Friday, March 23, 2018.

71.    Once a customer moves accounts, the BOKF customer relationship is lost and damages are ongoing.

72.    Customers are being confused by the Defendants' contacts.

73.    BOKF is losing customers and associated revenues

74.    BOKF's customer losses will extend well into the future.

75.    If left unrestrained, the Defendants, jointly and/or severally, will continue to use, disseminate or continue to use or disseminate BOKF's Confidential Information and Trade Secrets for the benefit of themselves or others, thereby, enabling the Individual Defendants and others to unfairly compete with BOKF in the  highly-competitive financial services industry.

76.    BOKF will suffer immediate and irreparable harm if the Individual Defendant's misappropriation of BOKF's Confidential Information and Trade Secrets and violations of

16

their confidentiality obligations to BOKF are not immediately enjoined.

**J.    Right To Equitable Relief**

77.    BOKF incorporates Paragraphs 1 through 76 as if fully set forth in this section.

**1.    Likelihood of Success on the Merits.**

78.    BOKF is likely to succeed on the merits of its claims because: (1) the Individual Defendants have misappropriated BOKF's valuable Confidential Information and Trade Secrets; (2) Defendants Davis and Morgeson Del-Cid have breached the valid and enforceable agreement to maintain as confidential BOKF's Confidential Information and Trade Secrets and return company property upon termination; and (3) the Individual Defendants have violated agreements not to solicit employees; and the Individual Defendants continue to violate Agreements Not to Solicit even after being provided copies of the agreements.

79.    The non-solicitation provisions at issue are reasonable and narrow in scope as they are limited to one year following termination of employment and limited to prohibit only the direct solicitation of established BOKF customers and/or employees.

80.    The solicited customers were established BOKF customers.

81.    BOKF will also likely prevail on its claims that Defendants have misused BOKF's Confidential Information and Trade Secrets.  Defendants could not have made direct contact with BOKF customers without the use of BOKF's customer list or customer contact information.

**2.    Irreparable Harm.**

82.    The Defendants are misusing BOKF confidential information.

83.    The Defendants are contacting and soliciting BOKF customers to BOKF's detriment.

17

84.    BOKF's business opportunities, competitive advantages, Confidential Information and Trade Secrets, and relations with its customers, employees, and other business associates will be irreparably harmed if injunctive relief is not entered.

### 3.    Equities of the Parties and Public Policy.

85.    BOKF will suffer far greater harm if injunctive relief is not granted than the Defendants will suffer if injunctive relief is granted. By contrast, Defendants will suffer minimal harm and will simply be required to not use the Confidential Information and Trade Secrets of BOKF.

86.    Granting injunctive relief serves the public interest.

87.    FINRA's recognition of the propriety of injunctive relief tips the balance of equities strongly in BOKFS' favor because all parties are subject to FINRA regulation.  FINRA expressly approves of pre-arbitration injunctive relief to preserve the status quo pending resolution of the claims on their merits.

**Argument and Authorities**

BOKFNA and BOKFS seek to restrain two types of misconduct. First, Defendants should be restrained from soliciting BOKF customers. Second, Defendants should be restrained from using BOKF Confidential Information, which Defendants should immediately return to BOKF.  BOKF also requests the Court order Defendants to provide BOKF a list of all BOKF customers contacted by any of the Defendants, and a copy of all communications between the Defendants and BOKF customers, since their first contact with the Hilltop Defendants regarding potential positions and their coordinated departure from BOKF.

## I.       Standards for Injunctive Relief

The elements for obtaining injunctive relief in the Fifth Circuit are well settled. The moving party must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunctive relief will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) the injunction will not disserve the public interest. *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989); *Equibrand Corp. v. Reinsman Equestrian Prods.,* 2007 U.S. Dist. LEXIS 36229, at *11 (N.D. Tex. May 17, 2007). The party applying for injunctive relief "is not required to prove that he will prevail at trial but must establish the right to preserve the status quo pending trial on the merits by proving all of the four elements". *Propath Servs, L.L.P. v. Ameripath, Inc.,* 2004 U.S. Dist. LEXIS 27846, at *6 (N.D. Tex.

