IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOKF, NA AND BOK FINANCIAL SECURITIES, INC., | § § § | |
| PLAINTIFFS, | § § | |
| V. | § § | |
| VICKIE SUE WISE, RONNIE CARROLL "SKIP" DAVIS, MELISSA MORGESON DEL-CID, HILLTOP HOLDINGS, INC., HILLTOP SECURITIES, INC., HILLTOP SECURITIES INDEPENDENT NETWORK INC., NATIONAL LLOYDS INSURANCE COMPANY, AMERICAN SUMMIT INSURANCE COMPANY, AND PLAINSCAPITAL BANK, | § § § § § § § § § | CIVIL NO. 3:18-cv-00794 |
| DEFENDANTS. | § § § | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION

Respectfully submitted,

Richard A. Illmer
State Bar No. 10388350
Chad A. Johnson
State Bar No. 24026259

**HUSCH BLACKWELL LLP**
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 (*facsimile*)
ATTORNEYS FOR THE DEFENDANTS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. IV

SUMMARY OF THE ARGUMENT .................................................................. 2

ARGUMENTS AND AUTHORITIES ................................................................ 3

THE COURT SHOULD DENY THE APPLICATION FOR INJUNCTIVE RELIEF. ................ 3

   A.      Plaintiffs cannot show a likelihood of success on the merits. .................... 4

       1.     Plaintiffs cannot show a likelihood of success on their breach of contract claims. ............................................................................ 4

           a.     Wise does not have an agreement not to solicit, directly or otherwise. ................................................................ 4

               (1)   There is no "otherwise enforceable agreement"—the non-solicitation provision is without consideration. ................ 5

           b.     The Non-Solicitation Provision in the Representative Agreement is Unenforceable. ............................................. 8

           c.     The Individual Defendants did not violate any agreement. .............. 10

               (1)   The Representative Agreements only prohibit *direct* solicitations. ...................................................... 10

               (2)   The Individual Defendants did not take, and are not using, any BOK property or information. ............................... 12

       2.     Plaintiffs cannot show a likelihood of success on their misappropriation of trade secrets and wrongful use of confidential information claims. ........................................................ 13

       3.     Plaintiffs cannot show a likelihood of success on their breach of fiduciary duty claim. .............................................. 15

       4.     There is no likelihood of success on the Plaintiffs' tortious interference with contracts or business relations claims. .............. 16

       5.     Plaintiffs cannot show a likelihood of success on their conspiracy claim. ....................................................................... 17

       6.     There is no evidence that Defendants took BOK information or are soliciting. ............................................................... 17

       7.     There is no basis to restrain the Hilltop Defendants. ..................... 19

B.    Plaintiffs will not suffer irreparable injury absent an injunction. .............................. 19

    1.    Customers have the absolute right to transfer accounts to the broker of their choice............................................................................................................... 19

    2.    Any injury allegedly suffered is compensable in damages. ......................... 20

C.    Plaintiffs have an adequate remedy at law.............................................................. 21

D.    The public interest is against the injunction............................................................ 22

E.    The harm to the Individual Defendants would far outweigh the alleged harm to Plaintiffs. ...................................................................................................... 22

CERTIFICATE OF SERVICE ..................................................................................... 23

AUS-6493818-7

TABLE OF AUTHORITIES

FEDERAL COURT CASES

*ADT, LLC v. Capital Connect, Inc.*,
  145 F. Supp. 3d 671 (N.D. Tex. 2015) ................................................................ 19
*Aquifer Guardians in Urban Areas v. Fed. Highway Admin.*,
  779 F.Supp.2d 542, 574 (W.D.Tex.2011) ............................................................ 19
*C.E. Services, Inc. v. Control Data Corp.*,
  759 F.2d 1241 (5th Cir. 1985) ............................................................................. 16
*Charles Schwab & Co. Inc. v. Carr*,
  Case No. 2:11-CV-00184-36DNF (N.D. Fla. 2011) ............................................ 11
*iKids Pediatric Dentistry, P.C. v. Smile Effects Family Dental & Orthodontics, PLLC*,
  2015 WL 12532310 (N.D. Tex., August 31, 2015 ............................................... 3
*Janvey v. Alguire*,
  647 F.3d 585, 595 (5th Cir.2011) ......................................................................... 3
*Merrill Lynch v. O'Connor*,
  194 F.R.D. 618 (N.D. Ill. 2000) .......................................................................... 14
*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Liniere*,
  572 F. Supp. 246 (N.D. Ga. 1983) ......................................................... 14, 21, 22
*Morgan Stanley DW, Inc. v. Frisby*,
  163 F. Supp. 2d 1371 (N.D. Ga. 2001) ............................................. 13, 14, 21, 22
*Neuberger Berman LLC v. Strochak*,
  Case No. 9:05-80112-cv-Ryskamp/Vitunac (S.D. Fla. March 11, 2005) ........... 11
*Paulsson Geophysical Servs., Inc. v. Sigmar*,
  529 F.3d 303 (5th Cir. 2008) ......................................................................... 19, 20
*Raymond James & Assoc., Inc. v. Leonard & Co.*,
  411 F. Supp. 2d 689 (E.D. Mich. 2006) .............................................................. 14
*Texas Health & Human Servs. Comm'n v. United States*,
  166 F. Supp. 3d 706 (N.D. Tex. 2016) ............................................................. 3, 19
*UBS PaineWebber, Inc. v. Aiken*,
  197 F. Supp. 2d 436 (W.D.N.C. 2002) ................................................................ 14

STATE COURT CASES

*Abetter Trucking Co. v. Arizpe*,
  113 S.W.3d 503 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ......................... 15
*ACS Investors, Inc. v. McLaughlin*,
  943 S.W.2d 426 (Tex. 1997) ................................................................................ 16
*Advantage Physical Therapy, Inc. v. Cruse*,
  165 S.W.3d 21 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ......................... 4
*Alex Sheshunoff Mgmt. Serv. v. Johnson*,
  209 S.W.3d 644 (Tex. 2006) .................................................................... 5, 6, 7, 8
*Archives of America, Inc. v. Archive Litigation Services, Inc.*,
  992 S.W.2d 665 (Tex. App.—Texarkana 1999, pet. denied) .............................. 16
*Autry v. Acosta, Inc.*,
  410 P.3d 1017 (Ok. Ct. Civ. App. 2017) ............................................................... 9
*Butnaru v. Ford Motor Co.*,
  84 S.W.3d 198 (Tex. 2002) ............................................................................ 20, 21

