**Financial Industry Regulatory Authority**

| | | |
|---|---|---|
| BOK Financial Securities, Inc. (BOKFS) | § | |
| | § | |
| Claimant. | § | |
| | § | |
| | § | |
| v. | § | FINRA No. ________________ |
| | § | |
| | § | |
| Vickie Sue Wise, an individual | § | |
| CRD No. 1883523 | § | |
| Ronnie Carroll "Skip" Davis, an individual | § | *Injunctive Relief And* |
| CRD No. 5400246 | § | *Non-FINRA Parties/Claims* |
| Melissa Morgeson Del-Cid, an individual | § | *Northern District of Texas* |
| | § | *Dallas Division* |
| | § | *Case 3:18-cv-00794-N* |
| CRD No. 2448005. | § | |
| Hilltop Holdings, Inc. | § | |
| Hilltop Securities, Inc. | § | |
| CRD No. 6220 | § | |
| Hilltop Independent Network, Inc. | § | |
| CRD No. 17587 | § | |
| | § | |
| | § | |
| Respondents. | § | |

**BOK FINANCIAL SECURITIES, INC. (BOKFS) STATEMENT OF CLAIM**
**Including Claim for Injunctive Relief[1]**

Claimant BOK Financial Securities, Inc., (formerly BOSC, Inc. ("BOKFS"),[2] respectfully brings these claims against Respondents Vickie Sue Wise ("Wise"), an

[1] See also, BOKF NA and BOKFS' Complaint and Emergency Verified Application for Injunctive Relief filed this same date in the Northern District of Texas, Dallas County Division, Case No. *3:18-cv-00794-N* [Doc. 001].

[2] BOKFS has certain access to and interest in data of BOKF NA and customers of BOKFNA which access and interests are collectively referenced as "BOKF").

Exhibit A

individual; Ronnie Carroll “Skip” Davis (“Davis”), an individual; Melissa Morgeson Del-Cid (“Morgeson Del-Cid”), an individual; Hilltop Securities, Inc.; and Hilltop Securities Independent Network Inc.

This same date, BOKFNA and BOKFS filed a *Complaint* [Doc. 001] and an Emergency Verified Application for a Temporary Restraining Order and Preliminary Injunction (the “Verified Application”) [Doc. 003] in the Northern District of Texas, Dallas Division Case No. *3:18-cv-00794-N* “The Northern District Matter”. BOKFNA and BOKFS (pursuant to FINRA Rule 13804) requested a temporary restraining order (“TRO”) and preliminary injunction (“PI”) and other relief in the Northern District Matter.

With the exception of injunctive relief, which is subject to the Northern District matter, BOKFS seeks all relief against FINRA Member Firms and FINRA Associated persons before FINRA. BOKFS seeks claims against Hilltop Affiliates in the Northern District Matter.

The individuals respondents, FINRA Associated Persons, may be referred to herein collective as the “Individual Respondents”. The corporations (both FINRA Member Firms and their affiliates, which are not FINRA member firms) may be referred to herein collectively as the “Hilltop”.[3] Hilltop corporations which are Member Firms may be referred to as “Hilltop Member Firms”. Affiliates of Hilltop Member Firms which are not FINRA Member Firms, will be referred to as “Hilltop Affiliates”.

---

[3] Hilltop Holdings, Inc., National Lloyds Insurance Company, American Summit Insurance Company and PlainsCapital Bank, are not FINRA Member Firms. These Hilltop affiliates are not subject to mandatory arbitration.

# I. SUMMARY

This case arises generally through the concerted actions of Wise, Davis, and Del-Cid, who resigned in concert on Friday March 23, 2018, the Friday of a holiday week (Spring Break), in conspiracy with and/or on behalf of the Hilltop Respondents: (i) in violations of duties of loyalty, (ii) in breach of agreements between the Individual Respondents and BOKFS (agreements which include, but not limited to the following provisions: advance notice of termination, agreements not to solicit employees and customers, confidentiality and return of information provisions), and (iii) through misappropriation of confidential, proprietary information, and/or trade secrets belonging to BOKFS customers.

# II. STATEMENT OF FACTS

## A. HILLTOP RAID, BOKFS REMINDER AND DEMAND LETTER

Wise, Davis, and Morgeson Del-Cid tendered their contemporaneous resignations, in total disregard of obligations to BOKFS including, but not limited to, notice provisions, restrictive covenants, and confidentiality provisions, without any notice, on the morning of Friday, March 23, 2018. Exhibit 1 (2018-03-23 Resignation of Davis); Exhibit 2 (2018-03-23 Resignation of Morgeson Del-Cid. Wise, Davis, and Morgeson Del-Cid then began soliciting BOKFS Customers using BOKFS information in violation of applicable agreements and customer privacy and trade secret law.

That same day, on Friday, March 23, 2018, BOKFS transmitted, by email to Wise and Morgeson Del Cid, and, by overnight courier to Hilltop Respondents, a letter with reminders regarding obligations, demands to comply with applicable agreements,

demands to search for and return BOKFS data, and demands to preserve all documents and tangible items pertaining to the transition of employment. Exhibit 3 (Email to Wise and Morgeson Transmitting 2018-03-25 Reminder and Demand Letter) and Exhibit 4 (Attached Letter dated 2018-03-23) with: Exhibit 5 (Wise & Davis Sample 2018 Client Advisor Incentive Agreement [Redacted]); Exhibit 6 (Davis Sample 2018 Wealth Advisor Incentive Agreement Redacted]); Exhibit 7 (Morgeson Del-Cid Sample 2018 Sales/Service Specialist Incentive Agreement); Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del Cid Representative Agreement).

Respondents have continued their actions regardless of the delivery of demand letters.

Therefore, BOKFNA and BOKFS filed the Complaint and are seeking immediate injunctive relief in the Northern District matter. BOKFS files this FINRA Statement of Claim.

**B. Parties**

**1. Claimant**

1. Claimant BOKFS is an Oklahoma corporation with its with its headquarters and principal offices located at One Williams Center, Tulsa, Oklahoma 74172 and is a registered broker/dealer in all 50 states. BOKFS is a subsidiary of BOK Financial Corporation. BOKFS was formerly known as BOSC, Inc.[4] BOKFS data is referred to as BOKF data. BOKFS customers are referred to as BOKF customers.

[4] BOKFNA is a regional financial institution operating under a charter issued by the Office of the Comptroller of the Currency with its headquarters and principal offices located at One Williams Center, Tulsa, Oklahoma 74172. BOKFNA is a subsidiary of BOK Financial Corporation. BOKFNA is not subject to mandatory arbitration before FINRA.

**2. The Individual Respondents (Former BOKFS Registered Representatives)**

3. Wise is an individual who resides at 3318 Blackburn Street in the City of Dallas, Dallas County, Texas.

4. Wise is a registered financial representative. Wise's FINRA CRD No. is 1883523. Wise hold licenses to sell securities, insurance and annuities.

5. Wise started employment with BOKFS in 1998. Until March 23, 2018, Respondent Wise was an employee of BOKFS and was a registered representative of BOKFS. Prior to her termination, Respondent Wise was BOKF's most tenured representative in Dallas with twenty (20) years of service.

6. Wise last held the position of Client Advisor. Exhibit 10 (Client Advisor Position Description).

7. Davis is an individual who resides at 602 Bentley in the City of Roanoke, Denton County, Texas.

8. Davis is a registered financial representative. Davis FINRA CRD No. is 5400246. Davis holds licenses to sell, securities, insurance and annuities. Davis started employment with BOKFS in 2012. Until March 23, 2018, Respondent Davis was an employee of BOKFNA and was a registered representative of BOKFS.

9. Davis last held the position of Client Advisor. Exhibit 10 (Client Advisor Position Description).

10. Morgeson Del-Cid is an individual who resides at 305 Walnut Grove in the City of Coppell, Dallas County, Texas.

11. Morgeson Del-Cid is a registered financial representative. The FINRA CRD No. for Morgeson Del-Cid is 2448005. Morgeson Del-Cid also holds licenses to sell securities,

insurance and annuities.

12. Morgeson Del-Cid started employment with BOKFS in 2006. Until March 23, 2018, Respondent Morgeson Del-Cid was an employee of BOKFNA and was a registered representative of BOKFS.

13. Morgeson Del-Cid last held the position of Senior Securities Sales/Services Specialist. Exhibit 11 (Senior Securities Sales/Services Specialist Position Description (Morgeson Del-Cid).

### 3. Hilltop Member Firms (New Employer(s) of The Individual Respondents)

14. Respondent Hilltop Securities, Inc. (Hilltop Securities) is a Delaware corporation with its principal offices located at 1201 Elm Street, Suite 3500, in the City of Dallas, Dallas County, Texas. The registered agent for Respondent Hilltop Securities, Inc. is Capitol Corporate Services, Inc., 209 East 9th Street, Austin, Texas 78701.

15. Respondent Hilltop Securities Independent Network Inc. (Hilltop Independent) is a Texas corporation with its principal offices located at 1201 Elm Street, Suite 3500, in the City of Dallas, Dallas County, Texas. The registered agent for Respondent Hilltop Securities Independent Network Inc. is Capitol Corporate Services, Inc., 209 East 9th Street, Austin, Texas 78701.

### 4. Non-Party Affiliates of Hilltop Members

16. Northern District Defendant National Lloyds Insurance Company is a Texas insurance company with its principal offices at 510 North Valley Mills Drive, Suite 202, in the City of Waco, McLennan County, Texas. Pursuant to Section 804.101(b) of the Texas Insurance Code, may be served by serving the president, an active vice president, secretary, or attorney in fact at the home office or principal place of business of the

company or leaving a copy of the process at the home office or principal business office of the company during regular business hours.

17. Northern District Defendant American Summit Insurance Company is a Texas insurance company with its principal offices at 510 North Valley Mills Drive, Suite 202, in the City of Waco, McLennan County, Texas. Pursuant to Section 804.101(b) of the Texas Insurance Code, may be served by serving the president, an active vice president, secretary, or attorney in fact at the home office or principal place of business of the company or leaving a copy of the process at the home office or principal business office of the company during regular business hours.

18. Northern District Defendant PlainsCapital Bank is a Texas state bank with its principal offices at 2911 Turtle Creek Blvd, Suite 700, in the City of Dallas, Dallas County, Texas. The registered agent for Defendant PlainsCapital Bank is Scott J. Luedke, 2323 Victory Avenue, Suite 1400, Dallas Texas 75219.

19. Northern District Defendant Hilltop Holdings Inc. is a Maryland corporation with its principal offices at 200 Crescent Court, Suite 1330, in the City of Dallas, Dallas County, Texas. Its registered agent is Corporation Service Company, 115 SW 89th Street, Oklahoma City, Oklahoma 73139-8511. Hilltop Holdings, Inc. is an umbrella corporation over the Hilltop corporations.

20. Each of the named corporate defendant entities are companies affiliated with Defendant Hilltop Holdings, Inc. (collectively referred to as the "Hilltop Affiliates").

**E. Jurisdiction and Venue**

21. BOKFS incorporates and reallege the allegations contained in ¶¶s 1- 20 above as if fully set forth herein.

22. The Northern District has jurisdiction over Temporary Restraining Order (TRO) and

Preliminary Injunction Proceeding (PI) proceedings.

23.     FINRA has jurisdiction over Member Firm BOKFS.

24.     FINRA has jurisdiction over Member Firms: Hilltop Securities, and Hilltop Independent.

25.     FINRA has jurisdiction over Respondent Wise because Wise is a FINRA registered representative. Wise resides in, is a citizen of, and is a citizen Dallas, Texas, and was last employed at BOKF's office in Dallas, Texas.

26.     FINRA has jurisdiction over Respondent Davis because Davis is a FINRA registered representative. Davis resides in, is a citizen of, and is domiciled in Roanoke, Texas, and was last employed at BOKF's office in Dallas, Texas.

27.     FINRA has jurisdiction over Morgeson Del-Cid because she resides in, is a citizen of, and is a citizen of Coppell, Texas, and was last employed at BOKF's office in Dallas, Texas.

28.     The Northern District has personal jurisdiction over Respondents Hilltop Holdings Inc.; Hilltop Securities, Inc.; Hilltop Independent Network Inc.; National Lloyds Insurance Company; American Summit Insurance Company and PlainsCapital Bank because each of them operate in the State of Texas and conduct business operations in the City of Dallas, Dallas County, State of Texas. In the Northern District, not only is there a federal question based upon the federal Defense of Trade Secrets Act, 18 U.S.C. §1831 et seq., there is complete diversity of the Plaintiffs who are citizens of and headquartered in Oklahoma and the Respondents who are citizens of Texas.   There is diversity jurisdiction pursuant to 28 U.S.C. § 1332.

29.     **FINRA Venue.**  Venue is proper in Dallas, Texas because a substantial part of the

events giving rise to the claims in this action occurred in Dallas, Texas. Venue is also proper in Tulsa, Oklahoma. BOKFS is a citizen of Oklahoma BOKFS' headquarters are in Tulsa, Oklahoma. A substantial part of the events giving rise to the claims in this action occurred at BOKFS headquarters in Tulsa, Oklahoma.

**F. BOKF**

30. BOKFS incorporates and realleges the allegations contained in ¶¶s 1- 29 above as if fully set forth herein.

31. BOKFS develops and maintains customer relationships and business. These customer relationships are a protectable interest of BOKFS.

32. In the course of conducting business, BOKFS develops and maintains confidential business information, customer lists and data as well as methodologies and processes that are essential to the successful operation of their businesses (the "Confidential Information and Trade Secrets"). This information is a protectable interest of BOKFS.

**G. BOKFS Business and Employee Obligations to BOKFS and Customers**

33. BOKFS conducts business and develops its protectable interests through its personnel.

34. The positions of Wise and Davis (registered financial Client Advisors), and Morgeson Del Cid (registered Sales/Services Support Specialist) required that confidential customer information and financial strategy be provided to The Individual Respondents by BOKFS.

35. BOKFS promised to and provided confidential customer information and financial strategies to The Individual Respondents.

36. BOKFS Client Advisors (Wise and Davis) have the following summary of duties:

> The **Client Advisor** is primarily responsible for developing, maintaining, and expanding relationships with high net worth individuals and their associated entities in the firm through comprehensive needs assessment and response. Actively networks both inside and outside the firm for new client relationships, as well as maintaining and expanding current relationships through exceptional client service. Meets with existing and prospective clients to profile, assess financial service needs and propose solutions, often through the use of financial planning tools. Provides advisory services for investment portfolios; recommending appropriate investment strategies to achieve risk-adjusted client objectives. Provides performance reporting to client on periodic basis or as established by the client. Keeps current on economic and market trends, as well as compliance and regulatory issues.

Exhibit 10 (Client Advisor Position Description (Wise and Davis).

37. BOKFS Senior Securities Sales/Service Specialist, (Morgeson Del-Cid), have the following summary of duties:

> The **Senior Securities Sales/Service Specialist** is primarily responsible for the direct supervision of both exempt and non-exempt personnel that are primarily responsible for the sales and support of investment products when primary sales person is unavailable. Also, provides support and service to customers; provides quotes on investment securities; responds to inquiries regarding securities transactions; resolves problems with applicable investment and deposit accounts; provides sales tracking, account assignment research, and sales performance measurements.

Exhibit 11 (Senior Securities Sales/Service Specialist Position Description (Morgeson Del-Cid).

38. BOKFS maintained its confidential data confidentially, using secure access, locks and keys, confidential employee identifiers and passwords, and Standards of Conduct, and policies and procedures.

39. BOKFS employees are obligated to adhere to Standards of Conduct, which include standards regarding confidentiality of customer data and following applicable law. Exhibit 12 (Standards of Conduct); Exhibit 13 (Standards of Conduct Attestations).

40. BOKFS FINRA Associated Persons (Client Advisors and Securities Sales/Service

Specialists) have Representative Agreements which have provisions for notice of termination, requirements to follow applicable law and policies and procedures, confidentiality, return of data and agreements not to solicit. Exhibit 14;[5] Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del-Cid Representative Agreement).

41. The Representative Agreement obligates the employee to give thirty (30) days' written notice of termination. Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del-Cid Representative Agreement):[6]

> This Agreement may be terminated by either party at any time, without cause, but only by, giving thirty (30) days written notice to the other party.

42. The primary purpose of the notice provision is to give BOKFS the opportunity to prepare its customers for the transition to a new BOKFS financial representative and to protect and solidify BOKF's relationship with its customers.

43. The Representative Agreement requires the employee to follow policies and procedures of BOKFS which required safeguarding of confidential information and return of confidential information upon departure from employment at Paragraph (2)(B). Exhibit 8 at p. 1 at ¶ (2) B (Davis Agreement); Exhibit 9 (Morgeson Del-Cid Agreement); Exhibit 19 and Exhibit 20 (Excerpts of BOKFS Written Supervisory Procedures); Exhibit 12 (Standards of Conduct); Exhibit 13 (Attestations to Standards of Conduct).

44. The Representative Agreements contain agreements not to solicit employees for

[5] BOKFS is currently searching for a copy of Wise's Representative Agreement. BOKFS has provided an Exhibit 14 which is a slip sheet as a place holder for a later ERRATA to include Wise's Agreement if/when it is located.

[6] Exhibit 14.

one year following termination of employment at Paragraph (2)(J). Exhibit 14 (Wise); Exhibit 8 at p. 2 at ¶ (2) (J) (2012-04-03 Davis Representative Agreement); Exhibit 9 at p. pp. 2-3 ¶ (2)(J) (2006-06-21 Morgeson Del-Cid Representative Agreement).

45. The Representative Agreements contain agreements not to solicit established customers and not to solicit employees for one year following termination of employment at Paragraph (2)(J). Exhibit 8 at p. 3 at ¶ (2) J (2012-04-03 Davis Representative Agreement); Exhibit 9 at p. 2 ¶ (2) (J) (2006-06-21 Morgeson Del-Cid Representative Agreement); Exhibit 14.

46. The Representative Agreement contain agreements to maintain confidentiality at Paragraph (2)(M) and to return all data at Paragraph (2)(K).

47. BOKFS Client Advisors (Wise and Davis) have incentive plans (Incentive Agreements) which include agreements not to solicit. Exhibit 5 (2018 Client Advisor Incentive Agreement); Exhibit 15 (2017 Client Advisor Incentive Agreement; Exhibit 16 (2016 Client Advisor Incentive Agreement).

48. BOKFS Sales Service Specialists (Morgeson Del Cid) have incentive plans with agreements not to solicit as well. Exhibit 7 (2018 Sales Service Specialist Incentive Agreement.

49. The Incentive Plans for Wise, Davis, for the years 2016, 2017, and 2018, by way of example only, and Morgeson Del-Cid, contain an agreement not to solicit established customers and an agreement not to solicit employees for one year following termination as follows.

> Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly

> solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.

Exhibit 5, 15, 16 (2018, 2017, 2016 Client Advisor Incentive Agreements (Wise & Davis)); Exhibit 7 (Securities Sales/Services Specialist Incentive Agreement (Del-Cid)).

50. The Individual Respondents received presentations referencing the respective agreements not to solicit. See emails transmitting Presentations referencing the Agreement Not to Solicit received by Wise and Davis: Exhibit 17 (2018-01-12 & 2018-02-21 Email Between Wise and Davis attaching Incentive Plan Presentation Plan referencing Agreement Not to Solicit); Exhibit 18 at p. 5 (2017-05-19 Email to Wise attaching Incentive Plan Presentation referencing Agreement Not to Solicit).

51. BOKFS employees, including Wise, Davis, and Morgeson Del-Cid were required to follow BOKFS Written Supervisory Procedures [WSPs].

52. BOKFS' Written Supervisory Procedures required that Wise, Davis, and Morgeson Del-Cid safeguard the privacy of customer records. Exhibit 19 (Chapter 2.7 Privacy) and Exhibit 20 (Chapter 2.19 Computer Records).

53. BOKFS Written Supervisory Procedures Index and particularly applicable excerpts, policies regarding Privacy and Customer Records, are attached hereto as Exhibit 19 (Chapter 2.7 Privacy) and Exhibit 20 (Chapter 2.19 Computer Records).

54. BOKFS FINRA Associated Persons are required to regularly certify (and Wise, Davis, and Morgeson Del-Cid did so regularly certify (promise)) that:

> **Q. 34** I am aware that information I obtain and material and/or applications I develop in the course of my employment is proprietary property of my employer and cannot be used to my advantage, nor taken with me, should I change employers.
>
> **Q. 39** I certify that I have received a copy of the BOKFS Written Supervisory Procedures and Bank Dealer policy manual, if applicable, that I have read and understood the requirements, and that I am in compliance with the requirements.

See, by way of example only, Responses to Questions 34 and 39, in particular at: Exhibit 21 (2018-02-01 Davis Certification); Exhibit 22 (2018-02-05 Morgeson Del Cid Certification); Exhibit 23 (2018-02-14 Wise Certification).

55. BOKFS relied on the certifications and representations of The Individual Respondents to policies and procedures, practices, Standards of Conduct, and Written Supervisory Procedures.

56. BOKFS relied on The Individual Respondents compliance with contractual obligations.

57. BOKFS' reliance on promises of Individual Respondents was reasonable.

58. Injustice can be avoided only by enforcement of promises made by The Individual Respondents.

**H. Wise Contractual Obligations**

59. BOKFS' practice is to have a Representative Agreement for FINRA registered personnel. Those Registered Representative Agreements include agreements regarding notice of termination, agreements not to solicit employees and customers, confidentiality and return of data. BOKFS is currently searching for a copy of Wise' Representative Agreement.

60. In addition, the terms of Wise's employment and termination of employment and obligations were/are controlled by policies and procedures, standards of conduct, and

applicable agreements. *See:* Exhibit 14; Exhibit 5, 15, 16 (Sample Wise 2018, 2017, 2016 Client Advisor Incentive Agreements).

> Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.

61. Respondent Wise had access to BOKFS confidential information.

**I. Davis Contractual Obligations**

62. The terms of Davis' employment and termination of employment and obligations thereafter were/are controlled by policies and procedures, standards of conduct, an agreement, referred to herein as the "Representative Agreement" and incentive agreements. *See:* Exhibit 8 (2012-04-03 Davis Representative Agreement); and Exhibit 5, 15, 16 (Sample Davis Client Advisor Incentive Agreements).

63. Under ¶ 4(b) of the Representative Agreement, Davis was obligated to give thirty (30) days' written notice of termination. Exhibit 8 (2012-04-03 Davis Representative Agreement):

> This Agreement may be terminated by either party at any time, without cause, but only by, giving thirty (30) days written notice to the other party.

64. Davis agreed not to solicit established customers and employees for one year following termination of employment with BOKFS.

> Shall not (i) directly solicit any established customer of BOSC for a period of one (1) year after the termination of this Agreement (for whatever reason, whether with or without cause) or (ii) solicit any employee of BOSC to accept employment with any entity for a period of one (1) year after termination of this Agreement (for whatever reason, whether with or without cause). This promise by Representative may be enforced by temporary, preliminary and permanent injunctive relief without the necessity of establishing irreparable injury and without the posting of any bond, in addition to any other remedies the law may provide. Without limiting the generality of the provisions of this paragraph, the phrase "directly solicit any established customer of BOSC" includes (i) making or participating in any mail ore·-mail communication to such customer which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

65. Davis agreed to a similar restrictive covenant by way of Davis' incentive program. See, by way of example, the Private Wealth Client Advisor Incentive Plans. Exhibit 5, 15, 16 (Sample 2018, 2017, 2016 Davis Client Advisor Incentive Agreements) (whereby Davis agreed as follows).

> Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.

66. Davis had access to BOKFS confidential information.

### J. Morgeson Del-Cid Contractual Obligations

67. The terms of Morgeson Del-Cid's employment and termination of employment and obligations thereafter were/are controlled by policies and procedures, standards of conduct, an agreement, referred to herein as the "Representative Agreement" and incentive agreements. *See:* Exhibit 9 (2006-06-21 Morgeson Del-Cid Representative Agreement) and Exhibit 7 (Morgeson Del-Cid Sales Service Specialist Incentive Agreement).

68. Under ¶ 4(b) of the Representative Agreement, Morgeson Del-Cid was obligated to give thirty (30) days' written notice of termination. Exhibit 9 (2006-06-21 Morgeson Del-Cid Representative Agreement):

> This Agreement may be terminated by either party at any time, without cause, but only by, giving thirty (30) days written notice to the other party.

69. Morgeson Del-Cid agreed not to solicit established customers and employees for one year following termination of employment with BOKFS. The Representative Agreements contained non-solicitation provisions in which Morgeson Del-Cid agreed that Morgeson Del-Cid:

> Shall not (i) directly solicit any established customer of BOSC for a period of one (1) year after the termination of this Agreement (for whatever reason, whether with or without cause) or (ii) solicit any employee of BOSC to accept employment with any entity for a period of one (1) year after termination of this Agreement (for whatever reason, whether with or without cause). This promise by Representative may be enforced by temporary, preliminary and permanent injunctive relief without the necessity of establishing irreparable injury and without the posting of any bond, in addition to any other remedies the law may provide. Without limiting the generality of the provisions of this paragraph, the phrase "directly solicit any established customer of BOSC" includes (i) making or participating in any mail ore·-mail communication to such customer which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii) having or participating in any meeting with or making or participating in telephone call to such customer

unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

70. Morgeson Del Cid agreed to a similar restrictive covenant by way of Morgeson Del Cid's incentive program. See, the BOKFS Sales Service Specialist Incentive Plan. Exhibit 7 (whereby Morgeson Del-Cid agreed as follows).

> Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.

71. Morgeson Del-Cid had access to BOKFS confidential information.

**K. Awareness of Contractual Obligations**

72. Wise was aware of:

   a. BOKFS Representative Agreements.
   b. BOKF Incentive Plans.
   c. Wise's:
      i. Incentive Agreement(s).
   d. Davis'
      i. Representative Agreement.
      ii. Incentive Agreement(s).

   e. Morgeson Del-Cid's:
      i. Representative Agreement.
      ii. Incentive Agreement(s).

73. Davis was aware of:

   a. BOKFS Representative Agreements.
   b. BOKF Incentive Plans.

    c. Davis's
    i. Representative Agreement.
    ii. Incentive Agreement(s).
d. Morgeson Del-Cid's:
    i. Representative Agreement.
    ii. Incentive Agreement(s)
e. Wise's:
    i. Incentive Agreement(s).

74. Morgeson Del-Cid was aware of:

a. BOKFS Representative Agreements.
b. BOKF Incentive Plans.
c. Morgeson Del-Cid's:
    i. Representative Agreement
    ii. Incentive Agreement(s)
d. Wise's:
    i. Incentive Agreement(s);
e. Davis'
    i. Representative Agreement
    ii. Incentive Agreement(s).

75. Wise acted in reckless disregard of Agreements with and obligations to BOKFS.

76. Davis acted in reckless disregard of Agreements with and obligations to BOKFS.

77. Morgeson Del-Cid acted in reckless disregard of Agreements with and obligations to BOKFS.

78. The Hilltop Respondents knew and/or should have known of trade secrets and customer confidentiality requirements and obligations.

79. The Hilltop Respondents knew or should have known of the potential existence of agreements regarding notice, confidentiality, return of data, and restrictive covenants.

80. Upon information and belief, the Hilltop Respondents knew of the actual existence of agreements regarding notice, confidentiality, return of data, and restrictive covenants for: (i) Wise, (ii) Davis, and (iii) Morgeson Del-Cid.

81. Upon information and belief, the Hilltop Respondents acted in reckless

indifference of trade secrets and customer confidentiality laws.

82. Upon information and belief, the Hilltop Respondents acted in reckless indifference to the actual existence of agreements regarding notice, confidentiality, return of data, and restrictive covenants.

### L. CONCERTED EXODUS OF THE INDIVIDUAL RESPONDENTS WITHOUT NOTICE[7]

83. Wise, Davis, and Morgeson Del-Cid, and the Hilltop Respondents began concerted action before simultaneous resignations without notice on Friday, March 23, 2018, over the Spring Break holidays.

84. Upon information and belief, Wise solicited Davis:

a. to resign from BOKFS;
b. to join the Hilltop Respondents.

85. Upon information and belief, Davis solicited Wise:

a. to resign from BOKFS;
b. to join the Hilltop Respondents.

86. Upon information and belief, Wise solicited Morgeson Del-Cid:

a. to resign from BOKFS;
b. to join the Hilltop Respondents.

87. Upon information and belief, Davis solicited Morgeson Del-Cid:

a. to resign from BOKFS;
b. to join the Hilltop Respondents.

88. Upon information and belief all some or all of the Respondents conspired to raid BOKF's Dallas, Texas Client Advisor Team.

89. Starting on at least March 9, 2018 and continuing over a period of days, Wise and

---

[7] BOKF's investigation is ongoing. BOKFS reserves the right to provide additional information and/or otherwise amend its filing.

Del-Cid printed significant volumes of confidential customer information. See the following table, by way of example only as BOKFS is continuing to investigate the concerted departure of The Individual Respondents.

| | Date | Time | No. Matches / No. Customers | Exhibit No. |
|---|---|---|---|---|
| Del-Cid | 3/9/2018 | 16:32 | 155 | Exhibit 24 |
| Wise | 3/14/2018 | 08:39 | 78 | Exhibit 25 |
| Del-Cid | 3/16/2018 | 13:17 | 44 | Exhibit 26 |
| Wise | 3/16/2018 | 15:33 | 105 | Exhibit 27 |
| Del-Cid | 3/16/2018 | 16:05 | 129 | Exhibit 28 |
| Del-Cid | 3/16/2018 | 16:21 | 18 | Exhibit 29 |
| RECORDS PRINTED | | | **529** | |

90.    The week of March 19, 2018 through March 23, 2018 was the week of Spring Break.

91.    On March 7, 2018, The Individual Respondents were invited by Vince Manna at BOKFS to attend a team outing at TopGolf on several dates including, Friday March 23, 2018.  The Individual Respondents did not respond. The Individual Respondents lack of responses were out of character.  On Monday, March 19, 2018, Manna updated the calendar invitation asking, "How does everybody look this Friday?" Only Wise responded, immediately declining the event.  Exhibit 30 (2018-03-07 Email of Vince Manna).

92.    On Friday, March 23, 2018 of the Spring Break holidays, at approximately 8:30 a.m., Wise and Davis went to the office of Patrick J. Staudt, a Senior Vice President of BOKFS and their manager.

93.    Wise said to Staudt, "This is not going to be a good day for you." Wise then presented three labeled envelopes, prepared in advance of the meeting, one for Wise, one for Davis, and one for Morgeson Del Cid, and said "We are done", resigning for all three employees.  Each envelope contained access items for each individual Respondent

(keys for office, desk, and file cabinets, and security access cards, and credit cards for Wise and Davis).

94. Davis presented a resignation letter without saying a word. Exhibit 1 2018-03-23 Resignation of Davis; Exhibit 2 2018-03-23 Formal Resignation of Morgeson Del-Cid to Lisa Shannon; Exhibit 8 and Exhibit 9 at ¶ (4)(b) [30 day advance notice requirement].

95. Wise and Davis refused to speak any further with Mr. Staudt.

96. The concerted resignations, which were jointly coordinated and during which only Wise spoke, and at which Morgeson Del-Cid did not appear, occurred in less than two (2) minutes.

97. Thus, Wise, Davis and Morgeson Del-Cid, in concert, resigned employment with BOKF, without providing advanced notice as required by the Representative Agreements of Davis and Morgeson Del-Cid. Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del-Cid Representative Agreement).

98. In summary, on the Friday, March 23, 2018, during the Spring Break holiday, in calculated fashion on, in conspiracy with some or all of the Hilltop Respondents, Wise, Davis and Morgeson Del-Cid, with no prior notice, and certainly Davis and Morgeson without 30 days' notice as required by agreements, resigned from BOKFS.

99. Wise, Davis and Morgeson Del-Cid were immediately employed by the Hilltop Respondents at offices located in the Dallas, Texas area.

100. Upon information and belief, some combination of Wise, Davis, and Morgeson Del-Cid are sharing compensation and/or revenue streams at their new employer(s).

101. Upon information and belief, Wise and Davis are sharing revenues streams at their new employer(s).

102. Therefore, each combination of The Individual Respondents who are sharing compensation and/or revenue streams, is profiting by breaches of Agreements with BOKFS.

103. For example, Wise would directly benefit by the breaches of Davis. Davis would directly benefit by breaches of Wise.

104. Some or all of Wise, Davis and/or Morgeson Del-Cid immediately began a concerted campaign to solicit BOKF customers contacting BOKF customers by phone and, upon information and, upon information and belief, other methods. By way of example only:

a. The Respondents left some customers, at best confused and, at worst, with the misrepresentation that Hilltop had purchased Bank of Texas.

b. Early in the day on Friday, customers reported that "Our whole team there just left."

**M. Receipt of Demand Letter and Actions Thereafter**

105. As discussed at the outset of this filing, on Friday, March 23, 2018 by the close of business, BOKFS transmitted, by email to Wise and Morgeson Del Cid, and, by overnight courier to all parties, a letter with reminders regarding obligations, demands to comply with applicable agreements, demands to search for and return BOKFS data, and demands to preserve all documents and tangible items pertaining to the transition of employment. Exhibit 3 (Email Transmitting Reminder and Demand Letter to Wise and Morgeson) and Exhibit 4 (Attached Letter dated 2018-03-23) with: Exhibit 5 (Sample 2018 Client Advisor Incentive Agreement); Exhibit 8 (2012-04-03 Davis Representative Agreement); Exhibit 9 (2006-06-21 Morgeson Del Cid Representative Agreement); Exhibit 7 (Sample Morgeson Del-Cid 2018 Sales/Security Specialist Incentive

Agreement).

106. On Sunday, March 25, 2018 at 4:20 p.m., counsel the Respondents responded to BOKF's demand letter through joint counsel, for all of the Respondents. Exhibit 31.

107. Not a single respondent has agreed to follow an agreement.

108. Not a single respondent agreed to return confidential data.

109. Wise has been using BOKF data to contact customers since resigning from BOKFS

110. Wise been contacting BOKF customers since resigning from BOKFS

111. Wise has been soliciting BOKF customers since resigning from BOKFS

112. Upon information and belief, Wise has been assisting Davis in contacting customers.

113. Upon information and belief, Wise has been assisting Davis in soliciting customers.

114. Upon information and belief, Wise has been assisting Morgeson Del-Cid in contacting customers.

115. Upon information and belief, Wise has been assisting Morgeson Del-Cid in soliciting customers.

116. Davis has been using BOKF data to contact customers since resigning from BOKFS

117. Davis has been contacting BOKF customers since resigning from BOKFS

118. Davis has been soliciting BOKF customers since resigning from BOKFS

119. Upon information and belief, Davis has been assisting Wise in contacting customers.

120. Upon information and belief, Davis has been assisting Wise in soliciting customers.

121. Upon information and belief, Davis has been assisting Morgeson Del-Cid in contacting customers.

122. Upon information and belief, Davis has been assisting Morgeson Del-Cid in soliciting customers.

123. Upon information and belief, Morgeson Del-Cid has been contacting BOKF customers since resigning from BOKFS.

124. Upon information and belief, Morgeson Del Sid has been soliciting BOKF customer since resigning from BOKFS.

125. Upon information and belief, Morgeson Del-Cid has been assisting Wise in contacting BOKF customers.

126. Upon information and belief, Morgeson Del-Cid has been assisting Wise in soliciting BOKF customers.

127. Upon information and belief, Morgeson Del-Cid has been assisting Davis in contacting customers.

128. Upon information and belief, Morgeson Del-Cid has been assisting Davis in soliciting BOKF customers.

129. Since resigning from BOKF, Wise has:

a. been contacting BOKF customers in spite of:

   i. Wise's Incentive Agreement. Exhibit 5, 15, 16.

   ii. Davis' Representative Agreement. Exhibit 8

   iii. Davis' Incentive Agreements. Exhibit 5, 15, 16

   iv. Morgeson Del-Cid's Representative Agreement. Exhibit 9

   v. Morgeson Del-Cid's Incentive Agreement. Exhibit 7.

    b. been soliciting BOKF customers in spite of:

i. Wise's Incentive Agreement. Exhibit 5, 15, 16.

ii. Davis' Representative Agreement. Exhibit 8

iii. Davis' Incentive Agreements. Exhibit 5, 15, 16

iv. Morgeson Del-Cid's Representative Agreement. Exhibit 9

v. Morgeson Del-Cid's Incentive Agreement. Exhibits 7.

c. been supporting Davis in efforts to contact BOKF customers.

d. been supporting Davis in efforts to solicit BOKF customers.

130. Since resigning from BOKF, Davis has:

a. been contacting BOKF customers in spite of:

i. Wise's Incentive Agreement. Exhibit 15.

ii. Davis' Representative Agreement. Exhibit 8

iii. Davis' Incentive Agreements. Exhibit 15

iv. Morgeson Del-Cid's Representative Agreement. Exhibit 9.

v. Morgeson Del-Cid's Incentive Agreement. Exhibit 7.

131. Since resigning from BOKF, Davis has:

a. been soliciting BOKF customers in spite of:

i. Wise's Incentive Agreement. Exhibit 5, 15, 16.

ii. Davis' Representative Agreement. Exhibit 8.

iii. Davis' Incentive Agreements. Exhibit 5, 15, 16

iv. Morgeson Del-Cid's Representative Agreement. Exhibit 9

v. Morgeson Del-Cid's Incentive Agreement. Exhibit 7.

b. been supporting Wise in efforts to contact BOKF customers.

    c. been supporting Wise in efforts to solicit BOKF customers.

132. Since resigning from BOKF, Morgeson Del-Cid has:

a. been contacting BOKF customers in spite of:

i. Wise's Incentive Agreement. Exhibit 5, 15, 16.

ii. Davis' Representative Agreement. Exhibit 8.

iii. Davis' Incentive Agreements. Exhibit 5, 15, 16

iv. Morgeson Del-Cid's Representative Agreement. Exhibit 9

v. Morgeson Del-Cid's Incentive Agreement. Exhibit 7.

b. been soliciting BOKF customers in spite of:

i. Wise's Incentive Agreement. Exhibit 5, 15, 16.

ii. Davis' Representative Agreement. Exhibit 8.

iii. Davis' Incentive Agreements. Exhibit 5, 15, 16.

iv. Morgeson Del-Cid's Representative Agreement. Exhibit 9.

v. Morgeson Del-Cid's Incentive Agreement. Exhibit 7.

c. been supporting Wise in efforts to contact BOKF customers.

d. been supporting Wise in efforts to solicit BOKF customers.

e. been supporting Davis in efforts to contact BOKF customers.

f. been supporting Davis in efforts to solicit BOKF customers.

133. The Respondents have been contacting BOKF customers in spite of:

a. Wise's Incentive Agreement. Exhibit 5, 15, 16.

b. Davis' Representative Agreement. Exhibit 8.

c. Davis' Incentive Agreements. Exhibit 5, 15, 16

d. Morgeson Del-Cid's Representative Agreement. Exhibit 9

     e. Morgeson Del-Cid's Incentive Agreement. Exhibit 7.

134. The Respondents have been soliciting BOKF customers in spite of:

a. Wise's Incentive Agreement. Exhibit 5, 15, 16.

b. Davis' Representative Agreement. Exhibit 8.

c. Davis' Incentive Agreements. Exhibit 5, 15, 16

d. Morgeson Del-Cid's Representative Agreement. Exhibit 9

e. Morgeson Del-Cid's Incentive Agreement. Exhibit 7.

N. **Irreparable Harm**

135. BOKFS incorporates Paragraphs 1 through 133 as if fully set forth in this section.

136. Upon information and belief, the Respondents are in possession of BOKF's Confidential Information and Trade Secrets.

137. The Respondents are using BOKF Confidential Information and Trade Secrets to contact and solicit customers.

138. As set forth in Paragraph 103, Respondents have left BOKF customers:

a. Under the impression that Bank of Texas sold to Hilltop; and

b. Aware that the entire team left early on Friday morning (in spite of BOKF's right to advance notice).

c. Disconcerted regarding contact from The Individual Respondents since their abrupt concerted departure from BOKFS on Friday, March 23, 2018.

139. Once a customer moves accounts, the BOKF customer relationship is lost and damages are ongoing.

140. Customers are being confused by the Respondents contacts.

141. BOKF is losing customers and associated revenues

142. BOKF's customer losses will extend well into the future.

143. If left unrestrained, the Respondents, jointly and/or severally, will continue to use, disseminate or continue to use or disseminate BOKF's Confidential Information and Trade Secrets for the benefit of themselves or others, thereby, enabling The Individual Respondents and others to unfairly compete with BOKF in the highly-competitive financial services industry.

144. BOKFS will suffer immediate and irreparable harm if the Individual Respondents' misappropriation of BOKF's Confidential Information and Trade Secrets and violations of their confidentiality obligations to BOKFS are not immediately enjoined.

**O. RIGHT TO EQUITABLE RELIEF**

145. BOKF incorporates Paragraphs 1 through 143 as if fully set forth in this section.

**1. Likelihood of Success on the Merits.**

146. BOKFS is likely to succeed on the merits of its claims because: (1) The Individual Respondents have misappropriated BOKF's valuable Confidential Information and Trade Secrets; (2) Respondents Davis and Morgeson Del-Cid have breached the valid and enforceable agreement to maintain as confidential BOKF's Confidential Information and Trade Secrets and return company property upon termination; and (3) The Individual Respondents have violated agreements not to solicit employees; and The Individual Respondents continue to violate Agreements Not to Solicit even after being provided copies of the agreements.

147. The non-solicitation provisions at issue are reasonable and narrow in scope as they are limited to one year following termination of employment and limited to prohibit only the direct solicitation of established BOKF customers and/or employees.

148. The solicited customers were established BOKF customers.

149. BOKFS will also likely prevail on its claims that Respondents have misused

BOKF's Confidential Information and Trade Secrets. Respondents could not have made direct contact with BOKF customers without the use of BOKF's customer list or customer contact information.

**2. Irreparable Harm.**

150. As set forth in Section L, ¶¶ 82-103, and ¶ 88 in particular, the Respondents are misusing BOKF confidential information.

151. As set forth in Section L, ¶¶ 82-103, and ¶ 103 in particular, contacting and soliciting BOKF customers to BOKF's detriment.

152. BOKFS' business opportunities, competitive advantages, Confidential Information and Trade Secrets, and relations with its customers, employees, and other business associates will be irreparably harmed if injunctive relief is not entered.

**3. Equities of the Parties and Public Policy.**

153. BOKFS will suffer far greater harm if injunctive relief is not granted than the Respondents will suffer if injunctive relief is granted. By contrast, Respondents will suffer minimal harm and will simply be required to not use the BOKF Confidential Information and Trade Secrets.

154. Granting injunctive relief serves the public interest.

155. FINRA's recognition of the propriety of injunctive relief tips the balance of equities strongly in BOKFS' favor because all parties are subject to FINRA regulation. FINRA expressly approves of pre-arbitration injunctive relief to preserve the status quo pending resolution of the claims on their merits.

**Count 1.**

**(Injunctive Relief Pursuant)[8]**

156. BOKFS restates, realleges, and incorporates herein by reference all paragraphs of this Complaint.

157. By virtue of the foregoing, BOKFS has demonstrated a likelihood of success on the merits on the claims pled herein and that a balancing of the equities favors the issuance of a temporary restraining order, preliminary injunction, and permanent injunction against Respondents.

158. The alleged misconduct of Respondents, described hereinabove, by virtue of the direct customer solicitation and misuse of BOKFS Confidential Information, if allowed to continue, will irreparably harm and injure BOKFS during the pendency of this action.

159. The Hilltop Respondents are liable for their own acts and omissions, as well as the acts and omissions of The Individual Respondents described herein, pursuant to the doctrine *respondent superior*.

160. Respondents' misconduct, described hereinabove, if allowed to continue, would violate BOKF's rights, including but not limited to, BOKF's rights arising from: (i) the Agreements described herein, and (ii) the common law and statutory causes of action asserted herein.

161. As set forth above, unless the Court issues a temporary restraining order herein preserving the *status quo*, Respondents will continue to irreparably harm the business and affairs of BOKFS. This alleged misconduct is imminent and ongoing and will

[8] BOKF has filed this same date an Emergency Application seeking Injunctive Relief. Northern District Matter [Doc. 003].

irreparably harm BOKFS before Respondents and/or their counsel can be heard in opposition thereto.

162. The nature of the damages incurred by BOKFS through Respondents' alleged misconduct is and will continue to be unique, irreparable, and immediate as set forth above, and will afford BOKFS no adequate remedy at law because of the unique nature of the damages and injuries.

163. Injunctive relief is appropriate for the immediate and ongoing harm being caused by the Respondents.

164. Representatives agreed in the Representative Agreement, that the non-solicitation obligations may be enforced by temporary and permanent injunctive relief.

165. BOKFS hereby respectfully applies to the Court for a Temporary Restraining Order, for a preliminary injunction during the pendency of this litigation and, thereafter, for a permanent injunction, ordering Respondents to refrain from doing any or all of the following, either directly or indirectly, acting individually or in concert, or with the assistance of any other person:

a. directly soliciting in any manner (by telephone, mail, internet, e-mail or any other type of communication) any securities business from any established client or customer of BOKF;

b. making or participating in any mail or email communication to a BOKF customer which is not part of a mass mailing to a public of which established customers of BOKF are an insignificant part the purpose of which was not to communicate with established customers of BOKF and (ii) having or participating in any meeting with or making or participating in

telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

c. using, disclosing, or transmitting for any purpose, including solicitation of said clients or customers, the information contained in the BOKF Confidential Information, including, but not limited to, the names, addresses, and confidential financial information of the clients or customers referenced therein; and that all original records and copies and/or other reproductions thereof, in whatever form, be returned to BOKF immediately;

d. ordering Respondents to provide a list of all BOKF customers to whom Respondents have contacted or solicited, either directly or indirectly, and a script of such contacts;

e. ordering Respondents to return immediately all BOKF Confidential Information in their possession;

f. and all other such acts as this Court deems appropriate for injunctive relief.

Based on the foregoing, BOKFS prays for entry of a temporary restraining order, for a preliminary injunction during the pendency of this litigation and, thereafter, for a permanent injunction, in its favor.

**Count II.**
**Violation of the Defend Trade Secrets Act**
**18 U.S.C. § 1831, et. seq.**

166. BOKFS incorporates and realleges the allegations contained in ¶¶s 1-164 above as if fully set forth herein.

167. BOKFS owns valuable Confidential Information and Trade Secrets, including but not limited to, customer lists and data, and confidential and proprietary business information and methods.

168. BOKFS has spent significant time and money developing such Confidential Information and Trade Secrets.

169. The Confidential Information and Trade Secrets are kept confidential and not publicly disclosed.

170. BOKFS provided The Individual Respondents access to and use of its Confidential Information and Trade Secrets in the course of each of their long-term employment.

171. The Confidential Information and Trade Secrets to which The Individual Respondents had access is related to BOKF's financial services that are used in, or intended for use in, interstate or foreign commerce.

172. Misappropriation of this type of information undermines BOKF's competitive position in the highly competitive financial services industry.

173. The Individual Respondents misappropriated BOKF's Confidential Information and Trade Secrets in order to benefit themselves and the Hilltop Respondents and Hilltop Affiliates.

174. The Individual Respondents misappropriated BOKF's Confidential Information and Trade Secrets in order to benefit the Hilltop Respondents and Hilltop Affiliates.

175. The Individual Respondents misappropriated BOKF's Confidential Information and Trade Secrets in order to benefit themselves and the Hilltop Respondents.

176. The Respondents' use of BOKF's Confidential Information and Trade Secrets to contact BOKF's customers is done knowingly, willfully, and intentionally without the

consent of BOKFS.

177. Use of BOKF confidential information:

a. Has caused immediate and irreparable harm to BOKF; and

b. Will continue to cause immediate and irreparable harm to BOKFS.

178. Pursuant to § 1836 of the Defend Trade Secrets Act, BOKFS is entitled to injunctive relief from this Court.

179. As a direct and proximate result of Respondents' actions and inactions, BOKFS has been harmed and will continue to be harmed by the Respondents' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

180. As a direct and proximate result of Respondents' actions, BOKFS has suffered or will suffer damages in an amount in an unspecified amount.

**Count III.**
**Violation of the Texas Uniform Trade Secrets Act**
**Tex. Civ. Prac. & Rem. Code § 134A.001 et. seq.**

181. BOKFS incorporates and realleges the allegations contained in ¶¶s 1-179 above as if fully set forth herein.

182. By virtue of Wise's employment relationship with BOKF, Wise was obligated to maintain the confidentiality of BOKF's Confidential Information and Trade Secrets.

183. By virtue of Davis' employment relationship with BOKF, Davis was obligated to maintain the confidentiality of BOKF's Confidential Information and Trade Secrets.

184. By virtue of Morgeson Del-Cid's employment relationship with BOKF, Morgeson Del-Cid was obligated to maintain the confidentiality of BOKF's Confidential Information and Trade Secrets.

185. Respondent Wise acknowledged Wise's confidentiality obligations to BOKFS in Wise's attestation to the Standards of Conduct.

186. Respondent Davis acknowledged Wise's confidentiality obligations to BOKFS in Davis' attestation to the Standards of Conduct.

187. Respondent Davis and acknowledged confidentiality obligations to BOKFS in Davis' Representative Agreement.

188. Respondent Morgeson Del-Cid acknowledged confidentiality obligations to BOKFS in Wise's attestation to the Standards of Conduct.

189. Respondent Morgeson Del-Cid acknowledged Morgeson Del-Cid's confidentiality obligations to BOKFS in Davis' Representative Agreement.

190. BOKFS requires its employees to keep confidential BOKF's customer information and trade secrets.

191. BOKFS employees are obligated to adhere to Standards of Conduct which include confidentiality obligations. BOKFS employees are obligated to regularly attest to Standards of Conduct.

192. BOKFS employees certify (make promises) to keep customer information private, BOKF's Confidential Information and Trade Secrets are kept confidential and are not publicly disclosed.

193. BOKFS derives economic and financial value from the confidentiality of BOKF Confidential Information and Trade Secrets.

194. The Individual Respondents have misappropriated BOKF's Confidential Information and Trade Secrets, including the use of customer lists to contact BOKF customers, in violation of the Texas Uniform Trade Secrets Act.

195. The Individual Respondents have disclosed and will continue to disclose and use BOKF's Confidential Information and Trade Secrets to compete directly against BOKFS.

196. This misappropriation is unauthorized and conducted with the specific intent to harm BOKFS and exploit BOKF's competitive advantage.

197. The Individual Respondents have been unjustly enriched as a result of their misappropriation.

198. The threatened and actual injuries that BOKFS has suffered and will suffer are immediate and irreparable. Because of the difficulty in quantifying injury and harm to BOKF's ability to compete, acquire and maintain a competitive advantage through its Confidential Information and Trade Secrets. The Individual Respondents' wrongful use of such Confidential Information and Trade Secrets cannot be adequately compensated by damages alone.

199. BOKFS lacks an adequate and compete remedy at law and an equitable remedy is appropriate to protect the economic and financial value of BOKF's Confidential and Trade Secrets from the Respondents' misappropriation.

200. Pursuant to § 134A.003 of the Texas Uniform Trade Secrets Act, BOKFS is entitled to injunctive relief from this Court.

201. As a direct and proximate result of Respondents' actions and inactions, BOKFS has been harmed and will continue to be harmed by the Respondents' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

202. As a direct and proximate result of Respondents' actions, BOKFS has suffered or will suffer damages in an amount in an unspecified amount.

**Count IV.**
**Breach of Contract By The Individual Respondents**

203. BOKFS incorporates and realleges the allegations contained in ¶¶ 1-202 above as if fully set forth herein.

204. BOKFS promised to provide confidential information, strategies, and training to The Individual Respondents.

205. BOKFS provided confidential information and strategies and training to The Individual Respondents.

206. Wise promised and agreed to abide by the terms of the Agreements in consideration for the compensation, benefits, training, employment and opportunities provided by BOKFS.

207. Davis promised and agreed to abide by the terms of the Agreements in consideration for the compensation, benefits, training, employment and opportunities provided by BOKFS.

208. Morgeson promised and agreed to abide by the terms of the Agreements in consideration for the compensation, benefits, training, employment and opportunities provided by BOKFS.

209. Wise breached the Agreements in the following ways:

a. Participating in the failure to furnish 30-day notice of termination of the Agreements;

b. directly soliciting established BOKFS customers in wrongful conspiracy with the Hilltop Respondents; and,

c. removing and failing to return immediately, and wrongfully converting and using, BOKFS Confidential Information; and

d. conspiring to breach Agreements.

210. Davis breached the Agreements in the following ways:

a. failing to furnish 30-day notice of termination of the Agreements;

b. directly soliciting established BOKFS customers in wrongful conspiracy with the Hilltop Respondents; and,

c. removing and failing to return immediately, and wrongfully converting and using, BOKFS Confidential Information; and

d. conspiring to breach Agreements.

211. Morgeson Del-Cid breached the Agreements in the following ways:

a. failing to furnish 30-day notice of termination of the Agreements;

b. directly soliciting established BOKFS customers in wrongful conspiracy with the Hilltop Respondents; and,

c. removing and failing to return immediately, and wrongfully converting and using, BOKFS Confidential Information; and

d. conspiring to breach Agreements.

212. Each of the Respondents, by concerted action, and in conspiracy with the Respondents assisted Wise, Davis and Morgeson Del-Cid, in their breaches and violations.

213. The Hilltop Respondents, by concerted action, and in conspiracy with the Respondents assisted Wise, Davis, and Morgeson Del-Cid, in their breaches and violations.

214. As a direct and proximate result of Respondents' actions and inactions, BOKFS has been harmed and will continue to be harmed by the Respondents' actions and

inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at arbitration (or trial as applicable).

215. As a direct and proximate result of (i) The Individual Respondents breaches of duties of loyalty, and (ii) breaches of the Agreements, and (iii) their concerted action and conspiracy, BOKFS has suffered or will suffer damages in an unspecified amount.

**Count V.**
**Reliance/Estoppel**

216. BOKFS incorporates and realleges the allegations contained in ¶¶s 1-215 above as if fully set forth herein.

217. The Individual Respondents each made promises to BOKFS as set forth in this Complaint.

218. The Individual Respondents each reasonably expected BOKFS to rely (to take certain actions and/or to forbear certain actions) upon the promises of The Individual Respondents, taking certain actions and/or forbearing certain actions.

219. BOKFS relied on the promises of each of The Individual Respondents, taking certain actions and/or forbearing certain actions.

220. Injustice can only be avoided by enforcement of each of The Individual Respondents' promises.

221. As a direct and proximate result of Respondents' actions and inactions, BOKFS has been harmed and will continue to be harmed by the Respondents' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

222. As a direct and proximate result of Respondents' actions, BOKFS has suffered or will suffer damages in an amount in an unspecified amount.

**Count VI.**
**Unjust Enrichment**

223. BOKFS incorporates and realleges the allegations contained in ¶¶s 1-222 above as if fully set forth herein.

224. The Individual Respondents have wrongfully retained and utilized the benefits of BOKF's Confidential Information and Trade Secrets to benefit themselves in their new working relationships with the Hilltop Respondents.

225. The benefits wrongfully utilized by The Individual Respondents enrich themselves and the Hilltop Respondents to the loss and detriment of BOKFS.

226. BOKFS is entitled to recover the value of the benefits wrongfully retained and utilized by the Respondents.

227. The Individual Respondents would be unjustly enriched if allowed to retain incentive compensation to the extent Incentive Agreements and the agreements not to solicit contained therein are not enforced.

228. The Individual Respondents would each be unjustly enriched by the wrongful conduct of another individual Respondent due to compensation and/or revenue sharing arrangements.

229. Upon information and belief, if a Representative Agreement for Wise is not located, BOKFS made efforts to ensure that all of its Registered Representatives returned Representative Agreements. By Wise's continued employment with BOKFS and Wise's acceptance of BOKF's performance of its obligations under the terms of a Representative Agreement, without which Wise could not have continued working and/or receiving commissions from BOSC, Inc., as a registered representative, Wise made an implied promise to adhere to the terms of the Representative Agreement that was relied upon by

BOKFS.

230. Wise would be unjustly enriched to BOKF's detriment if allowed to retain the benefits of a Representative Agreement, if the terms of the Representative Agreement are not enforced in favor of BOKFS.

231. As a direct and proximate result of Respondents' actions and inactions, BOKFS has been harmed and will continue to be harmed by the Respondents' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

232. As a direct and proximate result of Respondents' actions, BOKFS has suffered or will suffer damages in an amount in an unspecified amount.

**Count VII.**
**Tortious Interference with Contracts and Business Expectancies by the Hilltop Respondents**

233. BOKFS incorporates and realleges the allegations contained in ¶¶s 1-232 above as if fully set forth herein.

234. BOKFS has valid and enforceable contracts with:

a. Wise;
b. Davis;
c. Morgeson Del-Cid.

235. BOKFS has valid contracts and business expectancies with customers.

236. The Hilltop Respondents knew of BOKF's contracts with The Individual Respondents.

237. The Hilltop Respondents knew of BOKF's business expectancies with customers.

238. The Hilltop Respondents knew that the contracts were intended to protect BOKF's substantial investment in its business operations, customers, and employees.

239. The Hilltop Respondents encouraged, induced, facilitated, abetted and intended

The Individual Respondents to breach their contracts with BOKFS.

240. The Hilltop Respondents encouraged, induced, facilitated, and abetted, misuse of the Confidential Information and Trade Secrets misappropriated by The Individual Respondents to the pecuniary benefit of the Hilltop Respondents.

241. As a direct and proximate result of Respondents' actions and inactions, BOKFS has been harmed and will continue to be harmed by the Respondents' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

242. As a direct and proximate result of Respondents' actions, BOKFS has suffered or will suffer damages in an amount in an unspecified amount.

**Count VIII. Breach of Duty of Loyalty**

243. BOKFS incorporates and realleges the allegations contained in ¶¶s 1-242 above as if fully set forth herein.

244. The Individual Respondents owed a duty of loyalty to BOKFS.

245. The Individual Respondents violated their duties of loyalty to BOKFS soliciting one another in breach of respective agreements in favor of BOKFS.

246. The Individual Respondents wrongfully misappropriated BOKF's Confidential Information and Trade Secrets, including customer lists now being used to solicit BOKFS customers.

247. The Individual Respondents ignored their obligations not to solicit BOKFS customers.

248. The Individual Respondents engaged in a concerted plan to leave BOKFS without notice in violation of agreements in favor of BOKFS.

249. The Individual Respondents have breached their duties of loyalty to BOKFS.

250. As a direct and proximate result of Respondents' actions, BOKFS has been harmed and will continue to be harmed by the Respondents' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

251. As a direct and proximate result of Respondents' actions, BOKFS has suffered or will suffer damages in an amount in an unspecified amount.

**Count IX.**

**Conspiracy**

252. BOKFS restates, realleges, and incorporates herein by reference all of the allegations contained in Claimant BOKF's Complaint including paragraphs 1 through 251 above.

253. Each of the respondents has, individually and/or jointly, encouraged BOKFS customers to leave their relationship with BOKFS.

254. The interference by each of the respondents, individually and/or jointly, did cause actual loss to BOKFS for which BOKFS seeks damages here.

255. The interference by each of the respondents, individually and/or jointly, will cause actual loss to BOKFS for which BOKFS seeks damages here.

256. In committing the acts described hereinabove, the Individual Respondents and Hilltop conspired to combine and act in concert with the intent to wrongfully interfere with BOKF'S economic, business and contractual relations, rights and interests.

257. The Individual Respondents and Hilltop acted intentionally, with malice and with reckless disregard for BOKF's rights.

258. As a direct and proximate result of The Individual Respondents' actions and Hilltop Hilltop's actions, BOKFS has been harmed and will continue to be harmed by the Hilltop's actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

259. As a direct and proximate result of Hilltop's wrongful conspiracy, BOKFS has suffered or will suffer damages in an amount in an unspecified amount.

## III. PRAYER FOR RELIEF

### A. Injunctive Relief

WHEREFORE, BOKFS respectfully requests that this Court award injunctive relief to BOKFS in the form of an Order:

a. Requiring the Individual Respondents to immediately return and deliver to the Plaintiffs all tangible property and information in hard copy form;

b. Requiring the Individual Respondents to preserve all electronically stored BOKF Confidential Information and Trade Secrets and each tangible item upon which confidential information is contained;

c. Requiring the Individual Respondents to allow a third-party forensic vendor to image all electronic devices and systems the Individual Respondents have used since January 1, 2018, to identify any BOKF Confidential Information and Trade Secrets existing on those devices and to, one the parties are satisfied that all evidence has been forensically preserved and this matter has concluded, delete thereafter all BOKF Confidential Information and Trade Secrets existing on those devices;

d. Enjoining the Individual Respondents from (i) misappropriating,

using or disclosing to any person or entity BOKF's Confidential Information and Trade Secrets or (ii) possessing any original or copies of BOKF's Confidential and Trade Secrets in any form;

e. Enjoining the Respondents from contacting BOKF customers for thirty (30) days;

f. Enjoining the Individual Respondents from soliciting BOKF'S customers;

g. Enjoining the Respondents from soliciting BOKF employees in violation of applicable agreements.

Granting to BOKF such other and further relief that this Court deems just and proper.

**B. Non-Injunctive Relief and FINRA Associated Persons and FINRA Member Firms.**

WHEREFORE, BOKFS requests that FINRA award judgment for BOKFS and against the Individual Respondents (FINRA Associated Persons) and the Hilltop Respondents (FINRA Member Firms) as requested herein, for prejudgment and post judgment interest, for attorney's fees and costs, and for such other relief as this Court shall deem just and proper.[9]

[9] BOKFS reserves its claims over persons not subject to mandatory FINRA jurisdiction for the Northern District matter.

Respectfully submitted,

s/Erica Anne Dorwart
Frederic Dorwart, OBA # 2436*
Erica Anne Dorwart, OBA #18367*
John D. Clayman
Texas Bar Number 24066338
FREDERIC DORWART, LAWYERS
124 East Fourth Street
Tulsa, Oklahoma 74103
jclayman@fdlaw.com
(918) 583-9922 (Tel.)
(918) 584-2729 (Fax)

* These attorneys will likely seek pro hac vice admission.

Attorneys for Claimants, BOKF, NA and BOK Financial Securities, Inc.

## VERIFICATION

**State of Texas** §
§ **ss.**
**County of Dallas** §

I, Patrick J. Staudt, Senior Vice President of BOKF, NA, upon being duly sworn and upon oath, state that I have read and reviewed the factual allegations contained in the foregoing document provided above and they are true and correct based upon my personal knowledge and belief.

Patrick J. Staudt
Senior Vice President

Subscribed to and sworn to before me this 30th day of March, 2018, by Patrick J. Staudt, Senior Vice President of BOKF, NA.

Notary Public

MELODY WHITUS
Notary Public, State of Texas
Comm. Expires 11-21-2020
Notary ID 632760-0

**CERTIFICATE OF SERVICE**

On March 30, 2018, I electronically submitted the foregoing document FINRA using the DR Portal and electronically served upon counsel the foregoing document.

Rick Illmer, TX 10388350
Chad Johnson, TX 24026259
Husch Blackwell, LLP
2001 Ross Avenue Suite 2000
Dallas, Texas 75201-2995
Rick.illmer@huschblackwell.com
Chad.Johnson@huschblackwell.com
214-999-6112 (Illmer)
214-999-6173 (Johnson)

Counsel for all Respondents
**Counsel for Respondents in the Northern District Matter*

Erica Anne Dorwart

Erica Anne Dorwart

**BOKF, NA AND BOKFS EXHIBIT INDEX**

Exhibit 001 - 2018-03-23 Davis Resignation Letter

Exhibit 002 - 2018-03-23 Morgeson Del-Cid Resignation Letter

Exhibit 003 - 2018-03-23 Email BOKF Demand Letter

Exhibit 004 - 2018-03-23 BOKF Demand Letter and Tracking Confirmations

Exhibit 005&006 - 2018 Client Advisor Incentive Agreement for Wise & Davis

Exhibit 006 - 2018 Client Advisor Incentive Agreement for Wise & Davis

Exhibit 007 - 2018 Sales Service Specialist Schedule Incentive Agreement for Morgenson Del-Cid

Exhibit 008 - 2012-04-03 Davis Representative Agreement

Exhibit 009 - 2006-06-21 Morgenson Del-Cid Representative Agreement

Exhibit 010 - Position Description 80672 Client Advisor for Wise & Davis

Exhibit 011 - Position Description 80332 Senior Securities Sales Service Specialist for Morgenson Del-Cid

Exhibit 012 - 2017-01-31 Standards of Conduct

Exhibit 013 - 2017 April Attestation Record of BOKF Standards of Conduct

Exhibit 014 - Wise Representative Agreement - Slip Sheet

Exhibit 015 - 2017 Incentive Agreement - Client Advisor Incentive Agreement for Wise & Davis

Exhibit 016 - 2016 Incentive Agreement - Client Advisor Incentive Agreement for Wise & Davis

Exhibit 017 - 2018-01-12 & 2018-02-21 Email FW 2018 Goals with 2018 Incentive Referral Plans

Exhibit 018 - 2017-05-19 Email 2017 Referral Fee Plan with 2017 Incentive Referral Plans

Exhibit 019 - 2017-02-18 WSP Chapter 2 Section 7 Privacy Policy

Exhibit 020 - 2017-02-18 WSP Chapter 2 Section 19 Computer Records

Exhibit 021 - 2018-02-01 Davis 2.18 Questionnaire Response

Exhibit 022 - 2018-02-05 Morgeson Del-Cid 2.18 Questionnaire Response

Exhibit 023 - 2018-02-14 Wise 2.18 Questionnaire Response

Exhibit 024 - 2018-03-09 Del-Cid Print-Incident 03072708

Exhibit 025 - 2018-03-14 Wise Print-Incident 03345872

Exhibit 026 - 2018-03-16 Morgeson Del-Cid Print-Incident 03545360

Exhibit 027 - 2018-03-16 Wise Print-Incident 03555899

Exhibit 028 - 2018-03-16 Morgeson Del-Cid Print-Incident 03557318

Exhibit 029 - 2018-03-16 Morgeson Del-Cid Print-Incident 03558797

Exhibit 030 - 2018-03-07 Email Topgolf Team Outing from Manna

Exhibit 031 - 2018-03-25 Email Hilltop Securities response from Illmer

**BOKF, NA AND BOKFS EXHIBIT INDEX**

Exhibit 001 - 2018-03-23 Davis Resignation Letter

Exhibit 002 - 2018-03-23 Morgeson Del-Cid Resignation Letter

Exhibit 003 - 2018-03-23 Email BOKF Demand Letter

Exhibit 004 - 2018-03-23 BOKF Demand Letter and Tracking Confirmations

Exhibit 005&006 - 2018 Client Advisor Incentive Agreement for Wise & Davis

Exhibit 006 - 2018 Client Advisor Incentive Agreement for Wise & Davis

Exhibit 007 - 2018 Sales Service Specialist Schedule Incentive Agreement for
         Morgenson Del-Cid

Exhibit 008 - 2012-04-03 Davis Representative Agreement

Exhibit 009 - 2006-06-21 Morgenson Del-Cid Representative Agreement

Exhibit 010 - Position Description 80672 Client Advisor for Wise & Davis

Exhibit 011 - Position Description 80332 Senior Securities Sales Service Specialist for
         Morgenson Del-Cid

Exhibit 012 - 2017-01-31 Standards of Conduct

Exhibit 013 - 2017 April Attestation Record of BOKF Standards of Conduct

Exhibit 014 - Wise Representative Agreement - Slip Sheet

Exhibit 015 - 2017 Incentive Agreement - Client Advisor Incentive Agreement for Wise &
         Davis

Exhibit 016 - 2016 Incentive Agreement - Client Advisor Incentive Agreement for Wise &
         Davis

Exhibit 017 - 2018-01-12 & 2018-02-21 Email FW 2018 Goals with 2018 Incentive
         Referral Plans

Exhibit 018 - 2017-05-19 Email 2017 Referral Fee Plan with 2017 Incentive Referral
Plans

Exhibit 019 - 2017-02-18 WSP Chapter 2 Section 7 Privacy Policy

Exhibit 020 - 2017-02-18 WSP Chapter 2 Section 19 Computer Records

Exhibit 021 - 2018-02-01 Davis 2.18 Questionnaire Response

Exhibit 022 - 2018-02-05 Morgeson Del-Cid 2.18 Questionnaire Response

Exhibit 023 - 2018-02-14 Wise 2.18 Questionnaire Response

Exhibit 024 - 2018-03-09 Del-Cid Print-Incident 03072708

Exhibit 025 - 2018-03-14 Wise Print-Incident 03345872

Exhibit 026 - 2018-03-16 Morgeson Del-Cid Print-Incident 03545360

Exhibit 027 - 2018-03-16 Wise Print-Incident 03555899

Exhibit 028 - 2018-03-16 Morgeson Del-Cid Print-Incident 03557318

Exhibit 029 - 2018-03-16 Morgeson Del-Cid Print-Incident 03558797

Exhibit 030 - 2018-03-07 Email Topgolf Team Outing from Manna

Exhibit 031 - 2018-03-25 Email Hilltop Securities response from Illmer

March 23, 2018

Pat Staudt:

Please accept this as my official resignation from BOK Financial Advisors effective immediately. I have decided to join Hilltop Securities Inc. The MobileIron application is active on my personal device that I designated for business use. Please be advised that I use the Nebo application for taking meeting notes for clients, prospects and business contacts. The Nebo app is also on my personal device designated for business use. To the best of my knowledge, none of these notes contain any personal identifiable information (PII) or account numbers. I intend to factory reset this personal device on Monday, March 26, 2018 after 5:00 PM CST. Please conduct and/or implement the post termination procedures you deem appropriate with regard to the MobileIron and Nebo application prior to that time. Unless you instruct me to do otherwise, I will not access or delete any information on this device prior to the factory reset.

I will coordinate collection of my personal effects from the branch at a later date.

In the unlikely event that there are any issues regarding my departure, please contact me at or via phone at

Sincerely,

Ronnie Davis

March 23, 2018

Lisa Shannon:

Please accept this as my official resignation from BOK Financial Advisors effective immediately. I have decided to join Hilltop Securities Inc.

In the unlikely event that there are any issues regarding my departure, please contact me at

Sincerely,

Melissa Del-Cid

Desk Inventory

1. Daughter - Soccer picture
2. Daughter - Cheerleader picture
3. Daughter - School picture
4. Son - graduation picture
5. Son - graduation Senior poses plaque w/ stand
6. Family calendar
7. 10 yr. plaque - Bank of Texas
8. picture frame w/ "Trust me" "I have everything under control" God
9. picture of my husband & daughter
10. Spur plaque
11. Sugar & spice plaque
12. Small glass bowl w/ "Joy" Rock & green moss in it.

**Caywood, Candace**

**From:** Dorwart, Erica
**Sent:** Friday, March 23, 2018 6:10 PM
**To:** vwise008@gmail.com; mjdelcid@yahoo.com
**Cc:** Dorwart, Erica; Caywood, Candace; Dorwart, Erica
**Subject:** BOKF Demand Letter
**Attachments:** 2018-03-23 Hilltop, Davis, Wise, Del Cid, With Attachments.pdf

FREDERIC DORWART
LAWYERS
OLD CITY HALL
124 EAST FOURTH STREET
TULSA, OKLAHOMA 74103-5010

ERICA ANNE DORWART
DIRECT (918)583-9960
EMAIL edorwart@fdlaw.com

OFFICE (918) 583-9922
FACSIMILE (918) 583-8251

March 23, 2018

| | | | | |
|---|---|---|---|---|
| [redacted]@gmail.com<br>**Wise, Vickie**<br>[redacted]<br>Dallas, TX 75204 | **Davis, Ronnie Carroll (Skip)**<br>[redacted]<br>Roanoke, TX 76262 | [redacted]@yahoo.com<br>**Del-Cid, Melissa Morgenson**<br>[redacted]<br>Coppell, TX 75019 | | |
| **Hilltop Holdings, Inc.**<br>200 Crescent Court, Suite 1330<br>Dallas, Texas 75201<br><br>***Registered Agent***<br>CHRISTINE A. BIALICK<br>6700 IH 35 NORTH<br>NEW BRAUNFELS, TX 78130<br><br>CORPORATION SERVICE COMPANY DBA CSC - LAWYERS INCO<br>211 E. 7TH STREET<br>SUITE 620<br>AUSTIN, TX 78701 | **National Lloyds Corporation**<br>*510 N. Valley Mills Dr., Suite 202*<br>Waco, TX 76710<br><br>***Registered Agent***<br>CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INCO<br>211 E. 7TH STREET<br>SUITE 620<br>AUSTIN, TX 78701 | **Hilltop Securities, Inc.**<br>1201 Elm Street, Suite 3500<br>Dallas, TX 75270<br><br>***Registered Agent***<br>CAPITOL CORPORATE SERVICES, INC.<br>206 E. 9TH STREET<br>SUITE 1300<br>AUSTIN, TX 78701<br><br>CAPITOL SERVICES, INC.<br>1675 S. State St., Ste. B<br>Dover, DE 19901 | **Hilltop Investment Advisors, Inc.**<br>Julie Jacobs Dupress<br>34 South Dahlia St.<br>Denver, CO 802461045<br><br>***Registered Agent***<br>Julie Jacobs Dupress<br>34 South Dahlia St.<br>Denver, CO 802461045 | **Hilltop Advisors, LLC**<br>1211 MALONE ST<br>HOUSTON, TX 77007-3126<br><br>***Registered Agent***<br>BRADLEY W. RAPP<br>1980 POST OAK BOULEVARD<br>SUITE 1200<br>HOUSTON, TX 77056 |
| **Hilltop National Bank**<br>300 Country Club Road<br>Casper, WY 82609 | **Plains Capital Bank**<br>2323 Victory Avenue, Suite 1400<br>Dallas, TX 75219 | | | |

**Re:**

Hilltop Raid

Resignations in Concert on March 23, 2018
Vickie Sue Wise, CRD 1883523
Ronnie Carrol "Skip" David, CRD 5400246
Melissa Morgenson Del-Cid, CRD 2448005
Cease and Desist Demand
Reminder of Obligations

Frederic Dorwart, Lawyers is general counsel to BOK Financial Corporation ("BOKF") and its subsidiaries including BOKF NA dba Bank of Texas (BOKF NA) and BOK Financial Securities, Inc. (formerly BOSC, Inc. ("BOKFS"), all (collectively "BOKF"). If counsel represents you, please immediately forward this letter to your counsel and request that your counsel contact me.

The Hilltop entities in conjunction with the individual addressees of this letter planned, orchestrated, and implemented a raid on BOKF, over a holiday (Spring Break), boldly taking BOKF client advisors in Dallas, Texas, leaving not a single employee on the team.[i] The recipients of this letter began contacting BOKF clients, in violation of applicable law and obligations to BOKF, leaving some clients, at best confused and, at worst, with the misrepresentation that Hilltop had purchased Bank of Texas. Clients have already reported that "Our whole team there just left".

The purpose of this letter is to: (i) demand that all contact with BOKF clients cease and desist, generally and particularly due to the raid; (ii), that each recipient cease and desist all activities in violation of obligations to BOKF, (iii) to provide additional reminders regarding those obligations; (iv) to deal with confidential materials which may have been misappropriated by the recipients of this letter; and (v) to demand preservation of all documents and tangible items pertaining to these matters.

I. Due to the nature of the orchestrated raid over a holiday and conspiracies to violate obligations to BOKF by recipients of this letter, BOKF demands that the recipients each stop all contact with BOKF clients serviced by individual recipients of this letter and/or BOKF clients who became known to the individual recipient through BOKF.

II. BOKF demands that each recipient cease and cease all activities in violation of obligations to BOKF which are set out in Section III.

III. All individual addressees are aware of BOKF's position with respect to its confidential information and the value BOKF places upon its employee and customer relationships. BOKF reminds all recipients of obligations pursuant common law, statute (particularly the Trade Secrets Act), and to the attached Representative agreement, incentive plan, and/or deferred compensation plan. Each employee was obligated to comply with applicable BOKF policies and procedures, including, but not limited to the Standards of Conduct to which each employee attested, as well as the agreement not to solicit. Each representative was required to safeguard BOKF Data for BOKF, including, but not limited to: work product, employee interview notes, project notes, customer information, and the like. This letter is a reminder to each recipient that BOKF strictly and aggressively enforces its rights with respect to proprietary and confidential information and its employee and customer relationships.

I specifically direct the addressees to Representative Agreements at Paragraphs 4(B), 2(K) that respectively address notice of termination, restrictive covenants (Agreement Not to Solicit) and return of data and confidentiality.

Provision (4) (B) (Thirty Day Notice) reads as follows:

> *This Agreement may be terminated by either party at any time, without case, but only by, giving thirty (30) days written notice to the other party.*

Provision (2) (J) (Agreement Not to Solicit) reads as follows:

*The Representative "shall not directly or indirectly contact or solicit any customer or employee of FI or BOSC for a period of one (1) year after the termination of this Agreement for whatever reason (whether with or without cause)…*

Provisions (2)(K) and (2)(M) (Agreement to Return Data and Agreement regarding confidentiality)

*Shall immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business…*

*During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various. information relating to the BOSC's business operations, customers, products, marketing data, business plan, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.*

IV. All addressees should immediately ensure, jointly and severally, that: (1) each addressee has conducted a diligent search of all sources of BOKF data, including but not limited to, paper (hard copy), and electronic copies, including, but not limited to, email accounts and contacts, social media, mobile phone cards, flash disks, disks, thumb drives, personal computers, tablet computers, laptops and the like; (2) each addressee has complied with obligations to BOKF, and (3) each addressee has no BOKF data in the addressee's possession and or control. In the event that an addressee discovers that BOKF data in any addressee's possession or control, please contact me to arrange to preserve documents and eliminate your possession and/or control of BOKF data.

V. In addition, please immediately take affirmative efforts to preserve of all documents and tangible items related to the individual recipients' transitions from employment with BOKF and/or BOKF data (including, but not limited to, all forms of electronic media regardless of ownership status (entity and/or personal ownership)).

BOKF demands that: (i) each recipient of this letter cease and desist all activities as outlined above and (ii) contact Erica Anne Dorwart at Frederic Dorwart Lawyers PLLC at 918-583-9960 and edorwart@fdlaw.com) no later than noon (12:00) on Monday March 26, 2018 to discuss immediate remedies for this orchestrated raid on BOKF and violation of duties of loyalty and agreements.

Sincerely,

Erica Anne Dorwart

Erica Anne Dorwart
Counsel to BOK Financial Securities, Inc., BOKF, NA, and their Affiliates

Enclosures

Erica Anne Dorwart, OBA 18367

**Frederic Dorwart, Lawyers PLLC**
124 East Fourth Street
Tulsa, Oklahoma 74103
edorwart@fdlaw.com
918-583-9960 (Direct)
918-583-9922 (Office)

---

[i] A single junior client advisor in Dallas, Texas was left at a different Branch.

FREDERIC DORWART
LAWYERS
OLD CITY HALL
124 EAST FOURTH STREET
TULSA, OKLAHOMA 74103-5010

ERICA ANNE DORWART
DIRECT (918)583-9960
EMAIL edorwart@fdlaw.com

OFFICE (918) 583-9922
FACSIMILE (918) 583-8251

March 23, 2018

| [redacted]@gmail.com<br>**Wise, Vickie**<br>[redacted]<br>Dallas, TX 75204 | **Davis, Ronnie Carroll (Skip)**<br>[redacted]<br>Roanoke, TX 76262 | [redacted]@yahoo.com<br>**Del-Cid, Melissa Morgenson**<br>[redacted]<br>Coppell, TX 75019 | | |
|---|---|---|---|---|
| **Hilltop Holdings, Inc.**<br>200 Crescent Court, Suite 1330<br>Dallas, Texas 75201<br><br>***Registered Agent***<br><br>CHRISTINE A. BIALICK<br>6700 IH 35 NORTH<br>NEW BRAUNFELS, TX 78130<br><br>CORPORATION SERVICE COMPANY DBA CSC - LAWYERS INCO<br>211 E. 7TH STREET<br>SUITE 620<br>AUSTIN, TX 78701 | **National Lloyds Corporation**<br>*510 N. Valley Mills Dr., Suite 202*<br>Waco, TX 76710<br><br>***Registered Agent***<br><br>CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INCO<br>211 E. 7TH STREET<br>SUITE 620<br>AUSTIN, TX 78701 | **Hilltop Securities, Inc.**<br>1201 Elm Street, Suite 3500<br>Dallas, TX 75270<br><br>***Registered Agent***<br><br>CAPITOL CORPORATE SERVICES, INC.<br>206 E. 9TH STREET<br>SUITE 1300<br>AUSTIN, TX 78701<br><br>CAPITOL SERVICES, INC.<br>1675 S. State St., Ste. B<br>Dover, DE 19901 | **Hilltop Investment Advisors, Inc.**<br>Julie Jacobs Dupress<br>34 South Dahlia St.<br>Denver, CO 802461045<br><br>***Registered Agent***<br><br>Julie Jacobs Dupress<br>34 South Dahlia St.<br>Denver, CO 802461045 | **Hilltop Advisors, LLC**<br>1211 MALONE ST<br>HOUSTON, TX 77007-3126<br><br>***Registered Agent***<br><br>BRADLEY W. RAPP<br>1980 POST OAK BOULEVARD<br>SUITE 1200<br>HOUSTON, TX 77056 |
| **Hilltop National Bank**<br>300 Country Club Road<br>Casper, WY 82609 | **Plains Capital Bank**<br>2323 Victory Avenue, Suite 1400<br>Dallas, TX 75219 | | | |

**Re:**

Hilltop Raid
Resignations in Concert on March 23, 2018
Vickie Sue Wise, CRD 1883523
Ronnie Carrol "Skip" David, CRD 5400246
Melissa Morgenson Del-Cid, CRD 2448005
Cease and Desist Demand
Reminder of Obligations

Frederic Dorwart, Lawyers is general counsel to BOK Financial Corporation ("BOKF") and its subsidiaries including BOKF NA dba Bank of Texas (BOKF NA) and BOK Financial Securities, Inc. (formerly BOSC, Inc. ("BOKFS"), all (collectively "BOKF"). If counsel represents you, please immediately forward this letter to your counsel and request that your counsel contact me.

The Hilltop entities in conjunction with the individual addressees of this letter planned, orchestrated, and implemented a raid on BOKF, over a holiday (Spring Break), boldly taking BOKF client advisors in Dallas, Texas, leaving not a single employee on the team.[1] The recipients of this letter began contacting BOKF clients, in violation of applicable law and obligations to BOKF, leaving some clients, at best confused and, at worst, with the misrepresentation that Hilltop had purchased Bank of Texas. Clients have already reported that "Our whole team there just left".

The purpose of this letter is to: (i) demand that all contact with BOKF clients cease and desist, generally and particularly due to the raid; (ii), that each recipient cease and desist all activities in violation of obligations to BOKF, (iii) to provide additional reminders regarding those obligations; (iv) to deal with confidential materials which may have been misappropriated by the recipients of this letter; and (v) to demand preservation of all documents and tangible items pertaining to these matters.

I. Due to the nature of the orchestrated raid over a holiday and conspiracies to violate obligations to BOKF by recipients of this letter, BOKF demands that the recipients each stop all contact with BOKF clients serviced by individual recipients of this letter and/or BOKF clients who became known to the individual recipient through BOKF.

II. BOKF demands that each recipient cease and cease all activities in violation of obligations to BOKF which are set out in Section III.

III. All individual addressees are aware of BOKF's position with respect to its confidential information and the value BOKF places upon its employee and customer relationships. BOKF reminds all recipients of obligations pursuant common law, statute (particularly the Trade Secrets Act), and to the attached Representative agreement, incentive plan, and/or deferred compensation plan. Each employee was obligated to comply with applicable BOKF policies and procedures, including, but not limited to the Standards of Conduct to which each employee attested, as well as the agreement not to solicit. Each representative was required to safeguard BOKF Data for BOKF, including, but not limited to: work product, employee interview notes, project notes, customer information, and the like. This letter is a reminder to each recipient that BOKF strictly and aggressively enforces its rights with respect to proprietary and confidential information and its employee and customer relationships.

I specifically direct the addressees to Representative Agreements at Paragraphs 4(B), 2(K) that respectively address notice of termination, restrictive covenants (Agreement Not to Solicit) and return of data and confidentiality.

Provision (4) (B) (Thirty Day Notice) reads as follows:

[1]A single junior client advisor in Dallas, Texas was left at a different Branch.

*This Agreement may be terminated by either party at any time, without case, but only by, giving thirty (30) days written notice to the other party.*

Provision (2) (J) (Agreement Not to Solicit) reads as follows:

*The Representative "shall not directly or indirectly contact or solicit any customer or employee of FI or BOSC for a period of one (1) year after the termination of this Agreement for whatever reason (whether with or without cause)…*

Provisions (2)(K) and (2)(M) (Agreement to Return Data and Agreement regarding confidentiality)

*Shall immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business…*

*During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various. information relating to the BOSC's business operations, customers, products, marketing data, business plan, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.*

IV. All addressees should immediately ensure, jointly and severally, that: (1) each addressee has conducted a diligent search of all sources of BOKF data, including but not limited to, paper (hard copy), and electronic copies, including, but not limited to, email accounts and contacts, social media, mobile phone cards, flash disks, disks, thumb drives, personal computers, tablet computers, laptops and the like; (2) each addressee has complied with obligations to BOKF, and (3) each addressee has no BOKF data in the addressee's possession and or control. In the event that an addressee discovers that BOKF data in any addressee's possession or control, please contact me to arrange to preserve documents and eliminate your possession and/or control of BOKF data.

V. In addition, please immediately take affirmative efforts to preserve of all documents and tangible items related to the individual recipients' transitions from employment with BOKF and/or BOKF data (including, but not limited to, all forms of electronic media regardless of ownership status (entity and/or personal ownership)).

BOKF demands that: (i) each recipient of this letter cease and desist all activities as outlined above and (ii) contact Erica Anne Dorwart at Frederic Dorwart Lawyers PLLC at 918-583-9960 and edorwart@fdlaw.com) no later than noon (12:00) on Monday March 26, 2018 to discuss immediate remedies for this orchestrated raid on BOKF and violation of duties of loyalty and agreements.

Sincerely,

Erica Anne Dorwart

Erica Anne Dorwart
Counsel to BOK Financial Securities, Inc., BOKF, NA, and their Affiliates

Enclosures

BOK FINANCIAL CORPORATION

# WEALTH MANGEMENT
# Client Advisor
# 2018 Schedule

**PAYMENT OF BENEFITS**

This Schedule is subject to the Incentive Compensation Master Incentive Plan and applicable Addendum which are incorporated by reference into this schedule.

**PARTICIPATION DESIGNATION**

The following employees are eligible to participate in the Plan:

- Client Advisor (80672)

**AWARD DETERMINATION**



APP. 00066
2 | P a g e
Confidential Exhibit 003-000010



**ADDITIONAL PLAN PROVISIONS**

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.



BOK FINANCIAL CORPORATION

# WEALTH MANAGEMENT DIVISION
# BOKFS
# Securities Sales/Service Specialist
# 2018 Schedule

**PAYMENT OF BENEFITS**

This Schedule is subject to the Incentive Compensation Master Incentive Plan and applicable Addendum which are incorporated by reference into this schedule.

**PARTICIPATION DESIGNATION**

The following BOKFS employees are eligible to participate in the Plan as of their employment date:

- Securities Sales/Service Specialist - 20223
- Sr. Securities Sales/Service Specialist - 80332

**AWARD DETERMINATION**

**ADDITIONAL PLAN PROVISIONS**

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director,

employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.

**BOSC, INC.**
**REPRESENTATIVE AGREEMENT**

This Agreement is made and entered into this 3 day of April, 2012 by and between BOSC, Inc., an Oklahoma Corporation ("BOSC") and Ronnie Davis JR ("Representative").

In consideration of the mutual promises hereinafter made and other good and valuable consideration (the receipt and adequacy of which BOSC and Representative hereby acknowledge), BOSC and Representative agree as follows:

1. **BOSC'S OBLIGATIONS**. BOSC:

A. Hereby appoints Representative as its agent to be located in a branch office of Bank of Texas (hereinafter "FI") located at 5956 Sherry Ln, Suite 700, Dallas, TX 75225 ("Branch Office") to solicit purchases of securities and investments offered through BOSC to depositors and customers of FI and to the general public.

B. Shall exercise exclusive control over the Representative with respect to all aspects of securities transactions and related securities business through a Series 24 licensed principal of BOSC who shall serve as the Branch Manager ("Branch Manager") of the Office of Supervisory Jurisdiction through which all securities activities shall take place.

C. BOSC shall employ Representative as a professional with compensation to be paid to Representative pursuant to separate agreement between BOSC and Representative and in accordance with the policies and procedures then in effect at BOSC.

2. **THE REPRESENTATIVE'S OBLIGATIONS**. The Representative:

A. Shall provide to prospective purchasers a current prospectus or other offering materials when required by the federal and/or state securities laws, shall explain fully the terms of any security or investment offering for sale to a customer, shall make no untrue or misleading statements or representations, shall not omit any material information or facts pertaining to any aspect of the transaction or sale, and shall comply with all laws respecting offers and sales of securities and advising persons on such matters.

B. Shall (i) conduct business in accordance with the rules and regulations of the Securities and Exchange Commission (SEC), the National Association of Securities Dealers (NASD), any state agencies regulating Representative's activities, (ii) conduct business in accordance with the policies and procedures of BOSC and the best customs and procedures of the securities industry, (iii) shall not conduct business or receive funds until fully licensed as required by all such laws, rules and regulations, and (iv) shall accept such supervision and

control by his/her Branch Manager and officers of BOSC as BOSC determines is necessary or appropriate to fully and timely comply with all such laws, regulations, rules, customs and procedures. Without limiting the generality of the foregoing, shall not, directly or indirectly, (i) engage in municipal securities business with an issuer to whom the Representative has made a political contribution within the previous two years (other than a contribution in an amount less than $250 to an official of such issuer for whom the Representative is entitled to vote) or (ii) make a political contribution to any issuer to whom the Representative is engaging or seeking to engage in the municipal securities business.

C. Shall (i) mail any correspondence, make any communication or cause any advertising to be made respecting investments or the investment business only after said correspondence, communication or advertising is approved in advance by BOSC and (ii) provide copies of all such correspondence, communication and advertising to BOSC in accordance with all applicable SEC, NASD and state agencies rules and regulations.

D. Shall accept payments from customers by check or money order only payable to the underwriter, investment company or insurance company designated by BOSC.

E. Shall indemnify BOSC and hold BOSC harmless from any and all loss, cost or liability (including legal, accounting and expert fees and expenses) which result from the Representative's negligence, violation, or other misconduct.

F. Shall not act in any manner whatsoever as an agent for any individual or entity competitive in any respect with BOSC.

G. Shall (i) represent to all customers and prospective customers, whenever he/she is soliciting purchases or interviewing customers or otherwise, that (a) he/she is acting as a Representative of BOSC and (b) all orders for securities will be placed through BOSC and (ii) conduct all business totally separate and distinct from all other business conducted at the FI.

H. Shall conduct himself/herself and his/her affairs in a professional manner consistent with the building of a quality reputation for himself/herself and BOSC and in accordance with the best standards of the industry.

I. Recognizes that (i) he/she shall accept direction for BOSC securities activities solely from BOSC in accordance with BOSC's policies and procedures, and (ii) will neither seek nor accept direction regarding the conduct of securities business from any individual or group who is not a duly authorized BOSC Branch Manager or BOSC officer.

J. Shall not (i) directly solicit any established customer of BOSC for a period of one (1) year after the termination of this Agreement (for whatever reason,

whether with or without cause) or (ii) solicit any employee of BOSC to accept employment with any entity for a period of one (1) year after termination of this Agreement (for whatever reason, whether with or without cause). This promise by Representative may be enforced by temporary, preliminary and permanent injunctive relief without the necessity of establishing irreparable injury and without the posting of any bond, in addition to any other remedies the law may provide. Without limiting the generality of the provisions of this paragraph, the phrase "directly solicit any established customer of BOSC" includes (i) making or participating in any mail or e-mail communication to such customer which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

K. Shall, immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business (including training, licensure, commission, and production information) of BOSC and/or FI and/or customers of BOSC and/or FI including all electronic files and documents (whether prepared by BOSC and/or FI or the Representative and whether prepared before or after the start of this Agreement) containing any information respecting the identities of the customers of BOSC and/or FI or their addresses or telephone numbers, or the nature or amounts of their investments, assets or liabilities, or their investment needs or strategies. Without limiting the generality of the provisions of this Paragraph, as used in this Paragraph the words "documents and electronic files concerning the business of BOSC" includes all documents identified in the BOSC Quarterly Certification, diaries, handwritten notes, address books, calendars, and other documents (written or electronic and whether or not Representative regards such documents as his/her personal documents) which contain any of the information described in the Paragraph whether prepared by Representative or BOSC.

L. Shall completely perform all duties (including the duty of loyalty) owed by Representative to his prior employer until such time as such duties shall have terminated, return to his employer all copies and electronic files of his prior employer (of the kind described in the preceding paragraph relating to the business of his prior employer, and comply with all lawful agreements limiting the Representative's right to engage in the securities business.

M. During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various information relating to the BOSC's business operations, customers, products, marketing data, business plans, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an

advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.

3. **LIMITED OF AUTHORITY AND REPRESENTATIVE'S REPRESENTATION.**

A. The Representative is a limited agent of BOSC only and has no authority to bind BOSC in any way except to communicate to customers materials supplied by BOSC and to accept transactions in securities offered through BOSC.

B. The Representative hereby represents that he/she has delivered to BOSC true copies of all agreements by which Representative may be bound which purport to limit the ability of Representative to engage in the securities business.

4. **TERMINATION OF AGREEMENT.**

A. The effective date of this Agreement shall be April 3, 2012. This Agreement shall automatically renew on the April 15 next following and on each April 15 thereafter for one year periods unless this Agreement is terminated as hereafter provided.

B. This Agreement may be terminated by either party at any time, without cause, by but only by, giving thirty (30) days written notice to the other party.

C. This Agreement shall automatically terminate (i) upon cancellation of Representative's coverage by his/her surety company or (ii) upon cancellation or non-renewal of any required license.

D. This Agreement may be terminated by BOSC at any time without notice for a breach of this Agreement by the Representative.

E. The death of the Representative shall automatically terminate this Agreement on the date of death.

F. Upon termination, the Representative shall cease using the name BOSC, shall no longer hold himself/herself out as a Representative and shall return all materials bearing the BOSC name to BOSC and as otherwise provided herein

5. **MISCELLANEOUS PROVISIONS**. The following miscellaneous provisions shall apply to this Agreement:

A. All notices or advices required or permitted to be given by or pursuant to this Agreement, shall be given in writing. All such notices and advices shall be (i) delivered personally, (ii) delivered by facsimile or delivered by U.S. Registered or Certified Mail, Return Receipt Requested mail, or (iii) delivered for overnight delivery by a nationally recognized overnight courier service. Such notices and advices shall be deemed to have been given (i) the first business day following the date of delivery if delivered personally or by facsimile, (ii) on the third business day following the date of mailing if mailed by U.S. Registered or Certified Mail, Return Receipt Requested, or (iii) on the date of receipt if delivered for overnight delivery by a nationally recognized overnight courier service. All such notices and advices and all other communications related to this Agreement shall be given as follows:

If to BOSC:

Scott Grauer
BOSC, Inc.
Williams Tower, Ninth Floor
Tulsa, Oklahoma 74103
918-595-3165 - Tel
918-588-6510 - Fax

If to Representative:

Ronnie Davis OA
5956 Sherry Ln Suite 700
Dallas TX 75225
- Telephone
- Fax

or to such other address as the party may have furnished to the other parties in accordance herewith, except that notice of change of addresses shall be effective only upon receipt.

B. This Agreement shall be deemed made and executed in Tulsa County, Oklahoma.

C. This Agreement shall be subject to, and interpreted by and in accordance with, the laws (excluding conflict of law provisions) of the State of Oklahoma.

D. This Agreement is the entire Agreement of the parties respecting the subject matter hereof. There are no other agreements, representations or warranties, whether oral or written, respecting the subject matter hereof.



E. No course of prior dealings involving any of the parties hereto and no usage of trade shall be relevant or advisable to interpret, supplement, explain or vary any of the terms of this Agreement, as expressly provided herein.

F. This Agreement, and all the provisions of this Agreement, shall be deemed drafted by all of the parties hereto. This Agreement shall not be interpreted strictly for or against any party, but solely in accordance with the fair meaning of the provisions hereof to effectuate the purposes and interest of this Agreement.

G. Each party hereto has entered into this Agreement based solely upon the agreements, representations and warranties expressly set forth herein and upon his own knowledge and investigation.

H. Each of the persons signing below on behalf of a party hereto represents and warrants that he or she has full requisite power and authority to execute and deliver this Agreement on behalf of the party for whom he or she is signing and to bind such party to the terms and conditions of this Agreement.

I. This Agreement may be executed in counterparts, each of which shall be deemed an original. This Agreement shall become effective only when all of the parties hereto shall have executed the original or counterpart hereof. This agreement may be executed and delivered by a facsimile transmission of a counterpart hereof.

J. In any action brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the opposing parties to such action such party's reasonable attorneys fees and costs (including court costs, reasonable fees of accountants and experts, and other expenses incidental to the action).

K. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. This is not a third party beneficiary contract. No person or entity other than a party hereto shall have any rights under this Agreement. This Agreement may be amended or modified only in a writing which specifically references this Agreement.

BOSC, INC.

By [signature] SCOTT B. GRANGER, CEO

[signature]

"Representative" Ronnie Davis JR

# AMENDMENT TO BOSC, INC. REPRESENTATIVE AGREEMENT

The BOSC, Inc. Representative Agreement dated as of 4-3-12 (the "Agreement"), among BOSC, Inc., an Oklahoma Corporation ("BOSC") and Ronnie Davis JR (the "Representative") shall be amended as set forth below.

***Amendment.***

1. **BOSC's OBLIGATIONS.** The following Paragraph D shall be inserted immediately following Paragraph C of the Agreement:

   D. With respect to Representative's engagement to solicit advisory clients, shall: provide certain training and supervision over Representative's advisory practices, provide copies of the appropriate Form(s) ADV – Part II and related schedules, and any updates thereof and provide a copy of the advisory agreement and support during contract negotiations.

2. **THE REPRESENTATIVE'S OBLIGATIONS.** The following Paragraph N shall be inserted immediately following Paragraph M of the Agreement:

   N. With respect to Representative's engagement to solicit advisory clients, shall: identify and solicit potential advisory clients, provide such potential client a copy of the appropriate Form(s) ADV – Part II and related schedules, and any updates thereof, and obtain, at or prior to the time such client enters into an advisory agreement, an acknowledgement that such client has received a copy of Form ADV – Part II and related schedules, provide ongoing services that are reasonably designed to support retention of such clients, and only use the advisory agreement and written materials that have been provided and approved and only make representations that have been so approved.

***Entire Agreement.*** The Agreement, as amended herein, constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communications or prior writings (except as otherwise provided herein) with respect thereto.

***Governing Law.*** This Amendment shall be governed by and construed in accordance with the laws of the State of Oklahoma without reference to choice of law doctrine.

**IN WITNESS WHEREOF,** the parties hereto have caused this Amendment to be executed as of the date first above written and do each hereby warrant and represent that their respective signatory, whose signature appears below, has been and is on the date of this Amendment duly authorized by all necessary and appropriate corporate action to execute this Amendment.

**BOSC, Inc.**

By: [signature] By: [signature]

Name: SCOTT B. GRAUER Name: Ronnie Davis JR

Title: CEO Title: Representative

**BOSC, INC.**
**REPRESENTATIVE AGREEMENT**

This Agreement is made and entered into this 21st day of June, 2006 by and between BOSC, Inc., an Oklahoma Corporation ("BOSC") and Melissa Jo Morgeson ("Representative").

In consideration of the mutual promises hereinafter made and other good and valuable consideration (the receipt and adequacy of which BOSC and Representative hereby acknowledge), BOSC and Representative agree as follows:

1. **BOSC'S OBLIGATIONS**. BOSC:

A. Hereby appoints Representative as its agent to be located in a branch office of BANK OF OKLAHOMA, N.A. (hereinafter "FI") located at 5956 Sherry Lane, Ste 100 ("Branch Office") to solicit purchases of securities and investments offered through BOSC to depositors and customers of FI and to the general public.

B. Shall exercise exclusive control over the Representative with respect to all aspects of securities transactions and related securities business through a Series 24 licensed principal of BOSC who shall serve as the Branch Manager ("Branch Manager") of the Office of Supervisory Jurisdiction through which all securities activities shall take place.

C. BOSC shall employ Representative as a professional with compensation to be paid to Representative pursuant to separate agreement between BOSC and Representative and in accordance with the policies and procedures then in effect at BOSC.

2. **THE REPRESENTATIVE'S OBLIGATIONS**. The Representative:

A. Shall provide to prospective purchasers a current prospectus or other offering materials when required by the federal and/or state securities laws, shall explain fully the terms of any security or investment offering for sale to a customer, shall make no untrue or misleading statements or representations, shall not omit any material information or facts pertaining to any aspect of the transaction or sale, and shall comply with all laws respecting offers and sales of securities and advising persons on such matters.

B. Shall (i) conduct business in accordance with the rules and regulations of the Securities and Exchange Commission (SEC), the National Association of Securities Dealers (NASD), any state agencies regulating Representative's activities, (ii) conduct business in accordance with the policies and procedures of BOSC and the best customs and procedures of the securities industry, (iii) shall not conduct business or receive funds until fully licensed as required by all such laws, rules and regulations, and (iv) shall accept such supervision and control by his/her Branch Manager and officers of BOSC as BOSC determines is necessary or appropriate to fully and timely comply with

all such laws, regulations, rules, customs and procedures. Without limiting the generality of the foregoing, shall not, directly or indirectly, (i) engage in municipal securities business with an issuer to whom the Representative has made a political contribution within the previous two years (other than a contribution in an amount less than $250 to an official of such issuer for whom the Representative is entitled to vote) or (ii) make a political contribution to any issuer to whom the Representative is engaging or seeking to engage in the municipal securities business.

C. Shall (i) mail any correspondence, make any communication or cause any advertising to be made respecting investments or the investment business only after said correspondence, communication or advertising is approved in advance by BOSC and (ii) provide copies of all such correspondence, communication and advertising to BOSC in accordance with all applicable SEC, NASD and state agencies rules and regulations.

D. Shall accept payments from customers by check or money order only payable to the underwriter, investment company or insurance company designated by BOSC.

E. Shall indemnify BOSC and hold BOSC harmless from any and all loss, cost or liability (including legal, accounting and expert fees and expenses) which result from the Representative's negligence, violation, or other misconduct.

F. Shall not act in any manner whatsoever as an agent for any individual or entity competitive in any respect with BOSC.

G. Shall (i) represent to all customers and prospective customers, whenever he/she is soliciting purchases or interviewing customers or otherwise, that (a) he/she is acting as a Representative of BOSC and (b) all orders for securities will be placed through BOSC and (ii) conduct all business totally separate and distinct from all other business conducted at the FI.

H. Shall conduct himself/herself and his/her affairs in a professional manner consistent with the building of a quality reputation for himself/herself and BOSC and in accordance with the best standards of the industry.

I. Recognizes that (i) he/she shall accept direction for BOSC securities activities solely from BOSC in accordance with BOSC's policies and procedures, and (ii) will neither seek nor accept direction regarding the conduct of securities business from any individual or group who is not a duly authorized BOSC Branch Manager or BOSC officer.

J. Shall not (i) directly solicit any established customer of BOSC for a period of one (1) year after the termination of this Agreement (for whatever reason, whether with or without cause) or (ii) solicit any employee of BOSC to accept employment with any entity for a period of one (1) year after termination of this Agreement (for whatever reason, whether with or without cause). This promise by Representative may be enforced by temporary, preliminary and

permanent injunctive relief without the necessity of establishing irreparable injury and without the posting of any bond, in addition to any other remedies the law may provide. Without limiting the generality of the provisions of this paragraph, the phrase "directly solicit any established customer of BOSC" includes (i) making or participating in any mail or e-mail communication to such customer which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

K. Shall, immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business (including training, licensure, commission, and production information) of BOSC and/or FI and/or customers of BOSC and/or FI including all electronic files and documents (whether prepared by BOSC and/or FI or the Representative and whether prepared before or after the start of this Agreement) containing any information respecting the identities of the customers of BOSC and/or FI or their addresses or telephone numbers, or the nature or amounts of their investments, assets or liabilities, or their investment needs or strategies. Without limiting the generality of the provisions of this Paragraph, as used in this Paragraph the words "documents and electronic files concerning the business of BOSC" includes all documents identified in the BOSC Quarterly Certification, diaries, handwritten notes, address books, calendars, and other documents (written or electronic and whether or not Representative regards such documents as his/her personal documents) which contain any of the information described in the Paragraph whether prepared by Representative or BOSC.

L. Shall completely perform all duties (including the duty of loyalty) owed by Representative to his prior employer until such time as such duties shall have terminated, return to his employer all copies and electronic files of his prior employer (of the kind described in the preceding paragraph relating to the business of his prior employer, and comply with all lawful agreements limiting the Representative's right to engage in the securities business.

M. During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various information relating to the BOSC's business operations, customers, products, marketing data, business plans, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether

they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.

3. **LIMITED OF AUTHORITY AND REPRESENTATIVE'S REPRESENTATION.**

A. The Representative is a limited agent of BOSC only and has no authority to bind BOSC in any way except to communicate to customers materials supplied by BOSC and to accept transactions in securities offered through BOSC.

B. The Representative hereby represents that he/she has delivered to BOSC true copies of all agreements by which Representative may be bound which purport to limit the ability of Representative to engage in the securities business.

4. **TERMINATION OF AGREEMENT.**

A. The effective date of this Agreement shall be June 21, 2006. This Agreement shall automatically renew on the April 15 next following and on each April 15 thereafter for one year periods unless this Agreement is terminated as hereafter provided.

B. This Agreement may be terminated by either party at any time, without cause, by but only by, giving thirty (30) days written notice to the other party.

C. This Agreement shall automatically terminate (i) upon cancellation of Representative's coverage by his/her surety company or (ii) upon cancellation or non-renewal of any required license.

D. This Agreement may be terminated by BOSC at any time without notice for a breach of this Agreement by the Representative.

E. The death of the Representative shall automatically terminate this Agreement on the date of death.

F. Upon termination, the Representative shall cease using the name BOSC, shall no longer hold himself/herself out as a Representative and shall return all materials bearing the BOSC name to BOSC and as otherwise provided herein

5. **MISCELLANEOUS PROVISIONS**. The following miscellaneous provisions shall apply to this Agreement:

A. All notices or advices required or permitted to be given by or pursuant to this Agreement, shall be given in writing. All such notices and advices shall be (i) delivered personally, (ii) delivered by facsimile or delivered by U.S. Registered or Certified Mail, Return Receipt Requested mail, or (iii) delivered for overnight delivery by a nationally recognized overnight courier service. Such notices and advices shall be deemed to have been given (i) the first business day following the date of delivery if delivered personally or by facsimile, (ii) on the third business day following the date of mailing if mailed by U.S. Registered or Certified Mail, Return Receipt Requested, or (iii) on the date of receipt if delivered for overnight delivery by a nationally recognized overnight courier service. All such notices and advices and all other communications related to this Agreement shall be given as follows:

If to BOSC:

Scott Grauer
BOSC, Inc.
Williams Tower, Ninth Floor
Tulsa, Oklahoma 74103
918-595-3165 - Tel
918-588-6510 - Fax

If to Representative:

Melissa Jo Morgeson
5956 Sherry Ln. Ste 100
Dallas, TX 75225
[redacted] - Telephone
[redacted] - Fax

or to such other address as the party may have furnished to the other parties in accordance herewith, except that notice of change of addresses shall be effective only upon receipt.

B. This Agreement shall be deemed made and executed in Tulsa County, Oklahoma.

C. This Agreement shall be subject to, and interpreted by and in accordance with, the laws (excluding conflict of law provisions) of the State of Oklahoma.

D. This Agreement is the entire Agreement of the parties respecting the subject matter hereof. There are no other agreements, representations or warranties, whether oral or written, respecting the subject matter hereof.

E. No course of prior dealings involving any of the parties hereto and no usage of trade shall be relevant or advisable to interpret, supplement, explain or vary any of the terms of this Agreement, as expressly provided herein.

F. This Agreement, and all the provisions of this Agreement, shall be deemed drafted by all of the parties hereto. This Agreement shall not be interpreted

strictly for or against any party, but solely in accordance with the fair meaning of the provisions hereof to effectuate the purposes and interest of this Agreement.

G. Each party hereto has entered into this Agreement based solely upon the agreements, representations and warranties expressly set forth herein and upon his own knowledge and investigation.

H. Each of the persons signing below on behalf of a party hereto represents and warrants that he or she has full requisite power and authority to execute and deliver this Agreement on behalf of the party for whom he or she is signing and to bind such party to the terms and conditions of this Agreement.

I. This Agreement may be executed in counterparts, each of which shall be deemed an original. This Agreement shall become effective only when all of the parties hereto shall have executed the original or counterpart hereof. This agreement may be executed and delivered by a facsimile transmission of a counterpart hereof.

J. In any action brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the opposing parties to such action such party's reasonable attorneys fees and costs (including court costs, reasonable fees of accountants and experts, and other expenses incidental to the action).

K. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. This is not a third party beneficiary contract. No person or entity other than a party hereto shall have any rights under this Agreement. This Agreement may be amended or modified only in a writing which specifically references this Agreement.

BOSC, INC.

By [signature]

[signature]

SCOTT B. GRAUER, PRES. + CEO

**Caywood, Candace**

**From:** Dorwart, Erica
**Sent:** Friday, March 23, 2018 6:10 PM
**To:** [redacted]
**Cc:** Dorwart, Erica; Caywood, Candace; Dorwart, Erica
**Subject:** BOKF Demand Letter
**Attachments:** 2018-03-23 Hilltop, Davis, Wise, Del Cid, With Attachments.pdf

FREDERIC DORWART
LAWYERS
OLD CITY HALL
124 EAST FOURTH STREET
TULSA, OKLAHOMA 74103-5010

ERICA ANNE DORWART
DIRECT (918)583-9960
EMAIL edorwart@fdlaw.com

OFFICE (918) 583-9922
FACSIMILE (918) 583-8251

March 23, 2018

| | | |
|---|---|---|
| vwise008@gmail.com<br>**Wise, Vickie**<br>[redacted]<br>Dallas, TX 75204 | **Davis, Ronnie Carroll (Skip)**<br>[redacted]<br>Roanoke, TX 76262 | mjdelcid@yahoo.com<br>**Del-Cid, Melissa Morgenson**<br>[redacted] e<br>Coppell, TX 75019 |

| | | | | |
|---|---|---|---|---|
| **Hilltop Holdings, Inc.**<br>200 Crescent Court, Suite 1330<br>Dallas, Texas 75201<br><br>***Registered Agent***<br>CHRISTINE A. BIALICK<br>6700 IH 35 NORTH<br>NEW BRAUNFELS, TX 78130<br><br>CORPORATION SERVICE COMPANY DBA CSC - LAWYERS INCO<br>211 E. 7TH STREET<br>SUITE 620<br>AUSTIN, TX 78701 | **National Lloyds Corporation**<br>*510 N. Valley Mills Dr., Suite 202*<br>Waco, TX 76710<br><br>***Registered Agent***<br>CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INCO<br>211 E. 7TH STREET<br>SUITE 620<br>AUSTIN, TX 78701 | **Hilltop Securities, Inc.**<br>1201 Elm Street, Suite 3500<br>Dallas, TX 75270<br><br>***Registered Agent***<br>CAPITOL CORPORATE SERVICES, INC.<br>206 E. 9TH STREET<br>SUITE 1300<br>AUSTIN, TX 78701<br><br>CAPITOL SERVICES, INC.<br>1675 S. State St., Ste. B<br>Dover, DE 19901 | **Hilltop Investment Advisors, Inc.**<br>Julie Jacobs Dupress<br>34 South Dahlia St.<br>Denver, CO 802461045<br><br>***Registered Agent***<br>Julie Jacobs Dupress<br>34 South Dahlia St.<br>Denver, CO 802461045 | **Hilltop Advisors, LLC**<br>1211 MALONE ST<br>HOUSTON, TX 77007-3126<br><br>***Registered Agent***<br>BRADLEY W. RAPP<br>1980 POST OAK BOULEVARD<br>SUITE 1200<br>HOUSTON, TX 77056 |

| | |
|---|---|
| **Hilltop National Bank**<br>300 Country Club Road<br>Casper, WY 82609 | **Plains Capital Bank**<br>2323 Victory Avenue, Suite 1400<br>Dallas, TX 75219 |

**Re:**

Hilltop Raid

Resignations in Concert on March 23, 2018
Vickie Sue Wise, CRD 1883523
Ronnie Carrol "Skip" David, CRD 5400246
Melissa Morgenson Del-Cid, CRD 2448005
Cease and Desist Demand
Reminder of Obligations

Frederic Dorwart, Lawyers is general counsel to BOK Financial Corporation ("BOKF") and its subsidiaries including BOKF NA dba Bank of Texas (BOKF NA) and BOK Financial Securities, Inc. (formerly BOSC, Inc. ("BOKFS"), all (collectively "BOKF"). If counsel represents you, please immediately forward this letter to your counsel and request that your counsel contact me.

The Hilltop entities in conjunction with the individual addressees of this letter planned, orchestrated, and implemented a raid on BOKF, over a holiday (Spring Break), boldly taking BOKF client advisors in Dallas, Texas, leaving not a single employee on the team.[i] The recipients of this letter began contacting BOKF clients, in violation of applicable law and obligations to BOKF, leaving some clients, at best confused and, at worst, with the misrepresentation that Hilltop had purchased Bank of Texas. Clients have already reported that "Our whole team there just left".

The purpose of this letter is to: (i) demand that all contact with BOKF clients cease and desist, generally and particularly due to the raid; (ii), that each recipient cease and desist all activities in violation of obligations to BOKF, (iii) to provide additional reminders regarding those obligations; (iv) to deal with confidential materials which may have been misappropriated by the recipients of this letter; and (v) to demand preservation of all documents and tangible items pertaining to these matters.

I. Due to the nature of the orchestrated raid over a holiday and conspiracies to violate obligations to BOKF by recipients of this letter, BOKF demands that the recipients each stop all contact with BOKF clients serviced by individual recipients of this letter and/or BOKF clients who became known to the individual recipient through BOKF.

II. BOKF demands that each recipient cease and cease all activities in violation of obligations to BOKF which are set out in Section III.

III. All individual addressees are aware of BOKF's position with respect to its confidential information and the value BOKF places upon its employee and customer relationships. BOKF reminds all recipients of obligations pursuant common law, statute (particularly the Trade Secrets Act), and to the attached Representative agreement, incentive plan, and/or deferred compensation plan. Each employee was obligated to comply with applicable BOKF policies and procedures, including, but not limited to the Standards of Conduct to which each employee attested, as well as the agreement not to solicit. Each representative was required to safeguard BOKF Data for BOKF, including, but not limited to: work product, employee interview notes, project notes, customer information, and the like. This letter is a reminder to each recipient that BOKF strictly and aggressively enforces its rights with respect to proprietary and confidential information and its employee and customer relationships.

I specifically direct the addressees to Representative Agreements at Paragraphs 4(B), 2(K) that respectively address notice of termination, restrictive covenants (Agreement Not to Solicit) and return of data and confidentiality.

Provision (4) (B) (Thirty Day Notice) reads as follows:

> *This Agreement may be terminated by either party at any time, without case, but only by, giving thirty (30) days written notice to the other party.*

Provision (2) (J) (Agreement Not to Solicit) reads as follows:

> *The Representative "shall not directly or indirectly contact or solicit any customer or employee of FI or BOSC for a period of one (1) year after the termination of this Agreement for whatever reason (whether with or without cause)…*

Provisions (2)(K) and (2)(M) (Agreement to Return Data and Agreement regarding confidentiality)

> *Shall immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business…*

> *During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various. information relating to the BOSC's business operations, customers, products, marketing data, business plan, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.*

IV. All addressees should immediately ensure, jointly and severally, that: (1) each addressee has conducted a diligent search of all sources of BOKF data, including but not limited to, paper (hard copy), and electronic copies, including, but not limited to, email accounts and contacts, social media, mobile phone cards, flash disks, disks, thumb drives, personal computers, tablet computers, laptops and the like; (2) each addressee has complied with obligations to BOKF, and (3) each addressee has no BOKF data in the addressee's possession and or control. In the event that an addressee discovers that BOKF data in any addressee's possession or control, please contact me to arrange to preserve documents and eliminate your possession and/or control of BOKF data.

V. In addition, please immediately take affirmative efforts to preserve of all documents and tangible items related to the individual recipients' transitions from employment with BOKF and/or BOKF data (including, but not limited to, all forms of electronic media regardless of ownership status (entity and/or personal ownership)).

BOKF demands that: (i) each recipient of this letter cease and desist all activities as outlined above and (ii) contact Erica Anne Dorwart at Frederic Dorwart Lawyers PLLC at 918-583-9960 and edorwart@fdlaw.com) no later than noon (12:00) on Monday March 26, 2018 to discuss immediate remedies for this orchestrated raid on BOKF and violation of duties of loyalty and agreements.

Sincerely,

Erica Anne Dorwart

Erica Anne Dorwart
Counsel to BOK Financial Securities, Inc., BOKF, NA, and their Affiliates

Enclosures

Erica Anne Dorwart, OBA 18367

**Frederic Dorwart, Lawyers PLLC**
124 East Fourth Street
Tulsa, Oklahoma 74103
edorwart@fdlaw.com
918-583-9960 (Direct)
918-583-9922 (Office)

---

[i]A single junior client advisor in Dallas, Texas was left at a different Branch.

FREDERIC DORWART
LAWYERS
OLD CITY HALL
124 EAST FOURTH STREET
TULSA, OKLAHOMA 74103-5010

ERICA ANNE DORWART
DIRECT (918)583-9960
EMAIL edorwart@fdlaw.com

OFFICE (918) 583-9922
FACSIMILE (918) 583-8251

March 23, 2018

| | | | | |
|---|---|---|---|---|
| vwise008@gmail.com<br>**Wise, Vickie**<br>[REDACTED]<br>Dallas, TX 75204 | **Davis, Ronnie Carroll (Skip)**<br>[REDACTED]<br>Roanoke, TX 76262 | midelcid@yahoo.com<br>**Del-Cid, Melissa Morgenson**<br>[REDACTED]<br>Coppell, TX 75019 | | |
| **Hilltop Holdings, Inc.**<br>200 Crescent Court,<br>Suite 1330<br>Dallas, Texas 75201<br><br>***Registered Agent***<br>CHRISTINE A. BIALICK<br>6700 IH 35 NORTH<br>NEW BRAUNFELS, TX 78130<br><br>CORPORATION SERVICE COMPANY DBA CSC - LAWYERS INCO<br>211 E. 7TH STREET<br>SUITE 620<br>AUSTIN, TX 78701 | **National Lloyds Corporation**<br>*510 N. Valley Mills Dr., Suite 202*<br>Waco, TX 76710<br><br>***Registered Agent***<br>CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INCO<br>211 E. 7TH STREET<br>SUITE 620<br>AUSTIN, TX 78701 | **Hilltop Securities, Inc.**<br>1201 Elm Street,<br>Suite 3500<br>Dallas, TX 75270<br><br>***Registered Agent***<br>CAPITOL CORPORATE SERVICES, INC.<br>206 E. 9TH STREET<br>SUITE 1300<br>AUSTIN, TX 78701<br><br>CAPITOL SERVICES, INC.<br>1675 S. State St., Ste. B<br>Dover, DE 19901 | **Hilltop Investment Advisors, Inc.**<br>Julie Jacobs Dupress<br>34 South Dahlia St.<br>Denver, CO 802461045<br><br>***Registered Agent***<br>Julie Jacobs Dupress<br>34 South Dahlia St.<br>Denver, CO 802461045 | **Hilltop Advisors, LLC**<br>1211 MALONE ST<br>HOUSTON, TX 77007-3126<br><br>***Registered Agent***<br>BRADLEY W. RAPP<br>1980 POST OAK BOULEVARD<br>SUITE 1200<br>HOUSTON, TX 77056 |
| **Hilltop National Bank**<br>300 Country Club Road<br>Casper, WY 82609 | **Plains Capital Bank**<br>2323 Victory Avenue,<br>Suite 1400<br>Dallas, TX 75219 | | | |

**Re:**

Hilltop Raid
Resignations in Concert on March 23, 2018
Vickie Sue Wise, CRD 1883523
Ronnie Carrol "Skip" David, CRD 5400246
Melissa Morgenson Del-Cid, CRD 2448005
Cease and Desist Demand
Reminder of Obligations

Frederic Dorwart, Lawyers is general counsel to BOK Financial Corporation ("BOKF") and its subsidiaries including BOKF NA dba Bank of Texas (BOKF NA) and BOK Financial Securities, Inc. (formerly BOSC, Inc. ("BOKFS"), all (collectively "BOKF"). If counsel represents you, please immediately forward this letter to your counsel and request that your counsel contact me.

The Hilltop entities in conjunction with the individual addressees of this letter planned, orchestrated, and implemented a raid on BOKF, over a holiday (Spring Break), boldly taking BOKF client advisors in Dallas, Texas, leaving not a single employee on the team.[1] The recipients of this letter began contacting BOKF clients, in violation of applicable law and obligations to BOKF, leaving some clients, at best confused and, at worst, with the misrepresentation that Hilltop had purchased Bank of Texas. Clients have already reported that "Our whole team there just left".

The purpose of this letter is to: (i) demand that all contact with BOKF clients cease and desist, generally and particularly due to the raid; (ii), that each recipient cease and desist all activities in violation of obligations to BOKF, (iii) to provide additional reminders regarding those obligations; (iv) to deal with confidential materials which may have been misappropriated by the recipients of this letter; and (v) to demand preservation of all documents and tangible items pertaining to these matters.

I. Due to the nature of the orchestrated raid over a holiday and conspiracies to violate obligations to BOKF by recipients of this letter, BOKF demands that the recipients each stop all contact with BOKF clients serviced by individual recipients of this letter and/or BOKF clients who became known to the individual recipient through BOKF.

II. BOKF demands that each recipient cease and cease all activities in violation of obligations to BOKF which are set out in Section III.

III. All individual addressees are aware of BOKF's position with respect to its confidential information and the value BOKF places upon its employee and customer relationships. BOKF reminds all recipients of obligations pursuant common law, statute (particularly the Trade Secrets Act), and to the attached Representative agreement, incentive plan, and/or deferred compensation plan. Each employee was obligated to comply with applicable BOKF policies and procedures, including, but not limited to the Standards of Conduct to which each employee attested, as well as the agreement not to solicit. Each representative was required to safeguard BOKF Data for BOKF, including, but not limited to: work product, employee interview notes, project notes, customer information, and the like. This letter is a reminder to each recipient that BOKF strictly and aggressively enforces its rights with respect to proprietary and confidential information and its employee and customer relationships.

I specifically direct the addressees to Representative Agreements at Paragraphs 4(B), 2(K) that respectively address notice of termination, restrictive covenants (Agreement Not to Solicit) and return of data and confidentiality.

Provision (4) (B) (Thirty Day Notice) reads as follows:

[1]A single junior client advisor in Dallas, Texas was left at a different Branch.

> *This Agreement may be terminated by either party at any time, without case, but only by, giving thirty (30) days written notice to the other party.*

Provision (2) (J) (Agreement Not to Solicit) reads as follows:

> *The Representative "shall not directly or indirectly contact or solicit any customer or employee of FI or BOSC for a period of one (1) year after the termination of this Agreement for whatever reason (whether with or without cause)…*

Provisions (2)(K) and (2)(M) (Agreement to Return Data and Agreement regarding confidentiality)

> *Shall immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business…*

> *During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various. information relating to the BOSC's business operations, customers, products, marketing data, business plan, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.*

IV. All addressees should immediately ensure, jointly and severally, that: (1) each addressee has conducted a diligent search of all sources of BOKF data, including but not limited to, paper (hard copy), and electronic copies, including, but not limited to, email accounts and contacts, social media, mobile phone cards, flash disks, disks, thumb drives, personal computers, tablet computers, laptops and the like; (2) each addressee has complied with obligations to BOKF, and (3) each addressee has no BOKF data in the addressee's possession and or control. In the event that an addressee discovers that BOKF data in any addressee's possession or control, please contact me to arrange to preserve documents and eliminate your possession and/or control of BOKF data.

V. In addition, please immediately take affirmative efforts to preserve of all documents and tangible items related to the individual recipients' transitions from employment with BOKF and/or BOKF data (including, but not limited to, all forms of electronic media regardless of ownership status (entity and/or personal ownership)).

BOKF demands that: (i) each recipient of this letter cease and desist all activities as outlined above and (ii) contact Erica Anne Dorwart at Frederic Dorwart Lawyers PLLC at 918-583-9960 and edorwart@fdlaw.com) no later than noon (12:00) on Monday March 26, 2018 to discuss immediate remedies for this orchestrated raid on BOKF and violation of duties of loyalty and agreements.

Sincerely,

Erica Anne Dorwart

Erica Anne Dorwart
Counsel to BOK Financial Securities, Inc., BOKF, NA, and their Affiliates

Enclosures

BOK FINANCIAL CORPORATION

# WEALTH MANGEMENT
# Client Advisor
# 2018 Schedule

**PAYMENT OF BENEFITS**

This Schedule is subject to the Incentive Compensation Master Incentive Plan and applicable Addendum which are incorporated by reference into this schedule.

**PARTICIPATION DESIGNATION**

The following employees are eligible to participate in the Plan:

- Client Advisor (80672)

**AWARD DETERMINATION**



APP. 00093

2 | P a g e

Confidential Exhibit 004-000010



**ADDITIONAL PLAN PROVISIONS**

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.



BOK FINANCIAL CORPORATION

# WEALTH MANAGEMENT DIVISION
# BOKFS
# Securities Sales/Service Specialist
# 2018 Schedule

**PAYMENT OF BENEFITS**

This Schedule is subject to the Incentive Compensation Master Incentive Plan and applicable Addendum which are incorporated by reference into this schedule.

**PARTICIPATION DESIGNATION**

The following BOKFS employees are eligible to participate in the Plan as of their employment date:

- Securities Sales/Service Specialist - 20223
- Sr. Securities Sales/Service Specialist - 80332

**AWARD DETERMINATION**

**ADDITIONAL PLAN PROVISIONS**

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director,

employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.

**BOSC, INC.**
**REPRESENTATIVE AGREEMENT**

This Agreement is made and entered into this 3 day of April, 2012 by and between BOSC, Inc., an Oklahoma Corporation ("BOSC") and Ronnie Davis JR ("Representative").

In consideration of the mutual promises hereinafter made and other good and valuable consideration (the receipt and adequacy of which BOSC and Representative hereby acknowledge), BOSC and Representative agree as follows:

1. **BOSC'S OBLIGATIONS**. BOSC:

A. Hereby appoints Representative as its agent to be located in a branch office of Bank of Texas (hereinafter "FI") located at 5956 Sherry Ln, Suite 700, Dallas, TX 75225 ("Branch Office") to solicit purchases of securities and investments offered through BOSC to depositors and customers of FI and to the general public.

B. Shall exercise exclusive control over the Representative with respect to all aspects of securities transactions and related securities business through a Series 24 licensed principal of BOSC who shall serve as the Branch Manager ("Branch Manager") of the Office of Supervisory Jurisdiction through which all securities activities shall take place.

C. BOSC shall employ Representative as a professional with compensation to be paid to Representative pursuant to separate agreement between BOSC and Representative and in accordance with the policies and procedures then in effect at BOSC.

2. **THE REPRESENTATIVE'S OBLIGATIONS**. The Representative:

A. Shall provide to prospective purchasers a current prospectus or other offering materials when required by the federal and/or state securities laws, shall explain fully the terms of any security or investment offering for sale to a customer, shall make no untrue or misleading statements or representations, shall not omit any material information or facts pertaining to any aspect of the transaction or sale, and shall comply with all laws respecting offers and sales of securities and advising persons on such matters.

B. Shall (i) conduct business in accordance with the rules and regulations of the Securities and Exchange Commission (SEC), the National Association of Securities Dealers (NASD), any state agencies regulating Representative's activities, (ii) conduct business in accordance with the policies and procedures of BOSC and the best customs and procedures of the securities industry, (iii) shall not conduct business or receive funds until fully licensed as required by all such laws, rules and regulations, and (iv) shall accept such supervision and

control by his/her Branch Manager and officers of BOSC as BOSC determines is necessary or appropriate to fully and timely comply with all such laws, regulations, rules, customs and procedures. Without limiting the generality of the foregoing, shall not, directly or indirectly, (i) engage in municipal securities business with an issuer to whom the Representative has made a political contribution within the previous two years (other than a contribution in an amount less than $250 to an official of such issuer for whom the Representative is entitled to vote) or (ii) make a political contribution to any issuer to whom the Representative is engaging or seeking to engage in the municipal securities business.

C. Shall (i) mail any correspondence, make any communication or cause any advertising to be made respecting investments or the investment business only after said correspondence, communication or advertising is approved in advance by BOSC and (ii) provide copies of all such correspondence, communication and advertising to BOSC in accordance with all applicable SEC, NASD and state agencies rules and regulations.

D. Shall accept payments from customers by check or money order only payable to the underwriter, investment company or insurance company designated by BOSC.

E. Shall indemnify BOSC and hold BOSC harmless from any and all loss, cost or liability (including legal, accounting and expert fees and expenses) which result from the Representative's negligence, violation, or other misconduct.

F. Shall not act in any manner whatsoever as an agent for any individual or entity competitive in any respect with BOSC.

G. Shall (i) represent to all customers and prospective customers, whenever he/she is soliciting purchases or interviewing customers or otherwise, that (a) he/she is acting as a Representative of BOSC and (b) all orders for securities will be placed through BOSC and (ii) conduct all business totally separate and distinct from all other business conducted at the FI.

H. Shall conduct himself/herself and his/her affairs in a professional manner consistent with the building of a quality reputation for himself/herself and BOSC and in accordance with the best standards of the industry.

I. Recognizes that (i) he/she shall accept direction for BOSC securities activities solely from BOSC in accordance with BOSC's policies and procedures, and (ii) will neither seek nor accept direction regarding the conduct of securities business from any individual or group who is not a duly authorized BOSC Branch Manager or BOSC officer.

J. Shall not (i) directly solicit any established customer of BOSC for a period of one (1) year after the termination of this Agreement (for whatever reason,

whether with or without cause) or (ii) solicit any employee of BOSC to accept employment with any entity for a period of one (1) year after termination of this Agreement (for whatever reason, whether with or without cause). This promise by Representative may be enforced by temporary, preliminary and permanent injunctive relief without the necessity of establishing irreparable injury and without the posting of any bond, in addition to any other remedies the law may provide. Without limiting the generality of the provisions of this paragraph, the phrase "directly solicit any established customer of BOSC" includes (i) making or participating in any mail or e-mail communication to such customer which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

K. Shall, immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business (including training, licensure, commission, and production information) of BOSC and/or FI and/or customers of BOSC and/or FI including all electronic files and documents (whether prepared by BOSC and/or FI or the Representative and whether prepared before or after the start of this Agreement) containing any information respecting the identities of the customers of BOSC and/or FI or their addresses or telephone numbers, or the nature or amounts of their investments, assets or liabilities, or their investment needs or strategies. Without limiting the generality of the provisions of this Paragraph, as used in this Paragraph the words "documents and electronic files concerning the business of BOSC" includes all documents identified in the BOSC Quarterly Certification, diaries, handwritten notes, address books, calendars, and other documents (written or electronic and whether or not Representative regards such documents as his/her personal documents) which contain any of the information described in the Paragraph whether prepared by Representative or BOSC.

L. Shall completely perform all duties (including the duty of loyalty) owed by Representative to his prior employer until such time as such duties shall have terminated, return to his employer all copies and electronic files of his prior employer (of the kind described in the preceding paragraph relating to the business of his prior employer, and comply with all lawful agreements limiting the Representative's right to engage in the securities business.

M. During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various information relating to the BOSC's business operations, customers, products, marketing data, business plans, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an

advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.

3. **LIMITED OF AUTHORITY AND REPRESENTATIVE'S REPRESENTATION.**

A. The Representative is a limited agent of BOSC only and has no authority to bind BOSC in any way except to communicate to customers materials supplied by BOSC and to accept transactions in securities offered through BOSC.

B. The Representative hereby represents that he/she has delivered to BOSC true copies of all agreements by which Representative may be bound which purport to limit the ability of Representative to engage in the securities business.

4. **TERMINATION OF AGREEMENT.**

A. The effective date of this Agreement shall be April 3, 2012. This Agreement shall automatically renew on the April 15 next following and on each April 15 thereafter for one year periods unless this Agreement is terminated as hereafter provided.

B. This Agreement may be terminated by either party at any time, without cause, by but only by, giving thirty (30) days written notice to the other party.

C. This Agreement shall automatically terminate (i) upon cancellation of Representative's coverage by his/her surety company or (ii) upon cancellation or non-renewal of any required license.

D. This Agreement may be terminated by BOSC at any time without notice for a breach of this Agreement by the Representative.

E. The death of the Representative shall automatically terminate this Agreement on the date of death.

F. Upon termination, the Representative shall cease using the name BOSC, shall no longer hold himself/herself out as a Representative and shall return all materials bearing the BOSC name to BOSC and as otherwise provided herein

5. **MISCELLANEOUS PROVISIONS**. The following miscellaneous provisions shall apply to this Agreement:

A. All notices or advices required or permitted to be given by or pursuant to this Agreement, shall be given in writing. All such notices and advices shall be (i) delivered personally, (ii) delivered by facsimile or delivered by U.S. Registered or Certified Mail, Return Receipt Requested mail, or (iii) delivered for overnight delivery by a nationally recognized overnight courier service. Such notices and advices shall be deemed to have been given (i) the first business day following the date of delivery if delivered personally or by facsimile, (ii) on the third business day following the date of mailing if mailed by U.S. Registered or Certified Mail, Return Receipt Requested, or (iii) on the date of receipt if delivered for overnight delivery by a nationally recognized overnight courier service. All such notices and advices and all other communications related to this Agreement shall be given as follows:

If to BOSC:

Scott Grauer
BOSC, Inc.
Williams Tower, Ninth Floor
Tulsa, Oklahoma 74103
918-595-3165 - Tel
918-588-6510 - Fax

If to Representative:

Telephone
Fax

or to such other address as the party may have furnished to the other parties in accordance herewith, except that notice of change of addresses shall be effective only upon receipt.

B. This Agreement shall be deemed made and executed in Tulsa County, Oklahoma.

C. This Agreement shall be subject to, and interpreted by and in accordance with, the laws (excluding conflict of law provisions) of the State of Oklahoma.

D. This Agreement is the entire Agreement of the parties respecting the subject matter hereof. There are no other agreements, representations or warranties, whether oral or written, respecting the subject matter hereof.

Confidential



E. No course of prior dealings involving any of the parties hereto and no usage of trade shall be relevant or advisable to interpret, supplement, explain or vary any of the terms of this Agreement, as expressly provided herein.

F. This Agreement, and all the provisions of this Agreement, shall be deemed drafted by all of the parties hereto. This Agreement shall not be interpreted strictly for or against any party, but solely in accordance with the fair meaning of the provisions hereof to effectuate the purposes and interest of this Agreement.

G. Each party hereto has entered into this Agreement based solely upon the agreements, representations and warranties expressly set forth herein and upon his own knowledge and investigation.

H. Each of the persons signing below on behalf of a party hereto represents and warrants that he or she has full requisite power and authority to execute and deliver this Agreement on behalf of the party for whom he or she is signing and to bind such party to the terms and conditions of this Agreement.

I. This Agreement may be executed in counterparts, each of which shall be deemed an original. This Agreement shall become effective only when all of the parties hereto shall have executed the original or counterpart hereof. This agreement may be executed and delivered by a facsimile transmission of a counterpart hereof.

J. In any action brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the opposing parties to such action such party's reasonable attorneys fees and costs (including court costs, reasonable fees of accountants and experts, and other expenses incidental to the action).

K. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. This is not a third party beneficiary contract. No person or entity other than a party hereto shall have any rights under this Agreement. This Agreement may be amended or modified only in a writing which specifically references this Agreement.

BOSC, INC.

By [signature] SCOTT B. GRANGER, CEO

[signature]

"Representative" Ronnie Davis JA

## AMENDMENT TO BOSC, INC. REPRESENTATIVE AGREEMENT

The BOSC, Inc. Representative Agreement dated as of 4-3-12 (the "Agreement"), among BOSC, Inc., an Oklahoma Corporation ("BOSC") and Ronnie Davis JR (the "Representative") shall be amended as set forth below.

***Amendment.***

1. **BOSC's OBLIGATIONS.** The following Paragraph D shall be inserted immediately following Paragraph C of the Agreement:

   D. With respect to Representative's engagement to solicit advisory clients, shall: provide certain training and supervision over Representative's advisory practices, provide copies of the appropriate Form(s) ADV – Part II and related schedules, and any updates thereof and provide a copy of the advisory agreement and support during contract negotiations.

2. **THE REPRESENTATIVE'S OBLIGATIONS.** The following Paragraph N shall be inserted immediately following Paragraph M of the Agreement:

   N. With respect to Representative's engagement to solicit advisory clients, shall: identify and solicit potential advisory clients, provide such potential client a copy of the appropriate Form(s) ADV – Part II and related schedules, and any updates thereof, and obtain, at or prior to the time such client enters into an advisory agreement, an acknowledgement that such client has received a copy of Form ADV – Part II and related schedules, provide ongoing services that are reasonably designed to support retention of such clients, and only use the advisory agreement and written materials that have been provided and approved and only make representations that have been so approved.

***Entire Agreement.*** The Agreement, as amended herein, constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communications or prior writings (except as otherwise provided herein) with respect thereto.

***Governing Law.*** This Amendment shall be governed by and construed in accordance with the laws of the State of Oklahoma without reference to choice of law doctrine.

**IN WITNESS WHEREOF,** the parties hereto have caused this Amendment to be executed as of the date first above written and do each hereby warrant and represent that their respective signatory, whose signature appears below, has been and is on the date of this Amendment duly authorized by all necessary and appropriate corporate action to execute this Amendment.

**BOSC, Inc.**

By: [signature] By: [signature]

Name: SCOTT B. GRAUER Name: Ronnie Davis JR

Title: CEO Title: Representative

**BOSC, INC.**
**REPRESENTATIVE AGREEMENT**

This Agreement is made and entered into this 21st day of June, 2006 by and between BOSC, Inc., an Oklahoma Corporation ("BOSC") and Melissa Jo Morgeson ("Representative").

In consideration of the mutual promises hereinafter made and other good and valuable consideration (the receipt and adequacy of which BOSC and Representative hereby acknowledge), BOSC and Representative agree as follows:

1. **BOSC'S OBLIGATIONS**. BOSC:

A. Hereby appoints Representative as its agent to be located in a branch office of BANK OF OKLAHOMA, N.A. (hereinafter "FI") located at 5956 Sherry Lane, Ste 100 ("Branch Office") to solicit purchases of securities and investments offered through BOSC to depositors and customers of FI and to the general public.

B. Shall exercise exclusive control over the Representative with respect to all aspects of securities transactions and related securities business through a Series 24 licensed principal of BOSC who shall serve as the Branch Manager ("Branch Manager") of the Office of Supervisory Jurisdiction through which all securities activities shall take place.

C. BOSC shall employ Representative as a professional with compensation to be paid to Representative pursuant to separate agreement between BOSC and Representative and in accordance with the policies and procedures then in effect at BOSC.

2. **THE REPRESENTATIVE'S OBLIGATIONS**. The Representative:

A. Shall provide to prospective purchasers a current prospectus or other offering materials when required by the federal and/or state securities laws, shall explain fully the terms of any security or investment offering for sale to a customer, shall make no untrue or misleading statements or representations, shall not omit any material information or facts pertaining to any aspect of the transaction or sale, and shall comply with all laws respecting offers and sales of securities and advising persons on such matters.

B. Shall (i) conduct business in accordance with the rules and regulations of the Securities and Exchange Commission (SEC), the National Association of Securities Dealers (NASD), any state agencies regulating Representative's activities, (ii) conduct business in accordance with the policies and procedures of BOSC and the best customs and procedures of the securities industry, (iii) shall not conduct business or receive funds until fully licensed as required by all such laws, rules and regulations, and (iv) shall accept such supervision and control by his/her Branch Manager and officers of BOSC as BOSC determines is necessary or appropriate to fully and timely comply with

all such laws, regulations, rules, customs and procedures. Without limiting the generality of the foregoing, shall not, directly or indirectly, (i) engage in municipal securities business with an issuer to whom the Representative has made a political contribution within the previous two years (other than a contribution in an amount less than $250 to an official of such issuer for whom the Representative is entitled to vote) or (ii) make a political contribution to any issuer to whom the Representative is engaging or seeking to engage in the municipal securities business.

C. Shall (i) mail any correspondence, make any communication or cause any advertising to be made respecting investments or the investment business only after said correspondence, communication or advertising is approved in advance by BOSC and (ii) provide copies of all such correspondence, communication and advertising to BOSC in accordance with all applicable SEC, NASD and state agencies rules and regulations.

D. Shall accept payments from customers by check or money order only payable to the underwriter, investment company or insurance company designated by BOSC.

E. Shall indemnify BOSC and hold BOSC harmless from any and all loss, cost or liability (including legal, accounting and expert fees and expenses) which result from the Representative's negligence, violation, or other misconduct.

F. Shall not act in any manner whatsoever as an agent for any individual or entity competitive in any respect with BOSC.

G. Shall (i) represent to all customers and prospective customers, whenever he/she is soliciting purchases or interviewing customers or otherwise, that (a) he/she is acting as a Representative of BOSC and (b) all orders for securities will be placed through BOSC and (ii) conduct all business totally separate and distinct from all other business conducted at the FI.

H. Shall conduct himself/herself and his/her affairs in a professional manner consistent with the building of a quality reputation for himself/herself and BOSC and in accordance with the best standards of the industry.

I. Recognizes that (i) he/she shall accept direction for BOSC securities activities solely from BOSC in accordance with BOSC's policies and procedures, and (ii) will neither seek nor accept direction regarding the conduct of securities business from any individual or group who is not a duly authorized BOSC Branch Manager or BOSC officer.

J. Shall not (i) directly solicit any established customer of BOSC for a period of one (1) year after the termination of this Agreement (for whatever reason, whether with or without cause) or (ii) solicit any employee of BOSC to accept employment with any entity for a period of one (1) year after termination of this Agreement (for whatever reason, whether with or without cause). This promise by Representative may be enforced by temporary, preliminary and

permanent injunctive relief without the necessity of establishing irreparable injury and without the posting of any bond, in addition to any other remedies the law may provide. Without limiting the generality of the provisions of this paragraph, the phrase "directly solicit any established customer of BOSC" includes (i) making or participating in any mail or e-mail communication to such customer which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

K. Shall, immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business (including training, licensure, commission, and production information) of BOSC and/or FI and/or customers of BOSC and/or FI including all electronic files and documents (whether prepared by BOSC and/or FI or the Representative and whether prepared before or after the start of this Agreement) containing any information respecting the identities of the customers of BOSC and/or FI or their addresses or telephone numbers, or the nature or amounts of their investments, assets or liabilities, or their investment needs or strategies. Without limiting the generality of the provisions of this Paragraph, as used in this Paragraph the words "documents and electronic files concerning the business of BOSC" includes all documents identified in the BOSC Quarterly Certification, diaries, handwritten notes, address books, calendars, and other documents (written or electronic and whether or not Representative regards such documents as his/her personal documents) which contain any of the information described in the Paragraph whether prepared by Representative or BOSC.

L. Shall completely perform all duties (including the duty of loyalty) owed by Representative to his prior employer until such time as such duties shall have terminated, return to his employer all copies and electronic files of his prior employer (of the kind described in the preceding paragraph relating to the business of his prior employer, and comply with all lawful agreements limiting the Representative's right to engage in the securities business.

M. During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various information relating to the BOSC's business operations, customers, products, marketing data, business plans, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether

they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.

3. **LIMITED OF AUTHORITY AND REPRESENTATIVE'S REPRESENTATION.**

A. The Representative is a limited agent of BOSC only and has no authority to bind BOSC in any way except to communicate to customers materials supplied by BOSC and to accept transactions in securities offered through BOSC.

B. The Representative hereby represents that he/she has delivered to BOSC true copies of all agreements by which Representative may be bound which purport to limit the ability of Representative to engage in the securities business.

4. **TERMINATION OF AGREEMENT.**

A. The effective date of this Agreement shall be June 21, 2006. This Agreement shall automatically renew on the April 15 next following and on each April 15 thereafter for one year periods unless this Agreement is terminated as hereafter provided.

B. This Agreement may be terminated by either party at any time, without cause, by but only by, giving thirty (30) days written notice to the other party.

C. This Agreement shall automatically terminate (i) upon cancellation of Representative's coverage by his/her surety company or (ii) upon cancellation or non-renewal of any required license.

D. This Agreement may be terminated by BOSC at any time without notice for a breach of this Agreement by the Representative.

E. The death of the Representative shall automatically terminate this Agreement on the date of death.

F. Upon termination, the Representative shall cease using the name BOSC, shall no longer hold himself/herself out as a Representative and shall return all materials bearing the BOSC name to BOSC and as otherwise provided herein

5. **MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions shall apply to this Agreement:

A. All notices or advices required or permitted to be given by or pursuant to this Agreement, shall be given in writing. All such notices and advices shall be (i) delivered personally, (ii) delivered by facsimile or delivered by U.S. Registered or Certified Mail, Return Receipt Requested mail, or (iii) delivered for overnight delivery by a nationally recognized overnight courier service. Such notices and advices shall be deemed to have been given (i) the first business day following the date of delivery if delivered personally or by facsimile, (ii) on the third business day following the date of mailing if mailed by U.S. Registered or Certified Mail, Return Receipt Requested, or (iii) on the date of receipt if delivered for overnight delivery by a nationally recognized overnight courier service. All such notices and advices and all other communications related to this Agreement shall be given as follows:

If to BOSC:

Scott Grauer
BOSC, Inc.
Williams Tower, Ninth Floor
Tulsa, Oklahoma 74103
918-595-3165 - Tel
918-588-6510 - Fax

If to Representative:

Melissa Jo Morgeson
5956 Sherry Ln. Ste 100
Dallas, TX 75225
[redacted] - Telephone
[redacted] - Fax

or to such other address as the party may have furnished to the other parties in accordance herewith, except that notice of change of addresses shall be effective only upon receipt.

B. This Agreement shall be deemed made and executed in Tulsa County, Oklahoma.

C. This Agreement shall be subject to, and interpreted by and in accordance with, the laws (excluding conflict of law provisions) of the State of Oklahoma.

D. This Agreement is the entire Agreement of the parties respecting the subject matter hereof. There are no other agreements, representations or warranties, whether oral or written, respecting the subject matter hereof.

E. No course of prior dealings involving any of the parties hereto and no usage of trade shall be relevant or advisable to interpret, supplement, explain or vary any of the terms of this Agreement, as expressly provided herein.

F. This Agreement, and all the provisions of this Agreement, shall be deemed drafted by all of the parties hereto. This Agreement shall not be interpreted

strictly for or against any party, but solely in accordance with the fair meaning of the provisions hereof to effectuate the purposes and interest of this Agreement.

G. Each party hereto has entered into this Agreement based solely upon the agreements, representations and warranties expressly set forth herein and upon his own knowledge and investigation.

H. Each of the persons signing below on behalf of a party hereto represents and warrants that he or she has full requisite power and authority to execute and deliver this Agreement on behalf of the party for whom he or she is signing and to bind such party to the terms and conditions of this Agreement.

I. This Agreement may be executed in counterparts, each of which shall be deemed an original. This Agreement shall become effective only when all of the parties hereto shall have executed the original or counterpart hereof. This agreement may be executed and delivered by a facsimile transmission of a counterpart hereof.

J. In any action brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the opposing parties to such action such party's reasonable attorneys fees and costs (including court costs, reasonable fees of accountants and experts, and other expenses incidental to the action).

K. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. This is not a third party beneficiary contract. No person or entity other than a party hereto shall have any rights under this Agreement. This Agreement may be amended or modified only in a writing which specifically references this Agreement.

BOSC, INC.

By [signature]

[signature]

SCOTT B. GRAUER, PRES. + CEO

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:57 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771825851618 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 10:05 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771825851618 Delivered

# Your package has been delivered

## Tracking # 771825851618

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 10:03 am

**Vickie Sue Wise**

DALLAS, TX 75204
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771825851618 |
| **Status:** | Delivered: 03/26/2018 10:03 AM Signed for By: Signature not required |
| **Reference:** | 0977. Hilltop |
| **Signed for by:** | Signature not required |
| **Delivery location:** | DALLAS, TX |
| **Delivered to:** | Residence |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| | Residential Delivery |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 10:04 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00113

Confidential

Exhibit 004-000030

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:58 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771825871388 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:50 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771825871388 Delivered

FedEx®

# Your package has been delivered

## Tracking # 771825871388

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:45 am

**Melissa Morgenson Del-Cid**

COPPELL, TX 75019
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771825871388 |
| **Status:** | Delivered: 03/26/2018 09:45 AM Signed for By: Signature not required |
| **Reference:** | 0977. Hilltop |
| **Signed for by:** | Signature not required |
| **Delivery location:** | COPPELL, TX |
| **Delivered to:** | Residence |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| | Residential Delivery |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:49 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00116

Confidential

Exhibit 004-000033

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:57 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771825831914 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 10:00 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771825831914 Delivered

# Your package has been delivered

## Tracking # 771825831914

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:58 am

**Ronnie Carroll Davis**

ROANOKE, TX 76262
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771825831914 |
| **Status:** | Delivered: 03/26/2018 09:58 AM Signed for By: Signature not required |
| **Reference:** | 0977. Hilltop |
| **Signed for by:** | Signature not required |
| **Delivery location:** | ROANOKE, TX |
| **Delivered to:** | Residence |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| | Residential Delivery |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:59 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00119

Confidential

Exhibit 004-000036

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:58 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771826271149 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:55 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826271149 Delivered

FedEx®

# Your package has been delivered

## Tracking # 771826271149

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:51 am

**Attn: Investor Relations**
Hilltop Holdings
200 Crescent Court, Suite 1330
DALLAS, TX 75201
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826271149 |
| **Status:** | Delivered: 03/26/2018 09:51 AM Signed for By: L.GANNETT |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | L.GANNETT |
| **Delivery location:** | DALLAS, TX |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:55 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00122

Confidential

Exhibit 004-000039

**Caywood, Candace**

| | |
|---|---|
| **From:** | Tripp, Tonya |
| **Sent:** | Tuesday, March 27, 2018 3:57 PM |
| **To:** | Caywood, Candace |
| **Subject:** | FW: FedEx Shipment 771826260380 Delivered |

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 10:06 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826260380 Delivered

# Your package has been delivered

## Tracking # 771826260380

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:59 am

**Christine A. Bialick**
Hilltop Holdings
6700 IH 35 North
NEW BRAUNFELS, TX 78130
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826260380 |
| **Status:** | Delivered: 03/26/2018 09:59 AM Signed for By: C.LOWEBELLOW |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | C.LOWEBELLOW |
| **Delivery location:** | NEW BRAUNFELS, TX |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 10:06 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00125

Confidential

Exhibit 004-000042

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:58 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771826227841 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:52 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826227841 Delivered

# Your package has been delivered

## Tracking # 771826227841

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:48 am

**CORPORATION SERVICE COMPANY DBA CSC**
Hilltop Holdings
211 E. 7th Street, Suite 620
AUSTIN, TX 78701
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826227841 |
| **Status:** | Delivered: 03/26/2018 09:48 AM Signed for By: Signature Release on file |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | Signature Release on file |
| **Delivery location:** | AUSTIN, TX |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:51 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00128

Confidential

Exhibit 004-000045

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:58 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771826290442 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:52 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826290442 Delivered



FedEx®

# Your package has been delivered

## Tracking # 771826290442

Ship date:
**Fri, 3/23/2018**

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
**Mon, 3/26/2018 9:48 am**

**Corporation Service Company dba CSC**
National Lloyds Corporation
211 E. 7th Street
Suite 620
AUSTIN, TX 78701
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826290442 |
| **Status:** | Delivered: 03/26/2018 09:48 AM Signed for By: Signature Release on file |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | Signature Release on file |
| **Delivery location:** | AUSTIN, TX |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:51 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

Confidential

APP. 00131

Exhibit 004-000048

**Caywood, Candace**

| | |
|---|---|
| **From:** | Tripp, Tonya |
| **Sent:** | Tuesday, March 27, 2018 3:59 PM |
| **To:** | Caywood, Candace |
| **Subject:** | FW: FedEx Shipment 771826299542 Delivered |

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:32 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826299542 Delivered

FedEx®

# Your package has been delivered

## Tracking # 771826299542

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:27 am

**National Lloyds Corporation**
510 N. Valley Mills Drive
Suite 202
WACO, TX 76710
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826299542 |
| **Status:** | Delivered: 03/26/2018 09:27 AM Signed for By: C.MCBURNETT |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | C.MCBURNETT |
| **Delivery location:** | WACO, TX |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:31 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00134

Confidential

Exhibit 004-000051

**Caywood, Candace**

| | |
|---|---|
| **From:** | Tripp, Tonya |
| **Sent:** | Tuesday, March 27, 2018 3:59 PM |
| **To:** | Caywood, Candace |
| **Subject:** | FW: FedEx Shipment 771826069577 Delivered |

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:18 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826069577 Delivered

# Your package has been delivered

## Tracking # 771826069577

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:09 am

**Hilltop Securities, Inc.**
1201 Elm Street, Suite 3500
DALLAS, TX 75270
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826069577 |
| **Status:** | Delivered: 03/26/2018 09:09 AM Signed for By: L.FLINAING |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | L.FLINAING |
| **Delivery location:** | DALLAS, TX |
| **Delivered to:** | Mailroom |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:17 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00137

Confidential

Exhibit 004-000054

**Caywood, Candace**

| | |
|---|---|
| **From:** | Tripp, Tonya |
| **Sent:** | Tuesday, March 27, 2018 3:58 PM |
| **To:** | Caywood, Candace |
| **Subject:** | FW: FedEx Shipment 771826057003 Delivered |

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:41 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826057003 Delivered

FedEx®

# Your package has been delivered

## Tracking # 771826057003

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:37 am

**Capitol Corporate Services, Inc.**
Hilltop Securities, Inc.
206 E. 9th Street, Suite 1300
AUSTIN, TX 78701
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826057003 |
| **Status:** | Delivered: 03/26/2018 09:37 AM Signed for By: S.KEMBLE |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | S.KEMBLE |
| **Delivery location:** | AUSTIN, TX |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:40 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

Confidential

APP. 00140

Exhibit 004-000057

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:59 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771826034848 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:03 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826034848 Delivered

FedEx®

# Your package has been delivered

## Tracking # 771826034848

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:58 am

**Capitol Services, Inc.**
Hilltop Securities, Inc.
1675 S. State Street, Suite B
DOVER, DE 19901
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826034848 |
| **Status:** | Delivered: 03/26/2018 09:58 AM Signed for By: J.DAVIS |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | J.DAVIS |
| **Delivery location:** | DOVER, DE |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 12:00 pm |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:03 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3 APP. 00143
Confidential Exhibit 004-000060

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:57 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771826189674 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 10:00 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826189674 Delivered

FedEx®

# Your package has been delivered

## Tracking # 771826189674

| Ship date: | Delivery date: |
|---|---|
| Fri, 3/23/2018 | Mon, 3/26/2018 9:56 am |
| **Tonya Tripp**<br>Frederic Dorwart Lawyers<br>TULSA, OK 74103<br>US | **Plains Capital Bank**<br>2323 Victory Avenue, Suite 1400<br>DALLAS, TX 75219<br>US |

Delivered

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826189674 |
| **Status:** | Delivered: 03/26/2018 09:56 AM Signed for By: K.VILCHIS |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | K.VILCHIS |
| **Delivery location:** | Dallas, TX |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 10:00 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3 APP. 00146
Confidential Exhibit 004-000063

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:57 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771826091730 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 10:53 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826091730 Delivered

FedEx®

# Your package has been delivered

## Tracking # 771826091730

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:51 am

**Julie Jacobs Dupress**
Hilltop Investment Advisors, Inc.
34 South Dahlia Street
DENVER, CO 80246
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826091730 |
| **Status:** | Delivered: 03/26/2018 09:51 AM Signed for By: Signature not required |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | Signature not required |
| **Delivery location:** | Denver, CO |
| **Delivered to:** | Residence |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| | Residential Delivery |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 10:52 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

Confidential

APP. 00149

Exhibit 004-000066

**Caywood, Candace**

| | |
|---|---|
| **From:** | Tripp, Tonya |
| **Sent:** | Tuesday, March 27, 2018 3:58 PM |
| **To:** | Caywood, Candace |
| **Subject:** | FW: FedEx Shipment 771826110096 Delivered |

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 9:56 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826110096 Delivered

# Your package has been delivered

## Tracking # 771826110096

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:48 am

**Bradley W. Rapp**
Hilltop Advisors, LLC
1980 Post Oak Boulevard, Suite 1200
HOUSTON, TX 77056
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826110096 |
| **Status:** | Delivered: 03/26/2018 09:48 AM Signed for By: K.KRUL |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | K.KRUL |
| **Delivery location:** | HOUSTON, TX |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:55 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3

APP. 00152

Confidential

Exhibit 004-000069

**Caywood, Candace**

| | |
|---|---|
| **From:** | Tripp, Tonya |
| **Sent:** | Tuesday, March 27, 2018 3:59 PM |
| **To:** | Caywood, Candace |
| **Subject:** | FW: FedEx Shipment 771826206854 Delivery Exception |

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 7:21 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826206854 Delivery Exception

# We were unable to complete delivery of your package

See "Resolving Delivery Issues" for recommended actions

See "Preparing for Delivery" for helpful tips

Tracking # 771826206854

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivery exception

Scheduled delivery:
Pending

**Hilltop Advisors, LLC**
1211 Malone Street
DALLAS, TX 75219
US

## Shipment Facts

FedEx attempted, but was unable to complete delivery of the following shipment:

| | |
|---|---|
| **Tracking number:** | 771826206854 |
| **Status:** | Delivery exception |
| **Reference:** | 0977 Hilltop |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

## Resolving Delivery Issues

The reason delivery was not completed is outlined below. Where applicable, resolution recommendations are also provided.

| Exception Reason | Recommended Action |
|---|---|
| 1. Incorrect Address | Contact us to provide correct delivery address and/or additional delivery information. |

## Preparing for Delivery

To help ensure successful delivery of your shipment, please review the below.

### Won't be in?

You may be able to hold your delivery at a convenient FedEx World Service Center or FedEx Office location for pick up. Track your shipment to determine Hold at FedEx location availability.

The new destination address for your shipment is displayed at the top of this message. For your records, the original destination address is provided below.

Hilltop Advisors, LLC
1211 Malone Street
Houston, TX 75219 US

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 7:20 AM CDT on 03/26/2018.

All weights are estimated.

The shipment is scheduled for delivery on or before the scheduled delivery displayed above. FedEx does not determine money-back guarantee or delay claim requests based on the scheduled delivery. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx customer support representative.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

**Caywood, Candace**

**From:** Tripp, Tonya
**Sent:** Tuesday, March 27, 2018 3:57 PM
**To:** Caywood, Candace
**Subject:** FW: FedEx Shipment 771826177041 Delivered

Tonya Tripp
Legal Assistant
**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Old City Hall
Tulsa, OK 74103-5010
(918)583-9922 (telephone)
(918)583-8251 (facsimile)

FREDERIC DORWART
LAWYERS PLLC

*This email communication and any attachments hereto are confidential and may be attorney-client privileged. If you are not the intended recipient, please notify me immediately and destroy the original and all copies of this email communication and any attachments hereto. Any unauthorized dissemination, distribution, or copying of this email communication and any attachments hereto is strictly prohibited.*

---

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Monday, March 26, 2018 10:08 AM
**To:** Tripp, Tonya <ttripp@fdlaw.com>
**Subject:** FedEx Shipment 771826177041 Delivered

FedEx®

# Your package has been delivered

## Tracking # 771826177041

Ship date:
Fri, 3/23/2018

**Tonya Tripp**
Frederic Dorwart Lawyers
TULSA, OK 74103
US

Delivered

Delivery date:
Mon, 3/26/2018 9:05 am

**Hilltop National Bank**
300 Country Club Road
CASPER, WY 82609
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771826177041 |
| **Status:** | Delivered: 03/26/2018 09:05 AM Signed for By: N.OWALOWSKI |
| **Reference:** | 0977 Hilltop |
| **Signed for by:** | N.OWALOWSKI |
| **Delivery location:** | CASPER, WY |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx Priority Overnight |
| **Packaging type:** | FedEx Envelope |
| **Number of pieces:** | 1 |
| **Weight:** | 0.50 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 3/26/2018 by 10:30 am |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 10:08 AM CDT on 03/26/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

3 APP. 00158

Confidential Exhibit 004-000075



# WEALTH MANGEMENT
# Client Advisor
# 2018 Schedule

**PAYMENT OF BENEFITS**

This Schedule is subject to the Incentive Compensation Master Incentive Plan and applicable Addendum which are incorporated by reference into this schedule.

**PARTICIPATION DESIGNATION**

The following employees are eligible to participate in the Plan:

- Client Advisor (80672)

**AWARD DETERMINATION**



APP. 00160
2 | P a g e
Confidential Exhibit 005&006-000002



**ADDITIONAL PLAN PROVISIONS**

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.



# WEALTH MANGEMENT
# Client Advisor
# 2018 Schedule

**PAYMENT OF BENEFITS**

This Schedule is subject to the Incentive Compensation Master Incentive Plan and applicable Addendum which are incorporated by reference into this schedule.

**PARTICIPATION DESIGNATION**

The following employees are eligible to participate in the Plan:

- Client Advisor (80672)

**AWARD DETERMINATION**



APP. 00163
2 | P a g e
Confidential Exhibit 006-000002



**ADDITIONAL PLAN PROVISIONS**

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.



BOK FINANCIAL CORPORATION

# WEALTH MANAGEMENT DIVISION
# BOKFS
# Securities Sales/Service Specialist
# 2018 Schedule

**PAYMENT OF BENEFITS**

This Schedule is subject to the Incentive Compensation Master Incentive Plan and applicable Addendum which are incorporated by reference into this schedule.

**PARTICIPATION DESIGNATION**

The following BOKFS employees are eligible to participate in the Plan as of their employment date:

- Securities Sales/Service Specialist - 20223
- Sr. Securities Sales/Service Specialist - 80332

**AWARD DETERMINATION**

**ADDITIONAL PLAN PROVISIONS**

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director,

employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.

**BOSC, INC.**
**REPRESENTATIVE AGREEMENT**

This Agreement is made and entered into this 3 day of April, 2012 by and between BOSC, Inc., an Oklahoma Corporation ("BOSC") and Ronnie Davis JR ("Representative").

In consideration of the mutual promises hereinafter made and other good and valuable consideration (the receipt and adequacy of which BOSC and Representative hereby acknowledge), BOSC and Representative agree as follows:

1. **BOSC'S OBLIGATIONS**. BOSC:

A. Hereby appoints Representative as its agent to be located in a branch office of Bank of Texas (hereinafter "FI") located at 5956 Sherry Ln, Suite 700, Dallas, TX 75225 ("Branch Office") to solicit purchases of securities and investments offered through BOSC to depositors and customers of FI and to the general public.

B. Shall exercise exclusive control over the Representative with respect to all aspects of securities transactions and related securities business through a Series 24 licensed principal of BOSC who shall serve as the Branch Manager ("Branch Manager") of the Office of Supervisory Jurisdiction through which all securities activities shall take place.

C. BOSC shall employ Representative as a professional with compensation to be paid to Representative pursuant to separate agreement between BOSC and Representative and in accordance with the policies and procedures then in effect at BOSC.

2. **THE REPRESENTATIVE'S OBLIGATIONS**. The Representative:

A. Shall provide to prospective purchasers a current prospectus or other offering materials when required by the federal and/or state securities laws, shall explain fully the terms of any security or investment offering for sale to a customer, shall make no untrue or misleading statements or representations, shall not omit any material information or facts pertaining to any aspect of the transaction or sale, and shall comply with all laws respecting offers and sales of securities and advising persons on such matters.

B. Shall (i) conduct business in accordance with the rules and regulations of the Securities and Exchange Commission (SEC), the National Association of Securities Dealers (NASD), any state agencies regulating Representative's activities, (ii) conduct business in accordance with the policies and procedures of BOSC and the best customs and procedures of the securities industry, (iii) shall not conduct business or receive funds until fully licensed as required by all such laws, rules and regulations, and (iv) shall accept such supervision and

APP. 00167

control by his/her Branch Manager and officers of BOSC as BOSC determines is necessary or appropriate to fully and timely comply with all such laws, regulations, rules, customs and procedures. Without limiting the generality of the foregoing, shall not, directly or indirectly, (i) engage in municipal securities business with an issuer to whom the Representative has made a political contribution within the previous two years (other than a contribution in an amount less than $250 to an official of such issuer for whom the Representative is entitled to vote) or (ii) make a political contribution to any issuer to whom the Representative is engaging or seeking to engage in the municipal securities business.

C. Shall (i) mail any correspondence, make any communication or cause any advertising to be made respecting investments or the investment business only after said correspondence, communication or advertising is approved in advance by BOSC and (ii) provide copies of all such correspondence, communication and advertising to BOSC in accordance with all applicable SEC, NASD and state agencies rules and regulations.

D. Shall accept payments from customers by check or money order only payable to the underwriter, investment company or insurance company designated by BOSC.

E. Shall indemnify BOSC and hold BOSC harmless from any and all loss, cost or liability (including legal, accounting and expert fees and expenses) which result from the Representative's negligence, violation, or other misconduct.

F. Shall not act in any manner whatsoever as an agent for any individual or entity competitive in any respect with BOSC.

G. Shall (i) represent to all customers and prospective customers, whenever he/she is soliciting purchases or interviewing customers or otherwise, that (a) he/she is acting as a Representative of BOSC and (b) all orders for securities will be placed through BOSC and (ii) conduct all business totally separate and distinct from all other business conducted at the FI.

H. Shall conduct himself/herself and his/her affairs in a professional manner consistent with the building of a quality reputation for himself/herself and BOSC and in accordance with the best standards of the industry.

I. Recognizes that (i) he/she shall accept direction for BOSC securities activities solely from BOSC in accordance with BOSC's policies and procedures, and (ii) will neither seek nor accept direction regarding the conduct of securities business from any individual or group who is not a duly authorized BOSC Branch Manager or BOSC officer.

J. Shall not (i) directly solicit any established customer of BOSC for a period of one (1) year after the termination of this Agreement (for whatever reason,

whether with or without cause) or (ii) solicit any employee of BOSC to accept employment with any entity for a period of one (1) year after termination of this Agreement (for whatever reason, whether with or without cause). This promise by Representative may be enforced by temporary, preliminary and permanent injunctive relief without the necessity of establishing irreparable injury and without the posting of any bond, in addition to any other remedies the law may provide. Without limiting the generality of the provisions of this paragraph, the phrase "directly solicit any established customer of BOSC" includes (i) making or participating in any mail or e-mail communication to such customer which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

K. Shall, immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business (including training, licensure, commission, and production information) of BOSC and/or FI and/or customers of BOSC and/or FI including all electronic files and documents (whether prepared by BOSC and/or FI or the Representative and whether prepared before or after the start of this Agreement) containing any information respecting the identities of the customers of BOSC and/or FI or their addresses or telephone numbers, or the nature or amounts of their investments, assets or liabilities, or their investment needs or strategies. Without limiting the generality of the provisions of this Paragraph, as used in this Paragraph the words "documents and electronic files concerning the business of BOSC" includes all documents identified in the BOSC Quarterly Certification, diaries, handwritten notes, address books, calendars, and other documents (written or electronic and whether or not Representative regards such documents as his/her personal documents) which contain any of the information described in the Paragraph whether prepared by Representative or BOSC.

L. Shall completely perform all duties (including the duty of loyalty) owed by Representative to his prior employer until such time as such duties shall have terminated, return to his employer all copies and electronic files of his prior employer (of the kind described in the preceding paragraph relating to the business of his prior employer, and comply with all lawful agreements limiting the Representative's right to engage in the securities business.

M. During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various information relating to the BOSC's business operations, customers, products, marketing data, business plans, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an

advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.

3. **LIMITED OF AUTHORITY AND REPRESENTATIVE'S REPRESENTATION.**

A. The Representative is a limited agent of BOSC only and has no authority to bind BOSC in any way except to communicate to customers materials supplied by BOSC and to accept transactions in securities offered through BOSC.

B. The Representative hereby represents that he/she has delivered to BOSC true copies of all agreements by which Representative may be bound which purport to limit the ability of Representative to engage in the securities business.

4. **TERMINATION OF AGREEMENT.**

A. The effective date of this Agreement shall be April 3, 2012. This Agreement shall automatically renew on the April 15 next following and on each April 15 thereafter for one year periods unless this Agreement is terminated as hereafter provided.

B. This Agreement may be terminated by either party at any time, without cause, by but only by, giving thirty (30) days written notice to the other party.

C. This Agreement shall automatically terminate (i) upon cancellation of Representative's coverage by his/her surety company or (ii) upon cancellation or non-renewal of any required license.

D. This Agreement may be terminated by BOSC at any time without notice for a breach of this Agreement by the Representative.

E. The death of the Representative shall automatically terminate this Agreement on the date of death.

F. Upon termination, the Representative shall cease using the name BOSC, shall no longer hold himself/herself out as a Representative and shall return all materials bearing the BOSC name to BOSC and as otherwise provided herein

5. **MISCELLANEOUS PROVISIONS**. The following miscellaneous provisions shall apply to this Agreement:

A. All notices or advices required or permitted to be given by or pursuant to this Agreement, shall be given in writing. All such notices and advices shall be (i) delivered personally, (ii) delivered by facsimile or delivered by U.S. Registered or Certified Mail, Return Receipt Requested mail, or (iii) delivered for overnight delivery by a nationally recognized overnight courier service. Such notices and advices shall be deemed to have been given (i) the first business day following the date of delivery if delivered personally or by facsimile, (ii) on the third business day following the date of mailing if mailed by U.S. Registered or Certified Mail, Return Receipt Requested, or (iii) on the date of receipt if delivered for overnight delivery by a nationally recognized overnight courier service. All such notices and advices and all other communications related to this Agreement shall be given as follows:

If to BOSC:

Scott Grauer
BOSC, Inc.
Williams Tower, Ninth Floor
Tulsa, Oklahoma 74103
918-595-3165 - Tel
918-588-6510 - Fax

If to Representative:

Ronnie Davis OR
5956 Sherry Ln Suite 700
Dallas, TX 75225
[redacted] - Telephone
[redacted] - Fax

or to such other address as the party may have furnished to the other parties in accordance herewith, except that notice of change of addresses shall be effective only upon receipt.

B. This Agreement shall be deemed made and executed in Tulsa County, Oklahoma.

C. This Agreement shall be subject to, and interpreted by and in accordance with, the laws (excluding conflict of law provisions) of the State of Oklahoma.

D. This Agreement is the entire Agreement of the parties respecting the subject matter hereof. There are no other agreements, representations or warranties, whether oral or written, respecting the subject matter hereof.

E. No course of prior dealings involving any of the parties hereto and no usage of trade shall be relevant or advisable to interpret, supplement, explain or vary any of the terms of this Agreement, as expressly provided herein.

F. This Agreement, and all the provisions of this Agreement, shall be deemed drafted by all of the parties hereto. This Agreement shall not be interpreted strictly for or against any party, but solely in accordance with the fair meaning of the provisions hereof to effectuate the purposes and interest of this Agreement.

G. Each party hereto has entered into this Agreement based solely upon the agreements, representations and warranties expressly set forth herein and upon his own knowledge and investigation.

H. Each of the persons signing below on behalf of a party hereto represents and warrants that he or she has full requisite power and authority to execute and deliver this Agreement on behalf of the party for whom he or she is signing and to bind such party to the terms and conditions of this Agreement.

I. This Agreement may be executed in counterparts, each of which shall be deemed an original. This Agreement shall become effective only when all of the parties hereto shall have executed the original or counterpart hereof. This agreement may be executed and delivered by a facsimile transmission of a counterpart hereof.

J. In any action brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the opposing parties to such action such party's reasonable attorneys fees and costs (including court costs, reasonable fees of accountants and experts, and other expenses incidental to the action).

K. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. This is not a third party beneficiary contract. No person or entity other than a party hereto shall have any rights under this Agreement. This Agreement may be amended or modified only in a writing which specifically references this Agreement.

BOSC, INC.

By [signature]
SCOTT B. GRANGER, CEO

[signature]

"Representative" Ronnie Davis JR

## AMENDMENT TO BOSC, INC. REPRESENTATIVE AGREEMENT

The BOSC, Inc. Representative Agreement dated as of 4-3-12 (the "Agreement"), among BOSC, Inc., an Oklahoma Corporation ("BOSC") and Ronnie Davis JR (the "Representative") shall be amended as set forth below.

***Amendment.***

1. **BOSC's OBLIGATIONS**. The following Paragraph D shall be inserted immediately following Paragraph C of the Agreement:

   D. With respect to Representative's engagement to solicit advisory clients, shall: provide certain training and supervision over Representative's advisory practices, provide copies of the appropriate Form(s) ADV – Part II and related schedules, and any updates thereof and provide a copy of the advisory agreement and support during contract negotiations.

2. **THE REPRESENTATIVE'S OBLIGATIONS.** The following Paragraph N shall be inserted immediately following Paragraph M of the Agreement:

   N. With respect to Representative's engagement to solicit advisory clients, shall: identify and solicit potential advisory clients, provide such potential client a copy of the appropriate Form(s) ADV – Part II and related schedules, and any updates thereof, and obtain, at or prior to the time such client enters into an advisory agreement, an acknowledgement that such client has received a copy of Form ADV – Part II and related schedules, provide ongoing services that are reasonably designed to support retention of such clients, and only use the advisory agreement and written materials that have been provided and approved and only make representations that have been so approved.

***Entire Agreement.*** The Agreement, as amended herein, constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communications or prior writings (except as otherwise provided herein) with respect thereto.

***Governing Law.*** This Amendment shall be governed by and construed in accordance with the laws of the State of Oklahoma without reference to choice of law doctrine.

**IN WITNESS WHEREOF,** the parties hereto have caused this Amendment to be executed as of the date first above written and do each hereby warrant and represent that their respective signatory, whose signature appears below, has been and is on the date of this Amendment duly authorized by all necessary and appropriate corporate action to execute this Amendment.

**BOSC, Inc.**

By: [signature]

Name: SCOTT B. GRAUER

Title: CEO

By: [signature]

Name: Ronnie Davis JR

Title: Representative

**BOSC, INC.**
**REPRESENTATIVE AGREEMENT**

This Agreement is made and entered into this 21st day of June, 2006 by and between BOSC, Inc., an Oklahoma Corporation ("BOSC") and Melissa Jo Morgeson ("Representative").

In consideration of the mutual promises hereinafter made and other good and valuable consideration (the receipt and adequacy of which BOSC and Representative hereby acknowledge), BOSC and Representative agree as follows:

1. **BOSC'S OBLIGATIONS**. BOSC:

   A. Hereby appoints Representative as its agent to be located in a branch office of BANK OF OKLAHOMA, N.A. (hereinafter "FI") located at 5956 Sherry Lane, Ste 100 ("Branch Office") to solicit purchases of securities and investments offered through BOSC to depositors and customers of FI and to the general public.

   B. Shall exercise exclusive control over the Representative with respect to all aspects of securities transactions and related securities business through a Series 24 licensed principal of BOSC who shall serve as the Branch Manager ("Branch Manager") of the Office of Supervisory Jurisdiction through which all securities activities shall take place.

   C. BOSC shall employ Representative as a professional with compensation to be paid to Representative pursuant to separate agreement between BOSC and Representative and in accordance with the policies and procedures then in effect at BOSC.

2. **THE REPRESENTATIVE'S OBLIGATIONS.** The Representative:

   A. Shall provide to prospective purchasers a current prospectus or other offering materials when required by the federal and/or state securities laws, shall explain fully the terms of any security or investment offering for sale to a customer, shall make no untrue or misleading statements or representations, shall not omit any material information or facts pertaining to any aspect of the transaction or sale, and shall comply with all laws respecting offers and sales of securities and advising persons on such matters.

   B. Shall (i) conduct business in accordance with the rules and regulations of the Securities and Exchange Commission (SEC), the National Association of Securities Dealers (NASD), any state agencies regulating Representative's activities, (ii) conduct business in accordance with the policies and procedures of BOSC and the best customs and procedures of the securities industry, (iii) shall not conduct business or receive funds until fully licensed as required by all such laws, rules and regulations, and (iv) shall accept such supervision and control by his/her Branch Manager and officers of BOSC as BOSC determines is necessary or appropriate to fully and timely comply with

all such laws, regulations, rules, customs and procedures. Without limiting the generality of the foregoing, shall not, directly or indirectly, (i) engage in municipal securities business with an issuer to whom the Representative has made a political contribution within the previous two years (other than a contribution in an amount less than $250 to an official of such issuer for whom the Representative is entitled to vote) or (ii) make a political contribution to any issuer to whom the Representative is engaging or seeking to engage in the municipal securities business.

C. Shall (i) mail any correspondence, make any communication or cause any advertising to be made respecting investments or the investment business only after said correspondence, communication or advertising is approved in advance by BOSC and (ii) provide copies of all such correspondence, communication and advertising to BOSC in accordance with all applicable SEC, NASD and state agencies rules and regulations.

D. Shall accept payments from customers by check or money order only payable to the underwriter, investment company or insurance company designated by BOSC.

E. Shall indemnify BOSC and hold BOSC harmless from any and all loss, cost or liability (including legal, accounting and expert fees and expenses) which result from the Representative's negligence, violation, or other misconduct.

F. Shall not act in any manner whatsoever as an agent for any individual or entity competitive in any respect with BOSC.

G. Shall (i) represent to all customers and prospective customers, whenever he/she is soliciting purchases or interviewing customers or otherwise, that (a) he/she is acting as a Representative of BOSC and (b) all orders for securities will be placed through BOSC and (ii) conduct all business totally separate and distinct from all other business conducted at the FI.

H. Shall conduct himself/herself and his/her affairs in a professional manner consistent with the building of a quality reputation for himself/herself and BOSC and in accordance with the best standards of the industry.

I. Recognizes that (i) he/she shall accept direction for BOSC securities activities solely from BOSC in accordance with BOSC's policies and procedures, and (ii) will neither seek nor accept direction regarding the conduct of securities business from any individual or group who is not a duly authorized BOSC Branch Manager or BOSC officer.

J. Shall not (i) directly solicit any established customer of BOSC for a period of one (1) year after the termination of this Agreement (for whatever reason, whether with or without cause) or (ii) solicit any employee of BOSC to accept employment with any entity for a period of one (1) year after termination of this Agreement (for whatever reason, whether with or without cause). This promise by Representative may be enforced by temporary, preliminary and

permanent injunctive relief without the necessity of establishing irreparable injury and without the posting of any bond, in addition to any other remedies the law may provide. Without limiting the generality of the provisions of this paragraph, the phrase "directly solicit any established customer of BOSC" includes (i) making or participating in any mail or e-mail communication to such customer which is not part of a mass mailing to a public of which established customers of BOSC are an insignificant part the purpose of which was not to communicate with established customers of BOSC and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

K. Shall, immediately upon termination of this Agreement, deliver to BOSC all copies of all documents and electronic files concerning the business (including training, licensure, commission, and production information) of BOSC and/or FI and/or customers of BOSC and/or FI including all electronic files and documents (whether prepared by BOSC and/or FI or the Representative and whether prepared before or after the start of this Agreement) containing any information respecting the identities of the customers of BOSC and/or FI or their addresses or telephone numbers, or the nature or amounts of their investments, assets or liabilities, or their investment needs or strategies. Without limiting the generality of the provisions of this Paragraph, as used in this Paragraph the words "documents and electronic files concerning the business of BOSC" includes all documents identified in the BOSC Quarterly Certification, diaries, handwritten notes, address books, calendars, and other documents (written or electronic and whether or not Representative regards such documents as his/her personal documents) which contain any of the information described in the Paragraph whether prepared by Representative or BOSC.

L. Shall completely perform all duties (including the duty of loyalty) owed by Representative to his prior employer until such time as such duties shall have terminated, return to his employer all copies and electronic files of his prior employer (of the kind described in the preceding paragraph relating to the business of his prior employer, and comply with all lawful agreements limiting the Representative's right to engage in the securities business.

M. During Representative's employment under this Agreement, BOSC shall make available to Representative and Representative will become acquainted with various information relating to the BOSC's business operations, customers, products, marketing data, business plans, strategies, employees, contracts, financial records and accounts, projections and budgets, and similar information which are crucial to BOSC. Representative agrees that to the extent such information is not generally available to the public and gives BOSC an advantage over competitors who do not know of or use such information, such information and documents shall be deemed trade secrets of the BOSC. Representative further agrees that all such information and documents relating to the business of the BOSC, whether

they are prepared by Representative or coming into Representative's possession in any other way, are owned by the BOSC and shall remain the exclusive property of the BOSC. Representative shall not misuse, misappropriate or disclose such trade secrets of BOSC, directly or indirectly, or use them for Representative's own benefit, either during the term of this Agreement or at any time thereafter, except as may be necessary or appropriate in the course of Representative's employment with the BOSC, unless such action is either previously agreed to in writing by the BOSC or required by law.

3. **LIMITED OF AUTHORITY AND REPRESENTATIVE'S REPRESENTATION.**

A. The Representative is a limited agent of BOSC only and has no authority to bind BOSC in any way except to communicate to customers materials supplied by BOSC and to accept transactions in securities offered through BOSC.

B. The Representative hereby represents that he/she has delivered to BOSC true copies of all agreements by which Representative may be bound which purport to limit the ability of Representative to engage in the securities business.

4. **TERMINATION OF AGREEMENT.**

A. The effective date of this Agreement shall be June 21, 2006. This Agreement shall automatically renew on the April 15 next following and on each April 15 thereafter for one year periods unless this Agreement is terminated as hereafter provided.

B. This Agreement may be terminated by either party at any time, without cause, by but only by, giving thirty (30) days written notice to the other party.

C. This Agreement shall automatically terminate (i) upon cancellation of Representative's coverage by his/her surety company or (ii) upon cancellation or non-renewal of any required license.

D. This Agreement may be terminated by BOSC at any time without notice for a breach of this Agreement by the Representative.

E. The death of the Representative shall automatically terminate this Agreement on the date of death.

F. Upon termination, the Representative shall cease using the name BOSC, shall no longer hold himself/herself out as a Representative and shall return all materials bearing the BOSC name to BOSC and as otherwise provided herein

5. **MISCELLANEOUS PROVISIONS**. The following miscellaneous provisions shall apply to this Agreement:

A. All notices or advices required or permitted to be given by or pursuant to this Agreement, shall be given in writing. All such notices and advices shall be (i) delivered personally, (ii) delivered by facsimile or delivered by U.S. Registered or Certified Mail, Return Receipt Requested mail, or (iii) delivered for overnight delivery by a nationally recognized overnight courier service. Such notices and advices shall be deemed to have been given (i) the first business day following the date of delivery if delivered personally or by facsimile, (ii) on the third business day following the date of mailing if mailed by U.S. Registered or Certified Mail, Return Receipt Requested, or (iii) on the date of receipt if delivered for overnight delivery by a nationally recognized overnight courier service. All such notices and advices and all other communications related to this Agreement shall be given as follows:

If to BOSC:

Scott Grauer
BOSC, Inc.
Williams Tower, Ninth Floor
Tulsa, Oklahoma 74103
918-595-3165 - Tel
918-588-6510 - Fax

If to Representative:

Melissa Jo Morgeson
5956 Sherry Ln. Ste 100
Dallas, TX 75225
[redacted] Telephone
Fax

or to such other address as the party may have furnished to the other parties in accordance herewith, except that notice of change of addresses shall be effective only upon receipt.

B. This Agreement shall be deemed made and executed in Tulsa County, Oklahoma.

C. This Agreement shall be subject to, and interpreted by and in accordance with, the laws (excluding conflict of law provisions) of the State of Oklahoma.

D. This Agreement is the entire Agreement of the parties respecting the subject matter hereof. There are no other agreements, representations or warranties, whether oral or written, respecting the subject matter hereof.

E. No course of prior dealings involving any of the parties hereto and no usage of trade shall be relevant or advisable to interpret, supplement, explain or vary any of the terms of this Agreement, as expressly provided herein.

F. This Agreement, and all the provisions of this Agreement, shall be deemed drafted by all of the parties hereto. This Agreement shall not be interpreted

strictly for or against any party, but solely in accordance with the fair meaning of the provisions hereof to effectuate the purposes and interest of this Agreement.

G. Each party hereto has entered into this Agreement based solely upon the agreements, representations and warranties expressly set forth herein and upon his own knowledge and investigation.

H. Each of the persons signing below on behalf of a party hereto represents and warrants that he or she has full requisite power and authority to execute and deliver this Agreement on behalf of the party for whom he or she is signing and to bind such party to the terms and conditions of this Agreement.

I. This Agreement may be executed in counterparts, each of which shall be deemed an original. This Agreement shall become effective only when all of the parties hereto shall have executed the original or counterpart hereof. This agreement may be executed and delivered by a facsimile transmission of a counterpart hereof.

J. In any action brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the opposing parties to such action such party's reasonable attorneys fees and costs (including court costs, reasonable fees of accountants and experts, and other expenses incidental to the action).

K. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. This is not a third party beneficiary contract. No person or entity other than a party hereto shall have any rights under this Agreement. This Agreement may be amended or modified only in a writing which specifically references this Agreement.

BOSC, INC.

By [signature] Melissa Jo Morgan

[signature]

SCOTT B. GRAUER, PRES. & CEO

BOK FINANCIAL CORPORATION

# JOB DESCRIPTION

| FUNCTIONAL TITLE<br>CLIENT ADVISOR | CODE<br>80672 | GRADE<br>ES3 | FLSA<br>EXEMPT | EFFECTIVE DATE<br>DEC 2013 |
|---|---|---|---|---|
| REPORTS TO<br>MARKET EXECUTIVE, THE PRIVATE BANK/MANAGING DIRECTOR, CLIENT ADVISORS | DIVISION<br>WEALTH MANAGEMENT | | | |
| GROUP<br>WEALTH MANAGEMENT | DEPARTMENT<br>THE PRIVATE BANK | | | |

| SUMMARY STATEMENT: | General purpose for this job (what is done and why) |
|---|---|

The **Client Advisor** is primarily responsible for developing, maintaining, and expanding relationships with high net worth individuals and their associated entities in the firm through comprehensive needs assessment and response. Actively networks both inside and outside the firm for new client relationships, as well as maintaining and expanding current relationships through exceptional client service. Meets with existing and prospective clients to profile, assess financial service needs and propose solutions, often through the use of financial planning tools. Provides advisory services for investment portfolios; recommending appropriate investment strategies to achieve risk-adjusted client objectives. Provides performance reporting to client on periodic basis or as established by the client. Keeps current on economic and market trends, as well as compliance and regulatory issues.

| PRINCIPAL DUTIES AND RESPONSIBILITIES | Majority of duties performed, but not meant to be all-inclusive nor prevent other duties from being assigned as necessary. Non-essential functions identified with an asterisk '*' |
|---|---|

| | | |
|---|---|---|
| 1. | Develops, maintains, and expands client relationships, often times in conjunction with other advisors or specialists within the firm; identifies and targets external prospective clients; develops referral sources from within the bank and current client list. | 20% |
| 2. | Conducts client profiling process to determine goals, needs and investment objectives. Builds financial models and makes recommendations on complex managed accounts to fulfill client objectives. Designs and constructs client investment portfolios to maximize risk-adjusted returns, in accordance with the Company's defined asset allocation strategy. Utilizes the Company's approved investment list to execute investment strategies within client portfolios. Reports account and/or relationship performance to client on a periodic basis or as established by the client. | 20% |

| | | |
|---|---|---|
| 3. | Ensures that all required client documentation is complete and transactions are processed correctly and timely, in accordance with regulatory standards and firm policies. Resolves client account and transaction issues; serves as contact person in order to provide information and resolve issues. | 20% |
| 4. | Maintains up-to-date familiarity with current securities markets and client needs while providing all necessary disclosures, such as those pertaining to investment risks, fees, and FDIC insurance. | 20% |
| 5. | Conducts business within the guidelines established by regulatory agencies and internal policies, including: attending sales meetings; completing firm-required training sessions and continuing education; maintaining appropriate securities licensing in good standing; complies with correspondence, marketing and sales activity rules; notifies supervisory principal immediately of any client complaint or regulatory inquiry. | 20% |

| **KNOWLEDGE, SKILLS and ABILITIES:** | Minimum education, experience, technical and communication skill levels and licenses/certificates normally required to perform the duties of this position |
|---|---|

- Thorough knowledge of investment-related products and services
- Thorough knowledge of tax, estate and financial planning principles and concepts
- Excellent communication skills and ability to prepare and deliver persuasive oral presentations and written reports.
- Ability to assess specific customer needs, recommend appropriate investment strategies, offer products to meet those needs, and compel customer to act upon those recommendations
- Proficient PC skills including word processing and spreadsheet applications
- Sales aptitude/self-motivated/goal oriented

This level of knowledge is normally acquired through completion of a Bachelors Degree and 8-10 years in the securities industry **or** equivalent work related experience of 14-16 years.

PREFERENCE:
- Certified Financial Planner certification
- Chartered Financial Analyst designation

| **WORKING CONDITIONS** | Typical working conditions associated with this type of work and environmental hazards, if any, that may be encountered in performing the duties of this position. |
|---|---|

Work is performed in climate controlled office environment, where exposure to conditions of extreme heat/cold, poor ventilation, fumes and gases is very limited. Noise level is moderate and includes sounds of normal office equipment (computers, telephones, etc.). No environmental hazards are encountered in normal performance of job duties. Work requires travel at least 50% of the time outside the normal bank office conditions to meet with clients. Work requires a flexible work schedule due to meetings with clients on their time schedule. Occasional overnight travel is also required; must have reliable transportation.

| **PHYSICAL DEMANDS** | The physical effort generally associated with this position. |
|---|---|

Work involves standing and walking for brief period of time, but most duties are performed from seated position. Work may include occasional pushing, pulling, or carrying objects up to 20-pounds such as files, documents and computer print-outs. Work normally requires finger dexterity and eye-hand coordination to operate computer keyboard and 10-key. Work utilizes hearing and speech in order to converse clearly with clients.

| **WORKING RELATIONSHIPS/CONTACTS** | Positions, other than supervisor and immediate co-workers, with which incumbent have frequent contact and the reason for contact. |
|---|---|

**Internal –** Frequent contacts with Trust Administrators, Commercial Lenders and Branch employees; regular contact with Senior Bank management on referrals

**External –** Frequent contact with clients and prospective clients; attorneys, accountants and centers of influence in order to gain financial and estate planning information

**Supervision of others –** Shared supervision of administrative support assistant

| **FINANCIAL ACCOUNTABILITY/RISK** | Budget/asset amount managed, revenues/profits produced, and/or other financial resources incumbent is accountable for. Also indicates judgment/decision-making level. |
|---|---|

This position is the primary source of generating new fee income for department; catalyst for cross-selling of banking and trust products; provides source of new clients for all bank services.

# JOB DESCRIPTION

| FUNCTIONAL TITLE | CODE | GRADE | FLSA | EFFECTIVE |
|---|---|---|---|---|
| **SENIOR SECURITIES SALES/SERVICE SPECIALIST** | **80332** | **14** | **Non-Exempt** | **NOV 2014** |

| REPORTS TO | DIVISION |
|---|---|
| **SALES MANAGER** | **CAPITAL MARKETS** |
| GROUP | DEPARTMENT |
| **SECURITIES SALES** | **BOKFS** |

| **SUMMARY STATEMENT:** | **General purpose for this job (what is done and why).** |
|---|---|

The **Senior Securities Sales/Service Specialist** is primarily responsible for the direct supervision of both exempt and non-exempt personnel that are primarily responsible for the sales and support of investment products when primary sales person is unavailable. Also, provides support and service to customers; provides quotes on investment securities; responds to inquiries regarding securities transactions; resolves problems with applicable investment and deposit accounts; provides sales tracking, account assignment research, and sales performance measurements.

| **PRINCIPAL DUTIES AND RESPONSIBILITIES** | Majority of duties performed, but not meant to be all-inclusive nor prevent other duties from being assigned as necessary. Non-essential functions identified with an asterisk '*' | |
|---|---|---|
| 1. | Performs supervisory functions of hiring, training, and performance evaluations; coordinates job rotation program to ensure that staff is fully interchangeable at all critical positions due to the significant financial sensitivity of the areas; oversees internal and external training programs. Provides assistance with special projects and other duties assigned by Sales Manager. Assists customers with inquiries and problem resolution by performing research on various systems (including but not limited to PROFITS, Pershing, NetXPro, Fi-Serve, as well as vendors' online systems) regarding safekeeping billing, investment and deposit accounts. Forwards unresolved account problems to appropriate person; ensures the customer's primary salesperson is aware of the actions taken and/or needed by maintaining close communication; maintains familiarity with the customer base of each salesperson in order to provide high quality customer service and to ensure optimum marketing potential; answers customer's inquiries regarding investment products. | 25% |
| 2. | Uses appropriate information delivery systems (Knight-Ridder, Bloomberg, Pershing, DLJ, Morningstar, and others) to provide price quotes, comparisons, and execution of securities transactions when the primary sales person is unavailable; communicates with trading desk to obtain quotes for customer; processes and inputs sales tickets utilizing appropriate systems (including but not limited to Profits, Pershing, NetXPro, FiServ, etc.). Applies information in relation to (auctions, announcements, etc.) and in the prediction of market movement (fixed income and equity). | 25% |
| 3. | Supervises and trains sales support staff to accomplish departmental duties and responsibilities as defined herein. | 20% |
| 4. | Utilizes various systems to assist the sales manager with sales tracking, sales performance measurements, account assignment and activity research, and the tracking of customer contacts with other areas of the bank. | 15% |
| 5. | Utilizes Fi-Serve system; looks up balances, daily entries, etc; makes transfers between customer accounts and takes information for customer wires, and general sales | 5% |

| | | |
|---|---|---|
| | information, etc. Performs or assures appropriate cross-checking and audit of transactions. | |
| 6. | Prepares customer presentations, which informs customers of current security market trends and issues and appropriate investment strategies.; utilizes data bases and creates work sheets; assists in the assembly of presentation packets | 5% |
| 7. | Works within Firm to stay apprised of current projects, underwriting, upcoming products and current availability's within BOKFS; provides support to the sales force in the distribution of products. | 5% |

| **KNOWLEDGE, SKILLS and ABILITIES:** | Minimum education, experience, technical, communication skill levels, and licenses/certificates normally required to perform the duties of this position. |
|---|---|

- Thorough understanding and knowledge of investment products and services provided by BOKFS, Inc. and BOk Financial Corp.
- Thorough knowledge of bonds and securities and their related tax implications
- Working knowledge and understanding of BOKF's commercial products and services
- Excellent PC skills including appropriate systems usage (including but not limited to Systeme, FiServe, CRISP, PROFITs, Pershing, NetXPro, Knight-Ridder, Bloomberg, Morningstar)
- Excellent interpersonal, verbal, and written communication skills
- Excellent customer relations and sales skills
- Excellent organization skills; ability to handle multiple tasks simultaneously in a competent and professional manner
- Series 6- Assistant Representative Order Processing Qualification Examination

This level of knowledge is normally acquired through the completion of a Bachelor's Degree and 2-3 years experience investment sales/operations **or** 8-9 years equivalent work related experience.

| **WORKING CONDITIONS** | **Typical working conditions and environmental hazards, if any, associated with this type of work that may be encountered in performing the duties of this position.** |
|---|---|

Work is normally performed in a climate-controlled environment, where exposure to conditions of extreme heat/cold, poor ventilation, fumes, and gases is very limited. Noise level is moderate and includes sounds of a normal office environment. No environmental hazards are encountered in performance of normal job duties.

| **PHYSICAL DEMANDS** | **The physical effort generally associated with this position.** |
|---|---|

Work normally requires finger dexterity and eye-hand coordination to operate computer keyboard at moderate skill level. Work may require occasional pushing, pulling, or carrying 20-pound objects such as files, documents, and computer printouts. Noise level is moderate and includes sounds of normal office equipment. Work involves sitting most of the time, but may involve standing and walking for brief periods of time.

| **WORKING RELATIONSHIPS/CONTACTS** | Positions, other than supervisor and immediate co-workers, with which incumbent has frequent contact and the reason for contact |
|---|---|

**Internal** – Extensive contact with Investment Operations in OKC.

**External -** Frequent institutional customer contact with correspondent banks, corporations, and government entities. Contact can be with President, CFO, owners, etc.

**Supervision of Others** – Direct supervision of up to five exempt and/or nonexempt employees

| **FINANCIAL ACCOUNTABILITY** | Budget/asset amount managed, revenues/profits produced, and/or other financial resources incumbent is accountable for Also indicates judgment/decision-making level |
|---|---|

This position does not have direct departmental budget responsibility; however, it does provide assistance to the Sales Manager in the planning process. The clients most directly affected by this job's activities and decisions are those with extensive and profitable relationships with BOK and BOKFS, Inc. Institutional Investment. This position is responsible for multiple deadlines and extremely time sensitive**.**
Incumbent directly supports Little Rock Sales Force, which generates over $14 million in revenue.

BOK FINANCIAL

Policy ID #:X2601.03

# Standards of Conduct

This policy is applicable to BOK Financial Corporation, BOKF, NA and its divisions, affiliates and subsidiaries

## DOCUMENT CONTROL

| Managed by: | Responsible position: |
|---|---|
| Tally Ferguson | Director, Enterprise Risk Management |
| **Contact person:** | **Approved by:** |
| Seth Feldman | Audit Committee of the Board of Directors |
| **Contact position:** | **Date approved:** |
| Manager, Corporate Risk Governance | January 31, 2017 |
| **Contact number:** | **Next review date:** |
| 918.660.2959 | Annually |

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

I. POLICY STATEMENT ........ 5
II. STATEMENT OF PURPOSE ........ 5
III. ETHICAL DECISION MAKING ........ 5
IV. INTEGRITY ........ 6
V. REPORTING ........ 6
VI. PROTECTION OF COMPANY ASSETS ........ 7
VII. CONFIDENTIAL AND INSIDE INFORMATION ........ 7
A. SEC WHISTLEBLOWER PROGRAM ........ 7
B. CUSTOMERS, CONSUMERS, AND SUPPLIERS ........ 7
C. INSIDER TRADING ........ 7
D. INSIDE INFORMATION RELATING TO BOK FINANCIAL CORPORATION AND SUBSIDIARIES ........ 8
E. SYSTEMS AND DATA SECURITY ........ 8
F. PHYSICAL INFORMATION SECURITY, PASSWORDS, AND RECORD RETENTION ........ 9
G. CONFIDENTIAL PROPERTY ........ 9
H. ACCOUNTING AND REPORTING PRACTICES ........ 10
VIII. EXTENSIONS OF CREDIT TO AND OBLIGATIONS OF EMPLOYEES AND OFFICERS 10
IX. ACTIVITIES AND CONFLICTS OF INTEREST AFFECTING THE CORPORATION ........ 11
A. DEFINITION AND GENERAL RULE ........ 11
B. EMPLOYMENT OF RELATIVES ........ 12
C. BUSINESS ACTIVITIES ........ 12
D. COMMUNITY ENGAGEMENT ........ 12
E. POLITICAL ACTIVITIES ........ 13
F. GIFTS ........ 14
G. SOCIAL MEDIA ........ 15
H. OUTSIDE EMPLOYMENT ........ 15
X. INTERPRETATIONS AND DISPOSITION ........ 16
A. INTERPRETATIONS OF STANDARDS OF CONDUCT ........ 16
B. STANDARDS OF CONDUCT EXCEPTIONS OR VIOLATIONS DISPOSITION ........ 16
XI. ANNUAL CERTIFICATION AND ATTESTATION ........ 17

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

A . ANNUAL CERTIFICATIONS .......... 17

B. ATTESTATION .......... 17

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

## REVISION RECORD

| Revision description | Approved by | Date |
|---|---|---|
| Revision for 2015 all employee attestation | Board Audit Committee | February 2015 |
| Revision for 2016 – incorporate section of Code of Ethics and simplify language | Board Audit Committee | February 2016 |
| No Substantive changes | Board Audit Committee | January 2017 |
| | | |

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

## I. POLICY STATEMENT

The following Standards of Conduct apply to all officers and employees (collectively, “employees”) of BOK Financial Corporation and its affiliates (collectively, "BOKF" or “Company”).

As part of fulfilling the requirements of this Standards of Conduct, all employees are also required to comply with these Standards of Conduct, all policies and procedures of the Company, and all laws and regulations applicable to the Company’s business activities or applicable to the employee individually.

## II. STATEMENT OF PURPOSE

BOKF depends upon the collective and individual performance of its employees. Employees have a responsibility to exercise sound, ethical judgment in all business and related personal activities and should follow these standards of conduct to prevent any actual, apparent, or potential conflict of interest, and guard against harm to BOKF. Employees must avoid activities that may be in conflict with BOKF's best interest.

Failure to abide by these Standards of Conduct constitutes a violation of employee duties, reflects a lack of responsibility, and may result in disciplinary action including immediate termination of employment.

## III. ETHICAL DECISION MAKING

At BOKF, it is essential that employees engage in ethical decision-making. No employee should take unfair advantage of persons regarding BOKF business through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or unfair dealing.

It may be useful for employees to consider the following questions.

- Do I feel uncomfortable an action I am contemplating?
- Is this action consistent with BOKF Policy?
- Is this action consistent with BOKF Standards of Conduct?
- Is this action legal?
- Does this action circumvent a BOKF policy and/or control?

Questions regarding ethical decision making should be directed through one or more of the following contacts based upon the covered person’s level of comfort.

- Discuss the concern or suspected violation with a manager in the same business line;
- Contact the **Employee Resource Center** in Human Resources at (855) 269-2653 (855-2MY-BOKF) or EmployeeResourceCenter@bokf.com;
- Contact BOK Financial Risk Reporting Hotline to submit a report either anonymously or identifying the reporter, at the reporter’s election, by telephone at (844-297-5946) or electronic submission at **BOKF Risk Reporting Hotline; or**

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

- Contact the SEC Office of the Whistleblower at (202) 551-4790 for securities law violations.

## IV. INTEGRITY

Employees should meet high standards of honesty in all dealings, not just because it is good business, but because it is right. This applies in communications, both as a Company and in employee relationships with each other. *See also*, BOKF's Social Media Policy.

The Company will provide a working environment in which adherence to these high standards is clearly expected of all employees, and integrity is never compromised by pressures for immediate success.

## V. REPORTING

Every employee is obligated to promptly report, in good faith, any illegal or unethical work practice or activity including, but not limited to questionable or improper accounting or auditing matters, violation(s) of the Standards of Conduct or applicable laws, rules and regulations, insider trading, fraud, activities outside our risk appetite statement, inappropriate treatment by a supervisor or other employee or any other questionable activity. The Corporate Whistleblower Policy contains specific responsibilities and duties under this policy.

**Reporting Methods:** Methods for reporting suspected illegal or unethical activities or practices, or a suspected Standards and/or policy violation are as set out below. The reporting method should be chosen based upon the covered person's level of comfort.

- Discuss the concern or suspected violation with a manager in the same business line;
- Contact the **Employee Resource Center** in Human Resources at (855) 269-2653 (855-2MY-BOKF) or EmployeeResourceCenter@bokf.com;
- Contact BOK Financial Risk Reporting Hotline to submit a report either anonymously or identifying the reporter, at the reporter's election, by telephone at (844-297-5946) or electronic submission at **BOKF Risk Reporting Hotline; or**
- Contact the SEC Office of the Whistleblower at (202) 551-4790 for securities law violations.

**Suspicious Activities**

Suspicious Activities should be reported to Financial Crimes by way of the Suspicious Activity Notification Form. In conjunction with Financial Crimes, the Chief Auditor or Chief Risk Officer (CRO) will determine whether a suspicious activity report is required and will ensure that contemporaneous documentation is maintained.

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

## VI. PROTECTION OF COMPANY ASSETS

Employees should protect the Company's assets and ensure their efficient use. Theft, carelessness and waste have a direct impact on BOKF's profitability. Company assets should be used for legitimate business purposes.

## VII. CONFIDENTIAL AND INSIDE INFORMATION

Proper management of confidential information is important to the Company, its employees, its vendors, and its customers.

Loyalty to the Company includes a commitment not to use or give to others trade secrets or confidential information belonging to BOKF or belonging to others with whom we do business unless it is to report unethical or illegal practices or concerns according to the guidelines established in the BOKF Whistleblower policy or the SEC Whistleblower program, or to respond to a regulatory request. Employees should refrain from discussing confidential information in public places or leaving confidential information visible on their computer monitors especially when using a company laptop in a public place.

### A. SEC WHISTLEBLOWER PROGRAM

Nothing in this Policy is intended to, or shall, in any way limit the right of a person subject to this policy to disclose any information to the SEC pursuant to Section 21 F of the Securities Exchange Act of 1934, as amended, or the rules of the SEC adopted pursuant to Section 21 F (the "SEC Whistleblower Program"). *See also,* Section V, Reporting.

### B. CUSTOMERS, CONSUMERS, AND SUPPLIERS

Confidential, proprietary, or privileged information regarding customers, consumers, suppliers, and employees, is used solely for BOKF purposes. Such information shall not be communicated to any person outside of BOKF (other than the for BOKF business in accordance with BOKF policy and procedures) with the exception of communications described in Section VII.A. Confidential information should remain on BOKF secure systems and premises and should not be delivered to an employee’s personal address, email, or electronic/digital media.

### C. INSIDER TRADING

Any ‘material’ undisclosed information about BOKF or its customers is called "inside information." Inside information can be financial, product, services, personnel, or other information. A major factor in determining whether information is material is the impact that information could have on BOKF’s financial condition or stock price. Employees may not trade based on inside information and may not share insider information.

Trading securities based on inside information is a violation of US securities laws. If an employee provides a “tip” to someone who then buys or sells securities, both persons can be subject to insider trading. If an employee engages in insider trading the employee could lose the employee’s job and be subject to civil and criminal penalties.

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

The following are examples of potential non-public and material information:

- Financial forecasts
- Changes in sales, market share or production
- Earnings, dividend, or stock splits
- Proposed mergers, acquisitions, or divestitures
- Marketing plans
- Strategic plans
- New product information
- Changes in top management

BOKF's Office of General Counsel maintains procedures to control the use of inside information for all directors and executive management with respect to BOKF stock. If any Employee has any question concerning whether that employee is in possession of inside information, and thus is prohibited from trading the employee should contact the BOKF Office of General Counsel. If an employee has a question and/or a concern that Insider Trading may have occurred, may be occurring, or might occur, then one of the reporting methods in Section V should be utilized.

## D. INSIDE INFORMATION RELATING TO BOK FINANCIAL CORPORATION AND SUBSIDIARIES

Financial or inside other information regarding BOKF, unless it has been published in reports to shareholders or made available to the public, shall not be communicated to any person outside of BOKF unless in compliance with laws and regulations, including, but not limited to communications made pursuant to the SEC Whistleblower program. Questions or concerns regarding the intentional or unintentional disclosure of non-public information should be made using one of the Reporting Methods in Section V.

Upon notice, the Chief Auditor and Chief Risk Officer (CRO) are responsible for reporting the matter to the Office of the General Counsel.

## E. SYSTEMS AND DATA SECURITY

Systems used to store, record, process and access information are BOKF assets. The loss, destruction, or unauthorized disclosure of information, or of components of information, can cause irreparable damage to BOKF and its customers. Use of BOKF provided internet, intranet, email, and digital media is limited to employees and authorized individuals for business purposes and is subject to monitoring by the Company.

BOKF employees must protect sensitive customer information at all times and in accordance with the Information Security Program Policy (ISPP) and departmental policies. Specifically, employees are reminded that use of personal email accounts, social media, instant messaging services or other forms of electronic communications to conduct business outside BOKF data security controls is prohibited.

It is the employee and the supervisor's responsibility to ensure that no employee, or non-employee, has access to systems not necessary for the employee's current job function.

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

It is the responsibility of the immediate supervisor to see that confidential material and means of access to such material is obtained from any employee who should terminate his or her employment from BOKF.

**Questions & Answers:**

**Q:** My friend who works for a company that doesn't compete with our company asked for the names of my business contacts. Am I allowed to give him this information?

**A**: *No. BOKF employee, vendor, and/or client information is confidential and personal data. Employees may not share confidential data with anyone except as required or with the permission of the client. If an employee believes that the client could benefit from the services of a friend's company, after consulting with a supervisor and receiving permission, an employee might mention the services to the client and let the client make the contact.*

**Q:** When I work from home, I bring customer information with me and use my personal email address to send electronic files to my home computer. Am I allowed to do this?

**A**: *No. All work done off BOKF premises should be performed on a Company laptop or through a company approved VPN or other secured and authorized solution, and must follow BOKF security measures.*

## F. PHYSICAL INFORMATION SECURITY, PASSWORDS, AND RECORD RETENTION

Employees should make certain sensitive records in their possession (paper files, computers, disks, flash drives, etc.) are physically secured. Passwords and access codes, including security badges, are the personal responsibility of each employee and must be protected and may not be shared. Records must be retained in accordance with applicable laws, regulations, and Company policy. This includes both paper and electronic files. Computer and other electronic files should be disposed of in accordance with the ISPP and Company policies. See also, VII A.

## G. CONFIDENTIAL PROPERTY

Employees are responsible for confidential materials or information of BOKF, such as:

- Policies and procedures manuals
- Account information
- Technical knowledge
- Marketing material
- Information technology
- Information that could supply BOKF's competitors with a "competitive advantage"
- Information kept on a confidential basis, e.g. committee material and minutes
- Information not given or otherwise communicated to any other institution for their use

Nothing in this policy shall interfere with a person's right to disclose information pursuant to the SEC Whistleblower Program.

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

### H. ACCOUNTING AND REPORTING PRACTICES

All transactions must be fully and accurately recorded in BOKF's books and records according to generally accepted accounting principles. False or misleading entries and unrecorded assets or liabilities are strictly prohibited. Such items violate BOKF policy and the law.

Employees are not allowed to perform account maintenance or process transactions on their own accounts or accounts on which they are an authorized signer.

Employees must follow the time reporting and Business Expense Policies. Employees and approvers of time and expense reports are personally accountable for the accuracy of such reports.

Employees who have concerns about any accounting or internal control irregularities should report their concerns in accordance with the Corporate Whistleblower Policy (see Section VII A). By Company policy and Federal law, there can be no retaliation or negative influence resulting from an Employee's reporting of such matters.

**Questions & Answers:**

> **Q:** I asked my supervisor to input my time on my timesheet as 9:00 AM. I actually did not arrive until 9:15 AM. Is this considered a reporting error?
>
> **A**: *Yes. Providing false information to your supervisor regarding BOKF records is unacceptable and is a violation of the Standards of Conduct. Falsifying BOKF records is a terminable offense.*

## VIII. EXTENSIONS OF CREDIT TO AND OBLIGATIONS OF EMPLOYEES AND OFFICERS

### A. EXTENSIONS OF CREDIT TO EMPLOYEES

Extensions of credit to employees shall only be made with proper approvals in accordance with BOKF's Employee Loan Policy. They shall conform to normal credit and lending standards of BOKF employees.

### B. BORROWING FROM CUSTOMERS

Employees may not borrow from BOKF's customers or suppliers, except those engaged in lending in the normal course of business. This does not apply to family members. Borrowings from other lending institutions must be free of any reciprocity.

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

### C. FINANCIAL CONDITION

It is the responsibility of every employee of BOKF to manage his or her financial affairs and condition in a prudent and circumspect manner. Certain employees such as registered broker dealers and registered investment advisors and the like, may have heightened reporting duties with respect to the employees' personal financial matters and must consult and comply with applicable policies, laws and regulations, and licensing programs.

### D. PROHIBITED USE OF BOKF PROPERTY

BOKF funds, property, services, supplies, facilities, or other things of value must not be used directly or indirectly by any employee of BOKF to compensate any other bank, person, or entity for services, property, or loans made directly or indirectly to the employee, or for the benefit of the employee's family.

## IX. ACTIVITIES AND CONFLICTS OF INTEREST AFFECTING THE CORPORATION

### A. DEFINITION AND GENERAL RULE

Business decisions should be made free from any conflict of interest and decisions should be impartial in appearance and practice. An actual or potential conflict of interest can arise when an employee, or member of his or her family, has a related direct or indirect interest in an entity dealing with BOKF (i.e. bank customer, applicant, vendor, or supplier). BOKF and its employees must avoid any activity that has the appearance of a conflict of interest. If at any time an employee is in a situation that could be interpreted as a conflict or potential conflict, the employee must disclose the potential conflict through one of the Reporting Methods in Section V.

**Questions & Answers:**

**Q**: My sister is part owner of a company that has provided services to BOKF for a long time. I was just hired at BOKF and I now have authority to contract with my sister's company. Is this a potential conflict of interest?

**A**: *Yes. An appearance of a conflict exists because the employee is part of the decision making process for the selection of this vendor. The issue could be resolved if an impartial decision maker, such as your supervisor, makes the decision instead of you. It is important to report the potential conflict by way of one of the reporting methods in Section V.*

**Q**: I am considering applying for a part-time teller position at a local community bank during my off hours. Is this a potential conflict of interest?

**A**: *Yes. Working for a competitor bank is a conflict of interest.*

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

## B. EMPLOYMENT OF RELATIVES

BOKF allows the employment of people with close relationships to other employees, only if such employment does not create actual or potential conflicts of interest. *See, Hiring of Relatives Policy*.

Certain conditions must be met to avoid potential conflicts:

- Relatives may not work under the supervision of, in the same department as, or in a position of responsibility for reviewing the procedures of another relative; and

- Before a relative is hired, the hiring decision must pass through an exception review and get approval from the Chief Auditor, Human Resources and all Division Managers involved. If employees become relatives after their hire date, the new relationship must be reported as a potential conflict and the appropriate review and disposition process described in Section X.C. below must be completed.

**Reporting:** Potential employment of a relative must be reported to the Employee Resource Center for review and disposition processing.

> **Q**: I have a position in my department and have identified who I would like to hire. The individual's father works in a different department but at times he might fill in for me when I'm out of the office. Would it be okay to hire the daughter?
>
> **A**: *No. Although the related individuals would be in different departments and performing different work, because one could at times supervise the other would be a conflict of interest and a violation of our HR Hiring of Relatives Policy.*

## C. BUSINESS ACTIVITIES

No employee shall have personal business, investment activity, or interest that will:

- Encroach on the time or attention which should be devoted to duties in connection with employment by BOKF;
- Adversely affect the quality of work performed;
- Compete directly, indirectly, or create the appearance of competing with BOKF;
- Involve use of BOKF's personnel, equipment, supplies or facilities;
- Take for an employee opportunities that are discovered through the use of Company property, information or position;
- Use Company property, information or position for personal gain;
- Imply sponsorship or support by BOKF, employment, activity or organization; or
- Adversely affect, directly or indirectly, the good name of BOKF.

## D. COMMUNITY ENGAGEMENT

Subject to BOKF's Corporate Community and Employee Engagement Policy, BOKF encourages employee participation in recognized charitable, civic, and community affairs.

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

Before an employee agrees to serve with an organization the employee should either discuss the intent with their leadership team first and the market's community relations department in order to understand funding and work attendance expectations or plan on self placement activities occurring outside of work hours.

The Company tracks formal community engagement activities voluntarily reported by employees in order to enhance strategic community engagement and to understand possible relationships. Employees may voluntarily update their charitable or civic activities on the Community Service Activity Form located on BankNet/Human Resources/Community Service Activity Form.

### E. POLITICAL ACTIVITIES

BOKF believes that it is important for every citizen to take an interest in the political process. Employees participating in political activities must do so on the employee's own time and not as a representative of BOKF.

Any employee desiring to run for an elected political office or to accept an appointment to a federal, state or local government office, must secure the written approval of BOKF's Chief Executive Officer (CEO) or his designate prior to his or her becoming a candidate or accepting an appointment.

It is prohibited to directly or indirectly use BOKF for political activities:

- Funds
- Property
- Services
- Supplies
- Facilities
- Working time

No loan shall be made to any party, organization, candidate or official without the prior review and written approval of BOKF's CEO or his designate.

When acting in an official capacity of BOKF, employees must report all "things of value" that are given to elected officers, state officers, or state employees (or his/her immediate family) to Joyce Thedford, Oklahoma City. Employees cannot spend more than $20 per meal and no more than $50 annually. Only our lobbyist can give "things of value" which, taken together, are valued at no more than $500 annually to any elected officer, state officer, or state employee (or his/her immediate family).

Employees are prohibited from providing anything of value (i.e., meals, tickets) while soliciting business on behalf of BOKF with any state agency or department. Please review the information on the BOKF Political Action Committee (PAC) site for specific restrictions on political activities for BOK Financial Corporation, its affiliates, their employees, and the BOKF PAC. Be advised that certain BOK Financial subsidiaries and divisions have additional restrictions, so please review those policies and procedures applicable to your department, division, or subsidiary for additional

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

information.

**Questions & Answers:**

**Q**: I wrote a personal check to a congressman's campaign committee and included the amount in my expense report. Will the Company reimburse me?

**A**: *No. BOKF policy requires that all campaign contributions be planned and budgeted and we have several specific legal and management approvals prior to contributing.*

**Q:** My co-worker used Company e-mail to solicit support for his father, who is running for state senator. Is this ok?

**A**: *No. Employees may not use company resources for political purposes.*

## F. GIFTS

**General Rule**

As a general rule, Employees should not accept gifts or favors from a person or entity conducting or seeking to do business with BOKF including, but not limited to, customers, vendors, job candidates, and/or employees. It is appropriate to tell the customer or vendor, "BOKF does not allow Employees to accept gifts." If there is not an opportunity to refuse, or if it could reasonably be perceived as rude or awkward to refuse, follow the reporting procedure below.

**Monetary Gifts Prohibited**

Cash gifts or cash equivalents of any amount (monetary gifts) are never permissible.

**Gifts Valued $100 and Over**

Presentation of a gift valued at $100 or over must be reported for disposition as set out below.

**Exceptions**

The following exceptions may apply:

**Nominal Gifts:** Nominal gifts of appreciation are generally permissible if the value of a non-monetary gift is less than $100.

**Family Gifts**: Gifts from family, independent of any business of BOKF are generally permissible.

**Gifts Available to the Public** If the benefit is available to the public under the same conditions

**Reporting**

Questions regarding Gifts should be referred to the ERC. The ERC will follow the review process as outlined in Section X. Attempted monetary gifts and/or any gift valued at $100 or more received from any person or entity doing business or seeking to do business with BOKF, other

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

than family members, must be disclosed to by way of one of the reporting methods in Section V and ERC in writing within five business days of being presented with the gift.

**Questions & Answers:**

> **Q**: On a recent business trip, I met with one of our vendors for dinner to discuss possible enhancements to the services they provide. The vendor representative insisted on paying for dinner and grabbed the check before I could. My meal cost a little over $25. Was this okay?
>
> **A**: *Yes. Although you were right to try to turn down anything that is a gift from someone who conducts business with us, the situation would be acceptable for several reasons. First, the value of the gift was under $100. Second, it could have been awkward to insist on picking up your expenses after the vendor representative had already grabbed the check. Finally, because this was a meal while on a business trip, it could have been paid for by BOKF as a reasonable business expense.*
>
> **Q**: One of our clients recently offered to buy a case of wine for me as a thank you for the work I've done on his account. He knows my wife and I appreciate wine. This is a wonderful gift valued at about $750. Is it okay for me to tell him to go ahead and buy the wine for us?
>
> **A**: *No. BOKF does not allow employees to accept gifts and the employee should politely turn down this gift. It is inappropriate for employee to accept gifts for work performed for clients especially when the gift is valued over $100.*

## G. SOCIAL MEDIA

The Company uses social media to inform and educate consumers about financial topics, to support local communities and to build the Company's brands.

Only authorized representatives of the Corporate Marketing Department may create Company social media accounts or websites. Only the Corporate Marketing Department and authorized Express Bank personnel may officially engage in social media on behalf of BOKF. The Social Media Policy contains specific responsibilities and duties under this policy.

## H. OUTSIDE EMPLOYMENT

Outside employment could result in a potential conflict of interest in violation of this Standards of Conduct. All outside employment must be reported by the employee to the ERC. If the ERC determines that a conflict of interest could arise, the employee may seek an exception to in accordance with Section X.B. below. t.

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

# X. INTERPRETATIONS AND DISPOSITION

## A. INTERPRETATIONS OF STANDARDS OF CONDUCT

Questions regarding the applicability of Standards of Conduct or acceptability of an action or activity:

- Employees should contact one of the Reporting Methods in Section V with questions or for a determination of the acceptability of a specific action or activity.
- The ERC may work with Line of Business (LOB) leaders, Senior HR Business Partners, the Chief Auditor, and other relevant parties to answer the inquiry or make a determination.
- The ERC will escalate complex questions and/or interpretations to executive management the Office of General Counsel, or outside advisors as applicable.
- The Chief Auditor will be notified prior to any employee communication and provided access to employee questions and potential responses regarding the Standards of Conduct.
- Thereafter, the ERC will communicate a response in writing to the employee and to the supervisor, if appropriate.

## B. STANDARDS OF CONDUCT EXCEPTIONS OR VIOLATIONS DISPOSITION

Decisions regarding exceptions to the Standards of Conduct, including self-reported exceptions, and reported violations, require transparency.

Each employee must report in writing (email is acceptable) Standards of Conduct exceptions or violations by way of one of the reporting methods in Section V. *See also*, Corporate Whistleblower Policy.

**Disposition for General Employees**

The person receiving notice of a Standard of Conduct exception request and/or notice of a potential violation shall notify the Employee Resource Center and/or Employee Relations. Senior Human Resources Partners, the ELT member for the line of business, and the Chief Auditor may be a resource used in determining exceptions and/or violations and may be consulted by Employee Relations as appropriate. Employee Relations may escalate the determination to the Chief Auditor and/or the Office of General Counsel where appropriate.

**Disposition for Human Resources Employees**

In the event the employee requesting an exception approval or reporting a violation ultimately reports to the Chief Human Resources Officer, the disposition will be handled as detailed above, but will require additional review and approval processing by the Chief Risk Officer.

**Notice to and Review by Chief Auditor**

The Chief Auditor will be notified prior to the disposition being communicated to the employee and provided access to review decisions involving exceptions or violations. The Chief Auditor will

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

report exceptions to the Standards of Conduct to the Audit Committee of the Board of Directors at least quarterly.

The Board of Directors shall be responsible for dispositions of exceptions for and/or violations of the CEO.

The CEO shall be responsible for the disposition of exceptions for and/or potential violations by Executive Leadership Team (ELT) members.

# XI. ANNUAL CERTIFICATION AND ATTESTATION

## A. ANNUAL CERTIFICATIONS

As a condition of employment, Employees shall annually certify that each has (i) reviewed the Standards of Conduct, (ii) is in compliance with the Standards of Conduct, and (iii) will comply with the Standards of Conduct.

## B. ATTESTATION

Please attest to the following certification. Employees not responding by attestation will be reported as Exceptions in accordance with Article X.C.

Employee Certification:

1. This is to certify that (i) I have read BOKF's Standards of Conduct; (ii) I am in compliance with BOKF's Standards of Conduct and/or have reported any exception thereto as required; and (iii) I agree to abide by and be in compliance with the Standards of Conduct.
2. This is also to certify that I fully understand that I am responsible for following applicable Company policies.
3. This is to certify that I understand the conflict of interest provisions of the Standards of Conduct and that I have resolved any potential conflicts in accordance with the established Procedures.

Services provided by Bank of Albuquerque, Bank of Arizona, Bank of Arkansas, Bank of Kansas City, Bank of Oklahoma, Bank of Texas and Colorado State Bank and Trust, divisions of BOKF, NA and BOSC, Inc. subsidiaries of BOK Financial Corporation. Any printed versions of this document should be used for immediate reference only. Please refer to the latest electronically approved version. This document is for internal use only and is not to be distributed outside the bank.

| First Name | Last Name | User Name | Branch Name | Branch Code | Lesson Name | Lesson ID | Due Date | Completion Date | Score | Historical Due Date | Assignment Method | Employee Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Vickie | Wise | vwise@bokf.com | 9172 | 9172 | BOKF Standards of Conduct 2017 | BOKF061 | N\A | 4/14/2017 | 100 | 4/28/2017 | Historical | 5021 |
| Ronnie | Davis | skip.davis@bokf.com | 9172 | 9172 | BOKF Standards of Conduct 2017 | BOKF061 | N\A | 4/3/2017 | 100 | 4/28/2017 | Historical | 8913 |
| Melissa | Del-Cid | mdelcid@bokf.com | 9172 | 9172 | BOKF Standards of Conduct 2017 | BOKF061 | N\A | 4/10/2017 | 100 | 4/28/2017 | Historical | 5121 |
| Barbara | Gibbons | bgibbons@bokf.com | 9172 | 9172 | BOKF Standards of Conduct 2017 | BOKF061 | N\A | 4/12/2017 | 100 | 4/28/2017 | Historical | 7974 |

| Email | Title | User Status | Hire Date | Group Codes | Region Name | Executive Name | Supervisor Name | Supervisor Email | User Comments | State |
|---|---|---|---|---|---|---|---|---|---|---|
| vwise@bokf.com | Client Advisor | Inactive | 9/22/1998 | N\A | No Region | No Executive | Patrick Staudt | pstaudt@bokf.com | | OK |
| skip davis@bokf.com | Client Advisor | Inactive | 4/2/2012 | N\A | No Region | No Executive | Patrick Staudt | pstaudt@bokf.com | | OK |
| mdelcid@bokf.com | Sr Securi ies Sales/Service Specialist | Inactive | 6/21/2006 | N\A | No Region | No Executive | Lisa Shannon | lshannon@bokf.com | | OK |
| bgibbons@bokf.com | Sr Securi ies Sales/Service Specialist | Inactive | 5/16/2011 | N\A | No Region | No Executive | Lisa Shannon | lshannon@bokf.com | | OK |

| Transfer Date | Termination Date | Custom 1 | Custom 2 | Custom 3 | Custom 4 | Custom 5 | Custom 6 | Custom 7 | Custom 8 | Custom 9 | Custom 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| N\A | N\A | | DL | WEALTH MANAGEMENT DIVISIO | Sherry Lane 7th Flr | Patrick Staudt | William Goodwin | Gregory Wheeler | 80672 | N\A | N\A |
| N\A | N\A | | DL | WEALTH MANAGEMENT DIVISIO | Sherry Lane 7th Flr | Patrick Staudt | William Goodwin | Gregory Wheeler | 80672 | N\A | N\A |
| N\A | N\A | | DL | WEALTH MANAGEMENT DIVISIO | Sherry Lane 7th Flr | Lisa Shannon | Paul Boston | Jeffrey Sanders | 80332 | N\A | N\A |
| N\A | N\A | | DL | WEALTH MANAGEMENT DIVISIO | Sherry Lane 7th Flr | Lisa Shannon | Gregory Wheeler | Scott Grauer | 80332 | N\A | N\A |

Exhibit 14

APP. 00207

**Confidential** **Exhibit 014-000001**

BOK FINANCIAL CORPORATION

# WEALTH MANGEMENT
# CLIENT ADVISOR
# 2017 SCHEDULE

## PAYMENT OF BENEFITS

This Schedule is subject to the Incentive Compensation Master Incentive Plan and applicable Addendum which are incorporated by reference into this schedule.

### PARTICIPATION DESIGNATION

The following employees are eligible to participate in the Plan:

- Client Advisors

### AWARD DETERMINATION

**Award Calculation**

The Plan rewards participants for personal revenue that exceeds their monthly draw (recurring fee production and brokerage production) as described below:

**Annual Retention Award**

APP. 00209
2
Confidential Exhibit 015-000002

Participants will be eligible to participate as of their employment date within the department. The retention award is considered to be an incentive (vs. a commission) and therefore is not 401(k) eligible.

**ADDITIONAL PLAN PROVISIONS**

Employee agrees that, during employment and for a period of one (1) year following any termination of employment for any reason, Employee shall not, (whether as an officer, director, employee, partner, stockholder, creditor or agent, or representative of other persons or entities), (i) directly solicit the sales of goods, service or a combination of goods and services from established customers of BOK Financial or any of its affiliates or (ii) directly solicit employees of BOK Financial or any affiliates of BOK Financial to seek employment with any person or entity providing banking and/or financial services and/or other goods and services offered by BOK Financial and/or its affiliates except on behalf of BOK Financial and/or its affiliates. The foregoing agreement not to solicit notwithstanding, to the extent that the employee has entered into an agreement with BOK Financial and/or an affiliate, and the agreement contains greater restrictive covenants in favor of BOK Financial and/or an affiliate, the greater restrictive covenant supersedes this provision.


BOK FINANCIAL CORPORATION

# WEALTH MANGEMENT DIVISION
# ADVISOR
# 2016 SCHEDULE

## PAYMENT OF BENEFITS

### PARTICIPATION DESIGNATION

The following employees are eligible to participate in the Plan:

- Private Bank Client Advisors
- BOSC Client Advisors
- Milestone Wealth Advisors
- Managing Directors – Milestone

### AWARD DETERMINATION

**Annual Retention Award**

Participants will be eligible to participate as of their employment date within the Department. The Award is considered to be an incentive (vs. a commission) and therefore is not 401(k) or pension plan eligible.



**ADDITIONAL PLAN PROVISIONS**

As a condition of employment/participation in this incentive plan, I hereby agree that for one year following termination of my employment (for any reason whatsoever), I will not directly solicit the sale of goods, services or a combination of goods and services from established customers of BOKF, for itself and on behalf of its affiliates.

To fulfill your duty of loyalty to BOKF, including but not limited to, your duty is not to solicit employees of BOKF on behalf of any entity other than BOKF.

Dorwart, Erica

**From:** Davis, Skip
**Sent:** Wednesday, February 21, 2018 8:50 AM
**To:** 'Wise, Vickie (VWise@mail.bokf.com)'
**Subject:** FW: 2018 Goals
**Attachments:** 2018 Incentive & Referral Plans.pdf

My Sales Activity shows a goal of [redacted]

Skip Davis
Vice President I Wealth Management
BOK Financial Advisors
5956 Sherry Lane, Suite 700
Dallas, Texas 75225
(214) 932-3081 I Phone
(214) 256-7538 I Fax
skip.davis@bokf.com I Email

Securities, insurance and advisory services offered by BOK Financial Securities, Inc., member FINRA/SIPC and a subsidiary of BOK Financial Corporation. Some services offered through our affiliate, Institutional Investments, Bank of Oklahoma which operates as a separately identifiable trading department of BOKF, NA. **NOT FDIC INSURED | NO BANK GUARANTEE | MAY LOSE VALUE**

---

**From:** Staudt, Patrick
**Sent:** Friday, January 12, 2018 3:04 PM
**To:** Davis, Skip <Skip.Davis@bokf.com>; Wise, Vickie <VWise@mail.bokf.com>; Manna, Vince <VManna@bokf.com>
**Subject:** 2018 Goals

Below are the goals for 2018. Only BOKFS production and new IMA closed business (1st year annualized revenue on closed opportunities) are required to hit the 2% retention bonus. Actual IMA revenue is no longer part of the goal requirement but it is used in calculating the amount of the 2% retention if the below production goals are achieved. As in the past, you must also achieve the Calls, Referrals and Insurance Referrals goals quarterly in order to qualify for the retention incentive.

| | Annual 2018 IMA (New) Goal | | 2018 Brokerage Goal |
|---|---|---|---|
| Wise | [redacted] | 80% | [redacted] |
| Davis | [redacted] | 20% | [redacted] |
| Total Davis/ Wise | [redacted] | | [redacted] |
| Manna | [redacted] | | [redacted] |

I have attached the 2018 incentive and referral plan for your review. Note the "Important 2018 Concepts" – page 2. The most impacting will be accounts that do not meet minimums from the fee schedule will not be provided credit. I would like to walk through this with you on Tuesday of next week – perhaps following our town hall meeting on Tuesday.

Let me know if you have any questions.

Pat

Patrick J. Staudt
Managing Director I Market Executive
The Private Bank at Bank of Texas
5956 Sherry Lane, Suite 700
Dallas, TX 75225
972-892-9959 I Phone
817-228-9653 I Cell
pstaudt@bankoftexas.com I Email

# 2018 Incentive & Referral Plans

Effective January 1, 2018

# Important 2018 Concepts

- Architecture of the plan is unchanged from 2017.

2

APP. 00217

Confidential

Exhibit 017-000004

# General Incentive Plan Information

- Client Advisors will continue to be paid monthly, as is customary.

# General Incentive Plan Information

- All participants in incentive plans acknowledge and accept the plans as part of their total compensation each year. Also, in consideration of participating in the company's incentive plans, Private Wealth employees agree to a one-year non-solicitation of both BOKF customers and employees.



5

APP. 00220

Confidential

Exhibit 017-000007

# Private Banking

BOK FINANCIAL
THE PRIVATE BANK

Effective January 1, 2018

Confidential

Exhibit 017-000008



7
APP. 00222
Confidential
Exhibit 017-000009



8

APP. 00223

Confidential

Exhibit 017-000010



9

APP. 00224

Confidential

Exhibit 017-000011



10

APP. 00225

Confidential

Exhibit 017-000012



11

APP. 00226

Confidential

Exhibit 017-000013



12

APP. 00227

Confidential

Exhibit 017-000014

# Personal Trust

BOK FINANCIAL
THE PRIVATE BANK

Effective January 1, 2018

Confidential

Exhibit 017-000015



14

APP. 00229

Confidential

Exhibit 017-000016



15

APP. 00230

Confidential

Exhibit 017-000017



16

APP. 00231

Confidential

Exhibit 017-000018

# Investment Management & Financial Planning

Effective January 1, 2018

# Client Advisor Incentive Plan

■

## PERFORMANCE MEASURES

## RETENTION PLAN

18

APP. 00233

Confidential

Exhibit 017-000020

# Client Advisor Scorecard

19

APP. 00234

Confidential

Exhibit 017-000021



20

APP. 00235

Confidential

Exhibit 017-000022



21

APP. 00236

Confidential

Exhibit 017-000023



22

APP. 00237

Confidential

Exhibit 017-000024



23

APP. 00238

Confidential

Exhibit 017-000025



24

APP. 00239

Confidential

Exhibit 017-000026



25

APP. 00240

Confidential

Exhibit 017-000027

# Specialty Asset Management

Effective January 1, 2018



27

APP. 00242

Confidential

Exhibit 017-000029



28

APP. 00243

Confidential

Exhibit 017-000030



29
APP. 00244
Confidential
Exhibit 017-000031

# Management & Support

BOK FINANCIAL
THE PRIVATE BANK

Effective January 1, 2018

Confidential

Exhibit 017-000032



31

APP. 00246

Confidential

Exhibit 017-000033

# Support Associate Incentive Plan

32

APP. 00247

Confidential

Exhibit 017-000034



33

APP. 00248

Confidential

Exhibit 017-000035

# Referral Plans

BOK FINANCIAL
THE PRIVATE BANK

Effective January 1, 2018

Confidential

Exhibit 017-000036



35

APP. 00250

Confidential

Exhibit 017-000037



36

APP. 00251

Confidential

Exhibit 017-000038



37
APP. 00252
Confidential
Exhibit 017-000039



38

APP. 00253

Confidential

Exhibit 017-000040



39

APP. 00254

Confidential

Exhibit 017-000041



40

APP. 00255

Confidential

Exhibit 017-000042



41

APP. 00256

Confidential

Exhibit 017-000043



42

APP. 00257

Confidential

Exhibit 017-000044



43

APP. 00258

Confidential

Exhibit 017-000045



44
APP. 00259
Confidential
Exhibit 017-000046



45

APP. 00260

Confidential

Exhibit 017-000047

**Caywood, Candace**

**From:** Sheahan, Jackie
**Sent:** Friday, May 19, 2017 1:05 PM
**To:** Wise, Vickie
**Subject:** 2017 Referral Fee Plan
**Attachments:** 2017 Incentive Referral Plans (003).pdf

***Jackie Sheahan***
Senior Vice President
Client Advisor Group
**The Private Bank**
Bank of Texas
3009 Post Oak Blvd, Suite 1300
Houston, TX 77056
(713) 260-5637 Office
(713) 260-5643 Fax
JSheahan@bokf.com

Securities, insurance and advisory services offered through BOK Financial Securities, Inc., member FINRA/SIPC and a subsidiary of BOK Financial Corporation. Services may be offered under our trade name, BOK Financial Advisors. **NOT FDIC INSURED | NO BANK GUARANTEE | MAY LOSE VALUE**

.

# 2017 Incentive & Referral Plans

BOK FINANCIAL
THE PRIVATE BANK

Effective January 1, 2017

Confidential

Exhibit 018-000002

# Important 2017 Concepts

2

APP. 00263

Confidential

Exhibit 018-000003

# Important 2017 Concepts

3

APP. 00264

Confidential

Exhibit 018-000004

# General Incentive Plan Information

- As in prior years, all participants in incentive plans acknowledge and accept the plans as part of their total compensation each year. Also, in consideration of participating in the company's incentive plans, Private Bank employees agree to a one-year non-solicitation agreement of both BOKF customers and employees.

# Sales & Referral Tracking Guidelines

5

APP. 00266

Confidential

Exhibit 018-000006



6

APP. 00267

Confidential

Exhibit 018-000007



7

APP. 00268

Confidential

Exhibit 018-000008



8

APP. 00269

Confidential

Exhibit 018-000009



9

APP. 00270

Confidential

Exhibit 018-000010



10

APP. 00271

Confidential

Exhibit 018-000011



11

APP. 00272

Confidential

Exhibit 018-000012



12

APP. 00273

Confidential

Exhibit 018-000013



13

APP. 00274

Confidential

Exhibit 018-000014



14

APP. 00275

Confidential

Exhibit 018-000015

15

APP. 00276

Confidential

Exhibit 018-000016



16

APP. 00277

Confidential

Exhibit 018-000017



17

APP. 00278

Confidential

Exhibit 018-000018

# Client Advisor Incentive Plan

## PERFORMANCE MEASURES

## RETENTION PLAN

18

APP. 00279

Confidential

Exhibit 018-000019

# Client Advisor Scorecard

19

APP. 00280

Confidential

Exhibit 018-000020

# Support Associate Incentive Plan

PERFORMANCE MEASURE:

TARGET OPPORTUNITY

20

APP. 00281

Confidential

Exhibit 018-000021



21

APP. 00282

Confidential

Exhibit 018-000022



22

APP. 00283

Confidential

Exhibit 018-000023



23

APP. 00284

Confidential

Exhibit 018-000024



24
APP. 00285
Confidential
Exhibit 018-000025



25

APP. 00286

Confidential

Exhibit 018-000026



BOK FINANCIAL
THE PRIVATE BANK

Effective January 1, 2017

Confidential

Exhibit 018-000027



27

APP. 00288

Confidential

Exhibit 018-000028



28

APP. 00289

Confidential

Exhibit 018-000029



29

APP. 00290

Confidential

Exhibit 018-000030

31

APP. 00292

Confidential

Exhibit 018-000032



33

APP. 00294

Confidential

Exhibit 018-000034



34

APP. 00295

Confidential

Exhibit 018-000035



BOK FINANCIAL SECURITIES

# Written Supervisory Procedures

# BOK Financial Securities, Inc.

**Published: 18 December 2017**

APP. 00296

Confidential Exhibit 019-000001

# Written Supervisory Procedures

# BOK Financial Securities, Inc.

**Published: 19 February 2018**

APP. 00297

Confidential Exhibit 019-000002

# TABLE OF CONTENTS

INTRODUCTION ..... 1
IMPORTANT NOTES TO KEEP IN MIND ..... 1
BANK POLICIES ..... 1
ACKNOWLEDGEMENT OF PROCEDURES ..... 2
1 DESIGNATION OF SUPERVISORS AND OFFICES ..... 3
1.1 Designation Of Supervisors ..... 3
1.2 Designation Of Offices ..... 4
2 GENERAL EMPLOYEE POLICIES ..... 6
2.1 Standards Of Conduct ..... 6
2.1.1 Conflicts of Interest ..... 6
2.2 Outside Business Activities ..... 6
2.2.1 Employees of BOKF, NA ..... 8
2.2.2 Special District Board Positions ..... 8
2.3 Private Securities Transactions ..... 8
2.4 Employee And Employee Related Accounts ..... 9
2.4.1 Employee And Employee Related Accounts Defined ..... 9
2.4.2 Outside Accounts ..... 10
2.4.3 Review Of Transactions ..... 11
2.4.4 Insider Trading ..... 12
2.4.5 Sharing In Accounts ..... 12
2.4.6 Prohibition On Purchases Of Initial Public Offerings (IPOs) ..... 13
2.4.7 Restrictions On Personal Accounts Of Certain Firm Personnel ..... 13
2.5 Gifts, Gratuities And Entertainment ..... 13
2.5.1 Gifts To Others ..... 14
2.5.2 Accepting Gifts ..... 15
2.5.3 Entertainment ..... 15
2.5.4 Gifts, Loans, And Entertainment Involving Unions And Union-Affiliated Individuals ..... 16
2.5.5 Gifts Or Payments To Public Officials ..... 16
2.6 Political Contributions ..... 17
2.7 Privacy Policy ..... 17
2.7.1 BOKFS Privacy Policy ..... 18
2.8 Reporting Possible Law Or Rule Violations ..... 18
2.8.1 Reporting ..... 19
2.8.2 Confidentiality Of Employee Reporting ..... 19
2.8.3 Notification Of Chief Compliance Officer ..... 19
2.8.4 Investigation ..... 19
2.8.5 Anti-Retaliation ..... 19
2.8.6 Federal Whistleblower Laws And Rules ..... 20
2.9 The Foreign Corrupt Practices Act (FCPA) ..... 20
2.9.1 FCPA Prohibitions ..... 21
2.9.2 Required Approvals ..... 22
2.9.3 Contracts With Third Parties ..... 22
2.9.4 Business Entertainment, Gifts And Travel Expenses ..... 22
2.9.5 Promotional/Educational Expenses ..... 22
2.9.6 Facilitating Payments ..... 22
2.9.7 No Cash Payments To Foreign Officials ..... 23
2.9.8 Political Contributions ..... 23
2.9.9 Financial And Accounting Controls ..... 23
2.9.10 Certifications ..... 23
2.10 Solicitation Of Charitable Contributions From Customers ..... 23
2.11 Media Contact Is Limited To Certain Authorized Employees ..... 24
2.12 Requests For Information From Outside Sources ..... 24
2.13 Internal Reviews And Investigations ..... 25
2.14 Internal Disciplinary Actions ..... 25

2.14.1 When Disciplinary Action Is Considered ..... 25
2.14.2 Who Determines Disciplinary Action ..... 25
2.14.3 Types Of Discipline ..... 25
2.14.4 Additional Action ..... 27
2.14.5 Considerations In Determining Type Of Discipline ..... 27
2.15 Employee Obligation To Notify BOKFS And The Firm's Obligation To Report ..... 27
2.15.1 Reporting Requirements ..... 29
2.16 Money Laundering ..... 29
2.16.1 Cash Deposits Not Accepted ..... 30
2.16.2 Identity Theft ..... 30
2.17 Emergency Business Recovery Procedures ..... 31
2.18 Prohibited Activities ..... 32
2.18.1 Use Of Firm Name ..... 32
2.18.2 High Pressure Sales Tactics ..... 32
2.18.3 Providing Tax Advice Not Permitted ..... 32
2.18.4 Rebates Of Commission ..... 32
2.18.5 Sharing Commissions Or Fees With Non-Registered Persons ..... 33
2.18.6 Accepting Compensation From Others ..... 33
2.18.7 Settling Complaints Or Errors Directly With Customers ..... 33
2.18.8 Borrowing From And Lending To Customers ..... 33
2.18.9 Personal Funds Deposited In Customer Accounts ..... 33
2.18.10 Prohibition Against Guarantees ..... 34
2.18.11 Fees And Other Charges ..... 34
2.18.12 Customer Signatures ..... 34
2.18.13 Rumors ..... 34
2.18.14 Misrepresentations ..... 35
2.18.15 Bribes ..... 35
2.18.16 Acting Without Registration ..... 35
2.18.17 Beneficiary on Non-Familial Accounts ..... 35
2.19 Computer Records, Equipment And Software ..... 35
2.19.1 Laptop Computers And Other Mobile Devices ..... 36
2.19.2 Reporting Lost Devices ..... 36
2.19.3 Identifying And Reporting Data Breaches ..... 37
2.19.4 Software ..... 37
2.19.5 Prohibited Downloading ..... 37
2.20 Electronic Communications Policy ..... 37
2.20.1 Failure To Comply ..... 39
2.20.2 Consent To Policy ..... 39
2.21 Mobile Devices ..... 39
2.22 Advertising And Publishing Activities ..... 39
2.23 Employees Acting As Trustees, Executors, Or Other Fiduciary Capacities ..... 39
2.24 Use Of Titles ..... 40
2.24.1 Use of Approved Designations ..... 40
2.25 Semi-Annual Certification ..... 40
2.26 Recording of Telephone Conversations ..... 41
3 TRAINING AND EDUCATION ..... 42
3.1 Annual Compliance Meeting ..... 42
3.2 Continuing Education ..... 42
3.2.1 Regulatory Element ..... 43
3.2.2 Firm Element ..... 44
3.2.3 Registered Persons Who Fail To Complete Requirements ..... 45
3.3 Trainees ..... 45
4 EMPLOYMENT, REGISTRATION AND LICENSING ..... 47
4.1 Employment ..... 47
4.1.1 Hiring Procedures ..... 47
4.1.2 Termination Procedures ..... 53
4.2 Registration And Licensing ..... 54
4.2.1 CRD Electronic Filings ..... 54

4.2.2 Registration Requirement ..... 55
4.2.3 Requests For Waivers ..... 55
4.2.4 State Registrations ..... 55
4.2.5 Parking Registrations ..... 56
4.2.6 Form U4 ..... 56
4.2.7 Amendments To Form U4 Or Form U5 ..... 56
4.2.8 Assignment Of RR Numbers ..... 57
4.3 Statutorily Disqualified Persons ..... 57
4.3.1 Introduction ..... 57
4.3.2 Hiring A Statutorily Disqualified Person ..... 57
4.3.3 Regulatory Filings ..... 57
4.3.4 Supervision ..... 58
4.3.5 Reporting Statutory Disqualifications ..... 58
4.4 Retiring Representatives ..... 58
4.5 Broker-Dealer Registration ..... 58
4.5.1 Form BD ..... 59
4.5.2 Change In Ownership, Control, Or Business Operations ..... 59
4.5.3 Regulatory Contact Information ..... 59
4.5.4 Regulatory Filings ..... 60
4.5.5 Reporting Requirements ..... 60
4.6 Heightened Supervision ..... 61
4.6.1 Introduction ..... 61
4.6.2 Identifying Employees For Heightened Supervision ..... 61
4.6.3 Criteria For Identifying Candidates For Heightened Supervision ..... 62
4.6.4 Heightened Supervision Memorandum ..... 62
4.6.5 Scope Of Potential Heightened Supervision ..... 62
4.6.6 Certification By RR's Supervisor ..... 62
5 COMMUNICATIONS WITH THE PUBLIC ..... 63
5.1 Introduction ..... 63
5.2 Definitions ..... 63
5.3 Retail Communications ..... 64
5.3.1 FINRA Filing Requirements ..... 65
5.4 Institutional Communications ..... 66
5.5 General Standards ..... 67
5.5.1 Comparisons ..... 68
5.5.2 Disclosure Of The Firm's Name ..... 68
5.5.3 Tax Considerations ..... 68
5.5.4 Disclosure Of Fees, Expenses And Standardized Performance ..... 68
5.5.5 Recommendations ..... 69
5.5.6 Prospectuses Filed With The SEC ..... 69
5.5.7 Limitations On Use Of FINRA's Name And Any Other Corporate Name Owned By FINRA ..... 69
5.6 Approval ..... 70
5.7 Testimonials ..... 70
5.8 Telemarketing Scripts ..... 71
5.9 SIPC Membership ..... 71
5.10 Recordkeeping Requirements For Retail And Institutional Communications ..... 71
5.11 Outgoing Communications ..... 72
5.11.1 Prohibition Against Sending Communications From Personal Computers And Other Non-Firm Facilities ..... 72
5.11.2 Review And Approval ..... 72
5.11.3 Content Guidelines ..... 73
5.11.4 Letters And Notes ..... 73
5.11.5 Facsimiles ..... 73
5.11.6 Communications Defined As "Research" ..... 74
5.12 Incoming Correspondence ..... 74
5.12.1 Review Of Incoming Correspondence ..... 74
5.12.2 Offices Without Resident Supervisors ..... 75
5.12.3 Personal Mail ..... 75

5.13 Legends And Footnotes ..... 75
5.14 Internal Communications ..... 76
5.14.1 Inter-Office Communications ..... 76
5.14.2 Internal Use Only ..... 76
5.14.3 Squawk Box, Conference Calls, And Other Internal Communication Systems ..... 76
5.15 Complaints ..... 77
5.15.1 Complaint Defined ..... 78
5.15.2 Handling Of Customer Complaints ..... 78
5.15.3 Oral Complaints ..... 78
5.15.4 Complaints Received By Clearing Firm ..... 78
5.15.5 Records Of Complaints ..... 79
5.15.6 Notice To Customers ..... 79
5.15.7 Reporting Of Customer Complaints ..... 79
5.16 Customer Privacy Policies And Procedures ..... 80
5.16.1 Introduction ..... 81
5.16.2 "Public" vs. "Nonpublic" Personal Information About Customers ..... 81
5.16.3 Sharing Nonpublic Financial Information ..... 81
5.16.4 Customer Notification ..... 82
5.16.5 Affiliate Marketing ..... 82
5.17 Scripts ..... 82
5.18 Prohibition Against Payments Involving Publications To Influence Market Prices ..... 83
5.19 Pre-recorded Voice Messages And Automatic Telephone Dialing Systems (Autodialers) ..... 83
5.20 Calling (Telemarketing) And Fax Restrictions ..... 83
5.20.1 Introduction ..... 84
5.20.2 Telephone Calls ..... 85
5.20.3 Wireless Communications ..... 85
5.20.4 Outsourcing Telemarketing ..... 85
5.20.5 Unencrypted Consumer Account Numbers ..... 85
5.20.6 Submission Of Billing Information ..... 85
5.20.7 Abandoned Calls ..... 86
5.20.8 Credit Card Laundering ..... 86
5.20.9 Other Prohibited Activities ..... 86
5.20.10 Do Not Call Lists ..... 86
5.20.11 National Do-Not-Call Registry ..... 87
5.20.12 State Restrictions ..... 87
5.20.13 Internal Do Not Call List ..... 87
5.20.14 Facsimile Transmissions ..... 87
5.20.15 Established Business Relationship ..... 88
5.21 Public Appearances ..... 88
5.21.1 General Guidelines ..... 89
5.21.2 Seminars ..... 89
5.21.3 Approval ..... 89
5.21.4 Radio, TV, And Other Extemporaneous Presentations ..... 89
5.21.5 Securities Sold By Prospectus ..... 90
5.21.6 Options ..... 90
5.21.7 Collateralized Mortgage Obligations (CMOs) ..... 90
5.21.8 Mutual Funds ..... 90
5.22 Cold Callers ..... 90
5.22.1 Cold Caller Requirements ..... 90
5.22.2 Permissible Cold Caller Activities ..... 90
5.22.3 Prohibited Cold Caller Activities ..... 91
5.22.4 Telemarketing Restrictions ..... 91
5.22.5 Scripts ..... 91
5.23 Electronic Communications ..... 91
5.23.1 Electronic Communications Systems And Devices ..... 91
5.23.2 Education And Training ..... 92
5.23.3 Instant Messaging ..... 92
5.23.4 Review Of Electronic Communications ..... 93

5.23.5 Advertising ... 96
5.23.6 Internet ... 96
5.23.7 Hyperlinks ... 101
5.23.8 Prohibition Against Automatic Erasing/Deleting ... 102
5.23.9 Policy Violations ... 102
5.24 Identification Of Sources ... 103
6 FINANCIAL AND OPERATIONS PROCEDURES ... 104
6.1 Qualification Of Operations Personnel ... 104
6.2 Books And Records ... 104
6.2.1 Introduction ... 104
6.2.2 Electronic Storage Of Records ... 104
6.2.3 Availability Of Records In Offices ... 106
6.3 Calculation And Reporting Of Net Capital ... 106
6.4 Reports ... 107
6.4.1 Annual Audit Report ... 107
6.4.2 Custody Report And Requirements ... 107
6.4.3 Exemption Report ... 108
6.5 Reconciliations And Bank Records ... 108
6.6 Designation Of Accountant ... 108
6.7 Guarantees By, Or Flow Through Benefits For, Members ... 109
6.8 General Ledger And Suspense Accounts ... 109
6.9 Financial Reporting ... 110
6.9.1 Preparation Of Financial Reports ... 110
6.9.2 Financial Statements ... 110
6.9.3 Disclosure Of Financial Condition ... 111
6.9.4 Notification Rule ("Early Warning Rule") ... 111
6.10 Regulation T and Extension of Credit to Customers ... 111
6.11 Fees And Service Charges ... 111
6.11.1 Notification Of Customers ... 112
6.12 Fidelity Bonding ... 112
6.13 Independent Verification Of Assets ... 112
6.14 Cash Deposits Not Accepted ... 113
6.15 Cash Equivalents ... 113
6.16 Risk Management ... 113
6.16.1 Risk Assessment, Recordkeeping And Reporting ... 114
6.16.2 Risk Practices Regarding Employment And Employees ... 114
6.16.3 New Accounts ... 116
6.16.4 Cybersecurity ... 116
6.16.5 Protection Of Customer Information And Records ... 118
6.16.6 Credit Committee ... 120
6.16.7 Funding And Liquidity Risk Management ... 121
6.16.8 Counterparty Risk ... 123
6.16.9 Proprietary Accounts ... 124
6.16.10 New Products ... 124
6.16.11 Internal Audit ... 125
6.17 Business Continuity Plan ... 126
6.17.1 Designation Of Responsibilities ... 126
6.17.2 Retention And Location Of The Plan ... 127
6.17.3 Implementation Of The Plan ... 127
6.17.4 Emergency Response Team ... 127
6.17.5 Emergency Contact List ... 128
6.17.6 Alternative Business Locations ... 129
6.17.7 Data Back-Up And Recovery ... 129
6.17.8 Mission Critical Systems ... 129
6.17.9 Financial And Operational Assessments ... 129
6.17.10 Alternative Market Entry ... 130
6.17.11 Alternative Communications ... 130
6.17.12 Regulatory Reporting ... 131

6.17.13 Business Constituent, Bank, And Counter-Party Impact ..... 131
6.17.14 Other Obligations To Customers ..... 132
6.17.15 Emergency Contact Information ..... 132
6.17.16 Widespread Health Emergencies ..... 132
6.17.17 Education Of Employees ..... 133
6.17.18 Updating, Annual Review, And Testing ..... 133
6.18 Industry Testing ..... 134
6.19 Customer Payments For Purchases ..... 134
6.19.1 Checks Payable To Clearing Firm ..... 134
6.19.2 Guaranteed Accounts ..... 134
6.20 Transmittals Of Customer Funds And Securities ..... 135
6.20.1 Checking Account Safeguards ..... 136
6.20.2 Prepayments And Extensions ..... 136
6.20.3 Employees Authorized To Transmit Customer Assets From Accounts ..... 136
6.20.4 Issuing Checks To Customers ..... 137
6.20.5 Persons Receiving Assets In Person ..... 137
6.20.6 Transmittals To Third Parties ..... 137
6.20.7 Authorization Records For Negotiable Instruments Drawn From A Customers Account ..... 139
6.20.8 Transmittals To An Alternate Address ..... 139
6.20.9 Transmittals To Outside Entities ..... 139
6.20.10 Transmittals Between Customers And Registered Representatives ..... 139
6.20.11 Suspicious Or Questionable Activities ..... 139
6.20.12 Exemption From 15c3-3 ..... 140
6.21 Customer Protection ..... 140
6.21.1 Introduction ..... 141
6.21.2 Special Reserve Bank Account ..... 142
6.22 Customer Confirmations And Statements ..... 142
6.22.1 Consolidated Statements ..... 143
6.22.2 Control Of Blank Confirmations And Statements ..... 144
6.22.3 Change Of Customer Addresses On Accounts ..... 144
6.22.4 Undeliverable Mail - UPDATE ..... 144
6.22.5 Holding Customer Mail Prohibited ..... 144
6.22.6 Confirmation Disclosures ..... 145
6.22.7 Confirmation Disclosure Of Non-Rated Taxable Debt Securities ..... 146
6.23 Lost Securityholders And Unresponsive Payees ..... 146
6.23.1 Searches For Lost Securityholders ..... 147
6.23.2 Unnegotiated Checks ..... 147
6.24 Subordination Agreements With Investors ..... 147
6.25 Expense-Sharing Agreements ..... 147
6.26 Transfer Of Accounts ..... 148
6.27 Solicitation Of Proxies ..... 148
6.28 Customer Requests For References ..... 148
6.29 Audit Letters ..... 148
6.30 Annual Disclosure Of FINRA BrokerCheck ..... 149
6.31 Carrying Agreements ..... 149
6.32 Clearing Firm Exception Reports ..... 149
6.33 Short Interest Report ..... 150
6.34 Electronic Blue Sheets ..... 150
6.35 Regulatory Fees And Assessments ..... 150
6.36 Regulatory Requests ..... 150
6.36.1 Information Provided Via Portable Media Device ..... 151
6.37 Outsourcing ..... 151
7 INSIDER TRADING ..... 153
7.1 Insider Trading Policies And Procedures ..... 154
7.2 Prohibition Against Acting On Or Disclosing Inside Information ..... 154
7.3 Tippees Are Insiders ..... 154
7.4 Misuse Constitutes Fraud ..... 154
7.5 Annual Certification ..... 154

7.6 Firm Policy Memorandum Regarding Insider Trading ..... 154
7.7 Employee, Employee-Related, And Proprietary Trading ..... 157
7.7.1 Introduction ..... 157
7.7.2 Departments Subject To Information Barrier Confidentiality Procedures ..... 157
7.7.3 Confidentiality Procedures ..... 158
7.7.4 Notification To Compliance ..... 158
7.7.5 Monitoring The Information Barrier ..... 159
7.7.6 Education And Training Of Employees ..... 159
7.8 Restricted List ..... 159
7.8.1 Surveillance ..... 160
7.9 10b5-1 Plans ..... 160
8 ACCOUNTS ..... 162
8.1 Lack Of Customer ID Verification ..... 162
8.2 New Accounts ..... 162
8.2.1 Designation Of Accounts ..... 162
8.2.2 Anti-Money Laundering (AML) New Account Requirements ..... 163
8.2.3 Identity Theft (Red Flags Rule) ..... 165
8.2.4 SIPC Disclosure ..... 168
8.2.5 Approval ..... 168
8.2.6 Customer Account Information ..... 169
8.2.7 Addresses On Customer Accounts ..... 169
8.2.8 Account Documents ..... 170
8.2.9 Predispute Arbitration Agreements With Customers ..... 170
8.2.10 Revisions To Customer Agreements ..... 171
8.2.11 Accounts Requiring Notification To Customer's Employer ..... 171
8.2.12 Post Office Addresses ..... 172
8.2.13 Unacceptable Accounts ..... 172
8.3 Qualifying Institutional Accounts ..... 172
8.4 Transferring Accounts ..... 172
8.4.1 Accounts Transferring In ..... 172
8.4.2 Accounts Transferring Out ..... 172
8.5 Updating Account Information And Periodic Affirmation ..... 172
8.6 Sweep Programs ..... 173
8.7 Margin Accounts ..... 174
8.7.1 Opening Margin Accounts ..... 175
8.7.2 Employee Accounts ..... 175
8.7.3 Disclosures ..... 175
8.7.4 Equal Credit Opportunity Act Requirements ..... 176
8.7.5 Arranging Credit ..... 176
8.7.6 Suitability ..... 176
8.7.7 Margin Requirements ..... 176
8.7.8 New Issues ..... 176
8.7.9 Credit On Restricted Securities ..... 177
8.7.10 Fiduciary Accounts ..... 177
8.8 Third Party Accounts ..... 177
8.9 Discretionary Accounts - Limited to Advisory Accounts ..... 177
8.9.1 General Requirements ..... 177
8.9.2 Approval ..... 178
8.9.3 Limited Authority Only Permitted ..... 178
8.9.4 Indication Of Discretion Exercised Or Not Exercised ..... 178
8.9.5 Trusts And Other Fiduciary Accounts ..... 179
8.9.6 Principal Transactions Not Permitted ..... 179
8.9.7 Distributions Of The Firm's Or An Affiliate's Securities ..... 179
8.9.8 Approval Of Orders And Review Of Transactions ..... 179
8.9.9 Annual Confirmation ..... 179
8.9.10 Cancellation Of Discretionary Authority ..... 180
8.10 Accounts For Minors ..... 180
8.11 Coverdell Education Savings Accounts ..... 180

8.12 Accounts For Senior Investors ..... 181
8.12.1 Back-Up Contact Information on New Account Forms ..... 182
8.12.2 General Requirements ..... 183
8.12.3 Opening Accounts For Senior Investors ..... 183
8.12.4 Recommendations To Senior Investors ..... 183
8.12.5 Diminished Mental Capacity ..... 183
8.12.6 Potential Indication Of Elder Financial Exploitation ..... 184
8.12.7 Escalating Issues Involving Senior Investors ..... 184
8.12.8 Financial Exploitation - Temporary Holds ..... 185
8.12.9 Reverse Mortgages ..... 186
8.12.10 Luncheon Programs And Seminars ..... 187
8.12.11 Advertising Targeting Seniors ..... 188
8.13 Incompetent Persons ..... 188
8.14 Power of Attorney ..... 188
8.15 Trust Accounts ..... 188
8.16 Wealth Events ..... 188
8.17 Pension And Retirement Accounts ..... 189
8.17.1 Employee Retirement Income Security Act (ERISA) ..... 189
8.17.2 General Guidelines When Offering Retirement Plans ..... 193
8.17.3 Individual Retirement Accounts (IRAs) ..... 193
8.17.4 Employer-Sponsored Plans ..... 195
8.17.5 Pension Income Stream Products ..... 197
8.18 Foreign Accounts ..... 198
8.19 Payments to Unregistered Persons ..... 198
8.19.1 Definition Of Eligibility ..... 199
8.19.2 Referrals ..... 200
8.19.3 Referrals To Others ..... 200
8.19.4 Referrals To BOKFS ..... 200
8.20 Fee-Based Accounts (P46) ..... 201
8.21 Death Of A Customer ..... 202
8.22 Active Accounts ..... 202
8.23 Concentrations ..... 203
8.23.1 Account Concentration Reviews ..... 204
8.23.2 Principal Transactions ..... 204
9 IMPARTIAL CONDUCT STANDARDS ..... 205
Exhibit B - Fixed Annuities ..... 213
Exhibit C - Annuity Due Diligence ..... 214
Exhibit D - Alternative Investments Due Diligence ..... 216
Exhibit E - New Account Approval ..... 216
Exhibit F - Existing Account Approval ..... 217
Exhibit G - Transferring in Non-Approved Products ..... 218
10 ORDERS ..... 220
10.1 Sales Practice Monitoring ..... 220
10.2 Acceptance And Prompt Entry Of Orders ..... 220
10.3 Orders Requiring Approval ..... 220
10.4 Solicited And Unsolicited Orders ..... 221
10.4.1 Definition Of Solicited Order ..... 221
10.4.2 Solicited Orders Should Be Indicated ..... 221
10.4.3 Prohibited Solicitations ..... 222
10.5 Suitability Of Recommendations ..... 222
10.5.1 General Requirements ..... 223
10.5.2 Non-Conventional Investments (NCIs) ..... 226
10.5.3 Institutional Accounts ..... 227
10.5.4 Recommendations Of OTC Equity Securities ..... 228
10.5.5 Investing Liquefied home equity ..... 230
10.5.6 Proprietary Products ..... 231
10.6 Prohibition Against Trading Ahead of Customer Orders ..... 231
10.6.1 Exceptions ..... 232

10.6.2 Front Running of Block Transactions ..... 233
10.6.3 Best Execution ..... 233
10.7 Orders In Volatile Market Conditions ..... 235
10.7.1 Volatile Stocks ..... 236
10.7.2 Stop Orders ..... 236
10.8 Illiquid Investments ..... 236
10.9 Account Designation And Cancels/Rebills ..... 237
10.9.1 Allocation Of Investment Adviser Orders ..... 238
10.10 Time And Price Discretion ..... 238
10.11 Trading Halts ..... 238
10.12 Trade Reporting By Third Parties ..... 239
10.13 Trading Systems And Electronic Transmission Of Orders ..... 239
10.14 Order Records ..... 240
10.14.1 Large Trader Definition ..... 240
10.14.2 Identifying Activity Level ..... 241
10.14.3 Large Trader Identification Number (LTID) ..... 241
10.14.4 Filings ..... 241
10.14.5 Large Trader Monitoring ..... 242
10.14.6 Large Trader Reporting and Record Maintenance ..... 242
10.15 Conflicts Of Interest ..... 242
10.15.1 Adverse Interest ..... 242
10.15.2 Precedence Of Customer Orders ..... 243
10.15.3 Disclosure Of Control Relationship ..... 243
10.16 Review Of Customer Transactions ..... 243
10.16.1 Review Of Daily Transactions ..... 243
10.16.2 Unauthorized Transactions ..... 244
10.16.3 Review Of Account Activity By Designated Supervisors ..... 244
10.16.4 Review Of Account Activity By Compliance ..... 245
10.17 Trade Errors ..... 245
10.18 Sellouts ..... 246
10.19 Time Clock Synchronization ..... 246
10.19.1 Certification ..... 247
10.19.2 Definitions ..... 247
10.19.3 Independent Contractors ..... 248
10.20 Issuer Repurchases Of Common Stock ..... 248
10.21 Blue Sky Of Securities ..... 248
10.21.1 General Requirements ..... 249
10.22 Exchange-Listed Index Warrants, Currency Warrants And Currency Index Warrants ..... 249
10.23 Auction Rate Securities ..... 250
10.23.1 Allocations ..... 250
10.24 Commodity Futures-Linked Securities ..... 251
10.25 Certificates Of Deposit ..... 252
10.25.1 General Sales Guidelines ..... 252
10.25.2 Special Characteristics Of CDs ..... 252
10.25.3 Disclosures When Selling Brokered CDs ..... 253
10.25.4 Market Index/Linked CDs ..... 253
10.25.5 Account Statements ..... 254
10.26 Cash Alternatives ..... 254
10.27 Real Estate Investment Trusts (REITs) ..... 255
10.27.1 General Sales Guidelines ..... 255
10.27.2 Guidelines For New Issue REITs ..... 256
10.27.3 Private And Non-traded REITs ..... 257
10.28 Callable Common Stock ..... 258
10.29 Promissory Notes ..... 258
10.30 Securities-Backed Lines Of Credit (SBLOCs) ..... 259
10.31 Direct Participation Programs (DPPs) ..... 259
10.31.1 Direct Participation Program Required Forms ..... 260
10.32 Section 1031 Tenants-In-Common Exchanges ..... 260

10.33 Complex Products ... 260
10.33.1 Approval Of The Product ... 261
10.33.2 Knowledge Of The Product ... 261
10.33.3 Suitability Of Recommendations ... 261
10.33.4 Other Requirements ... 262
10.33.5 Examples Of Complex Products ... 262
10.34 Structured Products ... 263
10.34.1 Due Diligence ... 264
10.34.2 Public Communications ... 265
10.34.3 Eligible Accounts ... 265
10.34.4 Suitability ... 265
10.34.5 Risk Disclosure ... 265
10.34.6 Fees And Costs ... 266
10.34.7 Credit Ratings ... 266
10.34.8 Tax Implications ... 266
10.34.9 Post-Trade Information ... 266
10.34.10 Features And Risks Of Structured Products ... 266
10.34.11 Principal-Protected Notes (PPNs) ... 267
10.34.12 Reverse Convertibles ... 267
10.34.13 Reverse Inquiry Transactions ... 268
10.34.14 Exchange Traded Notes (ETNs) ... 269
10.34.15 Training ... 269
10.35 Short Sales ... 270
10.35.1 Key Defined Terms ... 271
10.35.2 Short Sale Price Test ... 271
10.35.3 Marking Orders ... 272
10.35.4 Locate And Delivery Requirements ... 272
10.35.5 Close-Out Requirements For Fail To Deliver ... 273
10.35.6 Short Sales Of Securities Subject To A Public Offering ... 274
10.36 Sale Of Control Or Restricted Stock ... 274
10.36.1 Introduction ... 275
10.36.2 Definitions ... 275
10.36.3 Summary Chart Of Rule 144 And 145 Requirements ... 276
10.36.4 New Account Information Regarding Affiliates ... 277
10.36.5 Lending And Option Writing On Control And Restricted Securities ... 277
10.37 Unregistered Resales Of Restricted Securities ... 277
10.37.1 Suspicious Activities ... 279
10.38 Reporting Of Insider Transactions ... 279
10.39 Penny Stocks ... 280
10.39.1 Penny Stock Required Forms ... 281
10.39.2 General Requirements ... 281
10.39.3 Penny Stock Defined ... 281
10.39.4 Established Customer Defined ... 282
10.39.5 Suitability Information ... 282
10.39.6 Risk Disclosure Document ... 282
10.39.7 Two-Business-Day Waiting Period ... 282
10.39.8 Disclosure Of Quotations And Other Information ... 283
10.39.9 Disclosure Of Compensation ... 283
10.40 Options Trading ... 283
10.40.1 NetXClient and Option Orders ... 283
10.40.2 Option Writing ... 283
10.40.3 Equity Requirements ... 284
10.40.4 Exercising Option Positions ... 284
10.40.5 Registered Options and Securities Futures Principal (ROP) ... 284
10.41 Sales To Military Personnel On Military Installations ... 285
10.42 Tax Switching Transactions ... 285
10.43 Payment For Order Flow ... 286
10.43.1 Payment For Order Flow Defined ... 286

10.43.2 Disclosures ........ 287
10.43.3 Best Execution Of Orders ........ 287
10.44 Extended Hours Trading ........ 287
10.45 Order Audit Trail System (OATS) ........ 287
10.45.1 Who And What Orders Are Subject To OATS Requirements ........ 288
10.45.2 Registering With OATS ........ 289
10.45.3 List Of Contact Persons ........ 289
10.45.4 Capture Of Required OATS Information ........ 289
10.45.5 Reporting Of OATS Information ........ 290
10.45.6 Tick Size Pilot Program ........ 291
10.45.7 Clock Synchronization ........ 293
10.45.8 OATS Contact Information ........ 293
10.46 Order Routing And Reporting ........ 293
10.46.1 Disclosure Of Order Routing ........ 293
10.46.2 Orders Covered By The Rule ........ 294
10.46.3 Information Included In The Reports ........ 294
10.46.4 Customer Requests For Order Routing Information ........ 294
10.47 Distribution, Consolidation, And Display Of Information ........ 294
10.48 Sales Contests ........ 295
10.48.1 Introduction ........ 295
10.48.2 General Guidelines ........ 295
10.49 Cash And Non-Cash Compensation Policy ........ 295
10.49.1 Definitions ........ 295
10.49.2 Approval ........ 296
10.49.3 Types Of Permissible Non-Cash Compensation ........ 296
10.50 Prohibited Transactions And Practices ........ 296
10.50.1 Introduction ........ 297
10.50.2 Unauthorized Trading ........ 297
10.50.3 Market Manipulation ........ 298
10.50.4 Prearranged Trading ........ 298
10.50.5 Adjusted Trading ........ 298
10.50.6 Overtrading Or Undertrading ........ 298
10.50.7 Wash Transactions ........ 298
10.50.8 Cross Transactions ........ 298
10.50.9 Orders At The Opening Or Close ........ 299
10.50.10 Parking Securities ........ 299
10.50.11 Churning ........ 299
10.50.12 Trade Shredding ........ 299
10.51 Market Access ........ 299
10.51.1 Definitions ........ 300
10.51.2 Risk Management Controls ........ 301
10.51.3 Sponsored Access ........ 302
11 SUPERVISORY SYSTEM, PROCEDURES, AND CONTROLS ........ 305
11.1 Introduction ........ 305
11.2 Responsibility ........ 305
11.3 Controls ........ 306
11.3.1 Verification And Testing ........ 306
11.3.2 Risk Management ........ 306
11.3.3 Outside Auditors ........ 306
11.4 Written Compliance And Supervisory Procedures ........ 307
11.5 Chief Compliance Officer (CCO) ........ 307
11.6 Review And Testing Of Procedures And Controls ........ 307
11.6.1 Conducting Risk-Based Reviews And Testing ........ 308
11.6.2 Findings And Follow-Up ........ 308
11.7 Internal Inspections ........ 308
11.8 Internal Investigations Of Transactions ........ 309
11.8.1 Internal Investigation Reports ........ 310
11.9 Escalation Of Issues ........ 311

11.10 Annual Report And Certification Of Compliance And Supervisory Processes ..... 311
11.10.1 Meetings Between CEO And CCO ..... 311
11.10.2 Annual Report To CEO ..... 311
11.11 Supervision Of Supervisors ..... 312
11.11.1 Supervision Of Customer Account Activity ..... 313
11.12 Cross Reference To Other Supervisory Control Subjects ..... 314
11.12.1 Conflicts Of Interest ..... 315
12 OFFICES ..... 316
12.1 Office Designations ..... 316
12.1.1 Branch Office ..... 316
12.1.2 Non-Branch Locations ..... 316
12.1.3 Offices Of Supervisory Jurisdiction (OSJ) ..... 318
12.1.4 Branch Offices Assigned To OSJs ..... 318
12.2 Approval Of Persons To Operate In Non-Branch Locations ..... 318
12.2.1 Primary Residence Offices ..... 319
12.3 Supervision Of Non-Branch Locations ..... 319
12.4 Supervision Of Producing Managers ..... 320
12.5 Office Records ..... 320
12.5.1 Retention Of Records at the Office ..... 320
12.5.2 Forwarding Records To Home Office ..... 321
12.5.3 Access To Records ..... 321
12.5.4 Regulatory Requests For Records ..... 322
12.6 Changes In Branch Offices ..... 322
12.7 Closing Offices ..... 322
12.8 Use Of Office Space By Others ..... 322
Cybersecurity ..... 323
12.9 Office Inspections ..... 324
12.9.1 Risk-Based Inspection Cycle ..... 325
12.9.2 Conducting Inspections ..... 325
12.9.3 Reports ..... 326
12.10 Sales Supervisors' Checklist ..... 326
12.11 Display Of Certificates ..... 327
12.12 Availability Of Rules ..... 327
12.13 Networking Arrangements With Other Financial Institutions ..... 327
12.13.1 Definitions ..... 328
12.13.2 Networking Agreement ..... 329
12.13.3 Setting ..... 329
12.13.4 Customer Disclosure ..... 329
12.13.5 Communications With The Public ..... 329
12.13.6 Compensation To Financial Institution Personnel ..... 330
12.13.7 Financial Institution Regulators ..... 330
12.13.8 Notifications Of Terminations ..... 330
13 TRADING LIMITATIONS ..... 331
13.1 Fixed Income Securities Activities ..... 331
13.2 Authorized Individuals and Dealers ..... 331
13.3 Authorized Securities ..... 332
13.4 Trading Limitations ..... 332
13.4.1 Position Limits (Market and Credit) ..... 333
13.4.2 Position LImits (Duration) ..... 333
13.4.3 Issue Limits (Liquidity) ..... 334
13.5 Controls for Broker-Dealers with Market Access, Rule 15c3-5 ..... 335
13.5.1 Market Access Procedures ..... 336
13.5.2 Market Access Limit Procedures ..... 336
13.6 Financial Futures and Listed Options ..... 337
14 CORPORATE FIXED INCOME SALES AND TRADING ..... 339
14.1 Fair Prices ..... 339
14.2 Best Execution ..... 339
14.2.1 Extreme Market Conditions ..... 340

14.2.2 FINRA Guidelines ... 340
14.3 Mark-Up Policy ... 341
14.3.1 Prevailing Market Price ... 342
14.3.2 "Similar" Securities ... 344
14.4 Crossing OTC Bonds ... 344
14.5 Corporate Fixed Income Errors ... 345
14.6 Cancels And Rebills ... 345
14.7 Extended Settlements; Delayed Deliveries ... 345
14.8 Inventory Positions ... 345
14.8.1 Pricing Positions ... 346
14.9 Market Access ... 346
14.9.1 Definitions ... 347
14.9.2 Risk Management Controls ... 348
14.10 Traders' Personal Accounts ... 349
14.11 TRACE ... 350
14.11.1 TRACE Reporting Done by Third Party ... 350
14.11.2 Daily TRACE Procedures ... 351
14.11.3 Monthly TRACE Procedures ... 352
14.11.4 General Constraints ... 353
14.11.5 TRACE Eligible Securities And Reportable Transactions ... 354
14.11.6 Transaction Reporting ... 354
14.11.7 System Outages ... 355
14.11.8 Time Clock Synchronization ... 356
14.12 Systems Issues ... 357
14.13 Prohibited Activities ... 358
14.13.1 Inside Information ... 358
14.13.2 Financial Arrangements ... 358
14.13.3 Market Manipulation ... 358
14.13.4 Front Running ... 359
14.13.5 Parking Securities ... 359
14.13.6 Secret Profits ... 359
14.13.7 Adjusted Trading ... 359
14.13.8 Wash Sales ... 359
14.13.9 Daisy Chain/Round Robin Transactions ... 359
14.14 Review Of Transactions ... 360
14.15 High Yield Debt Securities ... 360
14.15.1 Suitability ... 360
14.15.2 Disclosures ... 361
14.15.3 Catastrophe Bonds ... 361
14.15.4 Underwriting And Investment Banking ... 361
14.15.5 Creditors' Committee ... 361
15 CORPORATE SECURITIES UNDERWRITING ... 362
15.1 Deal File ... 362
15.2 Managing Underwriter ... 362
15.2.1 Letter Of Intent ... 362
15.2.2 Due Diligence ... 362
15.2.3 Net Capital Considerations ... 363
15.2.4 Investment Committee Approval ... 364
15.2.5 Forming The Underwriting Group ... 364
15.2.6 Agreement Among Underwriters ... 364
15.2.7 Underwriting Compensation ... 365
15.2.8 Lock-Up Agreements ... 365
15.2.9 Reports To Issuer Of Indications Of Interest And Final Allocation ... 366
15.2.10 Greenshoe ... 366
15.2.11 Preliminary And Final Prospectuses ... 366
15.2.12 Regulatory Filings And Notifications ... 366
15.2.13 Blue Sky Considerations ... 369
15.2.14 Road Shows ... 369

15.2.15 Pricing The Underwriting ..... 370
15.2.16 Aftermarket Activities ..... 370
15.3 Syndicate Member Procedures ..... 371
15.3.1 Returned Shares Of An Issue Trading At A Premium ..... 372
15.3.2 Tombstone Ads ..... 372
15.4 Selling Group Member Procedures ..... 372
15.4.1 Returning Unsold Allotment ..... 373
15.4.2 Tombstone Ads ..... 373
15.5 Special Purpose Acquisition Companies (SPACs) ..... 373
15.5.1 Suitability ..... 375
15.5.2 Risk Disclosures ..... 375
15.5.3 Secondary Market ..... 375
15.6 Communications Around The Time Of Registered Offerings ..... 375
15.6.1 Categories Of Issuers ..... 375
15.6.2 Other Definitions ..... 376
15.6.3 Permitted Offering Activity And Communications ..... 376
15.6.4 Social Media ..... 377
15.6.5 Free Writing Prospectus ..... 377
15.7 New Issue Allocations And Distributions ..... 377
15.7.1 Fixed Priced Offerings ..... 378
15.7.2 Indications Of Interest ..... 378
15.7.3 Conditional Offers ..... 378
15.7.4 Prospectuses And Confirmations To Purchasers ..... 378
15.7.5 Restrictions On Purchase And Sale Of IPOs Of Equity Securities ..... 380
15.7.6 Disclosure Of Interest In Distribution ..... 385
15.7.7 State Blue Sky Requirements ..... 385
15.7.8 Cancellation Policy ..... 386
15.7.9 Designated Orders ..... 386
15.7.10 Flipping ..... 386
15.7.11 Quid Pro Quo Allocations ..... 386
15.7.12 Spinning ..... 387
15.8 Trading Restrictions While Participating In A Distribution ..... 387
15.8.1 Distribution Participant Restrictions ..... 388
15.8.2 Issuer And Selling Security Holder Restrictions ..... 388
15.8.3 Short Sales ..... 388
15.8.4 Market Order Prohibition ..... 389
15.8.5 Prohibited Conduct ..... 389
15.9 Market Making Activities ..... 390
15.10 At-The-Market (ATM) Offerings ..... 391
15.10.1 Placement Agent Responsibilities ..... 391
15.10.2 Restrictions on Purchasers of New Issues ..... 391
15.10.3 Settlement ..... 391
15.10.4 Program Maintenance ..... 392
15.10.5 Stabilizing Activities ..... 392
15.11 Structured Finance Product Rating Requests ..... 392
15.12 Crowdfunding ..... 392
15.12.1 Introduction ..... 393
15.12.2 Funding Portal Registration ..... 393
15.12.3 Offers To Investors ..... 394
15.13 Intrastate Offerings ..... 394
15.13.1 Introduction ..... 394
15.13.2 Qualifying The Issuer ..... 395
15.13.3 Purchasers ..... 395
15.13.4 FINRA Rule Obligations ..... 395
15.14 Best Efforts Underwritings ..... 395
15.14.1 Introduction ..... 396
15.14.2 Handling Investor Funds ..... 396
15.14.3 Customer Funds - Escrow Account ..... 396

15.14.4 Purchasers ..... 397
15.15 Asset-Backed Securities (ABS) ..... 397
15.16 Prohibited Activities ..... 397
15.16.1 Misrepresentation Of Registration With Regulators ..... 397
15.16.2 Anti-Competitive Activities ..... 398
15.16.3 Tying ..... 398
15.16.4 Laddering ..... 398
15.16.5 After-Market Sales ..... 398
15.16.6 Misrepresenting Pricing ..... 398
16 MUTUAL FUNDS AND OTHER INVESTMENT COMPANY PRODUCTS ..... 399
16.1 Introduction ..... 399
16.2 Mutual Funds Offered By BOKFS ..... 399
16.2.1 Dealer Agreements ..... 400
16.2.2 Anti-Reciprocal Rule ..... 400
16.3 Sales Charges ..... 401
16.3.1 Breakpoints ..... 402
16.3.2 Letters Of Intent ..... 403
16.3.3 Rights Of Accumulation ..... 404
16.3.4 Reinstatement Privilege ..... 404
16.3.5 Sales Charge Reductions/Waiver Or NAV Transfer Program ..... 404
16.3.6 Deferred Sales Charges ..... 404
16.3.7 Direct Application And Wire Order Accounts ..... 404
16.3.8 Sales Charge Discounts Must Be Marked On Mutual Fund Orders ..... 405
16.4 Switching ..... 405
16.5 Market Timing Transactions ..... 405
16.6 Selling Dividends ..... 406
16.7 Misrepresenting "No-Load" Funds ..... 406
16.8 Reinvestment Of Maturing Certificates Of Deposit In Mutual Funds ..... 406
16.9 Suitability ..... 406
16.9.1 Multi-Class Mutual Funds ..... 407
16.9.2 Considerations For Newly-Hired RRs ..... 408
16.10 Late Trading And Market Timing ..... 409
16.11 Block Letter Restrictions ..... 410
16.12 Communications ..... 410
16.13 Disclosure Of Material Facts ..... 411
16.14 Disclosure Of Fees, Expenses And Performance ..... 411
16.15 Prospectuses ..... 412
16.16 Retail Communications ..... 412
16.17 Sales Material Provided By Third Parties ..... 413
16.18 Dealer-Use-Only Material ..... 414
16.19 Seminars And Other Public Presentations ..... 414
16.20 Sales Contests And Incentive Programs ..... 415
16.21 Prompt Transmission Of Applications And Payments ..... 415
16.22 Redemption Of Outside Funds ..... 416
16.23 Closed-End Funds ..... 416
16.23.1 Business Development Companies (BDCs) ..... 417
16.24 Leveraged Loan Products ..... 418
16.25 Unit Investment Trusts (UITs) ..... 418
16.25.1 Suitability ..... 419
16.25.2 Sales Charges ..... 419
16.25.3 Primary Offerings ..... 420
16.25.4 Secondary Market Transactions ..... 420
16.25.5 Sales Charges And Discounts ..... 420
16.26 Funds Of Hedge Funds ..... 421
16.26.1 Characteristics And Risks Of Hedge Funds ..... 421
16.27 Exchange-Traded Funds (ETFs) ..... 421
16.27.1 Customer Disclosures For Pre- And Post-Market Sessions ..... 423
16.28 Floating-Rate Bank Loan Funds ..... 423

16.29 Alternative Mutual Funds ... 424
17 MUNICIPAL SECURITIES ... 425
16 MUNICIPAL SECURITIES ... 425
17.1 Administration and Operations ... 425
17.1.1 Fees and Assessments ... 425
17.1.2 Registration Requirements ... 425
17.1.3 Municipal Securities Representatives (Series 52) ... 425
17.1.4 Limited Representatives ... 425
17.1.5 Apprentices ... 426
17.1.6 Municipal Securities Sales Supervisors ... 426
17.1.7 Municipal Securities Principals ... 426
17.1.8 General Securities Principals (Series 24) ... 426
17.1.9 Non-Registered Employees ... 426
17.1.10 Continuing Education (CE) ... 427
17.1.11 Offices ... 427
17.1.12 Notifications to MSRB ... 428
17.1.13 Anti-Money Laundering Program ... 428
17.1.14 Fidelity Bonding Requirements ... 428
17.1.15 Books and Records ... 428
17.1.16 Confirmations ... 428
17.1.17 Control Relationships ... 429
17.1.18 Disclosure of Interest in Distribution ... 429
17.1.19 Reciprocal Dealings with Investment Companies ... 430
17.1.20 Use of Ownership Information ... 430
17.1.21 Customer Account Transfers ... 430
17.1.22 Transactions for Employees of Other Municipal Dealers ... 430
17.1.23 Written Supervisory Procedures ... 430
17.1.24 Contact Information ... 431
17.1.25 Compliance with Regulatory Requests ... 431
17.2 Bank Dealers ... 431
17.2.1 Separately Identifiable Department or Division: Bank Dealers ... 431
17.2.2 Referral of Inquiries or Requests: Bank Dealers ... 431
17.2.3 Supervision: Bank Dealers ... 431
17.3 Sales of Municipal Securities ... 431
17.3.1 Conduct of Municipal Securities Business ... 432
17.3.2 Suitability ... 432
17.3.3 Minimum Denominations ... 435
17.3.4 Material Events Disclosures (Time of Trade) ... 437
17.3.5 Customer Accounts ... 439
17.3.6 Complaints about Municipal Products or Public Finance ... 440
17.3.7 MSRB Rules ... 440
17.3.8 529 College Savings Plans (Municipal Fund Securities or 529 Plans) ... 441
17.4 Investor And Municipal Advisory Client Education And Protection ... 445
17.5 Sponsoring Meetings and Conferences Involving Issuers ... 445
17.6 Communications with the Public for Municipal Bonds ... 446
17.6.1 Performance Data ... 446
17.6.2 Telemarketing ... 446
17.6.3 Advertising (Municipal Bonds) ... 446
17.7 Best Execution ... 447
17.7.1 Determining Best Available Price ... 449
17.7.2 Limited Price Availability ... 449
17.7.3 Orders for SMMPs ... 450
17.7.4 Extreme Market Conditions ... 450
17.7.5 Documenting Order Pricing ... 450
17.7.6 Procedures and Controls ... 450
17.8 Supervisory System, Procedures and Controls ... 451
17.9 Municipal Underwritings ... 451
17.9.1 Negotiated Underwritings and Private Placements ... 452

17.9.2 Competitive Underwritings and Private Placements ........ 454
17.9.3 Due Diligence Approval: Negotiated Underwritings ........ 457
17.9.4 Commitment Approval: Competitive Underwritings........ 457
17.9.5 Duties of Underwriters to Issuers: Negotiated Deals ........ 458
17.9.6 Underwriting Due Diligence Committee ........ 459
17.9.7 Underwriting Policy & Disclosure Committee ........ 460
17.9.8 Selection and Approval of Underwriter's Counsel ........ 460
17.10 Sales to Investors ........ 463
17.11 G-17 Disclosures ........ 463
17.11.1 Timing of Disclosures ........ 464
17.12 Disclosures (Underwriting)........ 465
17.13 Complex Financings ........ 466
17.14 Timing and Manner of Disclosures Regarding Underwriter's Role; Underwriter Compensation; And Other Conflicts Disclosures........ 467
17.14.1 Timing and Manner of Disclosures Regarding Structure of Issue........ 467
17.14.2 Acknowledgment of Disclosures........ 467
17.15 Issuer Disclosure Documents ........ 468
17.16 Excessive Compensation (Underwriting)........ 468
17.17 Fair Pricing (Underwriting) ........ 468
17.18 Changes in Bond Authorizing Documents........ 468
17.19 Conflicts Of Interest ........ 469
17.19.1 Payment To or From Third Parties ........ 469
17.19.2 Profit-Sharing With Investors........ 469
17.19.3 Credit Default Swaps........ 469
17.20 Retail Order Periods ........ 469
17.21 Dealer Payments to Issuer Personnel ........ 470
17.22 Issuer Continuing Disclosures ........ 470
17.23 CUSIP Numbers ........ 470
17.24 Underwriter Registration ........ 471
17.25 Limited Use of NRO Designation........ 471
17.26 Expenses in Connection with New Issues........ 471
17.27 New Issue Sales during the Underwriting Period ........ 471
17.27.1 Retail Order Periods........ 472
17.28 Contingency Offerings ........ 472
17.29 Municipal Underwriting Closing Procedure........ 472
17.30 Private Placements........ 473
17.31 Rule 144A Securities ........ 473
17.32 Recordkeeping (Underwritings) ........ 474
17.33 Official Statements........ 474
17.33.1 Providing Official Statements to Dealers, Purchasers, and Others........ 474
17.34 Municipal Underwriter Submissions to EMMA........ 475
17.35 Filing Official Statements and Advance Refunding Documents with the MSRB ........ 477
17.36 Short-term Obligation Rate Transparency (SHORT) System........ 478
17.37 Syndicate Practices ........ 479
17.38 Direct Purchases and Bank Loans ........ 481
17.39 Financial Advisor Activities ........ 482
17.39.1 Financial Advisory Relationship Defined........ 482
17.39.2 Professional Qualifications – Financial Advisors........ 483
17.39.3 Written Agreements – Financial Advisors ........ 483
17.39.4 Prohibition against Underwriting or Placement Activities ........ 483
17.39.5 Official Statements – Financial Advisors........ 483
17.39.6 Advanced Refunded Securities ........ 483
17.39.7 Timely Dissemination of Info of Advance Refunding........ 483
17.39.8 Confidentiality of Non-Public Information of Advance Refunding........ 484
17.39.9 Recordkeeping – Financial Advisors ........ 484
17.40 Solicitation of Municipal Securities Business........ 484
17.41 Trading and Handling Customer Orders........ 485
17.42 Quotations........ 485

17.43 Fair Prices ... 486
17.44 Official Statements ... 486
17.45 Records of Orders ... 486
17.46 Mark-Ups and Mark-Downs ... 486
17.46.1 Mark-Up Guidelines ... 487
17.47 MSRB Principal Transactions ... 487
17.48 As Agent Trades ... 487
17.48.1 Commissions on Agency Transactions ... 488
17.49 Reports of Transactions ... 488
17.49.1 Fictitious Reports ... 489
17.50 Step Outs ... 489
17.51 System Outages ... 489
17.52 Inventory Positions ... 490
17.52.1 Pricing Positions ... 490
17.53 Errors ... 491
17.53.1 Cancels and Re-bills ... 491
17.54 Traders' Personal Accounts ... 491
17.55 Prohibited Activities ... 491
17.55.1 Inside Information ... 491
17.55.2 Fraud or Misrepresentation ... 491
17.55.3 Improper Use of Assets ... 492
17.55.4 Financial Arrangements ... 492
17.55.5 Market Manipulation ... 492
17.55.6 Parking Securities ... 492
17.55.7 Secret Profits ... 492
17.55.8 Adjusted Trading ... 492
17.56 Identifying and Resolving Firm Short Positions ... 492
17.57 Identifying and Resolving Fails-to-Receive ... 493
17.58 Gifts ... 493
17.58.1 Introduction ... 493
17.58.2 Exceptions ... 493
17.58.3 Offerings ... 494
17.59 Sales Contests ... 494
17.60 Political Contributions ... 494
17.60.1 Introduction ... 495
17.60.2 Summary of Key Requirements ... 495
17.60.3 Definitions ... 496
17.60.4 Types of Contributions Included ... 497
17.60.5 Contributions Subject To Political Contribution Limitations and Reporting ... 498
17.60.6 Excluded Contributions ... 498
17.60.7 Look-Back and Look-Forward Provisions ... 498
17.60.8 Automatic Exemptions ... 498
17.60.9 Political Action Committees (PACs) ... 499
17.60.10 Approval ... 500
17.60.11 Prohibited Solicitations and Activities ... 500
17.60.12 Prohibited Indirect Payments ... 500
17.61 G-37 Records To Be Maintained By the Firm ... 500
17.62 Quarterly Report ... 501
18 GOVERNMENT SECURITIES ... 502
18.1 Government Securities Act Amendments Of 1993 ... 502
18.1.1 Sections 102, 105, and 106 - Rulemaking Authority ... 502
18.1.2 Section 103 - Transaction Records ... 502
18.1.3 Section 104 - Large Position Reporting ... 502
18.1.4 Section 107 - Market Information ... 502
18.2 Sales ... 502
18.3 Mark-Up Policy ... 503
18.3.1 Prevailing Market Price ... 503
18.3.2 "Similar" Securities ... 505

18.4 Government Sponsored Enterprise (GSE) Distributions ..... 506
18.4.1 Definitions ..... 507
18.4.2 Master Agreements ..... 507
18.4.3 Delivery Of Offering Materials ..... 507
18.4.4 Order Records ..... 508
18.4.5 No Assurance Of Execution ..... 508
18.4.6 Distribution Report ..... 508
18.4.7 Single Class TBAs ..... 508
18.5 Trading ..... 508
18.5.1 Fair Prices ..... 508
18.5.2 Mark-Ups And Mark-Downs ..... 508
18.5.3 Commissions On Agency Transactions ..... 509
18.5.4 Inventory Positions ..... 509
18.5.5 Traders' Personal Accounts ..... 509
18.5.6 Review Of Transactions ..... 509
18.6 Transaction Records ..... 509
18.7 Large Position Reporting ..... 509
18.8 Prohibited Activities ..... 509
18.8.1 Inside Information ..... 509
18.8.2 Financial Arrangements ..... 510
18.8.3 Market Manipulation ..... 510
18.8.4 Parking Securities ..... 510
18.8.5 Secret Profits ..... 510
18.8.6 Adjusted Trading ..... 510
19 COLLATERALIZED MORTGAGE OBLIGATIONS (CMOs) ..... 511
19.1 Introduction ..... 511
19.2 Characteristics And Risks ..... 511
19.2.1 Interest Only Securities (IOs) ..... 511
19.2.2 Principal Only Securities (POs) ..... 511
19.2.3 Floating Rate Tranches (Floaters) and Inverse Floaters ..... 512
19.2.4 Accrual Bonds Or Z-Tranches ..... 512
19.3 Suitability ..... 512
19.4 Ginnie Mae REMICs ..... 513
19.5 Required Education Material ..... 513
19.6 Inverse Floaters, IOs, POs Disclosure ..... 513
19.7 Communications With The Public ..... 513
19.7.1 Bids ..... 513
19.7.2 Disclosures ..... 513
19.7.3 Radio/Television Advertisements ..... 514
19.7.4 Bloomberg And Other Financial Services ..... 514
19.8 Trading ..... 514
19.8.1 Fair Prices ..... 514
19.8.2 Mark-Up Policy ..... 514
19.8.3 Inventory Positions ..... 517
19.8.4 CMO Errors ..... 517
19.8.5 Cancels And Rebills ..... 517
19.8.6 Traders' Personal Accounts ..... 518
19.9 Prohibited Activities ..... 518
19.9.1 Inside Information ..... 518
19.9.2 Financial Arrangements ..... 518
19.9.3 Market Manipulation ..... 518
19.9.4 Parking Securities ..... 518
19.9.5 Secret Profits ..... 518
19.9.6 Adjusted Trading ..... 518
19.10 Review Of Transactions ..... 519
19.11 Confirmations ..... 519
20 BANK AFFILIATED BROKER DEALERS ..... 520
20.1 Introduction ..... 520

20.2 FRB Operating Standards Responsibility ... 520
20.3 Limitations On Business ... 520
20.3.1 Areas Of Permitted Business ... 520
20.3.2 Approval Of New Products And Services ... 521
20.4 Directors' And Executive Officers' Transactions And Fees ... 521
20.4.1 Definitions ... 521
20.4.2 List Of Directors And Officers ... 521
20.4.3 Prohibition Against Waiving Fees ... 521
20.4.4 Execution Prices Of Transactions ... 521
20.4.5 Records Of Transactions ... 521
20.5 Prohibited Activities ... 522
20.5.1 Falsification Of Records ... 522
20.5.2 Tying Of Products And Services ... 522
20.6 Trades Between BOKFS and BOKF, NA ... 522
20.6.1 Verification of Trades Between BOKFS and BOKF, NA ... 522
20.7 Service Agreements ... 523
20.7.1 Marketing, Affiliate and Networking Relationships ... 523
20.8 Suspicious Activity Reports ... 523
20.9 Communications With The Public ... 524
20.9.1 Disclosure Requirements ... 524
20.9.2 Disclosure Statement ... 524
20.9.3 New Account Disclosures And Customer Acknowledgment ... 524
20.9.4 Retail Communications ... 525
20.9.5 Oral Disclosures ... 525
20.9.6 Confirmations And Statements ... 525
20.9.7 Use Of Bank And Financial Institution Logo And Names ... 526
20.10 Cross-Selling Programs ... 526
20.11 Insurance Coverage ... 526
20.12 Branch Office Reviews ... 526
20.13 Interagency Statement On Retail Sales On Bank Premises ... 527
20.13.1 Disclosures And Advertising ... 527
20.13.2 Setting And Circumstances ... 527
20.13.3 Qualifications And Training ... 527
20.13.4 Suitability And Sales Practices ... 527
20.13.5 Compensation ... 527
20.14 Proprietary Trading Prohibitions/Restrictions And Interests In/Relationships With Hedge Funds and Private Equity Funds ("Volcker Rule") ... 528
20.15 Volcker Rule ... 529
20.16 FRB Order and Revenue Test ... 529
21 INVESTMENT ADVISER ACTIVITIES ... 531
21.1 DVP/RVP Accounts ... 531
21.2 Investment Adviser Defined ... 531
21.3 Investment Adviser Activities Must Be Authorized ... 531
21.4 Registration Requirements ... 532
21.4.1 Introduction ... 532
21.4.2 Fee-Sharing With Investment Advisers ... 532
21.4.3 Discretionary Accounts ... 532
21.5 Recommending Outside Investment Advisers ... 532
21.6 Solicitors For Investment Advisers ... 532
21.7 Wrap Fee Programs ... 533
21.7.1 Introduction ... 534
21.7.2 Fees And Commissions ... 534
21.7.3 Eligible Investment Advisers ... 534
21.7.4 Fees ... 534
21.7.5 Agreements ... 535
21.7.6 Disclosure Document ... 535
21.7.7 Periodic Reports To Customers ... 535
21.7.8 Review Of Wrap Fee Accounts ... 535

21.7.9 Communications With The Public ........ 535
21.8 Adviser Compensation Arrangements ........ 535
22 INSURANCE PRODUCTS ........ 537
22.1 Approved Insurance Products ........ 537
22.2 Licenses And Appointments ........ 537
22.2.1 Requests For Licenses ........ 538
22.2.2 Non-Resident Licenses ........ 538
22.2.3 Unsolicited Insurance Transactions ........ 538
22.2.4 Additions To Existing Annuity Policies ........ 538
22.3 Sales Guidelines ........ 538
22.3.1 General Guidelines ........ 538
22.3.2 Life Insurance And Other Non-Annuity Products ........ 539
22.3.3 Annuities ........ 539
22.4 Sales To Military Personnel On Military Installations ........ 542
22.5 Purchases ........ 542
22.5.1 Life Insurance And Other Non-Annuity Products ........ 542
22.5.2 Annuities ........ 542
22.6 Replacements ........ 543
22.6.1 Definition ........ 543
22.6.2 Suitability Of Replacements ........ 544
22.6.3 Replacement Procedures ........ 544
22.6.4 1035 Exchanges ........ 544
22.6.5 Prohibited Replacement Activities ........ 545
22.7 Variable Products ........ 545
22.7.1 Training ........ 545
22.7.2 General Sales Guidelines And Suitability Requirements ........ 546
22.7.3 Requirements For Specific Products ........ 547
22.7.4 Customer Applications, Payments, And Contracts (Other Than Deferred Variable Annuities) ........ 554
22.7.5 Communications With The Public Regarding Variable Products ........ 554
22.7.6 Replacements ........ 556
22.7.7 Redemptions ........ 556
22.7.8 Annuity Buybacks ........ 556
22.7.9 Considerations For Newly-Hired RRs ........ 557
23 MUNICIPAL ADVISOR ACTIVITIES ........ 558
23.1 Administration and Operations ........ 559
23.1.1 Fees and Assessments ........ 559
23.2 Registration Requirements ........ 560
23.2.1 Municipal Advisor Representatives ........ 560
23.2.2 Municipal Advisor Principals ........ 561
23.2.3 Professional Qualification Requirements ........ 561
23.2.4 Examination Fees ........ 561
23.2.5 Non-Registered Employees ........ 561
23.3 Supervisory and Compliance Obligations of Municipal Advisors ........ 562
23.3.1 Annual Certification ........ 562
23.3.2 Supplementary Material ........ 562
23.4 Gifts, Gratuities and Non-Cash Compensation ........ 563
23.5 Disciplinary Actions by Appropriate Regulatory Agencies ........ 565
23.6 Notifications to MSRB ........ 565
23.7 Books and Records ........ 565
23.7.1 [MSRB Rule G-8 and G-9] ........ 565
23.7.2 Preservation (Retention) of Books and Records ........ 565
23.8 Written Supervisory Procedures ........ 566
23.8.1 Contact Information ........ 566
23.8.2 Compliance with Regulatory Requests ........ 566
23.9 Municipal Advisor (MA) Activities ........ 566
23.9.1 Conduct of MA Activities ........ 567
23.10 Conduct for Municipal Activities ........ 567
23.10.1 Definitions ........ 567

23.10.2 Municipal Advisory Agreement ..... 568
23.10.3 Recommendations ..... 568
23.10.4 Prohibitions ..... 568
23.10.5 Complaints ..... 568
23.11 MSRB Rules ..... 569
23.12 Prohibition Against Underwriting or Placement Activities ..... 569
23.13 Required Disclosures ..... 569
23.14 For Accounts with Proceeds of Municipal Securities or Municipal Escrow Investments ..... 570
23.15 Underwriter Letter of Intent ..... 570
23.16 Disclosures Concerning the Underwriter's Role ..... 571
24 FHLBANK POLICIES AND PROCEDURES ..... 573
24.1 General Information ..... 573
24.2 Training ..... 573
24.2.1 FHLBanks Underwriting Policies & Procedures (Bonds) ..... 574
24.2.2 FHLBank Discount Note Policies & Procedures ..... 577
25 MISCELLANEOUS TOPICS ..... 580
25.1 Abandoned Property ..... 580
25.2 Precious Metals ..... 580
26 VOLCKER RULE PROCEDURES: GOVERNMENT AGENCY SECURITIES ..... 583
Government Agency Securities ..... 583
26.1 Summary ..... 583
26.2 Volcker Rule Activity ..... 583
26.3 Managers ..... 583
26.4 Summary of Activity ..... 583
26.5 Exemption Upon Which We Rely ..... 583
26.6 Policies and Procedures ..... 583
26.6.1 Internal controls and limits monitoring ..... 584
26.6.2 Additional escalation procedures ..... 584
26.6.3 Corrective action ..... 584
26.6.4 Trader compensation ..... 584
26.6.5 Licensing/registration ..... 584
26.7 Specific requirements ..... 584
26.7.1 Instruments ..... 584
26.7.2 Limits ..... 585
26.8 Risk Management ..... 585
27 VOLCKER RULE PROCEDURES: CORPORATE & TAXABLE MUNIS ..... 587
Corporate and Taxable Munis ..... 587
Summary ..... 587
27.1 Volcker Rule Activity ..... 587
27.2 Managers ..... 587
27.3 Summary of Activity ..... 587
27.4 Exemption Upon Which We Rely ..... 587
27.5 Policies and Procedures ..... 588
27.5.1 Internal controls and limits monitoring ..... 588
27.5.2 Additional Escalation Procedures ..... 588
27.5.3 Corrective Action ..... 588
27.5.4 Trader Compensation ..... 588
27.5.5 Licensing/Registration ..... 588
27.6 Specific Requirements ..... 589
27.6.1 Instruments ..... 589
27.6.2 Limits ..... 589
27.7 Risk Management ..... 590
28 VOLCKER RULE PROCEDURES: GSE MBS ..... 591
Proprietary Trading GSE Mortgage Backed Paper ..... 591
28.1 Summary ..... 591
28.2 Volcker Rule Activity ..... 591
28.3 Managers ..... 591
28.4 Summary of Activity ..... 591

28.5 Exemption Upon Which We Rely....... 591
28.6 Policies and Procedures....... 592
28.6.1 Internal controls and limits monitoring....... 592
28.6.2 Additional escalation procedures....... 592
28.6.3 Corrective action....... 592
28.6.4 Trader compensation....... 592
28.6.5 Licensing/registration....... 592
28.7 Specific requirements....... 593
28.7.1 Instruments....... 593
28.7.2 Limits....... 593
28.8 Risk Management....... 594
29 VOLCKER RULE PROCEDURES: PREFERRED EQUITY....... 595
29.1 Summary....... 595
29.1.1 Volcker Rule Activity....... 595
29.2 Managers....... 595
29.3 Summary of Activity....... 595
29.3.1 Exemption Upon Which We Rely....... 595
29.4 Policies and Procedures....... 595
29.4.1 Internal controls and limits monitoring....... 595
29.4.2 Additional escalation procedures....... 596
29.4.3 Corrective action....... 596
29.4.4 Trader compensation....... 596
29.4.5 Licensing/registration....... 596
29.5 Specific requirements....... 596
29.5.1 Instruments....... 596
29.5.2 Limits....... 597
29.6 Risk Management....... 597
30 VOLCKER RULE PROCEDURES: TAX EXEMPT MUNICIPAL BOND TRADING....... 599
30.1 Summary....... 599
30.2 Volcker Rule Activity....... 599
30.3 Managers....... 599
30.4 Summary of Activity....... 599
30.5 Exemption Upon Which We Rely....... 599
30.6 Policies and Procedures....... 599
30.6.1 Internal controls and limits monitoring....... 599
30.6.2 Additional escalation procedures....... 600
30.6.3 Corrective action....... 600
30.6.4 Trader compensation....... 600
30.6.5 Licensing/registration....... 600
30.7 Specific requirements....... 600
30.7.1 Instruments....... 600
30.7.2 Limits....... 601
30.8 Risk Management....... 601

# INTRODUCTION

## IMPORTANT NOTES TO KEEP IN MIND

When reading this manual, it is important to remember a few key items:

- "Signatures" evidencing reviews should always include a date and you may sign with your initials or a signature - either is acceptable
  - "Signatures" may also be electronic in nature such as when reviewing the trade blotters or other electronic reports
- References to files may be either electronic or hard copy in nature - even if the procedure does not clearly state one or the other
- References to the "Bank" throughout the manual mean BOKF, NA
- References to a "Designated Supervisor" are usually clarified by the applicable position in parenthesis immediately following - such as "Designated Supervisor (Sales Supervisors)." This is to help clarify the designated supervisor for a specific topic/subject/task.
  - Please provide additional clarification - if you know the answer - for those references to only a designated supervisor

## BANK POLICIES

Certain policies in this manual are only a small sub-set of the applicable BOKF, NA ("Bank") policies. This manual is not meant to replace or overrule the Bank policies. As an employee of BOKF, NA, you are responsible for complying with all applicable Bank policies as well as the regulatory policies listed in this manual. The Bank policies may include:

- BOK Financial Standards of Conduct
- Corporate Information Protection Policies
- BSA/AML Policies
- Human Resources Policies
- Gift and Gratuities Policies
- Political Contributions Policies
- Outside Business Activities Policies
- Conflicts of Interest Policies
- Code of Ethics

This is not an all-inclusive list. **You will be held accountable to the strictest policy if conflicts occur between Bank and BOKFS policy.**

BOK Financial Securities, Inc. (BOKFS) will conduct its business consistent with the highest standards of commercial honor and just and equitable principles of trade. Keeping our customers' interest foremost is key to BOKFS' success. The trust of our customers and BOKFS' reputation are of paramount importance. Effective supervision is an integral part of achieving our goals in serving our customers.

"Compliance" is not a static event; it is a process which evolves in tandem with regulations that govern our industry and the circumstances of each particular interaction. This manual includes BOKFS' supervisory policies and procedures to provide guidance to designated supervisors in their oversight of the Firm's business. It is a working document and reference for supervisors and will be updated when necessary.

It is recognized that supervision must be a flexible tool for use by those charged with managing the Firm's various activities. While it is generally expected these procedures will be followed, supervisors are encouraged to adapt these procedures to the needs of BOKFS, their particular department, and the employees and customers of BOKFS. These procedures are meant to be a basic framework upon which supervisors oversee the Firm's activities.

This manual does not attempt to set forth all of the rules and regulations with which employees must be familiar, nor does it attempt to deal with all situations involving unusual circumstances. When questions arise, refer them to Compliance for assistance.

Supervision may be delegated to others, where appropriate; however, designated supervisors are responsible for ultimate supervision of assigned areas. The term "employee" as used in this manual includes RRs (and others as identified by BOKFS) who may be independent contractors for tax and compensation purposes.

This manual is the property of BOK Financial Securities, Inc. (BOKFS) and may not be provided to anyone outside BOKFS without the permission of Compliance or the Firm's counsel.

## ACKNOWLEDGEMENT OF PROCEDURES

Upon receipt of a new, materially updated manual, associated persons will be asked to sign and return an attestation. The attestation may be provided in several different formats, including this acknowledgement form. It may also be sent electronically. Not all updates will require attestations.

any speech given, article published, or attendance at any public or private conference, convention, meeting, social event, or similar gathering).

Some public entities are statutorily authorized to charge the cost of inspections of regulated entities. A public official may, therefore, receive payment for statutorily-authorized expenses. For example, if a state securities official appears at an office to conduct an inspection, the state may, if authorized in state statutes, charge BOKFS for expenses related to conducting the inspection.

**Prior approval from Compliance** is required for gifts or entertainment involving public officials.

## 2.6 Political Contributions

[FINRA Rule 2030 and 4580; FINRA Regulatory Notice 16-40]

| | |
|---|---|
| **Responsibility** | • Designated Supervisor |
| **Resources** | • Requests to make political contributions |
| **Frequency** | • As required *(requests)* |
| **Action** | • Review requests and determine permissibility<br>• Notify appropriate department managers if BOKFS's activities must be restricted<br>• Contact Compliance to determine corrective action if prohibited activities using Firm resources are identified<br>• Process returned contributions |
| **Record** | • Contribution Requests and responses<br>• Returned contributions<br>• Restrictions, if appropriate |

There are restrictions on political contributions when engaging in a distribution or solicitation for government or public entities on behalf of an investment adviser.

The MSRB also has a political contributions rule (G-37). FINRA Rule 2030 does not apply to a broker-dealer engaged in activities requiring municipal advisor registration and compliance with the MSRB pay-to-play rule (G-37). See the chapter *MUNICIPAL SECURITIES* and the section *Political Contributions* for further information.

## 2.7 Privacy Policy

[SEC Regulation S-P]

Information regarding customer accounts for individuals is subject to SEC Regulation S-P "Privacy Of Consumer Financial Information." This section explains employees' obligation to maintain the privacy of information. A section *Customer Privacy Policies And Procedures* in the chapter *COMMUNICATIONS WITH THE PUBLIC* outlines firm procedures.

1. Regulation S-P requirements apply to individual and not institutional accounts and include U.S. and foreign accounts.
2. Protected information is termed "nonpublic personal information." This is information obtained by BOKFS that is not deemed "public information" which is defined as information that may be obtained

from three sources: federal, state or local government records; widely distributed media; or disclosures to the general public that are required to be made by federal, state, or local law.

3. At the time an account is opened the customer is provided with BOKFS' privacy policy and is given the opportunity to opt out of arrangements to share nonpublic information with nonaffiliated third parties. The privacy policy is also provided to customers on an annual basis.
4. Employees are prohibited from sharing or releasing nonpublic personal information other than to authorized parties. This includes a prohibition against:
    - Sending internal reports or other information about firm customers to a non-affiliated 3rd party (unless authorized).
    - Sending internal or other documents that include customer non public information to your personal e-mail address.

Questions about providing customer information should be referred to Compliance.

### 2.7.1 BOKFS Privacy Policy

The BOKFS Privacy Policy is saved to the Retail Documents SharePoint site and can be accessed at this link: BOKFS Privacy Policy

## 2.8 Reporting Possible Law Or Rule Violations

[SEC Securities Exchange Act of 1934 Section 21F; SEC Rule 21F; FINRA Rule 4530(b)]

| | |
|---|---|
| **Responsibility** | • Chief Compliance Officer (or, if the CCO is involved in the potential wrongdoing, an alternate senior manager) |
| **Resources** | • Reports of possible law or rule violations from employees<br>• Referrals from outside sources such as regulators |
| **Frequency** | • Investigate reports: As required<br>• Employee education: At least annually |
| **Action** | • Acknowledge the employee's report and advise confidentiality will be maintained and there will be no retaliation for reporting<br>• Determine who will be involved in the investigation and notify those persons of the confidentiality of the investigation<br>• Conduct the investigation using tools appropriate to the issue (interviewing employees, reviewing internal/external reports, engaging counsel, etc.)<br>• Determine whether there was potential wrongdoing and decide whether a report should be made to regulators<br>• Take internal corrective action, as appropriate<br>• Advise the reporting employee of the status of the investigation<br>• Include reporting of possible law or rule violations and BOKFS' process for internal investigations as part of regular employee education |
| **Record** | • Report from employee<br>• Information regarding the investigation including records reviewed, who is involved, what steps taken, reports to regulators (if appropriate), conclusion of investigation<br>• Records of employee education including how education is conducted (classes, online education, compliance memos, etc.), who participates, subjects included, and when it occurs |



BOK FINANCIAL SECURITIES

# Written Supervisory Procedures

# BOK Financial Securities, Inc.

**Published: 18 December 2017**

APP. 00325

**Confidential** **Exhibit 020-000001**

# Written Supervisory Procedures

# BOK Financial Securities, Inc.

**Published: 19 February 2018**

APP. 00326

Confidential Exhibit 020-000002

# TABLE OF CONTENTS

INTRODUCTION ... 1
IMPORTANT NOTES TO KEEP IN MIND ... 1
BANK POLICIES ... 1
ACKNOWLEDGEMENT OF PROCEDURES ... 2
1 DESIGNATION OF SUPERVISORS AND OFFICES ... 3
1.1 Designation Of Supervisors ... 3
1.2 Designation Of Offices ... 4
2 GENERAL EMPLOYEE POLICIES ... 6
2.1 Standards Of Conduct ... 6
2.1.1 Conflicts of Interest ... 6
2.2 Outside Business Activities ... 6
2.2.1 Employees of BOKF, NA ... 8
2.2.2 Special District Board Positions ... 8
2.3 Private Securities Transactions ... 8
2.4 Employee And Employee Related Accounts ... 9
2.4.1 Employee And Employee Related Accounts Defined ... 9
2.4.2 Outside Accounts ... 10
2.4.3 Review Of Transactions ... 11
2.4.4 Insider Trading ... 12
2.4.5 Sharing In Accounts ... 12
2.4.6 Prohibition On Purchases Of Initial Public Offerings (IPOs) ... 13
2.4.7 Restrictions On Personal Accounts Of Certain Firm Personnel ... 13
2.5 Gifts, Gratuities And Entertainment ... 13
2.5.1 Gifts To Others ... 14
2.5.2 Accepting Gifts ... 15
2.5.3 Entertainment ... 15
2.5.4 Gifts, Loans, And Entertainment Involving Unions And Union-Affiliated Individuals ... 16
2.5.5 Gifts Or Payments To Public Officials ... 16
2.6 Political Contributions ... 17
2.7 Privacy Policy ... 17
2.7.1 BOKFS Privacy Policy ... 18
2.8 Reporting Possible Law Or Rule Violations ... 18
2.8.1 Reporting ... 19
2.8.2 Confidentiality Of Employee Reporting ... 19
2.8.3 Notification Of Chief Compliance Officer ... 19
2.8.4 Investigation ... 19
2.8.5 Anti-Retaliation ... 19
2.8.6 Federal Whistleblower Laws And Rules ... 20
2.9 The Foreign Corrupt Practices Act (FCPA) ... 20
2.9.1 FCPA Prohibitions ... 21
2.9.2 Required Approvals ... 22
2.9.3 Contracts With Third Parties ... 22
2.9.4 Business Entertainment, Gifts And Travel Expenses ... 22
2.9.5 Promotional/Educational Expenses ... 22
2.9.6 Facilitating Payments ... 22
2.9.7 No Cash Payments To Foreign Officials ... 23
2.9.8 Political Contributions ... 23
2.9.9 Financial And Accounting Controls ... 23
2.9.10 Certifications ... 23
2.10 Solicitation Of Charitable Contributions From Customers ... 23
2.11 Media Contact Is Limited To Certain Authorized Employees ... 24
2.12 Requests For Information From Outside Sources ... 24
2.13 Internal Reviews And Investigations ... 25
2.14 Internal Disciplinary Actions ... 25

2.14.1 When Disciplinary Action Is Considered ..... 25
2.14.2 Who Determines Disciplinary Action ..... 25
2.14.3 Types Of Discipline ..... 25
2.14.4 Additional Action ..... 27
2.14.5 Considerations In Determining Type Of Discipline ..... 27
2.15 Employee Obligation To Notify BOKFS And The Firm's Obligation To Report ..... 27
2.15.1 Reporting Requirements ..... 29
2.16 Money Laundering ..... 29
2.16.1 Cash Deposits Not Accepted ..... 30
2.16.2 Identity Theft ..... 30
2.17 Emergency Business Recovery Procedures ..... 31
2.18 Prohibited Activities ..... 32
2.18.1 Use Of Firm Name ..... 32
2.18.2 High Pressure Sales Tactics ..... 32
2.18.3 Providing Tax Advice Not Permitted ..... 32
2.18.4 Rebates Of Commission ..... 32
2.18.5 Sharing Commissions Or Fees With Non-Registered Persons ..... 33
2.18.6 Accepting Compensation From Others ..... 33
2.18.7 Settling Complaints Or Errors Directly With Customers ..... 33
2.18.8 Borrowing From And Lending To Customers ..... 33
2.18.9 Personal Funds Deposited In Customer Accounts ..... 33
2.18.10 Prohibition Against Guarantees ..... 34
2.18.11 Fees And Other Charges ..... 34
2.18.12 Customer Signatures ..... 34
2.18.13 Rumors ..... 34
2.18.14 Misrepresentations ..... 35
2.18.15 Bribes ..... 35
2.18.16 Acting Without Registration ..... 35
2.18.17 Beneficiary on Non-Familial Accounts ..... 35
2.19 Computer Records, Equipment And Software ..... 35
2.19.1 Laptop Computers And Other Mobile Devices ..... 36
2.19.2 Reporting Lost Devices ..... 36
2.19.3 Identifying And Reporting Data Breaches ..... 37
2.19.4 Software ..... 37
2.19.5 Prohibited Downloading ..... 37
2.20 Electronic Communications Policy ..... 37
2.20.1 Failure To Comply ..... 39
2.20.2 Consent To Policy ..... 39
2.21 Mobile Devices ..... 39
2.22 Advertising And Publishing Activities ..... 39
2.23 Employees Acting As Trustees, Executors, Or Other Fiduciary Capacities ..... 39
2.24 Use Of Titles ..... 40
2.24.1 Use of Approved Designations ..... 40
2.25 Semi-Annual Certification ..... 40
2.26 Recording of Telephone Conversations ..... 41
3 TRAINING AND EDUCATION ..... 42
3.1 Annual Compliance Meeting ..... 42
3.2 Continuing Education ..... 42
3.2.1 Regulatory Element ..... 43
3.2.2 Firm Element ..... 44
3.2.3 Registered Persons Who Fail To Complete Requirements ..... 45
3.3 Trainees ..... 45
4 EMPLOYMENT, REGISTRATION AND LICENSING ..... 47
4.1 Employment ..... 47
4.1.1 Hiring Procedures ..... 47
4.1.2 Termination Procedures ..... 53
4.2 Registration And Licensing ..... 54
4.2.1 CRD Electronic Filings ..... 54

4.2.2 Registration Requirement ..... 55
4.2.3 Requests For Waivers ..... 55
4.2.4 State Registrations ..... 55
4.2.5 Parking Registrations ..... 56
4.2.6 Form U4 ..... 56
4.2.7 Amendments To Form U4 Or Form U5 ..... 56
4.2.8 Assignment Of RR Numbers ..... 57
4.3 Statutorily Disqualified Persons ..... 57
4.3.1 Introduction ..... 57
4.3.2 Hiring A Statutorily Disqualified Person ..... 57
4.3.3 Regulatory Filings ..... 57
4.3.4 Supervision ..... 58
4.3.5 Reporting Statutory Disqualifications ..... 58
4.4 Retiring Representatives ..... 58
4.5 Broker-Dealer Registration ..... 58
4.5.1 Form BD ..... 59
4.5.2 Change In Ownership, Control, Or Business Operations ..... 59
4.5.3 Regulatory Contact Information ..... 59
4.5.4 Regulatory Filings ..... 60
4.5.5 Reporting Requirements ..... 60
4.6 Heightened Supervision ..... 61
4.6.1 Introduction ..... 61
4.6.2 Identifying Employees For Heightened Supervision ..... 61
4.6.3 Criteria For Identifying Candidates For Heightened Supervision ..... 62
4.6.4 Heightened Supervision Memorandum ..... 62
4.6.5 Scope Of Potential Heightened Supervision ..... 62
4.6.6 Certification By RR's Supervisor ..... 62
5 COMMUNICATIONS WITH THE PUBLIC ..... 63
5.1 Introduction ..... 63
5.2 Definitions ..... 63
5.3 Retail Communications ..... 64
5.3.1 FINRA Filing Requirements ..... 65
5.4 Institutional Communications ..... 66
5.5 General Standards ..... 67
5.5.1 Comparisons ..... 68
5.5.2 Disclosure Of The Firm's Name ..... 68
5.5.3 Tax Considerations ..... 68
5.5.4 Disclosure Of Fees, Expenses And Standardized Performance ..... 68
5.5.5 Recommendations ..... 69
5.5.6 Prospectuses Filed With The SEC ..... 69
5.5.7 Limitations On Use Of FINRA's Name And Any Other Corporate Name Owned By FINRA ..... 69
5.6 Approval ..... 70
5.7 Testimonials ..... 70
5.8 Telemarketing Scripts ..... 71
5.9 SIPC Membership ..... 71
5.10 Recordkeeping Requirements For Retail And Institutional Communications ..... 71
5.11 Outgoing Communications ..... 72
5.11.1 Prohibition Against Sending Communications From Personal Computers And Other Non-Firm Facilities ..... 72
5.11.2 Review And Approval ..... 72
5.11.3 Content Guidelines ..... 73
5.11.4 Letters And Notes ..... 73
5.11.5 Facsimiles ..... 73
5.11.6 Communications Defined As "Research" ..... 74
5.12 Incoming Correspondence ..... 74
5.12.1 Review Of Incoming Correspondence ..... 74
5.12.2 Offices Without Resident Supervisors ..... 75
5.12.3 Personal Mail ..... 75

5.13 Legends And Footnotes ........ 75
5.14 Internal Communications ........ 76
5.14.1 Inter-Office Communications ........ 76
5.14.2 Internal Use Only ........ 76
5.14.3 Squawk Box, Conference Calls, And Other Internal Communication Systems ........ 76
5.15 Complaints ........ 77
5.15.1 Complaint Defined ........ 78
5.15.2 Handling Of Customer Complaints ........ 78
5.15.3 Oral Complaints ........ 78
5.15.4 Complaints Received By Clearing Firm ........ 78
5.15.5 Records Of Complaints ........ 79
5.15.6 Notice To Customers ........ 79
5.15.7 Reporting Of Customer Complaints ........ 79
5.16 Customer Privacy Policies And Procedures ........ 80
5.16.1 Introduction ........ 81
5.16.2 "Public" vs. "Nonpublic" Personal Information About Customers ........ 81
5.16.3 Sharing Nonpublic Financial Information ........ 81
5.16.4 Customer Notification ........ 82
5.16.5 Affiliate Marketing ........ 82
5.17 Scripts ........ 82
5.18 Prohibition Against Payments Involving Publications To Influence Market Prices ........ 83
5.19 Pre-recorded Voice Messages And Automatic Telephone Dialing Systems (Autodialers) ........ 83
5.20 Calling (Telemarketing) And Fax Restrictions ........ 83
5.20.1 Introduction ........ 84
5.20.2 Telephone Calls ........ 85
5.20.3 Wireless Communications ........ 85
5.20.4 Outsourcing Telemarketing ........ 85
5.20.5 Unencrypted Consumer Account Numbers ........ 85
5.20.6 Submission Of Billing Information ........ 85
5.20.7 Abandoned Calls ........ 86
5.20.8 Credit Card Laundering ........ 86
5.20.9 Other Prohibited Activities ........ 86
5.20.10 Do Not Call Lists ........ 86
5.20.11 National Do-Not-Call Registry ........ 87
5.20.12 State Restrictions ........ 87
5.20.13 Internal Do Not Call List ........ 87
5.20.14 Facsimile Transmissions ........ 87
5.20.15 Established Business Relationship ........ 88
5.21 Public Appearances ........ 88
5.21.1 General Guidelines ........ 89
5.21.2 Seminars ........ 89
5.21.3 Approval ........ 89
5.21.4 Radio, TV, And Other Extemporaneous Presentations ........ 89
5.21.5 Securities Sold By Prospectus ........ 90
5.21.6 Options ........ 90
5.21.7 Collateralized Mortgage Obligations (CMOs) ........ 90
5.21.8 Mutual Funds ........ 90
5.22 Cold Callers ........ 90
5.22.1 Cold Caller Requirements ........ 90
5.22.2 Permissible Cold Caller Activities ........ 90
5.22.3 Prohibited Cold Caller Activities ........ 91
5.22.4 Telemarketing Restrictions ........ 91
5.22.5 Scripts ........ 91
5.23 Electronic Communications ........ 91
5.23.1 Electronic Communications Systems And Devices ........ 91
5.23.2 Education And Training ........ 92
5.23.3 Instant Messaging ........ 92
5.23.4 Review Of Electronic Communications ........ 93

5.23.5 Advertising ..... 96
5.23.6 Internet ..... 96
5.23.7 Hyperlinks ..... 101
5.23.8 Prohibition Against Automatic Erasing/Deleting ..... 102
5.23.9 Policy Violations ..... 102
5.24 Identification Of Sources ..... 103
6 FINANCIAL AND OPERATIONS PROCEDURES ..... 104
6.1 Qualification Of Operations Personnel ..... 104
6.2 Books And Records ..... 104
6.2.1 Introduction ..... 104
6.2.2 Electronic Storage Of Records ..... 104
6.2.3 Availability Of Records In Offices ..... 106
6.3 Calculation And Reporting Of Net Capital ..... 106
6.4 Reports ..... 107
6.4.1 Annual Audit Report ..... 107
6.4.2 Custody Report And Requirements ..... 107
6.4.3 Exemption Report ..... 108
6.5 Reconciliations And Bank Records ..... 108
6.6 Designation Of Accountant ..... 108
6.7 Guarantees By, Or Flow Through Benefits For, Members ..... 109
6.8 General Ledger And Suspense Accounts ..... 109
6.9 Financial Reporting ..... 110
6.9.1 Preparation Of Financial Reports ..... 110
6.9.2 Financial Statements ..... 110
6.9.3 Disclosure Of Financial Condition ..... 111
6.9.4 Notification Rule ("Early Warning Rule") ..... 111
6.10 Regulation T and Extension of Credit to Customers ..... 111
6.11 Fees And Service Charges ..... 111
6.11.1 Notification Of Customers ..... 112
6.12 Fidelity Bonding ..... 112
6.13 Independent Verification Of Assets ..... 112
6.14 Cash Deposits Not Accepted ..... 113
6.15 Cash Equivalents ..... 113
6.16 Risk Management ..... 113
6.16.1 Risk Assessment, Recordkeeping And Reporting ..... 114
6.16.2 Risk Practices Regarding Employment And Employees ..... 114
6.16.3 New Accounts ..... 116
6.16.4 Cybersecurity ..... 116
6.16.5 Protection Of Customer Information And Records ..... 118
6.16.6 Credit Committee ..... 120
6.16.7 Funding And Liquidity Risk Management ..... 121
6.16.8 Counterparty Risk ..... 123
6.16.9 Proprietary Accounts ..... 124
6.16.10 New Products ..... 124
6.16.11 Internal Audit ..... 125
6.17 Business Continuity Plan ..... 126
6.17.1 Designation Of Responsibilities ..... 126
6.17.2 Retention And Location Of The Plan ..... 127
6.17.3 Implementation Of The Plan ..... 127
6.17.4 Emergency Response Team ..... 127
6.17.5 Emergency Contact List ..... 128
6.17.6 Alternative Business Locations ..... 129
6.17.7 Data Back-Up And Recovery ..... 129
6.17.8 Mission Critical Systems ..... 129
6.17.9 Financial And Operational Assessments ..... 129
6.17.10 Alternative Market Entry ..... 130
6.17.11 Alternative Communications ..... 130
6.17.12 Regulatory Reporting ..... 131

6.17.13 Business Constituent, Bank, And Counter-Party Impact ..... 131
6.17.14 Other Obligations To Customers ..... 132
6.17.15 Emergency Contact Information ..... 132
6.17.16 Widespread Health Emergencies ..... 132
6.17.17 Education Of Employees ..... 133
6.17.18 Updating, Annual Review, And Testing ..... 133
6.18 Industry Testing ..... 134
6.19 Customer Payments For Purchases ..... 134
6.19.1 Checks Payable To Clearing Firm ..... 134
6.19.2 Guaranteed Accounts ..... 134
6.20 Transmittals Of Customer Funds And Securities ..... 135
6.20.1 Checking Account Safeguards ..... 136
6.20.2 Prepayments And Extensions ..... 136
6.20.3 Employees Authorized To Transmit Customer Assets From Accounts ..... 136
6.20.4 Issuing Checks To Customers ..... 137
6.20.5 Persons Receiving Assets In Person ..... 137
6.20.6 Transmittals To Third Parties ..... 137
6.20.7 Authorization Records For Negotiable Instruments Drawn From A Customers Account ..... 139
6.20.8 Transmittals To An Alternate Address ..... 139
6.20.9 Transmittals To Outside Entities ..... 139
6.20.10 Transmittals Between Customers And Registered Representatives ..... 139
6.20.11 Suspicious Or Questionable Activities ..... 139
6.20.12 Exemption From 15c3-3 ..... 140
6.21 Customer Protection ..... 140
6.21.1 Introduction ..... 141
6.21.2 Special Reserve Bank Account ..... 142
6.22 Customer Confirmations And Statements ..... 142
6.22.1 Consolidated Statements ..... 143
6.22.2 Control Of Blank Confirmations And Statements ..... 144
6.22.3 Change Of Customer Addresses On Accounts ..... 144
6.22.4 Undeliverable Mail - UPDATE ..... 144
6.22.5 Holding Customer Mail Prohibited ..... 144
6.22.6 Confirmation Disclosures ..... 145
6.22.7 Confirmation Disclosure Of Non-Rated Taxable Debt Securities ..... 146
6.23 Lost Securityholders And Unresponsive Payees ..... 146
6.23.1 Searches For Lost Securityholders ..... 147
6.23.2 Unnegotiated Checks ..... 147
6.24 Subordination Agreements With Investors ..... 147
6.25 Expense-Sharing Agreements ..... 147
6.26 Transfer Of Accounts ..... 148
6.27 Solicitation Of Proxies ..... 148
6.28 Customer Requests For References ..... 148
6.29 Audit Letters ..... 148
6.30 Annual Disclosure Of FINRA BrokerCheck ..... 149
6.31 Carrying Agreements ..... 149
6.32 Clearing Firm Exception Reports ..... 149
6.33 Short Interest Report ..... 150
6.34 Electronic Blue Sheets ..... 150
6.35 Regulatory Fees And Assessments ..... 150
6.36 Regulatory Requests ..... 150
6.36.1 Information Provided Via Portable Media Device ..... 151
6.37 Outsourcing ..... 151
7 INSIDER TRADING ..... 153
7.1 Insider Trading Policies And Procedures ..... 154
7.2 Prohibition Against Acting On Or Disclosing Inside Information ..... 154
7.3 Tippees Are Insiders ..... 154
7.4 Misuse Constitutes Fraud ..... 154
7.5 Annual Certification ..... 154

7.6 Firm Policy Memorandum Regarding Insider Trading ..... 154
7.7 Employee, Employee-Related, And Proprietary Trading ..... 157
7.7.1 Introduction ..... 157
7.7.2 Departments Subject To Information Barrier Confidentiality Procedures ..... 157
7.7.3 Confidentiality Procedures ..... 158
7.7.4 Notification To Compliance ..... 158
7.7.5 Monitoring The Information Barrier ..... 159
7.7.6 Education And Training Of Employees ..... 159
7.8 Restricted List ..... 159
7.8.1 Surveillance ..... 160
7.9 10b5-1 Plans ..... 160
8 ACCOUNTS ..... 162
8.1 Lack Of Customer ID Verification ..... 162
8.2 New Accounts ..... 162
8.2.1 Designation Of Accounts ..... 162
8.2.2 Anti-Money Laundering (AML) New Account Requirements ..... 163
8.2.3 Identity Theft (Red Flags Rule) ..... 165
8.2.4 SIPC Disclosure ..... 168
8.2.5 Approval ..... 168
8.2.6 Customer Account Information ..... 169
8.2.7 Addresses On Customer Accounts ..... 169
8.2.8 Account Documents ..... 170
8.2.9 Predispute Arbitration Agreements With Customers ..... 170
8.2.10 Revisions To Customer Agreements ..... 171
8.2.11 Accounts Requiring Notification To Customer's Employer ..... 171
8.2.12 Post Office Addresses ..... 172
8.2.13 Unacceptable Accounts ..... 172
8.3 Qualifying Institutional Accounts ..... 172
8.4 Transferring Accounts ..... 172
8.4.1 Accounts Transferring In ..... 172
8.4.2 Accounts Transferring Out ..... 172
8.5 Updating Account Information And Periodic Affirmation ..... 172
8.6 Sweep Programs ..... 173
8.7 Margin Accounts ..... 174
8.7.1 Opening Margin Accounts ..... 175
8.7.2 Employee Accounts ..... 175
8.7.3 Disclosures ..... 175
8.7.4 Equal Credit Opportunity Act Requirements ..... 176
8.7.5 Arranging Credit ..... 176
8.7.6 Suitability ..... 176
8.7.7 Margin Requirements ..... 176
8.7.8 New Issues ..... 176
8.7.9 Credit On Restricted Securities ..... 177
8.7.10 Fiduciary Accounts ..... 177
8.8 Third Party Accounts ..... 177
8.9 Discretionary Accounts - Limited to Advisory Accounts ..... 177
8.9.1 General Requirements ..... 177
8.9.2 Approval ..... 178
8.9.3 Limited Authority Only Permitted ..... 178
8.9.4 Indication Of Discretion Exercised Or Not Exercised ..... 178
8.9.5 Trusts And Other Fiduciary Accounts ..... 179
8.9.6 Principal Transactions Not Permitted ..... 179
8.9.7 Distributions Of The Firm's Or An Affiliate's Securities ..... 179
8.9.8 Approval Of Orders And Review Of Transactions ..... 179
8.9.9 Annual Confirmation ..... 179
8.9.10 Cancellation Of Discretionary Authority ..... 180
8.10 Accounts For Minors ..... 180
8.11 Coverdell Education Savings Accounts ..... 180

8.12 Accounts For Senior Investors ..... 181
8.12.1 Back-Up Contact Information on New Account Forms ..... 182
8.12.2 General Requirements ..... 183
8.12.3 Opening Accounts For Senior Investors ..... 183
8.12.4 Recommendations To Senior Investors ..... 183
8.12.5 Diminished Mental Capacity ..... 183
8.12.6 Potential Indication Of Elder Financial Exploitation ..... 184
8.12.7 Escalating Issues Involving Senior Investors ..... 184
8.12.8 Financial Exploitation - Temporary Holds ..... 185
8.12.9 Reverse Mortgages ..... 186
8.12.10 Luncheon Programs And Seminars ..... 187
8.12.11 Advertising Targeting Seniors ..... 188
8.13 Incompetent Persons ..... 188
8.14 Power of Attorney ..... 188
8.15 Trust Accounts ..... 188
8.16 Wealth Events ..... 188
8.17 Pension And Retirement Accounts ..... 189
8.17.1 Employee Retirement Income Security Act (ERISA) ..... 189
8.17.2 General Guidelines When Offering Retirement Plans ..... 193
8.17.3 Individual Retirement Accounts (IRAs) ..... 193
8.17.4 Employer-Sponsored Plans ..... 195
8.17.5 Pension Income Stream Products ..... 197
8.18 Foreign Accounts ..... 198
8.19 Payments to Unregistered Persons ..... 198
8.19.1 Definition Of Eligibility ..... 199
8.19.2 Referrals ..... 200
8.19.3 Referrals To Others ..... 200
8.19.4 Referrals To BOKFS ..... 200
8.20 Fee-Based Accounts (P46) ..... 201
8.21 Death Of A Customer ..... 202
8.22 Active Accounts ..... 202
8.23 Concentrations ..... 203
8.23.1 Account Concentration Reviews ..... 204
8.23.2 Principal Transactions ..... 204
9 IMPARTIAL CONDUCT STANDARDS ..... 205
Exhibit B - Fixed Annuities ..... 213
Exhibit C - Annuity Due Diligence ..... 214
Exhibit D - Alternative Investments Due Diligence ..... 216
Exhibit E - New Account Approval ..... 216
Exhibit F - Existing Account Approval ..... 217
Exhibit G - Transferring in Non-Approved Products ..... 218
10 ORDERS ..... 220
10.1 Sales Practice Monitoring ..... 220
10.2 Acceptance And Prompt Entry Of Orders ..... 220
10.3 Orders Requiring Approval ..... 220
10.4 Solicited And Unsolicited Orders ..... 221
10.4.1 Definition Of Solicited Order ..... 221
10.4.2 Solicited Orders Should Be Indicated ..... 221
10.4.3 Prohibited Solicitations ..... 222
10.5 Suitability Of Recommendations ..... 222
10.5.1 General Requirements ..... 223
10.5.2 Non-Conventional Investments (NCIs) ..... 226
10.5.3 Institutional Accounts ..... 227
10.5.4 Recommendations Of OTC Equity Securities ..... 228
10.5.5 Investing Liquefied home equity ..... 230
10.5.6 Proprietary Products ..... 231
10.6 Prohibition Against Trading Ahead of Customer Orders ..... 231
10.6.1 Exceptions ..... 232

10.6.2 Front Running of Block Transactions ........ 233
10.6.3 Best Execution ........ 233
10.7 Orders In Volatile Market Conditions ........ 235
10.7.1 Volatile Stocks ........ 236
10.7.2 Stop Orders ........ 236
10.8 Illiquid Investments ........ 236
10.9 Account Designation And Cancels/Rebills ........ 237
10.9.1 Allocation Of Investment Adviser Orders ........ 238
10.10 Time And Price Discretion ........ 238
10.11 Trading Halts ........ 238
10.12 Trade Reporting By Third Parties ........ 239
10.13 Trading Systems And Electronic Transmission Of Orders ........ 239
10.14 Order Records ........ 240
10.14.1 Large Trader Definition ........ 240
10.14.2 Identifying Activity Level ........ 241
10.14.3 Large Trader Identification Number (LTID) ........ 241
10.14.4 Filings ........ 241
10.14.5 Large Trader Monitoring ........ 242
10.14.6 Large Trader Reporting and Record Maintenance ........ 242
10.15 Conflicts Of Interest ........ 242
10.15.1 Adverse Interest ........ 242
10.15.2 Precedence Of Customer Orders ........ 243
10.15.3 Disclosure Of Control Relationship ........ 243
10.16 Review Of Customer Transactions ........ 243
10.16.1 Review Of Daily Transactions ........ 243
10.16.2 Unauthorized Transactions ........ 244
10.16.3 Review Of Account Activity By Designated Supervisors ........ 244
10.16.4 Review Of Account Activity By Compliance ........ 245
10.17 Trade Errors ........ 245
10.18 Sellouts ........ 246
10.19 Time Clock Synchronization ........ 246
10.19.1 Certification ........ 247
10.19.2 Definitions ........ 247
10.19.3 Independent Contractors ........ 248
10.20 Issuer Repurchases Of Common Stock ........ 248
10.21 Blue Sky Of Securities ........ 248
10.21.1 General Requirements ........ 249
10.22 Exchange-Listed Index Warrants, Currency Warrants And Currency Index Warrants ........ 249
10.23 Auction Rate Securities ........ 250
10.23.1 Allocations ........ 250
10.24 Commodity Futures-Linked Securities ........ 251
10.25 Certificates Of Deposit ........ 252
10.25.1 General Sales Guidelines ........ 252
10.25.2 Special Characteristics Of CDs ........ 252
10.25.3 Disclosures When Selling Brokered CDs ........ 253
10.25.4 Market Index/Linked CDs ........ 253
10.25.5 Account Statements ........ 254
10.26 Cash Alternatives ........ 254
10.27 Real Estate Investment Trusts (REITs) ........ 255
10.27.1 General Sales Guidelines ........ 255
10.27.2 Guidelines For New Issue REITs ........ 256
10.27.3 Private And Non-traded REITs ........ 257
10.28 Callable Common Stock ........ 258
10.29 Promissory Notes ........ 258
10.30 Securities-Backed Lines Of Credit (SBLOCs) ........ 259
10.31 Direct Participation Programs (DPPs) ........ 259
10.31.1 Direct Participation Program Required Forms ........ 260
10.32 Section 1031 Tenants-In-Common Exchanges ........ 260

10.33 Complex Products ..... 260
10.33.1 Approval Of The Product ..... 261
10.33.2 Knowledge Of The Product ..... 261
10.33.3 Suitability Of Recommendations ..... 261
10.33.4 Other Requirements ..... 262
10.33.5 Examples Of Complex Products ..... 262
10.34 Structured Products ..... 263
10.34.1 Due Diligence ..... 264
10.34.2 Public Communications ..... 265
10.34.3 Eligible Accounts ..... 265
10.34.4 Suitability ..... 265
10.34.5 Risk Disclosure ..... 265
10.34.6 Fees And Costs ..... 266
10.34.7 Credit Ratings ..... 266
10.34.8 Tax Implications ..... 266
10.34.9 Post-Trade Information ..... 266
10.34.10 Features And Risks Of Structured Products ..... 266
10.34.11 Principal-Protected Notes (PPNs) ..... 267
10.34.12 Reverse Convertibles ..... 267
10.34.13 Reverse Inquiry Transactions ..... 268
10.34.14 Exchange Traded Notes (ETNs) ..... 269
10.34.15 Training ..... 269
10.35 Short Sales ..... 270
10.35.1 Key Defined Terms ..... 271
10.35.2 Short Sale Price Test ..... 271
10.35.3 Marking Orders ..... 272
10.35.4 Locate And Delivery Requirements ..... 272
10.35.5 Close-Out Requirements For Fail To Deliver ..... 273
10.35.6 Short Sales Of Securities Subject To A Public Offering ..... 274
10.36 Sale Of Control Or Restricted Stock ..... 274
10.36.1 Introduction ..... 275
10.36.2 Definitions ..... 275
10.36.3 Summary Chart Of Rule 144 And 145 Requirements ..... 276
10.36.4 New Account Information Regarding Affiliates ..... 277
10.36.5 Lending And Option Writing On Control And Restricted Securities ..... 277
10.37 Unregistered Resales Of Restricted Securities ..... 277
10.37.1 Suspicious Activities ..... 279
10.38 Reporting Of Insider Transactions ..... 279
10.39 Penny Stocks ..... 280
10.39.1 Penny Stock Required Forms ..... 281
10.39.2 General Requirements ..... 281
10.39.3 Penny Stock Defined ..... 281
10.39.4 Established Customer Defined ..... 282
10.39.5 Suitability Information ..... 282
10.39.6 Risk Disclosure Document ..... 282
10.39.7 Two-Business-Day Waiting Period ..... 282
10.39.8 Disclosure Of Quotations And Other Information ..... 283
10.39.9 Disclosure Of Compensation ..... 283
10.40 Options Trading ..... 283
10.40.1 NetXClient and Option Orders ..... 283
10.40.2 Option Writing ..... 283
10.40.3 Equity Requirements ..... 284
10.40.4 Exercising Option Positions ..... 284
10.40.5 Registered Options and Securities Futures Principal (ROP) ..... 284
10.41 Sales To Military Personnel On Military Installations ..... 285
10.42 Tax Switching Transactions ..... 285
10.43 Payment For Order Flow ..... 286
10.43.1 Payment For Order Flow Defined ..... 286

10.43.2 Disclosures ... 287
10.43.3 Best Execution Of Orders ... 287
10.44 Extended Hours Trading ... 287
10.45 Order Audit Trail System (OATS) ... 287
10.45.1 Who And What Orders Are Subject To OATS Requirements ... 288
10.45.2 Registering With OATS ... 289
10.45.3 List Of Contact Persons ... 289
10.45.4 Capture Of Required OATS Information ... 289
10.45.5 Reporting Of OATS Information ... 290
10.45.6 Tick Size Pilot Program ... 291
10.45.7 Clock Synchronization ... 293
10.45.8 OATS Contact Information ... 293
10.46 Order Routing And Reporting ... 293
10.46.1 Disclosure Of Order Routing ... 293
10.46.2 Orders Covered By The Rule ... 294
10.46.3 Information Included In The Reports ... 294
10.46.4 Customer Requests For Order Routing Information ... 294
10.47 Distribution, Consolidation, And Display Of Information ... 294
10.48 Sales Contests ... 295
10.48.1 Introduction ... 295
10.48.2 General Guidelines ... 295
10.49 Cash And Non-Cash Compensation Policy ... 295
10.49.1 Definitions ... 295
10.49.2 Approval ... 296
10.49.3 Types Of Permissible Non-Cash Compensation ... 296
10.50 Prohibited Transactions And Practices ... 296
10.50.1 Introduction ... 297
10.50.2 Unauthorized Trading ... 297
10.50.3 Market Manipulation ... 298
10.50.4 Prearranged Trading ... 298
10.50.5 Adjusted Trading ... 298
10.50.6 Overtrading Or Undertrading ... 298
10.50.7 Wash Transactions ... 298
10.50.8 Cross Transactions ... 298
10.50.9 Orders At The Opening Or Close ... 299
10.50.10 Parking Securities ... 299
10.50.11 Churning ... 299
10.50.12 Trade Shredding ... 299
10.51 Market Access ... 299
10.51.1 Definitions ... 300
10.51.2 Risk Management Controls ... 301
10.51.3 Sponsored Access ... 302
11 SUPERVISORY SYSTEM, PROCEDURES, AND CONTROLS ... 305
11.1 Introduction ... 305
11.2 Responsibility ... 305
11.3 Controls ... 306
11.3.1 Verification And Testing ... 306
11.3.2 Risk Management ... 306
11.3.3 Outside Auditors ... 306
11.4 Written Compliance And Supervisory Procedures ... 307
11.5 Chief Compliance Officer (CCO) ... 307
11.6 Review And Testing Of Procedures And Controls ... 307
11.6.1 Conducting Risk-Based Reviews And Testing ... 308
11.6.2 Findings And Follow-Up ... 308
11.7 Internal Inspections ... 308
11.8 Internal Investigations Of Transactions ... 309
11.8.1 Internal Investigation Reports ... 310
11.9 Escalation Of Issues ... 311

11.10 Annual Report And Certification Of Compliance And Supervisory Processes ... 311
11.10.1 Meetings Between CEO And CCO ... 311
11.10.2 Annual Report To CEO ... 311
11.11 Supervision Of Supervisors ... 312
11.11.1 Supervision Of Customer Account Activity ... 313
11.12 Cross Reference To Other Supervisory Control Subjects ... 314
11.12.1 Conflicts Of Interest ... 315
12 OFFICES ... 316
12.1 Office Designations ... 316
12.1.1 Branch Office ... 316
12.1.2 Non-Branch Locations ... 316
12.1.3 Offices Of Supervisory Jurisdiction (OSJ) ... 318
12.1.4 Branch Offices Assigned To OSJs ... 318
12.2 Approval Of Persons To Operate In Non-Branch Locations ... 318
12.2.1 Primary Residence Offices ... 319
12.3 Supervision Of Non-Branch Locations ... 319
12.4 Supervision Of Producing Managers ... 320
12.5 Office Records ... 320
12.5.1 Retention Of Records at the Office ... 320
12.5.2 Forwarding Records To Home Office ... 321
12.5.3 Access To Records ... 321
12.5.4 Regulatory Requests For Records ... 322
12.6 Changes In Branch Offices ... 322
12.7 Closing Offices ... 322
12.8 Use Of Office Space By Others ... 322
Cybersecurity ... 323
12.9 Office Inspections ... 324
12.9.1 Risk-Based Inspection Cycle ... 325
12.9.2 Conducting Inspections ... 325
12.9.3 Reports ... 326
12.10 Sales Supervisors' Checklist ... 326
12.11 Display Of Certificates ... 327
12.12 Availability Of Rules ... 327
12.13 Networking Arrangements With Other Financial Institutions ... 327
12.13.1 Definitions ... 328
12.13.2 Networking Agreement ... 329
12.13.3 Setting ... 329
12.13.4 Customer Disclosure ... 329
12.13.5 Communications With The Public ... 329
12.13.6 Compensation To Financial Institution Personnel ... 330
12.13.7 Financial Institution Regulators ... 330
12.13.8 Notifications Of Terminations ... 330
13 TRADING LIMITATIONS ... 331
13.1 Fixed Income Securities Activities ... 331
13.2 Authorized Individuals and Dealers ... 331
13.3 Authorized Securities ... 332
13.4 Trading Limitations ... 332
13.4.1 Position Limits (Market and Credit) ... 333
13.4.2 Position LImits (Duration) ... 333
13.4.3 Issue Limits (Liquidity) ... 334
13.5 Controls for Broker-Dealers with Market Access, Rule 15c3-5 ... 335
13.5.1 Market Access Procedures ... 336
13.5.2 Market Access Limit Procedures ... 336
13.6 Financial Futures and Listed Options ... 337
14 CORPORATE FIXED INCOME SALES AND TRADING ... 339
14.1 Fair Prices ... 339
14.2 Best Execution ... 339
14.2.1 Extreme Market Conditions ... 340

14.2.2 FINRA Guidelines ........ 340
14.3 Mark-Up Policy ........ 341
14.3.1 Prevailing Market Price ........ 342
14.3.2 "Similar" Securities ........ 344
14.4 Crossing OTC Bonds ........ 344
14.5 Corporate Fixed Income Errors ........ 345
14.6 Cancels And Rebills ........ 345
14.7 Extended Settlements; Delayed Deliveries ........ 345
14.8 Inventory Positions ........ 345
14.8.1 Pricing Positions ........ 346
14.9 Market Access ........ 346
14.9.1 Definitions ........ 347
14.9.2 Risk Management Controls ........ 348
14.10 Traders' Personal Accounts ........ 349
14.11 TRACE ........ 350
14.11.1 TRACE Reporting Done by Third Party ........ 350
14.11.2 Daily TRACE Procedures ........ 351
14.11.3 Monthly TRACE Procedures ........ 352
14.11.4 General Constraints ........ 353
14.11.5 TRACE Eligible Securities And Reportable Transactions ........ 354
14.11.6 Transaction Reporting ........ 354
14.11.7 System Outages ........ 355
14.11.8 Time Clock Synchronization ........ 356
14.12 Systems Issues ........ 357
14.13 Prohibited Activities ........ 358
14.13.1 Inside Information ........ 358
14.13.2 Financial Arrangements ........ 358
14.13.3 Market Manipulation ........ 358
14.13.4 Front Running ........ 359
14.13.5 Parking Securities ........ 359
14.13.6 Secret Profits ........ 359
14.13.7 Adjusted Trading ........ 359
14.13.8 Wash Sales ........ 359
14.13.9 Daisy Chain/Round Robin Transactions ........ 359
14.14 Review Of Transactions ........ 360
14.15 High Yield Debt Securities ........ 360
14.15.1 Suitability ........ 360
14.15.2 Disclosures ........ 361
14.15.3 Catastrophe Bonds ........ 361
14.15.4 Underwriting And Investment Banking ........ 361
14.15.5 Creditors' Committee ........ 361
15 CORPORATE SECURITIES UNDERWRITING ........ 362
15.1 Deal File ........ 362
15.2 Managing Underwriter ........ 362
15.2.1 Letter Of Intent ........ 362
15.2.2 Due Diligence ........ 362
15.2.3 Net Capital Considerations ........ 363
15.2.4 Investment Committee Approval ........ 364
15.2.5 Forming The Underwriting Group ........ 364
15.2.6 Agreement Among Underwriters ........ 364
15.2.7 Underwriting Compensation ........ 365
15.2.8 Lock-Up Agreements ........ 365
15.2.9 Reports To Issuer Of Indications Of Interest And Final Allocation ........ 366
15.2.10 Greenshoe ........ 366
15.2.11 Preliminary And Final Prospectuses ........ 366
15.2.12 Regulatory Filings And Notifications ........ 366
15.2.13 Blue Sky Considerations ........ 369
15.2.14 Road Shows ........ 369

15.2.15 Pricing The Underwriting ... 370
15.2.16 Aftermarket Activities ... 370
15.3 Syndicate Member Procedures ... 371
15.3.1 Returned Shares Of An Issue Trading At A Premium ... 372
15.3.2 Tombstone Ads ... 372
15.4 Selling Group Member Procedures ... 372
15.4.1 Returning Unsold Allotment ... 373
15.4.2 Tombstone Ads ... 373
15.5 Special Purpose Acquisition Companies (SPACs) ... 373
15.5.1 Suitability ... 375
15.5.2 Risk Disclosures ... 375
15.5.3 Secondary Market ... 375
15.6 Communications Around The Time Of Registered Offerings ... 375
15.6.1 Categories Of Issuers ... 375
15.6.2 Other Definitions ... 376
15.6.3 Permitted Offering Activity And Communications ... 376
15.6.4 Social Media ... 377
15.6.5 Free Writing Prospectus ... 377
15.7 New Issue Allocations And Distributions ... 377
15.7.1 Fixed Priced Offerings ... 378
15.7.2 Indications Of Interest ... 378
15.7.3 Conditional Offers ... 378
15.7.4 Prospectuses And Confirmations To Purchasers ... 378
15.7.5 Restrictions On Purchase And Sale Of IPOs Of Equity Securities ... 380
15.7.6 Disclosure Of Interest In Distribution ... 385
15.7.7 State Blue Sky Requirements ... 385
15.7.8 Cancellation Policy ... 386
15.7.9 Designated Orders ... 386
15.7.10 Flipping ... 386
15.7.11 Quid Pro Quo Allocations ... 386
15.7.12 Spinning ... 387
15.8 Trading Restrictions While Participating In A Distribution ... 387
15.8.1 Distribution Participant Restrictions ... 388
15.8.2 Issuer And Selling Security Holder Restrictions ... 388
15.8.3 Short Sales ... 388
15.8.4 Market Order Prohibition ... 389
15.8.5 Prohibited Conduct ... 389
15.9 Market Making Activities ... 390
15.10 At-The-Market (ATM) Offerings ... 391
15.10.1 Placement Agent Responsibilities ... 391
15.10.2 Restrictions on Purchasers of New Issues ... 391
15.10.3 Settlement ... 391
15.10.4 Program Maintenance ... 392
15.10.5 Stabilizing Activities ... 392
15.11 Structured Finance Product Rating Requests ... 392
15.12 Crowdfunding ... 392
15.12.1 Introduction ... 393
15.12.2 Funding Portal Registration ... 393
15.12.3 Offers To Investors ... 394
15.13 Intrastate Offerings ... 394
15.13.1 Introduction ... 394
15.13.2 Qualifying The Issuer ... 395
15.13.3 Purchasers ... 395
15.13.4 FINRA Rule Obligations ... 395
15.14 Best Efforts Underwritings ... 395
15.14.1 Introduction ... 396
15.14.2 Handling Investor Funds ... 396
15.14.3 Customer Funds - Escrow Account ... 396

15.14.4 Purchasers ........ 397
15.15 Asset-Backed Securities (ABS) ........ 397
15.16 Prohibited Activities ........ 397
15.16.1 Misrepresentation Of Registration With Regulators ........ 397
15.16.2 Anti-Competitive Activities ........ 398
15.16.3 Tying ........ 398
15.16.4 Laddering ........ 398
15.16.5 After-Market Sales ........ 398
15.16.6 Misrepresenting Pricing ........ 398
16 MUTUAL FUNDS AND OTHER INVESTMENT COMPANY PRODUCTS ........ 399
16.1 Introduction ........ 399
16.2 Mutual Funds Offered By BOKFS ........ 399
16.2.1 Dealer Agreements ........ 400
16.2.2 Anti-Reciprocal Rule ........ 400
16.3 Sales Charges ........ 401
16.3.1 Breakpoints ........ 402
16.3.2 Letters Of Intent ........ 403
16.3.3 Rights Of Accumulation ........ 404
16.3.4 Reinstatement Privilege ........ 404
16.3.5 Sales Charge Reductions/Waiver Or NAV Transfer Program ........ 404
16.3.6 Deferred Sales Charges ........ 404
16.3.7 Direct Application And Wire Order Accounts ........ 404
16.3.8 Sales Charge Discounts Must Be Marked On Mutual Fund Orders ........ 405
16.4 Switching ........ 405
16.5 Market Timing Transactions ........ 405
16.6 Selling Dividends ........ 406
16.7 Misrepresenting "No-Load" Funds ........ 406
16.8 Reinvestment Of Maturing Certificates Of Deposit In Mutual Funds ........ 406
16.9 Suitability ........ 406
16.9.1 Multi-Class Mutual Funds ........ 407
16.9.2 Considerations For Newly-Hired RRs ........ 408
16.10 Late Trading And Market Timing ........ 409
16.11 Block Letter Restrictions ........ 410
16.12 Communications ........ 410
16.13 Disclosure Of Material Facts ........ 411
16.14 Disclosure Of Fees, Expenses And Performance ........ 411
16.15 Prospectuses ........ 412
16.16 Retail Communications ........ 412
16.17 Sales Material Provided By Third Parties ........ 413
16.18 Dealer-Use-Only Material ........ 414
16.19 Seminars And Other Public Presentations ........ 414
16.20 Sales Contests And Incentive Programs ........ 415
16.21 Prompt Transmission Of Applications And Payments ........ 415
16.22 Redemption Of Outside Funds ........ 416
16.23 Closed-End Funds ........ 416
16.23.1 Business Development Companies (BDCs) ........ 417
16.24 Leveraged Loan Products ........ 418
16.25 Unit Investment Trusts (UITs) ........ 418
16.25.1 Suitability ........ 419
16.25.2 Sales Charges ........ 419
16.25.3 Primary Offerings ........ 420
16.25.4 Secondary Market Transactions ........ 420
16.25.5 Sales Charges And Discounts ........ 420
16.26 Funds Of Hedge Funds ........ 421
16.26.1 Characteristics And Risks Of Hedge Funds ........ 421
16.27 Exchange-Traded Funds (ETFs) ........ 421
16.27.1 Customer Disclosures For Pre- And Post-Market Sessions ........ 423
16.28 Floating-Rate Bank Loan Funds ........ 423

16.29 Alternative Mutual Funds ..... 424
17 MUNICIPAL SECURITIES ..... 425
16 MUNICIPAL SECURITIES ..... 425
17.1 Administration and Operations ..... 425
17.1.1 Fees and Assessments ..... 425
17.1.2 Registration Requirements ..... 425
17.1.3 Municipal Securities Representatives (Series 52) ..... 425
17.1.4 Limited Representatives ..... 425
17.1.5 Apprentices ..... 426
17.1.6 Municipal Securities Sales Supervisors ..... 426
17.1.7 Municipal Securities Principals ..... 426
17.1.8 General Securities Principals (Series 24) ..... 426
17.1.9 Non-Registered Employees ..... 426
17.1.10 Continuing Education (CE) ..... 427
17.1.11 Offices ..... 427
17.1.12 Notifications to MSRB ..... 428
17.1.13 Anti-Money Laundering Program ..... 428
17.1.14 Fidelity Bonding Requirements ..... 428
17.1.15 Books and Records ..... 428
17.1.16 Confirmations ..... 428
17.1.17 Control Relationships ..... 429
17.1.18 Disclosure of Interest in Distribution ..... 429
17.1.19 Reciprocal Dealings with Investment Companies ..... 430
17.1.20 Use of Ownership Information ..... 430
17.1.21 Customer Account Transfers ..... 430
17.1.22 Transactions for Employees of Other Municipal Dealers ..... 430
17.1.23 Written Supervisory Procedures ..... 430
17.1.24 Contact Information ..... 431
17.1.25 Compliance with Regulatory Requests ..... 431
17.2 Bank Dealers ..... 431
17.2.1 Separately Identifiable Department or Division: Bank Dealers ..... 431
17.2.2 Referral of Inquiries or Requests: Bank Dealers ..... 431
17.2.3 Supervision: Bank Dealers ..... 431
17.3 Sales of Municipal Securities ..... 431
17.3.1 Conduct of Municipal Securities Business ..... 432
17.3.2 Suitability ..... 432
17.3.3 Minimum Denominations ..... 435
17.3.4 Material Events Disclosures (Time of Trade) ..... 437
17.3.5 Customer Accounts ..... 439
17.3.6 Complaints about Municipal Products or Public Finance ..... 440
17.3.7 MSRB Rules ..... 440
17.3.8 529 College Savings Plans (Municipal Fund Securities or 529 Plans) ..... 441
17.4 Investor And Municipal Advisory Client Education And Protection ..... 445
17.5 Sponsoring Meetings and Conferences Involving Issuers ..... 445
17.6 Communications with the Public for Municipal Bonds ..... 446
17.6.1 Performance Data ..... 446
17.6.2 Telemarketing ..... 446
17.6.3 Advertising (Municipal Bonds) ..... 446
17.7 Best Execution ..... 447
17.7.1 Determining Best Available Price ..... 449
17.7.2 Limited Price Availability ..... 449
17.7.3 Orders for SMMPs ..... 450
17.7.4 Extreme Market Conditions ..... 450
17.7.5 Documenting Order Pricing ..... 450
17.7.6 Procedures and Controls ..... 450
17.8 Supervisory System, Procedures and Controls ..... 451
17.9 Municipal Underwritings ..... 451
17.9.1 Negotiated Underwritings and Private Placements ..... 452

17.9.2 Competitive Underwritings and Private Placements ........ 454
17.9.3 Due Diligence Approval: Negotiated Underwritings ........ 457
17.9.4 Commitment Approval: Competitive Underwritings ........ 457
17.9.5 Duties of Underwriters to Issuers: Negotiated Deals ........ 458
17.9.6 Underwriting Due Diligence Committee ........ 459
17.9.7 Underwriting Policy & Disclosure Committee ........ 460
17.9.8 Selection and Approval of Underwriter's Counsel ........ 460
17.10 Sales to Investors ........ 463
17.11 G-17 Disclosures ........ 463
17.11.1 Timing of Disclosures ........ 464
17.12 Disclosures (Underwriting) ........ 465
17.13 Complex Financings ........ 466
17.14 Timing and Manner of Disclosures Regarding Underwriter's Role; Underwriter Compensation; And Other Conflicts Disclosures ........ 467
17.14.1 Timing and Manner of Disclosures Regarding Structure of Issue ........ 467
17.14.2 Acknowledgment of Disclosures ........ 467
17.15 Issuer Disclosure Documents ........ 468
17.16 Excessive Compensation (Underwriting) ........ 468
17.17 Fair Pricing (Underwriting) ........ 468
17.18 Changes in Bond Authorizing Documents ........ 468
17.19 Conflicts Of Interest ........ 469
17.19.1 Payment To or From Third Parties ........ 469
17.19.2 Profit-Sharing With Investors ........ 469
17.19.3 Credit Default Swaps ........ 469
17.20 Retail Order Periods ........ 469
17.21 Dealer Payments to Issuer Personnel ........ 470
17.22 Issuer Continuing Disclosures ........ 470
17.23 CUSIP Numbers ........ 470
17.24 Underwriter Registration ........ 471
17.25 Limited Use of NRO Designation ........ 471
17.26 Expenses in Connection with New Issues ........ 471
17.27 New Issue Sales during the Underwriting Period ........ 471
17.27.1 Retail Order Periods ........ 472
17.28 Contingency Offerings ........ 472
17.29 Municipal Underwriting Closing Procedure ........ 472
17.30 Private Placements ........ 473
17.31 Rule 144A Securities ........ 473
17.32 Recordkeeping (Underwritings) ........ 474
17.33 Official Statements ........ 474
17.33.1 Providing Official Statements to Dealers, Purchasers, and Others ........ 474
17.34 Municipal Underwriter Submissions to EMMA ........ 475
17.35 Filing Official Statements and Advance Refunding Documents with the MSRB ........ 477
17.36 Short-term Obligation Rate Transparency (SHORT) System ........ 478
17.37 Syndicate Practices ........ 479
17.38 Direct Purchases and Bank Loans ........ 481
17.39 Financial Advisor Activities ........ 482
17.39.1 Financial Advisory Relationship Defined ........ 482
17.39.2 Professional Qualifications – Financial Advisors ........ 483
17.39.3 Written Agreements – Financial Advisors ........ 483
17.39.4 Prohibition against Underwriting or Placement Activities ........ 483
17.39.5 Official Statements – Financial Advisors ........ 483
17.39.6 Advanced Refunded Securities ........ 483
17.39.7 Timely Dissemination of Info of Advance Refunding ........ 483
17.39.8 Confidentiality of Non-Public Information of Advance Refunding ........ 484
17.39.9 Recordkeeping – Financial Advisors ........ 484
17.40 Solicitation of Municipal Securities Business ........ 484
17.41 Trading and Handling Customer Orders ........ 485
17.42 Quotations ........ 485

17.43 Fair Prices ........ 486
17.44 Official Statements ........ 486
17.45 Records of Orders ........ 486
17.46 Mark-Ups and Mark-Downs ........ 486
17.46.1 Mark-Up Guidelines ........ 487
17.47 MSRB Principal Transactions ........ 487
17.48 As Agent Trades ........ 487
17.48.1 Commissions on Agency Transactions ........ 488
17.49 Reports of Transactions ........ 488
17.49.1 Fictitious Reports ........ 489
17.50 Step Outs ........ 489
17.51 System Outages ........ 489
17.52 Inventory Positions ........ 490
17.52.1 Pricing Positions ........ 490
17.53 Errors ........ 491
17.53.1 Cancels and Re-bills ........ 491
17.54 Traders' Personal Accounts ........ 491
17.55 Prohibited Activities ........ 491
17.55.1 Inside Information ........ 491
17.55.2 Fraud or Misrepresentation ........ 491
17.55.3 Improper Use of Assets ........ 492
17.55.4 Financial Arrangements ........ 492
17.55.5 Market Manipulation ........ 492
17.55.6 Parking Securities ........ 492
17.55.7 Secret Profits ........ 492
17.55.8 Adjusted Trading ........ 492
17.56 Identifying and Resolving Firm Short Positions ........ 492
17.57 Identifying and Resolving Fails-to-Receive ........ 493
17.58 Gifts ........ 493
17.58.1 Introduction ........ 493
17.58.2 Exceptions ........ 493
17.58.3 Offerings ........ 494
17.59 Sales Contests ........ 494
17.60 Political Contributions ........ 494
17.60.1 Introduction ........ 495
17.60.2 Summary of Key Requirements ........ 495
17.60.3 Definitions ........ 496
17.60.4 Types of Contributions Included ........ 497
17.60.5 Contributions Subject To Political Contribution Limitations and Reporting ........ 498
17.60.6 Excluded Contributions ........ 498
17.60.7 Look-Back and Look-Forward Provisions ........ 498
17.60.8 Automatic Exemptions ........ 498
17.60.9 Political Action Committees (PACs) ........ 499
17.60.10 Approval ........ 500
17.60.11 Prohibited Solicitations and Activities ........ 500
17.60.12 Prohibited Indirect Payments ........ 500
17.61 G-37 Records To Be Maintained By the Firm ........ 500
17.62 Quarterly Report ........ 501
18 GOVERNMENT SECURITIES ........ 502
18.1 Government Securities Act Amendments Of 1993 ........ 502
18.1.1 Sections 102, 105, and 106 - Rulemaking Authority ........ 502
18.1.2 Section 103 - Transaction Records ........ 502
18.1.3 Section 104 - Large Position Reporting ........ 502
18.1.4 Section 107 - Market Information ........ 502
18.2 Sales ........ 502
18.3 Mark-Up Policy ........ 503
18.3.1 Prevailing Market Price ........ 503
18.3.2 "Similar" Securities ........ 505

Confidential Exhibit 020-000020

18.4 Government Sponsored Enterprise (GSE) Distributions ..... 506
18.4.1 Definitions ..... 507
18.4.2 Master Agreements ..... 507
18.4.3 Delivery Of Offering Materials ..... 507
18.4.4 Order Records ..... 508
18.4.5 No Assurance Of Execution ..... 508
18.4.6 Distribution Report ..... 508
18.4.7 Single Class TBAs ..... 508
18.5 Trading ..... 508
18.5.1 Fair Prices ..... 508
18.5.2 Mark-Ups And Mark-Downs ..... 508
18.5.3 Commissions On Agency Transactions ..... 509
18.5.4 Inventory Positions ..... 509
18.5.5 Traders' Personal Accounts ..... 509
18.5.6 Review Of Transactions ..... 509
18.6 Transaction Records ..... 509
18.7 Large Position Reporting ..... 509
18.8 Prohibited Activities ..... 509
18.8.1 Inside Information ..... 509
18.8.2 Financial Arrangements ..... 510
18.8.3 Market Manipulation ..... 510
18.8.4 Parking Securities ..... 510
18.8.5 Secret Profits ..... 510
18.8.6 Adjusted Trading ..... 510
19 COLLATERALIZED MORTGAGE OBLIGATIONS (CMOs) ..... 511
19.1 Introduction ..... 511
19.2 Characteristics And Risks ..... 511
19.2.1 Interest Only Securities (IOs) ..... 511
19.2.2 Principal Only Securities (POs) ..... 511
19.2.3 Floating Rate Tranches (Floaters) and Inverse Floaters ..... 512
19.2.4 Accrual Bonds Or Z-Tranches ..... 512
19.3 Suitability ..... 512
19.4 Ginnie Mae REMICs ..... 513
19.5 Required Education Material ..... 513
19.6 Inverse Floaters, IOs, POs Disclosure ..... 513
19.7 Communications With The Public ..... 513
19.7.1 Bids ..... 513
19.7.2 Disclosures ..... 513
19.7.3 Radio/Television Advertisements ..... 514
19.7.4 Bloomberg And Other Financial Services ..... 514
19.8 Trading ..... 514
19.8.1 Fair Prices ..... 514
19.8.2 Mark-Up Policy ..... 514
19.8.3 Inventory Positions ..... 517
19.8.4 CMO Errors ..... 517
19.8.5 Cancels And Rebills ..... 517
19.8.6 Traders' Personal Accounts ..... 518
19.9 Prohibited Activities ..... 518
19.9.1 Inside Information ..... 518
19.9.2 Financial Arrangements ..... 518
19.9.3 Market Manipulation ..... 518
19.9.4 Parking Securities ..... 518
19.9.5 Secret Profits ..... 518
19.9.6 Adjusted Trading ..... 518
19.10 Review Of Transactions ..... 519
19.11 Confirmations ..... 519
20 BANK AFFILIATED BROKER DEALERS ..... 520
20.1 Introduction ..... 520

20.2 FRB Operating Standards Responsibility ... 520
20.3 Limitations On Business ... 520
20.3.1 Areas Of Permitted Business ... 520
20.3.2 Approval Of New Products And Services ... 521
20.4 Directors' And Executive Officers' Transactions And Fees ... 521
20.4.1 Definitions ... 521
20.4.2 List Of Directors And Officers ... 521
20.4.3 Prohibition Against Waiving Fees ... 521
20.4.4 Execution Prices Of Transactions ... 521
20.4.5 Records Of Transactions ... 521
20.5 Prohibited Activities ... 522
20.5.1 Falsification Of Records ... 522
20.5.2 Tying Of Products And Services ... 522
20.6 Trades Between BOKFS and BOKF, NA ... 522
20.6.1 Verification of Trades Between BOKFS and BOKF, NA ... 522
20.7 Service Agreements ... 523
20.7.1 Marketing, Affiliate and Networking Relationships ... 523
20.8 Suspicious Activity Reports ... 523
20.9 Communications With The Public ... 524
20.9.1 Disclosure Requirements ... 524
20.9.2 Disclosure Statement ... 524
20.9.3 New Account Disclosures And Customer Acknowledgment ... 524
20.9.4 Retail Communications ... 525
20.9.5 Oral Disclosures ... 525
20.9.6 Confirmations And Statements ... 525
20.9.7 Use Of Bank And Financial Institution Logo And Names ... 526
20.10 Cross-Selling Programs ... 526
20.11 Insurance Coverage ... 526
20.12 Branch Office Reviews ... 526
20.13 Interagency Statement On Retail Sales On Bank Premises ... 527
20.13.1 Disclosures And Advertising ... 527
20.13.2 Setting And Circumstances ... 527
20.13.3 Qualifications And Training ... 527
20.13.4 Suitability And Sales Practices ... 527
20.13.5 Compensation ... 527
20.14 Proprietary Trading Prohibitions/Restrictions And Interests In/Relationships With Hedge Funds and Private Equity Funds ("Volcker Rule") ... 528
20.15 Volcker Rule ... 529
20.16 FRB Order and Revenue Test ... 529
21 INVESTMENT ADVISER ACTIVITIES ... 531
21.1 DVP/RVP Accounts ... 531
21.2 Investment Adviser Defined ... 531
21.3 Investment Adviser Activities Must Be Authorized ... 531
21.4 Registration Requirements ... 532
21.4.1 Introduction ... 532
21.4.2 Fee-Sharing With Investment Advisers ... 532
21.4.3 Discretionary Accounts ... 532
21.5 Recommending Outside Investment Advisers ... 532
21.6 Solicitors For Investment Advisers ... 532
21.7 Wrap Fee Programs ... 533
21.7.1 Introduction ... 534
21.7.2 Fees And Commissions ... 534
21.7.3 Eligible Investment Advisers ... 534
21.7.4 Fees ... 534
21.7.5 Agreements ... 535
21.7.6 Disclosure Document ... 535
21.7.7 Periodic Reports To Customers ... 535
21.7.8 Review Of Wrap Fee Accounts ... 535

21.7.9 Communications With The Public ..... 535
21.8 Adviser Compensation Arrangements ..... 535
22 INSURANCE PRODUCTS ..... 537
22.1 Approved Insurance Products ..... 537
22.2 Licenses And Appointments ..... 537
22.2.1 Requests For Licenses ..... 538
22.2.2 Non-Resident Licenses ..... 538
22.2.3 Unsolicited Insurance Transactions ..... 538
22.2.4 Additions To Existing Annuity Policies ..... 538
22.3 Sales Guidelines ..... 538
22.3.1 General Guidelines ..... 538
22.3.2 Life Insurance And Other Non-Annuity Products ..... 539
22.3.3 Annuities ..... 539
22.4 Sales To Military Personnel On Military Installations ..... 542
22.5 Purchases ..... 542
22.5.1 Life Insurance And Other Non-Annuity Products ..... 542
22.5.2 Annuities ..... 542
22.6 Replacements ..... 543
22.6.1 Definition ..... 543
22.6.2 Suitability Of Replacements ..... 544
22.6.3 Replacement Procedures ..... 544
22.6.4 1035 Exchanges ..... 544
22.6.5 Prohibited Replacement Activities ..... 545
22.7 Variable Products ..... 545
22.7.1 Training ..... 545
22.7.2 General Sales Guidelines And Suitability Requirements ..... 546
22.7.3 Requirements For Specific Products ..... 547
22.7.4 Customer Applications, Payments, And Contracts (Other Than Deferred Variable Annuities) ..... 554
22.7.5 Communications With The Public Regarding Variable Products ..... 554
22.7.6 Replacements ..... 556
22.7.7 Redemptions ..... 556
22.7.8 Annuity Buybacks ..... 556
22.7.9 Considerations For Newly-Hired RRs ..... 557
23 MUNICIPAL ADVISOR ACTIVITIES ..... 558
23.1 Administration and Operations ..... 559
23.1.1 Fees and Assessments ..... 559
23.2 Registration Requirements ..... 560
23.2.1 Municipal Advisor Representatives ..... 560
23.2.2 Municipal Advisor Principals ..... 561
23.2.3 Professional Qualification Requirements ..... 561
23.2.4 Examination Fees ..... 561
23.2.5 Non-Registered Employees ..... 561
23.3 Supervisory and Compliance Obligations of Municipal Advisors ..... 562
23.3.1 Annual Certification ..... 562
23.3.2 Supplementary Material ..... 562
23.4 Gifts, Gratuities and Non-Cash Compensation ..... 563
23.5 Disciplinary Actions by Appropriate Regulatory Agencies ..... 565
23.6 Notifications to MSRB ..... 565
23.7 Books and Records ..... 565
23.7.1 [MSRB Rule G-8 and G-9] ..... 565
23.7.2 Preservation (Retention) of Books and Records ..... 565
23.8 Written Supervisory Procedures ..... 566
23.8.1 Contact Information ..... 566
23.8.2 Compliance with Regulatory Requests ..... 566
23.9 Municipal Advisor (MA) Activities ..... 566
23.9.1 Conduct of MA Activities ..... 567
23.10 Conduct for Municipal Activities ..... 567
23.10.1 Definitions ..... 567

23.10.2 Municipal Advisory Agreement ... 568
23.10.3 Recommendations ... 568
23.10.4 Prohibitions ... 568
23.10.5 Complaints ... 568
23.11 MSRB Rules ... 569
23.12 Prohibition Against Underwriting or Placement Activities ... 569
23.13 Required Disclosures ... 569
23.14 For Accounts with Proceeds of Municipal Securities or Municipal Escrow Investments ... 570
23.15 Underwriter Letter of Intent ... 570
23.16 Disclosures Concerning the Underwriter's Role ... 571
24 FHLBANK POLICIES AND PROCEDURES ... 573
24.1 General Information ... 573
24.2 Training ... 573
24.2.1 FHLBanks Underwriting Policies & Procedures (Bonds) ... 574
24.2.2 FHLBank Discount Note Policies & Procedures ... 577
25 MISCELLANEOUS TOPICS ... 580
25.1 Abandoned Property ... 580
25.2 Precious Metals ... 580
26 VOLCKER RULE PROCEDURES: GOVERNMENT AGENCY SECURITIES ... 583
Government Agency Securities ... 583
26.1 Summary ... 583
26.2 Volcker Rule Activity ... 583
26.3 Managers ... 583
26.4 Summary of Activity ... 583
26.5 Exemption Upon Which We Rely ... 583
26.6 Policies and Procedures ... 583
26.6.1 Internal controls and limits monitoring ... 584
26.6.2 Additional escalation procedures ... 584
26.6.3 Corrective action ... 584
26.6.4 Trader compensation ... 584
26.6.5 Licensing/registration ... 584
26.7 Specific requirements ... 584
26.7.1 Instruments ... 584
26.7.2 Limits ... 585
26.8 Risk Management ... 585
27 VOLCKER RULE PROCEDURES: CORPORATE & TAXABLE MUNIS ... 587
Corporate and Taxable Munis ... 587
Summary ... 587
27.1 Volcker Rule Activity ... 587
27.2 Managers ... 587
27.3 Summary of Activity ... 587
27.4 Exemption Upon Which We Rely ... 587
27.5 Policies and Procedures ... 588
27.5.1 Internal controls and limits monitoring ... 588
27.5.2 Additional Escalation Procedures ... 588
27.5.3 Corrective Action ... 588
27.5.4 Trader Compensation ... 588
27.5.5 Licensing/Registration ... 588
27.6 Specific Requirements ... 589
27.6.1 Instruments ... 589
27.6.2 Limits ... 589
27.7 Risk Management ... 590
28 VOLCKER RULE PROCEDURES: GSE MBS ... 591
Proprietary Trading GSE Mortgage Backed Paper ... 591
28.1 Summary ... 591
28.2 Volcker Rule Activity ... 591
28.3 Managers ... 591
28.4 Summary of Activity ... 591

28.5 Exemption Upon Which We Rely ..... 591
28.6 Policies and Procedures ..... 592
28.6.1 Internal controls and limits monitoring ..... 592
28.6.2 Additional escalation procedures ..... 592
28.6.3 Corrective action ..... 592
28.6.4 Trader compensation ..... 592
28.6.5 Licensing/registration ..... 592
28.7 Specific requirements ..... 593
28.7.1 Instruments ..... 593
28.7.2 Limits ..... 593
28.8 Risk Management ..... 594
29 VOLCKER RULE PROCEDURES: PREFERRED EQUITY ..... 595
29.1 Summary ..... 595
29.1.1 Volcker Rule Activity ..... 595
29.2 Managers ..... 595
29.3 Summary of Activity ..... 595
29.3.1 Exemption Upon Which We Rely ..... 595
29.4 Policies and Procedures ..... 595
29.4.1 Internal controls and limits monitoring ..... 595
29.4.2 Additional escalation procedures ..... 596
29.4.3 Corrective action ..... 596
29.4.4 Trader compensation ..... 596
29.4.5 Licensing/registration ..... 596
29.5 Specific requirements ..... 596
29.5.1 Instruments ..... 596
29.5.2 Limits ..... 597
29.6 Risk Management ..... 597
30 VOLCKER RULE PROCEDURES: TAX EXEMPT MUNICIPAL BOND TRADING ..... 599
30.1 Summary ..... 599
30.2 Volcker Rule Activity ..... 599
30.3 Managers ..... 599
30.4 Summary of Activity ..... 599
30.5 Exemption Upon Which We Rely ..... 599
30.6 Policies and Procedures ..... 599
30.6.1 Internal controls and limits monitoring ..... 599
30.6.2 Additional escalation procedures ..... 600
30.6.3 Corrective action ..... 600
30.6.4 Trader compensation ..... 600
30.6.5 Licensing/registration ..... 600
30.7 Specific requirements ..... 600
30.7.1 Instruments ..... 600
30.7.2 Limits ..... 601
30.8 Risk Management ..... 601

# INTRODUCTION

## IMPORTANT NOTES TO KEEP IN MIND

When reading this manual, it is important to remember a few key items:

- "Signatures" evidencing reviews should always include a date and you may sign with your initials or a signature - either is acceptable
  - "Signatures" may also be electronic in nature such as when reviewing the trade blotters or other electronic reports
- References to files may be either electronic or hard copy in nature - even if the procedure does not clearly state one or the other
- References to the "Bank" throughout the manual mean BOKF, NA
- References to a "Designated Supervisor" are usually clarified by the applicable position in parenthesis immediately following - such as "Designated Supervisor (Sales Supervisors)." This is to help clarify the designated supervisor for a specific topic/subject/task.
  - Please provide additional clarification - if you know the answer - for those references to only a designated supervisor

## BANK POLICIES

Certain policies in this manual are only a small sub-set of the applicable BOKF, NA ("Bank") policies. This manual is not meant to replace or overrule the Bank policies. As an employee of BOKF, NA, you are responsible for complying with all applicable Bank policies as well as the regulatory policies listed in this manual. The Bank policies may include:

- BOK Financial Standards of Conduct
- Corporate Information Protection Policies
- BSA/AML Policies
- Human Resources Policies
- Gift and Gratuities Policies
- Political Contributions Policies
- Outside Business Activities Policies
- Conflicts of Interest Policies
- Code of Ethics

This is not an all-inclusive list. **You will be held accountable to the strictest policy if conflicts occur between Bank and BOKFS policy.**

BOK Financial Securities, Inc. (BOKFS) will conduct its business consistent with the highest standards of commercial honor and just and equitable principles of trade. Keeping our customers' interest foremost is key to BOKFS' success. The trust of our customers and BOKFS' reputation are of paramount importance. Effective supervision is an integral part of achieving our goals in serving our customers.

"Compliance" is not a static event; it is a process which evolves in tandem with regulations that govern our industry and the circumstances of each particular interaction. This manual includes BOKFS' supervisory policies and procedures to provide guidance to designated supervisors in their oversight of the Firm's business. It is a working document and reference for supervisors and will be updated when necessary.

It is recognized that supervision must be a flexible tool for use by those charged with managing the Firm's various activities. While it is generally expected these procedures will be followed, supervisors are encouraged to adapt these procedures to the needs of BOKFS, their particular department, and the employees and customers of BOKFS. These procedures are meant to be a basic framework upon which supervisors oversee the Firm's activities.

This manual does not attempt to set forth all of the rules and regulations with which employees must be familiar, nor does it attempt to deal with all situations involving unusual circumstances. When questions arise, refer them to Compliance for assistance.

Supervision may be delegated to others, where appropriate; however, designated supervisors are responsible for ultimate supervision of assigned areas. The term "employee" as used in this manual includes RRs (and others as identified by BOKFS) who may be independent contractors for tax and compensation purposes.

This manual is the property of BOK Financial Securities, Inc. (BOKFS) and may not be provided to anyone outside BOKFS without the permission of Compliance or the Firm's counsel.

## ACKNOWLEDGEMENT OF PROCEDURES

Upon receipt of a new, materially updated manual, associated persons will be asked to sign and return an attestation. The attestation may be provided in several different formats, including this acknowledgement form. It may also be sent electronically. Not all updates will require attestations.

### 2.18.14 Misrepresentations

Employees may not disseminate any information that falsely states or implies guarantees or approval of securities by the government or other institution such as government guarantee of securities that carry no such guarantee. SIPC may not be misrepresented as a guarantor of a customer's account against losses from transactions.

### 2.18.15 Bribes

No employee may offer or solicit explicit inducements to or from employees or representatives of other institutions or foreign governmental or political officials to obtain business. Entertainment and gifts in reasonable amounts are not included in this prohibition and are discussed in the section *Gifts, Gratuities And Entertainment*.

### 2.18.16 Acting Without Registration

| | |
|---|---|
| **Responsibility** | • Designated Supervisor (Sales Supervisors) |
| **Resources** | • New account forms<br>• Notices of registration status from Licensing & Registration<br>o Maintained in Registration Connection<br>• Reports of transactions effected by RRs not licensed in the customer's state of residency |
| **Frequency** | • Ongoing |
| **Action** | • Review new account forms to identify any out-of-state accounts where the RR may not be registered<br>• Review reports of transactions identifying unlicensed activity and follow up with RR<br>• Immediately refer any RRs requiring state registration to Licensing & Registration |
| **Record** | • Include a notation on the New Account form or report noting action taken<br>o Or in clearing firm's client profile |

No employee may engage in activities that require registration (selling securities, soliciting accounts, trading, *etc.*) unless registered in the appropriate capacities. Questions regarding the need for registration should be referred to Compliance.

### 2.18.17 Beneficiary on Non-Familial Accounts

With few exceptions, employees are prohibited from knowingly being named as a beneficiary on non-familial client accounts. Exceptions must be reviewed and approved by the Designated Supervisor and Compliance.

## 2.19 Computer Records, Equipment And Software

| | |
|---|---|
| **Responsibility** | • Designated Supervisor (Sales Supervisors)<br>• Compliance - lost devices or breach of data<br>• Bank |

| | |
|---|---|
| **Resources** | • Disks and other computer records maintained by a terminating employee<br>• Reports of lost devices |
| **Frequency** | • As required |
| **Action** | • Bank: Provide employees with education and policy information about proper use of computer and other electronic equipment including appropriate security measures and accessing customer information<br>• Bank: Instruct offices to secure equipment and information<br>• Designated Supervisor: Secure disks, computers, software, and other firm property when an employee terminates<br>• Designated Supervisor: Do not permit removal of firm equipment without approval<br>• Contact Compliance: Take action regarding lost devices including remote deactivation, if available, and assessment of whether a breach of customer information has or may occur |
| **Record** | • Inform Bank and CCO if device is lost or breached and there is a possibility that material information can be accessed by non-employees |

**Nothing in this manual related to computer records, equipment, and software is meant to replace or overrule the policies and procedures listed in the Corporate InformationSecurity Program Policy ("ISPP"). Refer to the ISPP for more detailed information regarding how BOKFS manages the security of our information assets.**

[redacted]

BOKFS considers its computer records, systems, and software to be corporate assets. Employees are responsible for protecting these assets from unauthorized use, destruction, or unauthorized modification. This includes a prohibition against violating copyright laws or licensing agreements applicable to computer software.

Physical equipment (PCs, printers, software, diskettes, *etc.*) must be placed in a secure location to avoid theft, tampering, unauthorized use, and environmental hazards (water, smoke, magnets, *etc.*). The use of personal computers for BOKFS business is subject to the same guidelines and restrictions as BOKFS computers.

When an employee terminates, any disks or other storage medium that includes proprietary information, including customer information, are considered property of BOKFS and must be left with BOKFS.

### 2.19.1 Laptop Computers And Other Mobile Devices

Employees who use laptops or other mobile devices for Firm business are responsible for the security of the device and the information contained on it. Serious security breaches can occur if a device containing or capable of accessing confidential information is lost or stolen.

Employees who use laptops for company business are required to comply with requirements provided by the Bank.

### 2.19.2 Reporting Lost Devices

- The loss of a mobile device **must be immediately reported to Compliance**.

### 2.19.3 Identifying And Reporting Data Breaches

- All employees are required to immediately report an identified potential intrusion into a mobile device or into BOKFS' systems.

### 2.19.4 Software

Software installed and used on electronic devices is limited to software approved by BOKFS. BOKFS will install or provide authorized software for business use including anti-virus and anti-malware protection.

Employees are strictly prohibited from installing software other than what is authorized by BOKFS.

### 2.19.5 Prohibited Downloading

Employees are prohibited from:

- Downloading customer and other confidential firm information from BOKFS' mainframe or other central records, unless specifically authorized
- Using portable devices such as USB key drives, MP3 players, mobile phones, and other devices for downloading information unless specifically authorized
- Downloading programs from the Web to BOKFS computers unless specifically authorized

## 2.20 Electronic Communications Policy

[FINRA Rule 3110(b)(4), 3110.07, 3110.08 and 3110.09]

This policy governs the use of electronic communications by employees including part-time employees and independent contractors. It applies during business hours and after-business hours. ***This is an important policy; employees will be required to certify annually that they are familiar with and will comply with the policy.***

**1. Firm electronic systems or communications devices are for firm business purposes and business communications must conform to accepted business standards and regulatory requirements.**

- Inappropriate communications (profanity, obscenity, threats, otherwise offensive content) are prohibited. Report threatening or harassing communications to Compliance.
- Communications must include current and valid information.
- Copyrighted material cannot be sent unless authorized; contact Compliance for assistance.
- Copyrighted software cannot be copied or transmitted to others unless authorized.
- References and/or links to web sites are a form of communications requiring Compliance approval prior to use.
- Communications that must be accompanied by a prospectus may not be sent electronically unless the prospectus is available as an electronic attachment or an electronic link is provided to access the prospectus.
- BOKFS and its employees are prohibited from sponsoring a social media site or using a communication device that includes technology which automatically erases or deletes content.

**2. Electronic business communications must be accessed and transmitted only through firm-sponsored systems.**

- Regulators require retention of business communications and firm systems are designed to comply with retention requirements.
- Approved firm-sponsored systems include:
  - o BYOD (Bring Your Own Device)
  - o E-mail and e-faxes through desk-top computers in Firm offices (the use of personal e-mail accounts for business communications is prohibited)

# #1

COMPLETE

**Collector:** Ema Inv tat on 1 (Ema )
**Started:** Thursday, February 01, 2018 11:10:19 AM
**Last Modified:** Thursday, February 01, 2018 11:16:35 AM
**Time Spent:** 00:06:16
**Email:**
**IP Address:**

Page 1

**Q1** Enter your name (first name last name).

Ronn e Dav s

**Q2** Enter your office address (full, physical address).

5956 Sherry Ln, Da as, TX 75225

**Q3** Enter your office phone number, including area code.

214-932-3081

**Q4** Has your home address changed during the previous six months? If "yes" and you have not already notified Licensing and Registration, please email Kim Eggers (keggers@bokf.com) immediately with the new address and the date of your move.

**No**

**Q5** What, if any, Professional Designation(s) do you currently hold?

**None**

**Q6** Do you have any pending customer complaints, litigation, arbitration, or have you received written correspondence from a client indicating dissatisfaction that you have not reported to compliance?If "yes", please contact Compliance (bokfscompliancereporting@bokf.com) immediately.

**No**

Page 2

**Q7** Pled guilty or nolo contendre ("no contest") to, or been charged with, any felony?

**No**

| | |
|---|---|
| **Q8** Pled guilty or nolo contendre ("no contest") to, or been charged with, any misdemeanor involving: investment or any investment related business fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | **No** |
| **Q9** Had any unsatisfied judgments or liens filed against you? | **No** |
| **Q10** Filed a bankruptcy or been involved in an involuntary bankruptcy petition or filing not previously reported to Compliance? (include last 10 years) | **No** |
| **Q11** Attended any product sponsor due diligence meetings or conferences (does not include BOKFS' product due diligence meetings)? If "yes", please email Compliance (bokfscompliancereporting@bokf.com) with the name of the sponsor, the date(s), and the location. | **No** |
| **Q12** Made any political contributions? | **No** |
| **Q13** If "yes", was the contribution reported to and pre-approved by Compliance? If not, then please complete the BOKFS Political Contribution Request Form immediately and return to Compliance (bokfscompliancereporting@bokf.com). | **N/A** |
| **Q14** Executed any Private Securities Transactions? NOTE: "Private securities transaction" shall mean any securities transaction outside the regular course or scope of an associated person's employment with a member, including, though not limited to, new offerings of securities which are not registered with the Commission. Also note that promissory notes often are securities. Even if a promissory note is not deemed a security, the RR has the obligation to obtain BOKFS' permission before engaging in any outside business activity involving the offer of promissory notes. | **No** |
| **Q15** If "yes", was the transaction pre-approved by BOKFS per policy? If not, then please complete the BOKFS - Private Securities Transaction Request form immediately and return to Compliance (bokfscompliancereporting@bokf.com). | **N/A** |

Page 3

| | |
|---|---|
| **Q16** In accordance with BOKFS' policy on gifts and gratuities, have all gifts given/received by you been reported via iTrade?If "no", then please report all gifts/gratuities via iTrade immediately. | **Yes** |
| **Q17** Are you aware that a written request must be made to participate in all paid or unpaid outside business activities including directorships, part-time employment, or volunteer work and that the request must receive pre-approval from Compliance? | **Yes** |
| **Q18** Do you have any paid or unpaid outside business activities that have not previously been reported to Compliance?If "yes", then please complete the BOKFS Outside Business Activity Form immediately and return to Compliance (bokfscompliancereporting@bokf.com). | **No** |
| **Q19** Are you an owner or partner in any business entity (ex. LLC, general partner, or limited partner)? | **No** |
| **Q20** If "yes", has the ownership/partnership been reported to Compliance?If not, then please complete the BOKFS Private Securities Transaction Request form and/or BOKFS Outside Business Activity Form as applicable and return to Compliance (bokfscompliancereporting@bokf.com) immediately. | **N/A** |
| **Q21** Are you or an immediate family member listed as Trustee or Successor Trustee of a client account (do not include an immediate family-related account)? | **No** |
| **Q22** Are you or an immediate family member named as Executor of a client account (do not include an immediate family-related account)? | **No** |
| **Q23** Are you or an immediate family member listed as a beneficiary in a client's Will (do not include Wills of immediate family members)? | **No** |
| **Q24** Do you create any type of comprehensive, consolidated statements - even if just for 1 client (Do not include clients set up on Black Diamond)? | **No** |

Page 4

**Q25** Estimate what percent of your business is in variable annuities.

**10 - 25%**

**Q26** Estimate what percent of your business is in IRA Rollovers.

**10 - 25%**

**Q27** Do you solicit Thrift Savings Plans ("TSPs") for rollovers?

**No**

**Q28** Do you have any client accounts (other than your personal accounts) addressed to send mail to your attention or to the Firm's attention? Note that duplicate statements being sent to your attention are allowed at the client's direction as long as the client is also receiving the statements and confirms. If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with the account number(s) and account name(s).

**No**

**Q29** Do you have discretionary authority over any client accounts that have not previously been reported to Compliance (do not include discretionary managed advisory accounts - i.e. PE7)?If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with the account number(s) and account name(s).

**No**

**Q30** Do you understand that you are prohibited from trading, either personally or on behalf of your family, friends, or clients, on material, nonpublic information and that material, nonpublic information cannot be communicated to anybody other than Compliance?

**Yes**

**Q31** Do you use devices or systems for electronic business/client communications other than those issued by, authorized by, or approved by the firm? Please exclude BOKF email, WebMail, authorized Bloomberg accounts, and/or approved social media accounts.If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with details of the device(s) used and how it is used.

**No**

**Q32** Do you use social media for business communications? Does not include posting contact information on LinkedIn.If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with details of the social media account(s) used and how it is used.

**No**

Page 5

| Question | Answer |
|---|---|
| **Q33** I am aware that I am responsible for checking the National and BOKFS "Do Not Call" lists prior to making cold calls. | **Yes** |
| **Q34** I am aware that information I obtain and material and/or applications I develop in the course of my employment is proprietary property of my employer and cannot be used to my advantage, nor taken with me, should I change employers. | **Yes** |
| **Q35** I am aware that I am responsible for checking BOKFS' Registration Connection page to ensure I am properly registered to conduct securities and/or insurance business in the states in which I solicit and/or conduct business. | **Yes** |
| **Q36** I certify that I am in full compliance with the firm's Anti-Money Laundering and Customer Identification Program policies. | **Yes** |
| **Q37** Are you currently an Investment Adviser Representative (registered through Series 65, Series 66, or Professional Designation)? | **Yes** |
| **Q38** As an Investment Adviser Representative, I understand that I am covered by the BOKFA Code of Ethics. I certify that I have received a copy of the BOKFA Code of Ethics within the past 12 months, have read and understood, and am in compliance with the requirements of the Code. | **Yes** |
| **Q39** I certify that I have received a copy of the BOKFS Written Supervisory Procedures and Bank Dealer policy manual, if applicable, that I have read and understood the requirements, and that I am in compliance with the requirements. | **Yes** |

**Q40** I certify that I am aware of the BOK Financial Risk Reporting Hotline (844.297.5946). BOKF is committed to providing all employees a workplace that treats people with fairness and respect, and maintains the highest standards for personal and professional integrity. The purpose of the Risk Reporting Hotline is to enable any BOKF officer, employee, or any of its vendors, contractors, customers, shareholders, or any other person ("covered persons") with direct knowledge about BOKF to report in good faith, without fear of retaliation, a suspected violation of any state or federal law or regulation related to accounting, internal control or auditing matters; a suspected violation of any securities laws or any other unlawful or unethical practice or activity; or a suspected violation of BOKF's Standard of Conduct and Code of Ethics ("Code").

**Yes**

**Q41** Please include any additional comments you may have regarding your Compliance Questionnaire.

**Respondent skipped this question**

# #1

COMPLETE

**Collector:** Ema Inv tat on 1 (Ema )
**Started:** Monday, February 05, 2018 3:51:35 PM
**Last Modified:** Monday, February 05, 2018 3:56:06 PM
**Time Spent:** 00:04:31
**Email:** [redacted]
**IP Address:**

## Page 1

**Q1** Enter your name (first name last name).

Me ssa De -C d

**Q2** Enter your office address (full, physical address).

5956 Sherry Lane Su te 700, Da as, TX 75225

**Q3** Enter your office phone number, including area code.

214-346-3961

**Q4** Has your home address changed during the previous six months? If "yes" and you have not already notified Licensing and Registration, please email Kim Eggers (keggers@bokf.com) immediately with the new address and the date of your move.

**No**

**Q5** What, if any, Professional Designation(s) do you currently hold?

**None**

**Q6** Do you have any pending customer complaints, litigation, arbitration, or have you received written correspondence from a client indicating dissatisfaction that you have not reported to compliance?If "yes", please contact Compliance (bokfscompliancereporting@bokf.com) immediately.

**No**

## Page 2

**Q7** Pled guilty or nolo contendre ("no contest") to, or been charged with, any felony?

**No**

| | |
|---|---|
| **Q8** Pled guilty or nolo contendre ("no contest") to, or been charged with, any misdemeanor involving: investment or any investment related business fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | **No** |
| **Q9** Had any unsatisfied judgments or liens filed against you? | **No** |
| **Q10** Filed a bankruptcy or been involved in an involuntary bankruptcy petition or filing not previously reported to Compliance? (include last 10 years) | **No** |
| **Q11** Attended any product sponsor due diligence meetings or conferences (does not include BOKFS' product due diligence meetings)? If "yes", please email Compliance (bokfscompliancereporting@bokf.com) with the name of the sponsor, the date(s), and the location. | **No** |
| **Q12** Made any political contributions? | **No** |
| **Q13** If "yes", was the contribution reported to and pre-approved by Compliance? If not, then please complete the BOKFS Political Contribution Request Form immediately and return to Compliance (bokfscompliancereporting@bokf.com). | **N/A** |
| **Q14** Executed any Private Securities Transactions? NOTE: "Private securities transaction" shall mean any securities transaction outside the regular course or scope of an associated person's employment with a member, including, though not limited to, new offerings of securities which are not registered with the Commission. Also note that promissory notes often are securities. Even if a promissory note is not deemed a security, the RR has the obligation to obtain BOKFS' permission before engaging in any outside business activity involving the offer of promissory notes. | **No** |
| **Q15** If "yes", was the transaction pre-approved by BOKFS per policy? If not, then please complete the BOKFS - Private Securities Transaction Request form immediately and return to Compliance (bokfscompliancereporting@bokf.com). | **N/A** |

Page 3

**Q16** In accordance with BOKFS' policy on gifts and gratuities, have all gifts given/received by you been reported via iTrade?If "no", then please report all gifts/gratuities via iTrade immediately.

**N/A**

**Q17** Are you aware that a written request must be made to participate in all paid or unpaid outside business activities including directorships, part-time employment, or volunteer work and that the request must receive pre-approval from Compliance?

**Yes**

**Q18** Do you have any paid or unpaid outside business activities that have not previously been reported to Compliance?If "yes", then please complete the BOKFS Outside Business Activity Form immediately and return to Compliance (bokfscompliancereporting@bokf.com).

**No**

**Q19** Are you an owner or partner in any business entity (ex. LLC, general partner, or limited partner)?

**No**

**Q20** If "yes", has the ownership/partnership been reported to Compliance?If not, then please complete the BOKFS Private Securities Transaction Request form and/or BOKFS Outside Business Activity Form as applicable and return to Compliance (bokfscompliancereporting@bokf.com) immediately.

**N/A**

**Q21** Are you or an immediate family member listed as Trustee or Successor Trustee of a client account (do not include an immediate family-related account)?

**No**

**Q22** Are you or an immediate family member named as Executor of a client account (do not include an immediate family-related account)?

**No**

**Q23** Are you or an immediate family member listed as a beneficiary in a client's Will (do not include Wills of immediate family members)?

**No**

**Q24** Do you create any type of comprehensive, consolidated statements - even if just for 1 client (Do not include clients set up on Black Diamond)?

**No**

Page 4

**Q25** Estimate what percent of your business is in variable annuities.

**N/A**

**Q26** Estimate what percent of your business is in IRA Rollovers.

**N/A**

**Q27** Do you solicit Thrift Savings Plans ("TSPs") for rollovers?

**No**

**Q28** Do you have any client accounts (other than your personal accounts) addressed to send mail to your attention or to the Firm's attention? Note that duplicate statements being sent to your attention are allowed at the client's direction as long as the client is also receiving the statements and confirms. If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with the account number(s) and account name(s).

**No**

**Q29** Do you have discretionary authority over any client accounts that have not previously been reported to Compliance (do not include discretionary managed advisory accounts - i.e. PE7)?If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with the account number(s) and account name(s).

**No**

**Q30** Do you understand that you are prohibited from trading, either personally or on behalf of your family, friends, or clients, on material, nonpublic information and that material, nonpublic information cannot be communicated to anybody other than Compliance?

**Yes**

**Q31** Do you use devices or systems for electronic business/client communications other than those issued by, authorized by, or approved by the firm? Please exclude BOKF email, WebMail, authorized Bloomberg accounts, and/or approved social media accounts.If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with details of the device(s) used and how it is used.

**No**

**Q32** Do you use social media for business communications? Does not include posting contact information on LinkedIn.If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with details of the social media account(s) used and how it is used.

**No**

Page 5

| | |
|---|---|
| **Q33** I am aware that I am responsible for checking the National and BOKFS "Do Not Call" lists prior to making cold calls. | **Yes** |
| **Q34** I am aware that information I obtain and material and/or applications I develop in the course of my employment is proprietary property of my employer and cannot be used to my advantage, nor taken with me, should I change employers. | **Yes** |
| **Q35** I am aware that I am responsible for checking BOKFS' Registration Connection page to ensure I am properly registered to conduct securities and/or insurance business in the states in which I solicit and/or conduct business. | **Yes** |
| **Q36** I certify that I am in full compliance with the firm's Anti-Money Laundering and Customer Identification Program policies. | **Yes** |
| **Q37** Are you currently an Investment Adviser Representative (registered through Series 65, Series 66, or Professional Designation)? | **No** |
| **Q38** As an Investment Adviser Representative, I understand that I am covered by the BOKFA Code of Ethics. I certify that I have received a copy of the BOKFA Code of Ethics within the past 12 months, have read and understood, and am in compliance with the requirements of the Code. | **N/A** |
| **Q39** I certify that I have received a copy of the BOKFS Written Supervisory Procedures and Bank Dealer policy manual, if applicable, that I have read and understood the requirements, and that I am in compliance with the requirements. | **Yes** |

**Q40** I certify that I am aware of the BOK Financial Risk Reporting Hotline (844.297.5946). BOKF is committed to providing all employees a workplace that treats people with fairness and respect, and maintains the highest standards for personal and professional integrity. The purpose of the Risk Reporting Hotline is to enable any BOKF officer, employee, or any of its vendors, contractors, customers, shareholders, or any other person ("covered persons") with direct knowledge about BOKF to report in good faith, without fear of retaliation, a suspected violation of any state or federal law or regulation related to accounting, internal control or auditing matters; a suspected violation of any securities laws or any other unlawful or unethical practice or activity; or a suspected violation of BOKF's Standard of Conduct and Code of Ethics ("Code").

**Yes**

**Q41** Please include any additional comments you may have regarding your Compliance Questionnaire.

**Respondent skipped this question**

# #1

COMPLETE

**Collector:** Ema Inv tat on 1 (Ema )
**Started:** Wednesday, February 14, 2018 12:05:11 PM
**Last Modified:** Wednesday, February 14, 2018 12:13:33 PM
**Time Spent:** 00:08:22
**Email:**
**IP Address:** 2

Page 1

**Q1** Enter your name (first name last name).

V ck e W se

**Q2** Enter your office address (full, physical address).

5956 Sherry Lane, Su te 700, Da as, TX 75225

**Q3** Enter your office phone number, including area code.

2143463940

**Q4** Has your home address changed during the previous six months? If "yes" and you have not already notified Licensing and Registration, please email Kim Eggers (keggers@bokf.com) immediately with the new address and the date of your move.

**No**

**Q5** What, if any, Professional Designation(s) do you currently hold?

**CFP,**

**Other**

**Q6** Do you have any pending customer complaints, litigation, arbitration, or have you received written correspondence from a client indicating dissatisfaction that you have not reported to compliance?If "yes", please contact Compliance (bokfscompliancereporting@bokf.com) immediately.

**No**

Page 2

**Q7** Pled guilty or nolo contendere ("no contest") to, or been charged with, any felony?

**No**

| | |
|---|---|
| **Q8** Pled guilty or nolo contendre ("no contest") to, or been charged with, any misdemeanor involving: investment or any investment related business fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | **No** |
| **Q9** Had any unsatisfied judgments or liens filed against you? | **No** |
| **Q10** Filed a bankruptcy or been involved in an involuntary bankruptcy petition or filing not previously reported to Compliance? (include last 10 years) | **No** |
| **Q11** Attended any product sponsor due diligence meetings or conferences (does not include BOKFS' product due diligence meetings)? If "yes", please email Compliance (bokfscompliancereporting@bokf.com) with the name of the sponsor, the date(s), and the location. | **No** |
| **Q12** Made any political contributions? | **No** |
| **Q13** If "yes", was the contribution reported to and pre-approved by Compliance? If not, then please complete the BOKFS Political Contribution Request Form immediately and return to Compliance (bokfscompliancereporting@bokf.com). | **N/A** |
| **Q14** Executed any Private Securities Transactions? NOTE: "Private securities transaction" shall mean any securities transaction outside the regular course or scope of an associated person's employment with a member, including, though not limited to, new offerings of securities which are not registered with the Commission. Also note that promissory notes often are securities. Even if a promissory note is not deemed a security, the RR has the obligation to obtain BOKFS' permission before engaging in any outside business activity involving the offer of promissory notes. | **No** |
| **Q15** If "yes", was the transaction pre-approved by BOKFS per policy? If not, then please complete the BOKFS - Private Securities Transaction Request form immediately and return to Compliance (bokfscompliancereporting@bokf.com). | **N/A** |

Page 3

| | |
|---|---|
| **Q16** In accordance with BOKFS' policy on gifts and gratuities, have all gifts given/received by you been reported via iTrade?If "no", then please report all gifts/gratuities via iTrade immediately. | **Yes** |
| **Q17** Are you aware that a written request must be made to participate in all paid or unpaid outside business activities including directorships, part-time employment, or volunteer work and that the request must receive pre-approval from Compliance? | **Yes** |
| **Q18** Do you have any paid or unpaid outside business activities that have not previously been reported to Compliance?If "yes", then please complete the BOKFS Outside Business Activity Form immediately and return to Compliance (bokfscompliancereporting@bokf.com). | **No** |
| **Q19** Are you an owner or partner in any business entity (ex. LLC, general partner, or limited partner)? | **No** |
| **Q20** If "yes", has the ownership/partnership been reported to Compliance?If not, then please complete the BOKFS Private Securities Transaction Request form and/or BOKFS Outside Business Activity Form as applicable and return to Compliance (bokfscompliancereporting@bokf.com) immediately. | **N/A** |
| **Q21** Are you or an immediate family member listed as Trustee or Successor Trustee of a client account (do not include an immediate family-related account)? | **No** |
| **Q22** Are you or an immediate family member named as Executor of a client account (do not include an immediate family-related account)? | **No** |
| **Q23** Are you or an immediate family member listed as a beneficiary in a client's Will (do not include Wills of immediate family members)? | **No** |
| **Q24** Do you create any type of comprehensive, consolidated statements - even if just for 1 client (Do not include clients set up on Black Diamond)? | **No** |

Page 4

**Q25** Estimate what percent of your business is in variable annuities.

**<10%**

**Q26** Estimate what percent of your business is in IRA Rollovers.

**<10%**

**Q27** Do you solicit Thrift Savings Plans ("TSPs") for rollovers?

**No**

**Q28** Do you have any client accounts (other than your personal accounts) addressed to send mail to your attention or to the Firm's attention? Note that duplicate statements being sent to your attention are allowed at the client's direction as long as the client is also receiving the statements and confirms. If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with the account number(s) and account name(s).

**No**

**Q29** Do you have discretionary authority over any client accounts that have not previously been reported to Compliance (do not include discretionary managed advisory accounts - i.e. PE7)?If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with the account number(s) and account name(s).

**No**

**Q30** Do you understand that you are prohibited from trading, either personally or on behalf of your family, friends, or clients, on material, nonpublic information and that material, nonpublic information cannot be communicated to anybody other than Compliance?

**Yes**

**Q31** Do you use devices or systems for electronic business/client communications other than those issued by, authorized by, or approved by the firm? Please exclude BOKF email, WebMail, authorized Bloomberg accounts, and/or approved social media accounts.If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with details of the device(s) used and how it is used.

**No**

**Q32** Do you use social media for business communications? Does not include posting contact information on LinkedIn.If "yes", then please email Compliance (bokfscompliancereporting@bokf.com) immediately with details of the social media account(s) used and how it is used.

**No**

Page 5

| | |
|---|---|
| **Q33** I am aware that I am responsible for checking the National and BOKFS "Do Not Call" lists prior to making cold calls. | **Yes** |
| **Q34** I am aware that information I obtain and material and/or applications I develop in the course of my employment is proprietary property of my employer and cannot be used to my advantage, nor taken with me, should I change employers. | **Yes** |
| **Q35** I am aware that I am responsible for checking BOKFS' Registration Connection page to ensure I am properly registered to conduct securities and/or insurance business in the states in which I solicit and/or conduct business. | **Yes** |
| **Q36** I certify that I am in full compliance with the firm's Anti-Money Laundering and Customer Identification Program policies. | **Yes** |
| **Q37** Are you currently an Investment Adviser Representative (registered through Series 65, Series 66, or Professional Designation)? | **Yes** |
| **Q38** As an Investment Adviser Representative, I understand that I am covered by the BOKFA Code of Ethics. I certify that I have received a copy of the BOKFA Code of Ethics within the past 12 months, have read and understood, and am in compliance with the requirements of the Code. | **Yes** |
| **Q39** I certify that I have received a copy of the BOKFS Written Supervisory Procedures and Bank Dealer policy manual, if applicable, that I have read and understood the requirements, and that I am in compliance with the requirements. | **Yes** |

**Q40** I certify that I am aware of the BOK Financial Risk Reporting Hotline (844.297.5946). BOKF is committed to providing all employees a workplace that treats people with fairness and respect, and maintains the highest standards for personal and professional integrity. The purpose of the Risk Reporting Hotline is to enable any BOKF officer, employee, or any of its vendors, contractors, customers, shareholders, or any other person ("covered persons") with direct knowledge about BOKF to report in good faith, without fear of retaliation, a suspected violation of any state or federal law or regulation related to accounting, internal control or auditing matters; a suspected violation of any securities laws or any other unlawful or unethical practice or activity; or a suspected violation of BOKF's Standard of Conduct and Code of Ethics ("Code").

**Yes**

---

**Q41** Please include any additional comments you may have regarding your Compliance Questionnaire.

**Respondent skipped this question**

---



APP. 00373

Confidential

Exhibit 024-000001



[redacted]

Symantec Data Loss Prevention | Home | Incidents | Manage | System

Incidents > Endpoint > Sherry Lane Print Jobs - Investigation > Endpoint Incident Snapshot

Block - Released | Block - Released Encry... | BOK Escalate for Inves... | BOK Human Resources Em... | More | Customize Layout | Previous | Next

## Incident 03345872

Status: New

**Endpoint Printer/Fax** Severity: Medium

Key Info | History | Notes | Correlations

**Policy Matches**

| | Matches |
|---|---|
| Endpoint - GLBA, PII, and PCI Policy [ view policy] | 79 |
| Social Security Numbers (Medium Breadth, Non-Web Protocols) (Data Identifiers) | 78 |
| Social Security Numbers (Medium Breadth, Non-Web Protocols) (Protocol) | 1 |

**Incident Details**

| | |
|---|---|
| Server or Detector | BTCDLPASP154V |
| Occurred On | 3/14/18 8:39 AM |
| Reported On | 3/14/18 8:44 AM |
| Is Hidden | No [ Do Not Hide ] |
| User | NTPROD\m018d41 |
| Machine Name | 2V17572 |
| Machine IP (Corporate) | 10.4.1.83 |
| Endpoint Location | On the Corporate Network |
| Application | Microsoft Office Excel |
| File Name | Wise Davis.xlsx |
| Print Job Name | Wise Davis.xlsx |
| Printer Name | HP Universal Printing PCL 5 |
| Printer Type | Local |
| Data Owner Name | [ change ] |
| Data Owner Email Address | [ change ] |

**Message Body**

*No message body data available*

**Matches (matches found in 2 components)**

Header (1 Match):
Printer/Fax

Body (78 Matches):

[redacted]

**Attributes**

Lookup | Edit

**Default Attribute Group**

| | |
|---|---|
| Resolution | |
| Dismissal Reason | |
| Assigned To | |
| Business Unit | |
| Employee Code | 000005021 |
| First Name | Vickie |
| Last Name | Wise |
| Title | SVP, CLIENT ADVISOR |
| Department | PB CA DALLAS |
| Phone | 214-346-3940 |
| Sender Email | VWise@mail.bokf.com |
| Region | US |
| Postal Code | 75225 |
| Country | United States |
| Manager First Name | Patrick |
| Manager Last Name | Staudt |
| Manager Title | SVP, MARKET EXECUTIVE - MLO |
| Manager Phone | 972-892-9959 |
| Manager Department | PRIVATE BANK MGMT-DALLAS |
| Manager Email | PStaudt@bankoftexas.com |

Confidential



Case 14188369 | Symantec Data Loss Preven...

File Edit View Favorites Tools Help

[redacted]

Page ▾ Safety ▾ Tools ▾

Symantec Data Loss Prevention | Home | Incidents ▾ | Manage ▾ | System ▾

Incidents > Endpoint > Sherry Lane Print Jobs - Investigation > Endpoint Incident Snapshot

Sys Admin\ m018805 ▾

Block - Released | Block - Released Encry... | BOK Escalate for Inves... | BOK Human Resources Em... | More ▾

Customize Layout | ◂ Previous | Next ▸

## Incident 03545360

Status: **New**

### Endpoint Printer/Fax

Severity: **Medium**

Key Info | History | Notes | Correlations

**Policy Matches**

| | Matches |
|---|---|
| **Endpoint - GLBA, PII, and PCI Policy** [ view policy] | 45 |
| Social Security Numbers (Medium Breadth, Non-Web Protocols) (Data Identifiers) | 44 |
| Social Security Numbers (Medium Breadth, Non-Web Protocols) (Protocol) | 1 |

**Incident Details**

| | |
|---|---|
| Server or Detector | BTCDLPASP154V |
| Occurred On | 3/16/18 1:17 PM |
| Reported On | 3/16/18 1:29 PM |
| Is Hidden | No [ Do Not Hide ] |
| User | NTPROD\m018610 |
| Machine Name | 9QJTWR1 |
| Machine IP (Corporate) | 10.4.1.115 |
| Endpoint Location | On the Corporate Network |
| Application | Microsoft Office Excel |
| File Name | RealizedGrid_Grouped131656977910298060.xlsx |
| Print Job Name | RealizedGrid_Grouped131656977910298060.xlsx |
| Printer Name | BDSC13 |
| Printer Type | Local |
| Data Owner Name | [ change ] |
| Data Owner Email Address | [ change ] |

**Message Body**

*No message body data available*

**Matches (matches found in 2 components)**

Header (1 Match):

Printer/Fax

Body (44 Matches):

[redacted]

**Attributes**

Lookup | Edit

**Default Attribute Group**

000005121
Melissa
Del-Cid
SR SECURITIES SALES/SERVICE SPECIALIST
PB CA DALLAS
214-346-3961
MDelcid@bokf.com
US
75225
United States
Lisa
Shannon
AVP, MANAGER, CLIENT SERVICES
405-936-3907
PB CA OKC
LShannon@bokf.com

APP. 00375



Symantec Data Loss Preven...

File Edit View Favorites Tools Help

[redacted]

Page ▾ Safety ▾ Tools ▾

Symantec Data Loss Prevention | Home | Incidents ▾ | Manage ▾ | System ▾

Incidents > Endpoint > Sherry Lane Print Jobs - Investigation > Endpoint Incident Snapshot

Sys Admin\ m013805 ▾

Block - Released | Block - Released Encry... | BOK Escalate for Inves... | BOK Human Resources Em... | More ▾

Customize Layout | ◂ Previous | Next ▸

## Incident 03555899

Status: New

**Endpoint Printer/Fax** Severity: Medium

Key Info | History | Notes | Correlations

**Policy Matches**

| | Matches |
|---|---|
| Endpoint - GLBA, PII, and PCI Policy [ view policy] | 106 |
| Social Security Numbers (Medium Breadth, Non-Web Protocols) (Data Identifiers) | 105 |
| Social Security Numbers (Medium Breadth, Non-Web Protocols) (Protocol) | 1 |

**Incident Details**

| | |
|---|---|
| Server or Detector | BTCDLPASP154V |
| Occurred On | 3/16/18 3:33 PM |
| Reported On | 3/16/18 3:39 PM |
| Is Hidden | No [ Do Not Hide ] |
| User | NTPROD\m018641 |
| Machine Name | 2V17572 |
| Machine IP (Corporate) | 10.4.1.63 |
| Endpoint Location | On the Corporate Network |
| Application | Microsoft Outlook |
| File Name | Microsoft Outlook - Memo Style |
| Print Job Name | Microsoft Outlook - Memo Style |
| Printer Name | HP Universal Printing PCL 5 |
| Printer Type | Local |
| Data Owner Name | [ change ] |
| Data Owner Email Address | [ change ] |

**Message Body**

*No message body data available*

**Matches (matches found in 2 components)**

Header (1 Match):

Printer/Fax

Body (105 Matches):

[redacted]

**Attributes**

Lookup | Edit

**Default Attribute Group**

000085021

Vickie

Wise

SVP, CLIENT ADVISOR

PB CA DALLAS

214-346-3949

VWise@mail.bokf.com

US

75225

United States

Patrick

Staudt

SVP, MARKET EXECUTIVE - MLO

972-892-9951

PRIVATE BANK MGMT-DALLAS

PStaudt@bankoftexas.com



APP. 00377

Confidential

Exhibit 028-000001



Symantec Data Loss Preven...
Page Safety Tools
Symantec Data Loss Prevention Home Incidents Manage System
Incidents > Endpoint > Sherry Lane Print Jobs - Investigation > Endpoint Incident Snapshot
Block - Released Block - Released Encry... BOK Escalate for Inves... BOK Human Resources Em... More
Customize Layout Previous Next
Incident 03558797
Status: New
Endpoint Printer/Fax Severity: Low
Key Info History Notes Correlations
Policy Matches
Matches
Endpoint - GLBA, PII, and PCI Policy [ view policy] 19
Social Security Numbers (Medium Breadth, Non-Web Protocols) (Data Identifiers) 18
Social Security Numbers (Medium Breadth, Non-Web Protocols) (Protocol) 1
Incident Details
Server or Detector BTCDLPASP154V
Occurred On 3/16/18 4:21 PM
Reported On 3/16/18 4:36 PM
Is Hidden No [ Do Not Hide ]
User NTPROD\n018610
Machine IP (Corporate) 10.4.1.115
Endpoint Location On the Corporate Network
Application Microsoft Outlook
File Name Microsoft Outlook - Memo Style
Print Job Name Microsoft Outlook - Memo Style
Printer Name BOSC13
Printer Type Local
Data Owner Name [ change ]
Data Owner Email Address [ change ]
Message Body
No message body data available
Matches (matches found in 2 components)
Header (1 Match):
Printer/Fax
Body (18 Matches):
Attributes
Lookup Edit
Default Attribute Group
000005121
Melissa
Del-Cid
SR SECURITIES SALES/SERVICE SPECIALIST
PB CA DALLAS
214-346-3961
US
75225
United States
Lisa
Shannon
AVP, MANAGER, CLIENT SERVICES
PB CA OKC
LShannon@bokf.com

APP. 00378

Confidential

Exhibit 029-000001

**Caywood, Candace**

**Subject:** FW: Topgolf Team Outing

**From:** Manna, Vince
**Sent:** Wednesday, March 07, 2018 9:50 AM
**To:** Wise, Vickie <VWise@mail.bokf.com>; Davis, Skip <Skip.Davis@bokf.com>; Del-cid, Melissa <MDelcid@bokf.com>; Gibbons, Barbara <BGibbons@bokf.com>; Smith, Andrew (TX) <Andrew.Smith@bankoftexas.com>
**Subject:** Topgolf Team Outing

Team,

Throwing out some dates for a fun afternoon / happy hour at Topgolf:

- Weds, March 14
- Fri, March 16
- Tues, March 20
- Weds, March 21
- Fri, March 23
- Weds, March 28

Let me know if any of those work / don't work ☺

Vince Manna, CFP®
AVP I Client Advisor
BOK Financial Advisors
Bank of Texas I The Private Bank
5956 Sherry Lane, Suite 700
Dallas, TX 75225
(214) 525-7615 I Office
[redacted] I Cell
(214) 346-3943 I Fax
vmanna@bankoftexas.com I Email

Securities, insurance and advisory services offered through BOK Financial Securities, Inc., member FINRA/SIPC and a subsidiary of BOK Financial Corporation. Services may be offered under our trade name, BOK Financial Advisors. **NOT FDIC INSURED I NO BANK GUARANTEE I MAY LOSE VALUE**

**From:** Illmer, Rick
**To:** Dorwart, Erica
**Cc:** Lyons Mike; Johnson, Chad
**Subject:** Hilltop Securities
**Date:** Sunday, March 25, 2018 6:20:30 PM

---

Erica,

Please be advised that I represent the persons and entities to whom you addressed your March 23 correspondence. I have an arbitration that begins tomorrow that will likely take all week. Nevertheless, in the event you intend to file an action seeking a temporary restraining order, please be advised that I am respectfully requesting that I be given reasonable notice and a reasonable opportunity to appear in person to oppose the Application for TRO. You are welcome to call my cell [redacted].

I will likely be assisted in this matter by one of my partners, Chad Johnson. Chad is copied on this email and his cell number is 214-577-4590.

A more full and complete response to the allegations in your letter will be forthcoming.

Thank you,
Rick

Sent from my iPad

**Caywood, Candace**

| | |
|---|---|
| **From:** | Illmer, Rick <Rick.Illmer@huschblackwell.com> |
| **Sent:** | Sunday, March 25, 2018 7:56 PM |
| **To:** | Dorwart, Erica |
| **Cc:** | Lyons Mike; Johnson, Chad |
| **Subject:** | Re: Hilltop Securities |

Yes, I will accept service for the defendants. Please email me and Chad a copy of any document you file.

Also, please confirm you will provide me and Chad reasonable notice of any hearing and a reasonable opportunity to be present in person to oppose any application for TRO.

Thanks

Sent from my iPhone

On Mar 25, 2018, at 7:34 PM, Dorwart, Erica <EDORWART@fdlaw.com> wrote:

Counsel:

We will be filing papers and seeking a hearing as soon as possible.

Please advise if you will accept service for the addressees.

Thanks,

Erica

Erica Anne Dorwart
Frederic Dorwart, Lawyers PLLC
Old City Hall
124 East Fourth Street
Tulsa, Oklahoma 74103
918-583-9960 (Direct)
918-583-9922 (Office)
[redacted]
Edorwart@fdlaw.com<mailto:Edorwart@fdlaw.com>

On Mar 25, 2018, at 4:20 PM, Illmer, Rick
<Rick.Illmer@huschblackwell.com<mailto:Rick.Illmer@huschblackwell.com>> wrote:

Erica,

Please be advised that I represent the persons and entities to whom you addressed your March 23 correspondence. I have an arbitration that begins tomorrow<x-apple-data-detectors://1> that will likely take all week. Nevertheless, in the event you intend to file an action seeking a temporary restraining order, please be advised that I am respectfully requesting that I be given reasonable notice and a reasonable opportunity to

appear in person to oppose the Application for TRO. You are welcome to call my cell [redacted].

I will likely be assisted in this matter by one of my partners, Chad Johnson. Chad is copied on this email and his cell number is [redacted]

A more full and complete response to the allegations in your letter will be forthcoming.

Thank you,
Rick

Sent from my iPad