Oct. 21, 2004).[6]

## II.    BOKF Will Prevail on Its Claims.

BOKF has established the four prerequisites for injunctive relief.

### A.    Likelihood of Success on the Merits.

BOKF will prevail on the merits of its claim for breach of the Agreements.

#### 1.    The Provisions at Issue are Ancillary to an Otherwise Enforceable Agreement.

The provisions at issue are ancillary to an otherwise enforceable agreement whereby BOKF, a broker dealer, was obligated to, in pertinent part: (i)  appoint the Individual Defendants as agents to solicit purchases of securities, (ii) provide supervision of Principals as required by regulation, (iii)  provide compensation, and (iv) to make available to Representative various information relating to the BOKF's business operations, customers, products, marketing data, business plans, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOKF.    Exhibit 8 and Exhibit 9 at Paragraph (1) and Paragraph (2)(M).

#### 2.    The Provisions at Issue are Reasonable and Narrow in Scope and Serve to Protect BOKF's Interests.

The provisions at issue are the notice, confidentiality and return of data, and non-solicitation provisions.    Each is reasonable, narrow in scope, and compliant with Texas Law.    The notice provision requires thirty (30) days' advance notice of termination of the agreement.  The Confidentiality provisions (i) deems the materials that BOKF was

---

[6] The decision to grant or deny an application for injunction is within the discretion of the Court and reviewed under an abuse of discretion standard. *Lakedreams*, 932 F.2d at 1107; *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)

required to provide which are not generally available to the public to be trade secrets and (ii) require the Representative to return BOKF documents and electronic files and information respecting the identities of BOKF customers (contact information, account information, assets and investment strategies).  The non-solicitation provision prohibits direct solicitation of established BOKF customers for one year.

The purpose of the provisions is to protect BOKF's relationship with BOKF customers and its confidential information and trade secrets which BOKF was obligated to provide.

Agreements not to disclose trade secrets and confidential information are not expressly governed by the Texas Covenants Not to Compete Act.    *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011).

> The hallmark of enforcement is whether or not the covenant is reasonable. *See Sheshunoff,* 209 S.W.3d at 655 (citing Tex. Bus. & Com.Code § 15.50(a)). The enforceability of the covenant should not be decided on "overly technical disputes" of defining whether the covenant is ancillary to an agreement. *Sheshunoff,* 209 S.W.3d at 655. "Rather, the statute's core inquiry is whether the covenant 'contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.' " *Id.* (quoting Tex. Bus. & Com.Code § 15.50(a)).

*Marsh USA Inc.*, 354 S.W.3d at 777

> If an "employer performs his promise [to disclose confidential information] under the agreement and a unilateral contract is formed, the covenant is enforceable if all other requirements under the Act are met."

*Staples, Inc. v. Sandler*, 3:07-CV-0928-K, 2008 WL 4107656, at *2 (N.D. Tex. Aug. 29, 2008), vacated sub nom. *Staples, Inc. v. Alan Sandler Preferred Office Products, Inc.,* C.A. 3:07-CV-0928-K, 2009 WL 1285838 (N.D. Tex. May 7, 2009)(Citing *Alex Sheshunoff Management Services, L.P.*, 209 S.W.3d at 649. ).

### 3. Texas Courts and the Northern District have already found similar agreements enforceable.

The Supreme Court of Texas has addressed an agreement with similar

confidentiality and non-competition provisions and found the provisions enforceable.

See:  *Alex Sheshunoff Management Services, L.P.*, 209 S.W.3d at 663(noting:

> [T]he parties signed an employment agreement containing a confidentiality agreement and a covenant not to compete. In the confidentiality agreement, ASM promised "special training regarding [its] business methods and access to certain confidential and proprietary information" in exchange for Johnson's promise "to keep the Confidential Information, and all documentation, access and information relating thereto, strictly confidential." Johnson's covenant satisfies section 15.50(a)'s ancillary relationship requirement because it reinforces the parties' agreement to share and protect ASM's confidential and proprietary information. *See Light*, 883 S.W.2d at 647 & n. 14.