*CRC-Evans Pipeline Int'l, Inc. v. Myers*,
    927 S.W.2d 259 (Tex. App—Houston [1st Dist.] 1996, no writ)............................................ 6
*Elite Auto Body, LLC v. Autocraft Bodywerks, Inc.*,
    520 S.W.3d 191 (Tex. App.—Austin 2017, pet. Filed) ........................................................ 10
*ExxonMobil Pipeline Co. v. Coleman*,
    512 S.W.3d 895 (Tex. 2017)................................................................................................ 10
*Hilb, Rogal & Hamilton Ins. Servs., Inc. v. Robb*,
    33 Cal. App. 4th 1812 (1995) .............................................................................................. 11
*Light v. Centel Cellular Co. of Tex.*,
    883 S.W.2d 642 (Tex.1994)............................................................................................... 6, 7
*Mark II Sys. v. Sysco Corp.*,
    2007 Tex. App. LEXIS 1339 (Tex. App.—Houston [1st Dist.] February 22, 2007) ............. 17
*Marsh USA, Inc. v. Cook*,
    354 S.W.3d 764 (Tex. 2011)................................................................................................. 6
*Merrill Lynch Pierce Fenner & Smith, Inc. v. Stark et al., NASD*,
    Case No. 02-05187 (September 19, 2002)...................................................................... 13, 14
*Muenster Hosp. Dist. v. Carter*,
    216 S.W.3d 500 (Tex. App.—Fort Worth 2007, no pet.) ........................................................ 4
*Peat Marwick Main & Co. v. Haass*,
    818 S.W.2d 381 (Tex. 1991)................................................................................................. 5
*Sanford Bernstein & Co., Inc. v. Brief*,
    Case No. 9:2000-8373-cv-Ryskamp/Vitunac, (S.D. Fla. September 25, 2000) ...................... 11
*Shoreline Gas, Inc. v. McGaughey*, No. 13–07–364–CV, 2008 WL 1747624 (Tex.
    App.—Corpus Christi April 17, 2008, no pet.)............................................................... 5, 8, 9
*Texas Indus. Gas v. Phoenix Metallurgical Corp.*,
    828 S.W.2d 529 (Tex. App.—Houston [1st Dist.] 1992, no pet) ........................................... 21
*Travel Masters, Inc. v. Star Tours, Inc.*,
    827 S.W.2d 830 (Tex. 1991)............................................................................................... 16
*Trilogy Software, Inc. v. Callidus Software, Inc.*,
    143 S.W.3d 452 (Tex. App.—Austin 2004) ........................................................................... 8

**Other Authorities**
FINRA Rule 2140 ................................................................................................................. 20, 22

**Statutory Authorities**
Tex. Bus. & Com. Code §15.50.............................................................................................. 5, 6
Tex. Civ. Prac. & Rem. Code §27.001 ..................................................................................... 10

v

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOKF, NA AND BOK FINANCIAL SECURITIES, INC., | § § § | |
| PLAINTIFFS, | § § | |
| V. | § § § | |
| VICKIE SUE WISE, RONNIE CARROLL "SKIP" DAVIS, MELISSA MORGESON DEL-CID, HILLTOP HOLDINGS, INC., HILLTOP SECURITIES, INC., HILLTOP SECURITIES INDEPENDENT NETWORK INC., NATIONAL LLOYDS INSURANCE COMPANY, AMERICAN SUMMIT INSURANCE COMPANY, AND PLAINSCAPITAL BANK, | § § § § § § § § § § | CIVIL NO. 3:18-cv-00794 |
| DEFENDANTS. | § § § | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Defendants Vickie Sue Wise ("Wise"), Ronnie Carroll "Skip" Davis ("Davis"), Melissa Morgeson Del-Cid ("Del-Cid") (Del-Cid, Wise, and Davis being referenced to collectively as "Individual Defendants"), Hilltop Holdings, Inc., Hilltop Securities, Inc., Hilltop Securities Independent Network Inc., National Lloyds Insurance Company, American Summit Insurance Company, and PlainsCapital Bank, the Defendants herein, (collectively, the "Hilltop Defendants") and file this their Brief in Opposition to Plaintiffs' Application for a Temporary Injunction, and respectfully show the Court as follows:

**SUMMARY OF THE ARGUMENT**

1.      The Court must deny Plaintiffs' BOKF, NA and BOK Financial Securities, Inc. (collectively, "Plaintiffs" or "BOK") Application for Injunctive Relief (the "Application"). Plaintiffs have not properly presented an application for a temporary restraining order to this court.  In fact, Plaintiffs waived any arguments for a temporary restraining order by virtue of their dilatory behavior.  In addition, Plaintiffs have not shown, and cannot show, the likelihood of success on the merits required to obtain a preliminary injunction. By way of its Application, Plaintiffs ask this Court to enforce an agreement that does not exist (Wise never executed an agreement with a non-solicit) and enjoin activities that are not occurring (none of the Defendants are directly soliciting BOK customers).  Additionally, the non-solicitation agreement contained in the Wealth Management Schedules (the "Schedule") is unenforceable because it is not ancillary to an otherwise enforceable agreement, and the non-solicitation provision in the Representative Agreements is unenforceable because it is overbroad.

2.      The Individual Defendants did not violate any agreement. The Individual Defendants did not take any BOK property, or information, and are not using any BOK property or information. If they were enforceable, the Registered Representative Employment Agreements (the "Agreements")[1] entered into by Davis and Del-Cid only prohibit direct solicitation of BOK's established customers.  Davis and Del-Cid have not directly solicited any BOK customer.

3.      The Court should also deny the Application because injunctive relief is prohibited by the rules and regulations of the Financial Industry Regulatory Authority ("FINRA").  The client has the absolute right to transfer his or her account—a right with which the Court should not interfere.

---

[1]      True and correct copies of Davis' and Del-Cid's Representative Agreements are attached hereto as Exhibit "A" [APP. 0001 – 0014].

4.      Finally, Plaintiffs cannot show any risk of imminent harm, irreparable injury or the lack of an adequate remedy at law.  The Plaintiffs waited a full week before seeking a TRO, and even then filed their Application after hours on Good Friday, effectively ensuring that a judge would not see the Application until the following Monday – a full 10 days after the Individual Defendants resigned.  The harm is clearly not "imminent."  Also, the alleged harm is compensable in money damages.  Plaintiffs can easily calculate any purported loss incurred from the transfer of accounts.  Finally, the public interest weighs against entering an injunction because clients have the absolute right to choose their broker.