*Alex Sheshunoff Management Services, L.P.*, 209 S.W.3d at 663

The Northern District, applying Texas law, has addressed a similar fact pattern and

enforced confidentiality and non-solicitation provisions.  See Staples, wherein the Court

in prohibited the employee from competing with his former employer on the accounts he

gained while employed by the company. *Staples, Inc.*, 2008 WL 4107656, at *5.

### B. There Is An Imminent Threat Because The Evidence Show That The Individual Defendants Have Already Breached Their Agreements.

#### 1. The Securities Industry Recognizes the Irreparable Harm that Ensues should an injunction not issue.

BOKF will suffer immediate irreparable harm if an injunction does not issue.  The

securities industry recognizes that wrongful solicitation of customers causes irreparable

harm because once a customer transfers their account, the client-relationship is severed

with no way to measure precisely the economic or reputational harm.  *See Merrill Lynch,*

*Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985) (injunction

must be issued "within a few days" to negate harm caused by wrongful solicitation).  It is widely known throughout the industry that the first few days after an employee moves to a competitor are the most critical to prevent customer transfers and to mitigate reputational harm.

This is precisely why Registered Representatives including Davis and Morgeson Del-Cid acknowledged in their Representative Agreements that BOKF could enforce the non-solicitation obligations by temporary injunctive relief without the need for establishing irreparable harm.  *See:* Exhibit 8 and Exhibit 9 at ¶ 2(J).

Wise was BOKF's most tenured representative with twenty (20) years at BOKF. Morgeson Del-Cid had twelve (12) years of tenure with BOKF.   Davis had (6) six years of tenure with BOKF.  BOKF provided BOKF customers, BOKF Strategy, and BOKF information over the course of multiple years to each Individual Defendant.

BOKF was entitled to advance notice of the departure of its Registered Representatives, was entitled to the return of the data, which BOKF provided over the course of multiple years, and was/is entitled to the non-solicitation of BOKF customers for a year.

Instead, Defendants solicited one another, coordinated their simultaneous departure, left BOKF without the requisite 30 days advance notice (or even one day's notice), and Defendants have engaged in concerted efforts to solicit BOKF's established customers using BOKF Confidential Information in violation of the Agreements.  Exhibit 8 (Davis Agreements); Exhibit 9 (Morgeson Del Cid Agreement).

2. **The customers involved are established BOKF customers.**

3. **The actions of the Defendants are solicitations.**

Defendants may argue that the Individual Defendants were merely "announcing" a change of employment, not soliciting BOKFS customers. This argument doesn't square with the facts or the law. Although no reported Texas decision has addressed this precise issue, numerous courts have found that similar communications constitute prohibited solicitations, not mere public announcements of new employment.

For example, in the case *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6 (1st Cir. 2013), the First Circuit ruled that emails announcing the hire of an employee, like communications made by the Individuals seeking to have customers move account to "them", were "solicitations." In *Corporate Technologies*, the former employee left the plaintiff to work for plaintiff's competitor. Following the move, the employee and competitor sent an email blast to plaintiff's customers announcing the employee's hiring. *Id.* at 10. The plaintiff filed suit and sought a preliminary injunction based on the employee's breach of a non-solicitation agreement with plaintiff. The district court granted the injunction. On appeal, the employee and competitor argued that the customers initiated contact with the competitor and employee after a public announcement of employee's hiring. The First Circuit disagreed and held that the public announcement was, in fact, a solicitation:

> Even though we have entertained the parties' supposition that it was the customers who made the initial contacts, the record shows that those customers reached out to [employee] only in response to a blast email from [competitor]. While we do not question the rights of parties to make public announcements of changes in employment, "targeted mailings" to former customers may cross the line into impermissible solicitation. . . . Given how many of [employee]'s clients were on the relatively short email list, it was plausible to infer here (as the district court apparently did) that the email was part and parcel of a pattern of solicitation.

24

*Id.* at 12.  Just like in *Corporate Technologies*, Defendants' targeted communications of BOKF's established customers were "part and parcel of a pattern of solicitations" not a public announcement of then Individual Defendants' new positions.