5.      For all of these reasons, the Court should deny Plaintiffs' Application.

## ARGUMENTS AND AUTHORITIES

### THE COURT SHOULD DENY THE APPLICATION FOR INJUNCTIVE RELIEF.

6.      To secure a preliminary injunction, Plaintiffs bear the burden of establishing: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."[2]  As demonstrated below, the Plaintiffs cannot satisfy any of the elements necessary to obtain the injunction and the Application must be DENIED.

---

[2]      *Texas Health & Human Servs. Comm'n v. United States*, 166 F. Supp. 3d 706, 710 (N.D. Tex. 2016) (quoting *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir.2011)).  The standard for a preliminary injunction is substantially similar to the standard for a temporary restraining order, with the exception being the exigency requirement to obtain a TRO.  *iKids Pediatric Dentistry, P.C. v. Smile Effects Family Dental & Orthodontics, PLLC*, 2015 WL 12532310, *1 (N.D. Tex., August 31, 2015 (a TRO is 'simply a highly accelerated and temporary form of preliminary injunctive relief' and requires the party seeking to establish the same elements).  As noted above, the plaintiffs have effectively waived any argument that they are entitled to a TRO by waiting to file their application in a manner that ensured it would not be seen by a court until 10 days after the Individual Defendants joined Hilltop Securities.

**A.   Plaintiffs cannot show a likelihood of success on the merits.[3]**

    **1.   Plaintiffs cannot show a likelihood of success on their breach of contract claims.**

7.   To prevail in a breach of contract claim, Plaintiffs are required to establish: "(1) a valid contract, (2) that [Plaintiffs] performed or tendered performance under the contract, (3) that [the Individual Defendants] breached the contract and, (4) that [Plaintiffs] suffered damages as a result of the breach."[4]  Of course, "[t]o prove an action for breach of contract, [Plaintiffs] must establish the existence of an enforceable contract."[5]  Plaintiffs cannot show the existence of an enforceable contract for Wise, or any breach by the Individual Defendants.  Furthermore, Plaintiffs have no agreement with the Hilltop Defendants.  Thus, Plaintiffs cannot show a likelihood of success on the merits.

    **a.   Wise does not have an agreement not to solicit, directly or otherwise.**

8.   Wise is not soliciting BOKF customers.  Even if she were, she would be within her legal right to do so, as she never agreed to any non-solicitation agreement.[6]  Indeed, Plaintiffs admit that they do not have a signed agreement from her (Complaint ¶ 59 "BOKF is currently searching for a copy…").  Yet, throughout the Application for Injunctive Relief, Plaintiffs repeatedly make generalized references to the Individual Defendants' 'contractual' obligations as if Defendant Wise were subject to the provisions of the Registered Representative Agreements.

---

[3]   Although the Representative Agreements of Davis and Del-Cid call for the application of Oklahoma law, Plaintiffs only address Texas law.  Defendants agree with this conclusion.  This application should be decided under Texas law because the person making contact with customers is Defendant Wise, who does not have an agreement requiring the application of Oklahoma law.  Defendant Wise works and resides in Texas and Texas law should apply to any issue involving her conduct.  Plaintiffs agree since their Application for Injunctive Relief does not reference Oklahoma law.  In any event they have waived any contrary argument.

[4]   *Muenster Hosp. Dist. v. Carter*, 216 S.W.3d 500, 505 (Tex. App.—Fort Worth 2007, no pet.).

[5]   *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[6]   Declaration of Vickie Wise ("Wise Declaration"), ¶2, a true and correct copy of which is attached hereto as Exhibit "B" [APP. 0015 – 0017].

Because Wise did not agree to the Registered Representative Agreement, she is not subject to it. In an effort to side-step this glaring problem, Plaintiffs attempt to bind Defendant Wise to a similar non-solicitation clause in a compensation Schedule. However, the non-solicitation clause in the Schedule is an unenforceable covenant not to compete.

9.     As set forth by the Texas Supreme Court, "provisions clearly intended to restrict the right to render personal services are in restraint of trade and must be analyzed for the same standards of reasonableness as covenants not to compete to be enforceable."[7]  The non-solicitation agreements in this case restrict the right to render personal services. Thus, the non-solicitation agreements are construed as covenants not to compete.[8]  To be enforceable, such a covenant must be:

> [1] ancillary to or part of an otherwise enforceable agreement at the time the agreement it made [and 2] to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.[9]

The Schedule wholly fails to satisfy these criteria.

### (1)    There is no "otherwise enforceable agreement"—the non-solicitation provision is without consideration.

10.     To be enforceable under the Texas Covenants Not to Compete Act (the "Act"), a covenant not to compete must, among other things, be "ancillary to or part of an otherwise enforceable agreement."[10]  "The common meaning of those words control; the covenant not to

---

[7]     *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991).

[8]     Non-solicitation agreements are subject to the same analysis as covenants not to compete and provisions of the Act apply fully to such agreements. *Shoreline Gas, Inc. v. McGaughey*, No. 13–07–364–CV, 2008 WL 1747624, at *10 (Tex. App.—Corpus Christi April 17, 2008, no pet.)

[9]     TEX. BUS. & COM. CODE §15.50.

[10]     TEX. BUS. & COM. CODE §15.50. (a); *see also Alex Sheshunoff Mgmt. Serv. v. Johnson*, 209 S.W.3d 644, 648 (Tex. 2006).

compete must be ancillary to (supplementary) or part of (one of several units of which something is composed) an otherwise enforceable agreement."[11]  "Requiring that a covenant not to compete be ancillary to an otherwise enforceable agreement or relationship ensures that noncompete agreements that are naked restraints of trade will not be enforceable under the Act."[12]

11.     Specifically, "[u]nder Section 15.50, the relevant point in time is the moment the agreement is made; the issue is whether, 'at the time the agreement is made, there exists other mutually binding promises to which the covenant not to compete is ancillary or part and parcel.'"[13]  "Consideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus."[14]

12.     In a Texas Supreme Court case concerning covenants not to compete, the Court analyzed an agreement similar to the ones at issue here applying the criteria set forth in Tex. Bus. & Com. Code §15.50.  Specifically, in *Sheshunoff Management Services, L.P. v. Johnson and Strunk & Assoc., L.P.*, the Texas Supreme Court analyzed the following covenant not to compete:

> [F]or one year after his termination, Johnson would not provide consulting services to any ASM client to whom Johnson had 'provided fee based services in excess of 40 hours within the last year of employment,' and would not ***solicit or aid any other party in soliciting any affiliation member or previously identified prospective client or affiliation member***.[15]

---

[11]     *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 775 (Tex. 2011).