Other courts are in accord in holding that communications similar to those at issue here are prohibited solicitations not mere public announcements. *See*, *e.g., Ecolab, Inc. v. K.P. Laundry Mach., Inc.*, 656 F. Supp. 894, 896–97 (S.D.N.Y. 1987) (goodbye letters sent by former employees to plaintiff's customers were the "first step in the solicitation of that customer"); *JPMorgan Chase Bank, N.A. v. Clark*, 09-13815, 2009 WL 3190342, at *2 (E.D. Mich. Sept. 29, 2009) (announcement to clients that they were no longer employed with plaintiff and encouragement to transfer accounts to competitor was breach of non-solicitation agreement); *Technomedia Sols., LLC v. Scopetto*, 6:13-CV-1061-ORL-36, 2013 WL 6571558 (M.D. Fla. Dec. 13, 2013) (email to former employer's customers announcing former employee's hiring at competitor was a "solicitation;" email contained competitor information and employee's new contact information); *Nat'l City Corp. v. Boyd*, 1:08-CV-2189, 2008 WL 4346444 (N.D. Ohio Sept. 17, 2008) (former employee's announcements to former employer's customers regarding change of employment were solicitations); *Totaro, Duffy, Cannova & Co., LLC v. Lane, Middleton & Co., LLC*, A-2649-03T1, 2006 WL 4543337 (N.J. Super. Ct. App. Div. Feb. 27, 2006), aff'd in part, rev'd in part sub nom. Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 921 A.2d 1100 (2007) (finding violation of non-solicitation where Defendant sent letter to clients announcing opening of defendant's office, fee schedule for work and containing an engagement letter); *Alpha Tax Services, Inc. v. Stuart*, 158 Ariz. 169, 761 P.2d 1073, 1076 (Ct. App. 1988) (mailings targeted to plaintiff's customers that contained

an announcement of the defendant's new business and discount coupons were improper solicitations).

### 4. The Defendants are misusing BOKF Data to Solicit BOKF Customers.

BOKF will also likely prevail on its claims that Defendants have misused BOKF's Confidential Information.

#### a) Confidential information does not need to be a trade secret to be protected.

"Confidential information does not need to be a trade secret to be protectable under a contractual non-disclosure provision." *See, e.g., Trilogy Software, Inc. v. Callidus Software, Inc.,* 143 S.W. 3d 452, 471 & n.18 (Tex. App. - Austin 2005, reh'g overruled) (citing *Simplified Telesys, Inc. v. Live Oak Telecom, L.L.C.,* 68 S.W.3d 688, 692-93 (Tex. App- Austin 2000, no pet.)). Digital Generation, Inc., f/k/a DG FastChannel, Inc. v. Boring, 2012 WL 6949840 (E.D.Mich.).

#### b) Fiduciary duties forbid employees from using confidential or proprietary information.

An employee's fiduciary duty forbids the employee from using confidential or proprietary information acquired during the relationship in a manner adverse to the employer both during and after employment. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex. App.—Amarillo 1995, no writ); *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 434 (Tex. App.—Fort Worth 1987, no writ). *See also Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 605 (Tex. App.—Dallas 1990, no writ) (use of customer lists was breach of duty); *Gonzales v. Zamora*, 791 S.W.2d 258, 266 (Tex. App.—Corpus Christi 1990, no writ) (breach of fiduciary duty to use innovative system for processing medical claims information stolen from employer).

**c)    The Federal and Texas Trade Secrets Acts Provide Additional Reasons to Grant Injunctive Relief.**

Texas Uniform Trade Secrets Act (Tex. Civ. Prac. & Rem. Code § 134 A.001 et seq.) and the Defend Trade Secret Act (18 U.S.C § 1831, et. seq.) each provide an independent basis for injunctive relief to prevent misuse of customer lists, account information and other similarly confidential material.

At the preliminary stage of deciding whether to grant a temporary injunction, a trial court does not determine whether or not a trade secret actually exists. *Ctr. for Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d 337, 343 (Tex. App.—Austin 2001, no pet.). "Rather, the trial court ascertains whether the applicant has established that the information is entitled to trade-secret protection until the trial on the merits." *Id.*; *see also Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 311 (Tex. App.—Fort Worth 2003, no pet.).