[12]     *Id*. at 776.

[13]     *CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 263 (Tex. App—Houston [1st Dist.] 1996, no writ) (quoting *Light v. Centel Cellular Co. of Tex.,* 883 S.W.2d 642, 644-45 (Tex.1994)).

[14]     *Marsh*, 354 S.W.3d at 773.

[15]     209 S.W.3d 644, 647 (Tex. 2004) (emphasis added).

13.    The question presented in *Sheshunoff* was "whether an at-will employee who signs a non-compete covenant is bound by that agreement if, at the time the agreement is made, the employer has no corresponding enforceable obligation."[16]  Under previous Supreme Court authority, the answer was always "no."[17]  *Sheshunoff* modified the law, in part, by holding that "a unilateral contract formed when the employer performs a promise that was illusory when made can satisfy the requirements of the [non-compete] Act."[18]  "If the agreement becomes enforceable after the agreement is made because the ***employer performs his promise under the agreement*** and a unilateral contract is formed, the covenant is enforceable if all other requirements under the Act are met."[19]

14.    Inherent in the *Sheshunoff* holding is the requirement that the employer promise *some* performance, even if the promise is illusory when made.

15.    In this case, the Schedule is not ancillary to an otherwise enforceable agreement. Indeed, there is no promise to provide anything that would set forth a legitimate business interest worthy of protection set forth in the Schedule.[20]  Nowhere in the Schedule does BOK provide consideration for the restrictions placed on Wise.  Compensation or continued employment is not

---

[16]    *Id.* at 646.

[17]    *Id.*; *see Light v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex. 1994).

[18]    *Id.* at 651.

[19]    *Id.* at 655.

[20]    The Schedule is attached as Exhibits "5," "6," and "7" to Plaintiffs' Application.

sufficient consideration for a non-solicitation agreement to be enforceable.[21]  Therefore, the non-solicitation agreement contained in the Schedule, which is nothing more than a schedule of compensation, is unenforceable as a matter of law.[22]  Further, Wise did not sign the Schedule and it actually reduced her compensation.[23]

16.    Because the non-solicitation provision in the Schedule is without consideration, it is not enforceable.  In addition, because there is no "otherwise enforceable agreement," the non-solicitation agreement in the Schedule is, likewise, unenforceable as a matter of law.  Thus, Plaintiffs cannot show a likelihood of success on the merits against Wise.

> ### b.    The Non-Solicitation Provision in the Representative Agreement is Unenforceable.

17.    Davis has made no calls to BOK customers, and Del-Cid has only spoken with BOK customers in an administrative support capacity.[24]  Therefore, any arguments about their non-solicitation agreements are specious.  In addition, the non-solicitation agreements of Davis and Del-Cid are far too broad and ambiguous to be enforceable.  The provision Plaintiffs seek to enforce states that Davis and Del-Cid "shall not (i) directly solicit any established customer of

---

[21]    *Shoreline Gas, Inc. v. McGaughey*, No. 13-07-364-CV, 2008 WL 1747624, at *5 (Tex. App.—Corpus Christi Apr. 17, 2008) (continued employment not sufficient - "[s]uch a promise would be illusory in that it would fail to bind the promisor, who always retains the option of discontinuing employment in lieu of performance."); see also, Trilogy Software, Inc. v. Callidus Software, Inc., 143 S.W.3d 452, 463 (Tex. App.—Austin 2004) (financial benefits do not give rise to an interest worthy of protection by the covenant not to compete); *Sheshunoff*, 209 S.W.3d 644, 650 (Tex. 2006) (to hold that an employer could enforce a covenant merely by promising to pay a sum of money to the employee in the agreement, would be inconsistent with the requirements that the covenant must give rise to the employer's interest in restraining the employee from competing and the covenant must be designed to enforce the employee's consideration or return promise).

[22]    *See Sheshunoff*, 209 S.W.3d at 655; *see* Schedule.

[23]    Wise Declaration, ¶2 [APP 0016].

[24]    Declaration of Ronnie Carroll "Skip" Davis ("Davis Declaration"), ¶5, and Declaration of Melissa Morgeson Del-Cid ("Del-Cid Declaration"), ¶5, true and correct copies of which are attached hereto as Exhibits "C" [APP 0019 – 0021] and "D"[APP. 0023 – 0025],  respectively.

---

BOSC for a period of one (1) year after termination of this Agreement."[25]   The provision then goes on to define "directly solicit," without limiting it to this definition as:

> (i) making or participating in *any* mail or e-mail communication to such customer [no matter the purpose] which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii)  having or participating in any meeting with or making or participating in telephone calls to any established customer of BOSC, unless the customer was an established social friend and the telephone call was strictly social.[26]

18.     Thus, although the prohibition is limited to "direct solicitation" the provision tacitly prohibits "indirect" solicitation as well since it prohibits any communications other than social calls to previously established friends.  Such a broad prohibition is not enforceable in Texas or Oklahoma.[27]

19.     In Texas, non-solicitation agreements are subject to the same analysis as non-compete agreements and the provisions of Texas Business and Commerce Code §15.50 apply fully to such agreements.  *See Shoreline Gas, Inc. v. McGuaghey*, 2008 WL 1747624, *10 (Tex. App.—Corpus Christi, April 17, 2008).  Section 15.50 of the Act states that such an agreement is only enforceable:

---

[25]     *See* Agreement, pp. 2-3, ¶2J [APP 0002 – 0003; 0010 – 0011].