A trade secret is "any formula, pattern, device or compilation of information, which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use *it." In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (quoting *Comp. Computer Associates Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).

**d)    The Defendants are using BOKF Data to Contact Customers.**

Defendants could not have made direct contact with BOKF customers without use of BOKF's customer list or customer contact information.  Pursuant to the Standards of Conduct and the Certifications of the Individual Defendants, all BOKF customer data was to be maintained only on Secure BOKF Systems. .

Individual Defendant Davis maintained BOKF information on his iPad.  Exhibit 1 (Resignation Letter) and is in possession of the information and planned to maintain the

27

information at least until Defendants had contacted customers from the day of their coordinated departure and at least over that first few critical days.

The Individual Defendants were printing large volumes of confidential customer information on the eve of their departures.  See: ¶ 50 and Exhibits 24, 25, 26, 27, 28, 29 (Sample Print Incidents from March 9 through March 16, 2018 including **at least 529 customer records**).

The Defendants' use of BOKF data to contact BOKF customers in violation of agreements must be stopped.

### C.    The threatened injury outweighs any damage that the injunction may cause the opposing party.

An injunction would **not** prevent the Individual Defendants from working in their chosen field or from competing against BOKF.  The Defendants would merely be barred from soliciting **BOKF's** established customers (and employees) for one year, and using BOKF Data as the Individual Defendants agreed.  The injunction would merely put the parties closer to the transition from employment that the parties planned and bargained for.

Once a customer transitions the account, the years of goodwill that BOKF has developed with the customer is gone.  Money damages will not make BOKF whole for the loss of the customer relationship.

Even with the injunction, the Defendants will be free to go about their business. They would just not be free to go about BOKF's business.

### D.    Equities of the Parties and Public Policy.

Texas courts have also recognized that where a prospective activity by a defendant will, by its very nature, create a high probability of undetectable and

unauthorized use or disclosure, it is appropriate to restrain that activity. *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd); *Conley v. DSC Comms. Corp.,* 1999 Tex. App. LEXIS 1321 at *8-10 (Tex. App.-Dallas Feb. 24, 1999, no writ); *Weed Eater, Inc. v. Dowling,* 562 S.W.2d 898, 902 (Tex. Civ. App.- Houston [1st Dist.] 1978, writ refd n.r.e.); *FMC Corp. v. Varco International, Inc.,* 677 F.2d 500, 503 (5th Cir. 1982).

The Financial Industry Regulatory Agency, commonly referred to as FINRA, regulates broker-dealers like BOKFS and Hilltop and registered representatives like Wise, Davis and Morgeson Del-Cid. FINRA's rules permit broker-dealers to obtain injunctive relief in state court to preserve the status quo under their agreements. FINRA Rule 13804(a) states that, in addition to filing a statement of claim with FINRA, "parties may seek a temporary injunctive order from a court of competent jurisdiction." BOKFS has filed an arbitration action with FINRA. BOKFS asks this Court to enter injunctive relief pending the resolution of the substantive merits of BOKFS' claims by a FINRA arbitration panel. This process is expressly authorized by FINRA Rule 13804(a).

FINRA's recognition of the propriety of injunctive relief tips the balance of equites strongly in BOKFS' favor because all parties are subject to FINRA regulation. FINRA expressly approves of pre-arbitration injunctive relief to preserve the status quo pending resolution of the claims on their merits.

Courts routinely find that loss of trade secrets results in irreparable harm to the victim warranting injunctive relief. *See K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 158 Tex. 594, 314 S.W.2d 782, 791 (1958), on reh'g sub nom. K & G Oil Tool & Serv. Co., Inc. v. G & G Fishing Tool Serv., A-6577, 1958 WL 91271 (Tex. June 4, 1958)

(holding "irreparable injury shown by inability of plaintiff to determine how much lost sales and revenue would result from improper use of trade secret"); *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) (holding where plaintiff testified loss of goodwill from improper use of trade secrets pending trial would be "immeasurable," legal remedy was inadequate); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 602 (Tex. App.—Amarillo 1995, no writ) (court free to credit testimony of plaintiff that "we can kind of put our hands on what is happening to us now, but we have no way of assessing the damage that this is going to cause"). *Am. Exp. Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996); *Picker Intern., Inc. v. Blanton*, 756 F. Supp. 971, 980–83 (N.D. Tex. 1990) (injunctive relief appropriate where there has been breach of confidential employment relationship, breach of confidentiality agreements and theft of trade secrets).