[26]     *Id.*

[27]     The Agreements executed by Davis and Del-Cid purport to require the application of Oklahoma law.  *See* Agreements, p. 5, ¶5C [APP 0005 & 0013].  Pursuant to 15 O.S. §219A(A), only direct solicitation of established customers may lawfully be prohibited.  If a contractual provision conflicts with Section 219A it is void and unenforceable.  *See* 15 O.S.§219A(B).  For example, when indirect solicitation is prohibited and the protected customers recited are more broad than necessary, such a provision is void.  *See Autry v. Acosta, Inc.*, 410 P.3d 1017, 1022-24 (Ok. Ct. Civ. App. 2017) (A provision prohibiting indirect solicitation of even former customers was void. The court would not reform the provision where it required supplying material terms to the contract).  Similarly, the provision in this case is void under Oklahoma law.  By purporting to prohibit any communications with customers, beyond direct solicitations, Plaintiffs seek to enjoin 'indirect' solicitation without expressly saying so.  Moreover, the customer base identified—all BOSC customers—is far broader than necessary.  Del-Cid and Davis have no way of knowing who might be a customer of BOSC.

---

to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise.

20.    The scope of the activity attempted to be restrained by the non-solicitation provisions in this case are clearly unreasonable and far beyond anything necessary to protect a legitimate business interest.  The provision is not limited to customers with whom Davis and Del-Cid did business.  It is not limited to customers in Texas.  Davis and Del-Cid could inadvertently breach the provision (if it were enforceable) because they do not know all of BOK's "established customers."  The agreement makes no attempt to define "established customer."  The term could include an individual who participates in an employee-sponsored 401(k) held by BOK.  As such, the provisions likely violate the Texas Citizens Participation Act, which prohibits restraints on free speech.[28]    Plaintiffs are attempting to prevent any communications with any and all BOK customers.  There is no legitimate business interest in prohibiting all speech with BOK customers.  The sheer breadth of this provision violates not only Oklahoma law and the Texas Citizens Participation Act, but also Section 15.50 of the Texas Business and Commerce Code.  As such, the non-solicitation provision in the Representative Agreements is unenforceable.

### c.    The Individual Defendants did not violate any agreement.

#### (1)    The Representative Agreements only prohibit *direct* solicitations.

21.    If they were enforceable, the Representative Agreements are not being violated. Under the terms of the non-solicitation provision in the Agreements, Davis and Del-Cid were

---

[28]      *See* Tex. Civ. Prac. & Rem. Code §27.001, et seq.; *see generally ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895 (Tex. 2017) *and Elite Auto Body, LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191 (Tex. App.— Austin 2017, pet. Filed) (recognizing that the TCPA applies fully in the context of private business).

only prohibited from <u>directly</u> soliciting BOK's established customers.[29]  Davis and Del-Cid have

not directly solicited BOK customers since terminating their employment with BOK.[30]  Davis

has not had or participated in phone calls, meetings, or discussions with BOK's customers.[31]  In

fact, the only actions taken by Davis were to update his LinkedIn profile and post an

announcement on Facebook, which is not prohibited.[32]  There were simply no solicitations from

Davis or Del-Cid.  Therefore, Plaintiffs will not prevail in their claim that Davis and Del-Cid are

soliciting these customers.

22.    Even though Wise does not have a non-solicitation agreement, she is also not

directly soliciting any of the BOK customers.[33]  Wise has only informed her customers of her

change in employment.[34]  She located contact information for these individuals on publicly-

available sources.[35]  Even if she had executed the Agreement, and if it were enforceable, this

conduct does not constitute a direct solicitation and, therefore, would not be prohibited.[36]  Wise

is not asking customers to transfer accounts; she only addresses the issue if a customer brings it

---

[29]    Agreements, pp. 2-3, ¶2J [APP 0002 – 0003; 0010 – 0011].

[30]    Davis Declaration, ¶5, Del-Cid Declaration, ¶5 [APP 0021 & 0024].

[31]    Davis Declaration, ¶5.

[32]    *See* March 28, 2018 Facebook Post, a true and correct copy of which is attached as Exhibit "1" to the Davis Declaration, ¶4 [APP 0022].

[33]    Wise Declaration, ¶4 [APP 0016 – 0017].

[34]    Wise Declaration, ¶4 [APP 0016 – 0017].

[35]    Wise Declaration, ¶4 [APP 0016 – 0017].

[36]    *See Charles Schwab & Co. Inc. v. Carr*, Case No. 2:11-CV-00184-36DNF, (N.D. Fla. 2011) (holding that "mere announcements, which allowed the clients to make informed decisions as to the future management of their finances, do not give rise to impermissible solicitations because there is insufficient evidence that the announcements were made with an intent to divert the clients' business.");  *Neuberger Berman LLC v. Strochak*, Case No. 9:05-80112-cv-Ryskamp/Vitunac, *at Doc.*  57*8 (S.D. Fla. March 11, 2005) ("Merely announcing that a financial planner has joined a new firm is not solicitation."); *Sanford Bernstein & Co., Inc. v. Brief*, Case No. 9:2000-8373-cv-Ryskamp/Vitunac, *at Doc.*  43 (S.D. Fla. September 25, 2000) (finding that the movant was unable to demonstrate solicitation when its former employee contacted clients to notify them of his move to a competitor and to inform them of the competitor's of services); *Hilb, Rogal & Hamilton Ins. Servs., Inc. v. Robb*, 33 Cal. App. 4th 1812 (1995) (holding that "[m]erely informing customers of one's former employer of a change of employment, without more, is not solicitation." )

up first.[37]   In fact, upon being employed by HilltopSecurities, Inc., Wise was provided with a script (the "Script") for any calls with clients that she has followed on every call.[38]   This Script permits her only to announce her change in employment.[39]   Pursuant to the Script, Wise has not requested that any client transfer accounts.[40]    In addition, certain customers have contacted Wise about transferring their accounts after being informed by BOK about Wise's departure.[41]

### (2) The Individual Defendants did not take, and are not using, any BOK property or information.

23.    The Individual Defendants did not take any BOK property or information.[42] The Individual Defendants are not using any BOK property or information.[43] Any customer contact information obtained by the Individual Defendants after joining Hilltop was obtained from publicly available resources (the internet).[44]   Other than a conclusory statement that the Individual Defendants could only be using Plaintiffs' information to contact their customers, Plaintiffs have not offered any evidence that any of the Individual Defendants took or used anything belonging to BOK.[45]   Bald accusations are not sufficient to support a preliminary injunction.

24.    Because Plaintiffs cannot show that the Individual Defendants violated any agreement, their breach of contract claims are unlikely to succeed on the merits.

---

[37]    Wise Declaration, ¶4 [APP 0016 – 0017].

[38]    A true and correct copy of the Script is attached as Exhibit "1" to the Wise Declaration, ¶5 [APP 0018].

[39]    Wise Declaration, ¶5 [APP 0017].