BOKF simply asks the Court to enforce the promises made by Wise, Davis, and Morgeson Del-Cid. BOKF bargained for a reasonable thirty days' notice. The anti-solicitation and confidentiality provisions in the Agreements are reasonable and narrow in scope. The Individual Defendants expressly agreed that BOKF could enforce the non-solicitation obligations by temporary injunction.

**Prayer for Injunctive Relief**

## PRAYER FOR RELIEF

### Injunctive Relief

WHEREFORE, Plaintiffs BOKF, NA and BOK Financial Securities, Inc. as the legal successor in interest to BOSC, Inc., individually and jointly, respectfully request that this Court award injunctive relief to them in the form of a Temporary Restraining Order

and for a Preliminary Injunction during the pendency of this litigation and, thereafter, for a permanent injunction, ordering Defendants to refrain from doing any or all of the following, either directly or indirectly, acting individually or in concert, or with the assistance of any other person:

a.    directly soliciting in any manner (by telephone, mail, internet, e-mail or any other type of communication) any securities business from any established client or customer of BOKF;

b.    making or participating in any mail or email communication to a BOKF customer which is not part of a mass mailing to a public of which established customers of BOKF are an insignificant part the purpose of which was not to communicate with established customers of BOKF and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

c.    using, disclosing, or transmitting for any purpose, including solicitation of said clients or customers, the information contained in the BOKF Confidential Information, including, but not limited to, the names, addresses, and confidential financial information of the clients or customers referenced therein; and that all original records and copies and/or other reproductions thereof, in whatever form, be returned to BOKF immediately;

d.    ordering Defendants to provide a list of all BOKF customers to whom Defendants have contacted or solicited, either directly or indirectly,

and a script of such contacts;

e.    ordering Defendants to return immediately all BOKF Confidential Information in their possession;

f.    and all other such acts as this Court deems appropriate for injunctive relief.

Respectfully submitted,

s/John D. Clayman
Frederic Dorwart, OBA # 2436*
Erica Anne Dorwart, OBA #18367*
John D. Clayman
Texas Bar Number 24066338
FREDERIC DORWART, LAWYERS
124 East Fourth Street
Tulsa, Oklahoma 74103
jclayman@fdlaw.com
(918) 583-9922 (Tel.)
(918) 584-2729 (Fax)

* These attorneys will likely seek pro hac vice admission.

Brett S. Field
Texas Bar Number 24050596
STROMBERG STOCK
8750 N. Central Expressway
Suite 625
Dallas, Texas  75231
(972) 458-5353 (Tel.)
(972) 861-5339 (Fax)
brett@strombergstock.com

Attorneys for Plaintiffs, BOKF, NA and BOK Financial Securities, Inc.

## VERIFICATION

**State of Texas**              §
                               § ss.
**County of Dallas**            §

    I, Patrick J. Staudt, Senior Vice President of BOKF, NA, upon being duly sworn and upon oath, state that I have read and reviewed the factual allegations contained in the foregoing document provided above and they are true and correct based upon my personal knowledge and belief.

                              Patrick J. Staudt
                              Senior Vice President

    Subscribed to and sworn to before me this 30th day of March, 2018, by Patrick J. Staudt, Senior Vice President of BOKF, NA.

                              Notary Public

MELODY WHITUS
Notary Public, State of Texas
Comm. Expires 11-21-2020
Notary ID 632760-0

33

## CERTIFICATE OF SERVICE

On March 30, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

Rick Illmer, TX 10388350
Chad Johnson, TX 24026259
Husch Blackwell, LLP
2001 Ross Avenue Suite 2000
Dallas, Texas 75201-2995
Rick.illmer@huschblackwell.com
Chad.Johnson@huschblackwell.com
214-999-6112 (Illmer)
214-999-6173 (Johnson)


Counsel for all Defendants


/s/ John Clayman
John Clayman