[40]    Wise Declaration, ¶5 [APP 0017].

[41]    Wise Declaration, ¶6 [APP 0017].

[42]    Wise Declaration, ¶3; Davis Declaration, ¶3, and Del-Cid Declaration, ¶3 [APP 0016, 0020, & 0024].

[43]    Wise Declaration, ¶7; Davis Declaration, ¶6, and Del-Cid Declaration, ¶6 [APP 0017, 0021, & 0024].

[44]    Wise Declaration, ¶4; Davis Declaration, ¶6, and Del-Cid Declaration, ¶6 [APP 0016 – 0017, 0021, & 0024].

[45]    *See* Plaintiffs' Application, p. 17, ¶81.

---

> **2.    Plaintiffs cannot show a likelihood of success on their misappropriation of trade secrets and wrongful use of confidential information claims.**

25.    As set forth above, the Defendants are not using any BOK confidential information or trade secrets.  The Defendants have not used any contact information acquired during their employment with BOK.  The customers' contact information was acquired from pubic sources (e.g. the internet or a phone directory), and are not confidential or a trade secret.

26.    Moreover, customer contact information is not considered a trade secret or confidential in the securities industry.  As one court noted, an NASD arbitration panel entered the following findings when it denied an application for injunctive relief:

> Customer rights are of primary importance and [the panel] is concerned customers are, or may be, subject to harm due to this dispute.  The fiduciary duties owed by the parties to the customers are superior to any duties owed by employees to the former employer.  The customers have a paramount right to be advised of the move by their broker and, that this right includes receiving personal contact from their broker.  The customers have the right to be informed that they decide whether to remain with Merrill Lynch or to transfer their account.  ***Customer names and addresses and telephone numbers are not confidential***.[46]

27.    Indeed, courts from varying jurisdictions have recognized that customer names and contact information are not trade secrets in the securities industry.  In *Morgan Stanley DW, Inc. v. Frisby*, the court found that "[a] review of the standard and customary practice of the securities industry, as well as of Morgan Stanley's own corporate practice, demonstrates that the clients and client information at issue here are not proprietary to Morgan Stanley, nor are they

---

[46]    *See Morgan Stanley DW, Inc. v. Clayson*, 2005 Mass. Super. LEXIS 145, **15-16 (Mass. Sup. Ct. (2005) (emphasis added) *quoting Merrill Lynch Pierce Fenner & Smith, Inc. v. Stark et al.*, NASD Case No. 02-05187 (September 19, 2002).

sufficiently 'secret' for trade secret protection."[47]    Indeed, in that case, Morgan Stanley's President of its Consumer Markets Division testified as follows:

> [I]t also flies in the face of the custom and practice of the brokerage industry to suggest that when an account executive moves from one brokerage concern to another he is not entitled to contact his former clients after he switches firms.
>
> * * *
>
> It is widely understood in the brokerage industry that confidentiality agreements executed by account executives are not construed so as to prohibit those account executives from contacting their former clients when they change jobs.  *To so construe agreements of that type would put an end to the mobility of account executives that has been a hallmark of the brokerage industry*.[48]

28.    Similarly, in *Merrill Lynch v. O'Connor*, the court held that an announcement regarding an advisor's new employment was not only appropriate, but essential.  "[O]therwise customers with longstanding trust in their brokers with immediate need of advice would not be able contact them."[49]   "A stock broker stands in a different relationship to his customers from that of other kinds of salesmen, and fiduciary duties of a broker are recognized in law because of the important role of the broker in protecting the financial welfare of his clients."[50]   "The 'public's ability to choose the professional services it prefers' is central to the consideration of this criterion of injunctive relief.  The public has a greater interest in being able to choose whether to follow its broker to a new firm or to remain at the old firm with a new broker . . . The

---

[47]    163 F. Supp. 2d 1371, 1378 (N.D. Ga. 2001).

[48]    *Id*. at 1379 (emphasis added).  *See also Raymond James & Assoc., Inc. v. Leonard & Co.*, 411 F. Supp. 2d 689, 695 (E.D. Mich. 2006) ("customer lists of the type involved in this case at bar, i.e., those that were developed through the participation of the employee and contain knowledge regarding the needs of customers, are not trade secrets"); *UBS PaineWebber, Inc. v. Aiken*, 197 F. Supp. 2d 436, 447 (W.D.N.C. 2002) (holding that a brokerage firm's customer lists containing names and addresses were not trade secrets).

[49]    194 F.R.D. 618, 620 (N.D. Ill. 2000).

[50]    *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Liniere*, 572 F. Supp. 246, 249 (N.D. Ga. 1983).

public has little interest in having its choice restricted to brokers *other* than the one who has served them, pending the resolution of this dispute."[51]

29.     Furthermore, some of the largest members of this industry have gone so far as to recognize, in writing, that departing brokers are entitled to take their customers' names, addresses and contact information with them.  In a document entitled "Protocol for Broker Recruiting," Smith Barney, Merrill Lynch, and UBS Financial Services, agreed that departing brokers may take "client name, address, phone number, email address and account title of the clients that they serviced while at the firm . . . ."[52]

30.     In the securities industry, the identities and contact information for BOK customers is not confidential or a trade secret.  Wise knows her customers' names.  She located their contact information from publicly available sources.  This is not a trade secret.  The Plaintiffs have no cognizable claim for misappropriation of trade secrets. Moreover, Plaintiffs cannot show a likelihood of success on their claims for wrongful use of confidential information.

### 3.    Plaintiffs cannot show a likelihood of success on their breach of fiduciary duty claim.

31.     There is no claim for breach of fiduciary duty arising out of competition by a former at-will employee.  "An at-will employee may properly plan to compete with his employer, and may take active steps to do so while still employed."[53]  To succeed on this claim, Plaintiffs will have to again argue that the Defendants are using trade secrets.  As set forth above, the names and contact information of clients is not confidential or a trade secret—the Individual Defendants were permitted to use it to communicate with their clients.

---

[51]     *Id.* (emphasis in original).

[52]     *See* Protocol for Broker Recruiting, a true and correct copy of which is attached hereto as Exhibit "E" [APP. 0026 – 0029].

[53]     *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

32.     Further, none of the Individual defendants took any of the Plaintiffs' property or information—including, but not limited to, customer lists or information.  To the extent any Defendant is now in possession of customer contact information it was obtained only from publicly available resources and only after the Individual Defendants resigned from Plaintiffs.

### 4.     There is no likelihood of success on the Plaintiffs' tortious interference with contracts or business relations claims.

33.     Under Texas law, there is no claim for tortious interference with contracts for inducing someone to do something that they had the right to do.[54]  "A third-party's efforts to induce another to exercise his right to dissolve a contract at will or to terminate contractual relations on notice does not constitute tortious interference with contract under Texas law."[55] "[T]he inducement to do what [a customer] had a right to do did not constitute tortious interference with the contracts."[56]  In this case, it cannot be disputed that the customers have the right to transfer their accounts.  Thus, even if the Defendants induce the customers to transfer their accounts there cannot, as a matter of law, be tortious interference—the customers have the right to take that action.

34.     Further, Covenants not to compete (including non-solicitation agreements), which are unreasonable and unenforceable restraints on trade cannot form the basis of an action for tortious interference.[57]

---

[54]     *See Archives of America, Inc. v. Archive Litigation Services, Inc.*, 992 S.W.2d 665, 667-68 (Tex. App.—Texarkana 1999, pet. denied) *citing ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex. 1997); *C.E. Services, Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985).

[55]     *C.E. Services, Inc.*, 759 F.2d at 1248.

[56]     *Archives of America, Inc.*, 992 S.W.2d at 668.

[57]     *See Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 833 (Tex. 1991) (covenant not to compete could not be basis of tortious interference claim because covenant was unreasonable restraint of trade and unenforceable).

---

**5.      Plaintiffs cannot show a likelihood of success on their conspiracy claim.**

35.      A conspiracy is shown by proving that there was an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful manner.[58]   As demonstrated above, Plaintiffs cannot establish either in this case.  Wise did not agree to any non-solicitation clause.[59]  To the extent Plaintiffs rely on the Schedule, this is not an enforceable contract.  Even if it were, the non-solicitation clause in the Schedule is unenforceable as a matter of law.  Therefore, Wise is not prohibited from contacting or soliciting customers.

36.      The Defendants had the right to terminate their employment with BOK, and to let the customers know the identity of their new employer.  There was no unlawful act or any agreement to do a lawful act in an unlawful manner.  Thus, Plaintiffs cannot succeed on the merits of this claim.

**6.      There is no evidence that Defendants took BOK information or are soliciting.**

37.      Plaintiffs generally state that the Individual Defendants are soliciting customers and using BOK's confidential information. Plaintiffs present no evidence to support these conclusory allegations, because none exists. The only specific allegation in Plaintiffs' Application is that the Individual Defendants printed documents containing customer information in the weeks before their departure.[60]  While these allegations are supported only by an unexplained and cryptic printout that is largely redacted, the Individual Defendants did not print any confidential customer information in anticipation of their departure.[61]  While employed

---

[58]      *See Mark II Sys. v. Sysco Corp.*, 2007 Tex. App. LEXIS 1339, *18 (Tex. App.—Houston [1st Dist.] February 22, 2007).

[59]      Wise Declaration, ¶2 [APP 0016].

[60]      Application, ¶ 48.

[61]      Wise Declaration, ¶2; Davis Declaration, ¶2; and Del-Cid Declaration, ¶2 [APP 0016, 0019 – 0020, & 0023 – 0024].

at BOK, the Individual Defendants conducted business as usual and as expected by their employer.[62] They had client meetings and engaged in activities that occasionally required them to print documents.[63] The printing volume is not unusually large, nor was it done surreptitiously or after hours.[64] Plaintiffs fail to show that this was different from what the Individual Defendants would normally print in the course and scope of their employment. Moreover, there is no allegation or evidence that the Individual Defendants took any of these documents. BOK does not even endeavor to explain what these pages were. Indeed, curiously omitted from Plaintiffs' allegations is what, exactly, the Individual Defendants allegedly printed—not to mention the fact that this printing allegedly occurred during the course of normal business hours. Further, during tax season and as a part of annual customer reviews, it was not unusual for the Individual Defendants to print documents containing customer information.[65] The Individual Defendants returned all of the Plaintiffs' property when they departed.[66]

      38.    Likewise, Plaintiffs fail to show evidence of any direct solicitation by the Defendants. Indeed, after waiting a week to file their Application, Plaintiffs have offered no evidence, or even any specific allegation, that any of the Individual Defendants are directly soliciting anyone—only vague, unsupported, allegations that certain customers are confused about the Individual Defendants departure.[67] Because Plaintiffs have not presented any evidence of the improper solicitations, Plaintiffs' Application should be denied.

---

[62]    Wise Declaration, ¶2; Davis Declaration, ¶2; and Del-Cid Declaration, ¶2 [APP 0016, 0020, & 0024].

[63]    Wise Declaration, ¶2; Davis Declaration, ¶2; and Del-Cid Declaration, ¶2 [APP 0016, 0020, & 0024].

[64]    Wise Declaration, ¶2; Davis Declaration, ¶2; and Del-Cid Declaration, ¶2 [APP 0016, 0020, & 0024].

[65]    Wise Declaration, ¶2; Davis Declaration, ¶2; and Del-Cid Declaration, ¶2 [APP 0016, 0020, & 0024].

[66]    Wise Declaration, ¶3; Davis Declaration, ¶3; and Del-Cid Declaration, ¶3 [APP 0016, 0020, & 0024].

[67]    *See* Plaintiffs' Application, p. 16, ¶70.

**7.      There is no basis to restrain the Hilltop Defendants.**

39.     The Hilltop Defendants had no agreement with Plaintiffs and no fiduciary duty is owed by them to Plaintiffs. There is no factual allegation or evidence to support any claim against the Hilltop Defendants.  Because Plaintiffs failed to allege any facts to support their claims against the Hilltop Defendants, the Plaintiffs are unlikely to survive a motion to dismiss on these claims, let alone succeed on the merits.  Thus, the Application should be denied.

**B.      Plaintiffs will not suffer irreparable injury absent an injunction.**

**1.      Customers have the absolute right to transfer accounts to the broker of their choice.**

40.     There is no risk of irreparable injury absent an injunction.  To establish irreparable injury, Plaintiffs must demonstrate that the harm is "real, imminent, and significant— not merely speculative or potential—with admissible evidence and a clear likelihood of success."[68]  Moreover, "[a]n injury is irreparable only if it cannot be undone through monetary remedies."[69]

41.     Plaintiffs have not presented the Court with any evidence, much less admissible evidence, to show a clear likelihood of success or that the harm is real and imminent and not merely speculative and potential.  Indeed, despite asserting that the 'first few days . . . are the most critical,' Plaintiffs effectively waited ten (10) days to seek relief.[70]  Moreover, any alleged harm is clearly speculative and dependent on whether customers choose to move their accounts—a choice with which, if made, the Court should not interfere.  Customers have the absolute right to move their accounts with the departing brokers. Indeed, the relief being sought

---

[68]      Texas Health & Human Servs.¸166 F. Supp. 3d at 710 (quoting Aquifer Guardians in Urban Areas v. Fed. Highway Admin., 779 F.Supp.2d 542, 574 (W.D.Tex.2011)).

[69]      Paulsson Geophysical Servs., Inc. v. Sigmar, 529 F.3d 303, 312 (5th Cir. 2008); see ADT, LLC v. Capital Connect, Inc., 145 F. Supp. 3d 671, 697 (N.D. Tex. 2015).

[70]      See Plaintiffs' Application, p. 23, First Paragraph.

---

is prohibited by FINRA.  All that the relief being sought will do is interfere with customers who wish to transfer their accounts:

> No member or person associated with a member shall interfere with a customer's request to transfer his or her account in connection with the change in employment of the customer's registered representative where the account is not subject to any lien for monies owed by the customer or other bona fide claim. ***Prohibited interference includes, but is not limited to, seeking a judicial order or decree that would bar or restrict the submission, delivery or acceptance of a written request from a customer to transfer his or her account***.[71]

42.    The requested injunctive relief would prevent customers who wish to transfer their accounts from doing so.  FINRA Rule 2140 expressly prohibits such orders.  If a customer chooses to transfer their investments they have an absolute right to do so—a right that should not be interfered with while awaiting the outcome of this litigation.

43.    Pursuant to FINRA Rule 2140, Plaintiffs are not permitted to the injunctive relief they seek.  Indeed, several customers have reached out to Defendant Wise, unsolicited, as a result of being contacted by BOK.[72] The relief being sought would prevent those customers from being able to meet with the Individual Defendants, who in many cases have been these customers' brokers, for years.  The customer is entitled to do business with the broker he or she chooses.

### 2.    Any injury allegedly suffered is compensable in damages.

44.    Further, any alleged injury can be adequately compensated in damages and injunctive relief is, therefore, not appropriate.[73]  In similar industry disputes, courts find that the

---

[71]    FINRA Rule 2140 (emphasis added).

[72]    Wise Declaration, ¶6 [APP 0017].

[73]    *See Paulsson Geophysical Servs., Inc.*, 529 F.3d at 312; *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

---

real harm resulting from such solicitations is the loss of commissions, which can be easily calculated. Plaintiffs cannot demonstrate irreparable injury "because any injury it may suffer due to actions allegedly taken by Defendants is compensable by the award of money damages."[74] Indeed, one federal court "expressly rejected the argument that a brokerage firm suffers anything other than economic loss when a departing broker seeks to solicit and service [its] clients."[75]   If Plaintiffs are ultimately successful on the merits of their claims they will have the opportunity to prove what business was lost as a result of the alleged wrongful acts of the Defendants.

## C.    Plaintiffs have an adequate remedy at law.

45.    Finally, Plaintiffs have an adequate remedy at law.  For purposes of injunctive relief, there is no adequate remedy at law if: (1) damages cannot be calculated; (2) damages cannot be measured by any certain pecuniary standard; or (3) the defendant will be unable to pay the damages.[76]  As stated above, at a trial of this matter Plaintiffs will have the opportunity to prove what business, if any, it lost to the Defendants.  Clearly it should be able to prove what income it lost from that business.  Nowhere does Plaintiffs even allege that the Defendants are unable to pay a damage award.

46.    Because there is no further threat of imminent harm or irreparable injury and Plaintiffs have an adequate remedy at law, the Court should deny the application for a temporary injunction.

---

[74]    *Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1376 (N.D. Ga. 2001).

[75]    *Id*. *citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Liniere*, 572 F. Supp 246 (N.D. Ga. 1983).

[76]    *Butnaru*, 84 S.W.3d at 204; *Texas Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533 (Tex. App.—Houston [1ˢᵗ Dist.] 1992, no pet).

**D.      The public interest is against the injunction.**

47.      The public interest weighs against entering the injunction sought by Plaintiffs. The NASD's position is clear that the public has the right to choose its broker, a right that should not be interfered with due to a broker's change in firms.[77]  In addition, as noted by one court:

> [T]he broker-client relationship [is] similar to that of attorney-client or doctor-patient.  Personal trust and confidence pervades each of these relationships, and 'clients should be free to deal with the broker of their choosing and not subjected to the turnover of their accounts to brokers associated with the firm but unfamiliar with the client, unless the client gives informed consent to the turnover."[78]

"[T]he public has a greater interest in being able to choose whether to follow its broker to a new firm or to remain at the old firm with a new broker . . . The public has little interest in having its choice restricted to brokers other than the one that has served them . . . ."[79]  The public interest weighs against entering an injunction.

**E.      The harm to the Individual Defendants would far outweigh the alleged harm to Plaintiffs.**

48.      An additional consideration in determining whether to issue an injunction is a balancing of the interests.  It is clear in this case that if the injunction is entered the harm to the Individual Defendants will be greater than any harm to Plaintiffs—the Individual Defendants will not be able to make a living or support their families.  Moreover, the requested relief will harm the customers who will be denied the opportunity to consult with their financial advisors of their choice.

---

[77]      FINRA Rule 2140.

[78]      *Frisby*, 163 F. Supp. 2d at 1382.

[79]      *Liniere*, 572 F. Supp. at 249.

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully request that the Court deny Plaintiffs' Application for Injunctive Relief and for such other and further relief to which the Defendants may show themselves entitled.

Respectfully submitted,

**HUSCH BLACKWELL LLP**


By: _____
     Richard A. Illmer
     State Bar No. 10388350
     Chad A. Johnson
     State Bar No. 24026259

     2001 Ross Avenue, Suite 2000
     Dallas, Texas  75201
     (214) 999-6100
     (214) 999-6170 (*facsimile*)
     ATTORNEYS FOR THE DEFENDANTS


**CERTIFICATE OF SERVICE**

A copy of the foregoing has been served to all counsel of record via ECF on this 5th day of April 2018.


*/s/ Richard A. Illmer* _____
Richard A. Illmer